UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Cameron ReeD

_____

_(In the space above enter the full name(s) of the plaintiff(s).)_

- against -

Jonathan Houton
Imani Oliver
michael Pratt
Channel Jones.W

_____

_____

_____

_____

_____

**COMPLAINT**

Jury Trial: ☒ Yes  ☐ No

(check one)

_(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)_

**I.     Parties in this complaint:**

A.     List your name, address and telephone number. If you are presently in custody, include your identification
number and the name and address of your current place of confinement. Do the same for any additional
plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff        Name                  Cameron ReeD
                 Street Address        219 W BerKley St
                 County, City          Philadelphia
                 State & Zip Code      Pa. 19144
                 Telephone Number      (267) 454-5744

_Rev. 10/2009_

B.    List all defendants.  You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant can be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name _Jonathan Houston_
Street Address _15 15. Arch. St_
County, City _Philadelphia_
State & Zip Code _Pa. 19102_

Defendant No. 2

Name _Imani Oliver_
Street Address _15 15 Arch St_
County, City _Philadelphia_
State & Zip Code _Pa. 19103_

Defendant No. 3

Name _Michael Pratt_
Street Address _1515 Arch St_
County, City _Philadelphia_
State & Zip Code _Pa. 19102_

Defendant No. 4

Name _Channel Jones, W_
Street Address _1515 Arch St_
County, City _Philadelphia_
State & Zip Code _Pa, 19444_

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
(Q) Federal Questions            Q    Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

_____

_____

*Rev. 10/2009*                                    - 2 -

B.    List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name _Donathan Houston_
Street Address _1515 Arch St._
County, City _Philadelphia 19102_
State & Zip Code _Pa._

Defendant No. 2

Name _Imani Oliver_
Street Address _1515 Arch St_
County, City _Philadel Phila_
State & Zip Code _Pa. 19102_

Defendant No. 3

Name _Michael Pratt_
Street Address _1515 Arch St_
County, City _Phila del Phila_
State & Zip Code _Pa. 19102_

Defendant No. 4

Name _Channel Jones. W_
Street Address _1515 Arch. St_
County, City _Philadel Phila_
State & Zip Code _Pa. 19102_

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
    Q  Federal Questions          Q  Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _____

_Rev. 10/2009_                          - 2 -

C.    If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _Cameron Reed_

Defendant(s) state(s) of citizenship _Jonathan Houton_

## III.    Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    Where did the events giving rise to your claim(s) occur? On 10/10/17
Jonathan Houlon: work for LAW Department City of Philadelphiae.

B.    What date and approximate time did the events giving rise to your claim(s) occur? On 10/10/17 Corrupt Organtzgtations - Violgtled, The Racketeer Commoly referred to as the Rico Act

C.    Facts: Jonathan Houlon - kidnapping for profit and wire fraud on - 10/10/17 my child was remove from Einstein medical Hospital by D.H.S of philadelphiae Law, a direct Violation of the Rico Act, he typed up a Petition agent me. Camella Reed: name of child Channel Jones D.H5 a social worker she typed up a forgery Court order that remove my child Camella Reed. a direct Violation of the Patient Bill Right. ms. Winchella Reed: mother Court Representative (D.HS) Imani Oliver D.HS Lawyer Michael Patt Guardian Ad.Litem for Child. Advocacy Unit Eintein Hospital - Violgtation my Patient Bill of Right. Mother: Ms. Winchella

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. I was traumatized and mentally distressed, I lost work wages for 38 Days and Family Court, and pain Suffering.

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

Criminal penalties as part of an ongoing Crmial Organization in additiong to seeking $100,000 in damages for keeping the Children falsely imprisoned in State Custody and other Costs this Criminal Organization, had my children and D.HS Custody for four year. imprisonment for abuse /of power and fines and cost. I suffer for eight years of my life, with out seeking my Children, I do hope Court, whole Human Serivce Department Accounttable for their actions.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 18 day of February, 20 20.

Signature of Plaintiff Cameron Reed

Mailing Address 219 Brekley St
Phila. Pa. 19144

Telephone Number 2674545744

Fax Number (if you have one) _____

E-mail Address @ _____

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20_____, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern District of Pennsylvania.

Signature of Plaintiff: _____

Inmate Number _____

# Note:

**This Designation Form must be <u>signed</u> before submission to the Clerk's Office *or a case number will not be assigned*.**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2-18-2020  *Cameron Reed*  _____
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____  _____  _____
                    *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

|  |  |
|---|---|
|  | CIVIL ACTION |
| v. | |
|  | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

2-18-20     *Cameron Reed*
_____   _____
**Date**             **Pro Se Plaintiff**

(267) 45457-44
_____   _____   _____

**Telephone**           **FAX Number**           **E-Mail Address**

(Civ. 660) 10/02

LAW. = Jongthan. Houton
The Chief Deputy Solicitor
Attorney Identification No. 77263
City of philgdelphia LAW Department
15 15 Arch St. 16th floor.

Mr. Jonathan Houton
Chief Deputy City Solicitor
Violated due proeess law
The Fourteenth Amendment reads,
in part that no state shall"
deprive any person of life, liberty,
of law." This applies to the States
and to local goverments.
The Due process issues involve
State laws. on 10/17/2017
Channel Jones D.H.S worker
She Violated Patient Bill of Rights
Bills, by removing baby from hospital.
Einstein preemie Care. Imani oliver

On 10/16/17 Jonathan Houlon Chief Deputy City Solicitor Attorney Identification NO: 77263 City of Philadelphia, Law Department 1515 Arch St. Violalatled, The Racketeer influenced and Corrupt Organtzations Act Commoly referred to as the Rico Act or Simply Rico, is a United States federal Law. that provides for extended Criminal penalties as part of an ongoing Criminal Organization. In addition to seeking 100,000 in damages for keeping the Children falsely imprisoned in state custody and other costs this Criminal Organization had my Children and custody for 4 years.

un~~der~~ CHi

in a standard Dependency petition is typically filed by agency but may be filed by others through application. Lastly a case may come into the system through an Emergency Shelter Care (ESC) Application which is an emergency situation by which the agency takes protective custody of a child.

Petitioner:

City of Philadelphia

Department of Human Services

1515 Arch St.

Philadelphia PA 19102

By:

City of Philadelphia, Law Department

1515 Arch St. 16th floor

Philadelphia, PA 19102-1595

(215) 683-5135

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

FAMILY COURT DIVISION

JUVENILE BRANCH

## ORDER OF PROTECTIVE CUSTODY

In the Interest Of:

Mother of Child: Winchella Howard

Address:             5321 Wayne Ave #301 Phila, PA 19144

Child(ren)

Father of Child:    Cameron Reed

Address:             5321 Wayne Ave #301 Phila, PA 19144

Camella Reed                          8/31/17

Name

D.O.B.

Name

D.O.B.

| | First and Last Name | D.O.B. or | Address of child prior to placement. | For oral protective |
|---|---|---|---|---|
| | SUFFIX | Approximate Age | | orders only: Date/Time child taken into custody |
| A | Camella Reed | 8/31/17 | 5501 Old York Rd Phila, PA 19141 | |
| B | | | | |
| C | | | | |

Mother (name)

Winchella Howard

Address

5321 Wayne Ave #301 Phila, PA 19144

Father (name)

Cameron Reed

Address

5321 Wayne Ave #301 Phila, PA 19144

Father (name)

Address

Guardian (name)

Address

Identity of Person requesting order (name),

Channel Jones

Title (position)    Phone

SWSM    3-6812

Name of Court Representative (DHS)

Imani Oliver

Reason for Requesting Order:

On 9/15/17, DHS received a report with the following allegations. Camella was born prematurely at 30 weeks on 8/31/17. She had difficulty feeding and has been diagnosed with a kidney disorder. From 9/2/17 until 10/5/17, parents only visited her ten times. Mother was observed to have difficulty in meeting Camella's needs. Mother needed assistance with changing her diapers. Parents have not been cooperative with DHS. DHS attempted to conduct a home evaluation on the following dates to no avail: 9/15/17, 9/16/17, 9/25/17, 10/2/17. When DHS attempted to meet with the parents, father refused to allow DHS to enter the home. Parents have not provided DHS with the names of possible family resources. An OPC is needed to ensure the safety and well being of Camella.

ame                                      D.O.B.

And now this *10th* day of *October, 2017*, in consideration of the attached Application for Order of Protective Custody and pursuant to 42 Pa.C.S. §6324, I hereby issue a protective order for the above child, on behalf of the Department of Human Services (DHS), with a temporary commitment to DHS.  I find that continuation in the home would be contrary to the health, safety and welfare of the child.  I further find that appropriate reasonable efforts to prevent placement were made or that preventive services were not offered due to the necessity for an emergency placement and that the lack of services was reasonable under the circumstances.

DHS is hereby authorized to execute this protective order with assistance from the Philadelphia Police Department, if needed.  The Court finds that there is probable cause for the Philadelphia Police or DHS to enter the premises located at 5501 Old York Rd. Phila, PA 19141 for purposes of taking the child into protective custody.

A court hearing has been scheduled for: Thursday, 10/12/17, 11:30 a.m., Room 5B ,1501 Arch Street, Philadelphia PA 19102. The Pre-Hearing conference date is:  10 / 19 / 17 .11:00 a.m., Room  4.72

BY THE COURT,

J.

10/10/17

Date

Clerk of Quarter Sessions

CITY     OF PHILADELPHIA DEPARTMENT OF HUMAN SERVICES

APPLICATION FOR ORDER OF PROTECTIVE CUSTODY

DHS Case No. & Suffix(s): 620543E

D#:

J#:

Date:                    10/10/17

Jonathan Houlon Chief Deputy
City Solicitor Nicollete
Burgess Bolden Chief Deputy
Child Welfare Unit He responsible
for providing representation the
Department of Human of
Human Serivces (DHS) in
Family Court Attorneys. who
represent DHS in Family
Court. and before the
Department of Law attorneys.
He Filing a false abuse
neglect against, me
ms Winchella Howard, a
petitioner ~~a~~ ~~~~~~~~~
was oder ~~~~~~~~~~~ my
~~~~~~ ~~Camella Reed~~
was file a standard
petition agent her to
remove from parents homes

remove new born from
mother a direct violation
from Patient Bill of Rights
at Einstein Hospital.

CP-51-DP-0001977-2012

In Th        .erest Of:  Cameron Reed, A Minor

RECOMMENDED:

Master Clay Cauley Sr.

The Recommendation Order is not final until confirmed by the Court below. If objections are raised to the recommendations of the Master, a party may request a hearing before the Court within three (3) days of the receipt of the recommendation.

## ORDER

AND NOW, this ___21___ day of ___December___, ___2012___, after consideration this court finds the recommendation by the Master is in the best interest of the child and is hereby adopted and ordered.

BY THE COURT:

Kevin M. Dougherty

_____
Judge

## CHILD PROTECTIVE SERVICES INVESTIGATION REPORT (TITLE 23 PA. C.S.A CHAPTER 63)

| | | |
|---|---|---|
| WAS CHILD REMOVED FROM ALLEGED ABUSIVE SETTING? | ☐ YES | ☒ NO |
| WERE LAW ENFORCEMENT OFFICIALS NOTIFIED OF THE REPORT? | ☐ YES | ☒ NO |
| WAS THERE A RELIGIOUS BASIS FOR THE CHILD'S CONDITION? | ☐ YES | ☒ NO |
| DID THE CHILD DIE AS A RESULT OF THIS INCIDENT OF ABUSE/NEGLECT? | ☐ YES | ☒ NO |

SERVICES PLANNED OR PROVIDED

Case Management Services

## IV. INVESTIGATION/ASSESSMENT STATUS

INVESTIGATION/ASSESSMENT DECISION

Valid

PLEASE EXPLAIN IN DETAIL THE BASIS FOR THE INVESTIGATION OUTCOME AND CASE OUTCOME SELECTED AND SPECIFY CRIMINAL ACTION

Valid and accepted for services.

It was confirmed that 3 of MOT's children are adopted and 1 is in placement. Both parent's parental rights were involuntary terminated for their older children. MOT is reported to have a very low parent capacity and father is not cooperative with any services to assist with reunifying his children. An OPC was obtained on 10/10/17 due to the parent's lack of cooperation with DHS and the child was placed in foster care in the same agency as her biological siblings.

## V. NEED FOR PROTECTIVE SERVICES

Other Medical Condition-Child

## VI. APPROVALS

| COUNTY WHERE ABUSE OCCURRED | INVESTIGATING COUNTY/REGION | INVESTIGATING WORKER NAME |
|---|---|---|
| Philadelphia | Philadelphia | Jones, Channel W |
| SUPERVISOR NAME | | DATE OF APPROVAL |
| Davis, Stephanie | | |
| ADMINISTRATOR/DESIGNEE | | DATE OF APPROVAL |
| Miller, Olivia B | | 9/15/2017 |
| LEGAL REVIEW | | DATE OF REVIEW |
| Unspecified | | |
| OUTCOME DETERMINATION DATE | | |
| 11/7/2017 | | |

## VII. CHANGE OF STATUS

## CHILD PROTECTIVE SERVICES INVESTIGATION REPORT (TITLE 23 PA. C.S.A CHAPTER 63)

### I. IDENTIFYING INFORMATION

| DATE OF INCIDENT BEGIN | REFERRAL TYPE | REFERRAL RECEIVED DATE | REFERRAL ID |
|---|---|---|---|
| 9/15/2017 | GPS | 9/15/2017 3:22:56 PM | 7985698 |
| DATE OF INCIDENT END | | | |

### 1. ALLEGED VICTIM/SUBJECT CHILD

| NAME | | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Camella C Reed | | | Female |
| ADDRESS | | COUNTY | SSN |

### 2. PARENTS/LEGAL GUARDIAN

| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Winchella Howard | Mother-Biological | | Female |
| ADDRESS | | COUNTY | SSN |
| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
| Cameron D Reed | Father-Unknown | | Male |
| ADDRESS | | COUNTY | SSN |

### 3. ALLEGED PERPETRATOR/PERSON RESPONSIBLE

| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Winchella Howard | Mother-Biological | | Female |
| ADDRESS | | COUNTY | SSN |

### 4. FAMILY HOUSEHOLD COMPOSITION

### 5. AGENCY WITH CUSTODY INFORMATION

| AGENCY NAME | UNKNOWN AGENCY NAME ☐ | CONTACT NAME/CARE OF | UNKNOWN CONTACT NAME/ CARE OF ☐ |
|---|---|---|---|
| ADDRESS TYPE | ADDRESS | UNKNOWN ☐ | COUNTY |

DIRECTIONS/LOCATION EXPLANATION

| CONTACT TYPE | CONTACT |
|---|---|

### 6. THE INITIAL REFERRAL SOURCE

### II. NATURE OF ABUSE/NEGLECT

| ALLEGED VICTIM/SUBJECT CHILD | ALLEGED PERPETRATOR/RESPONSIBLE PERSON | CATEGORY OF ABUSE/NEGLECT | SUBCATEGORY OF ABUSE/NEGLECT |
|---|---|---|---|
| Camella C Reed | Winchella Howard | GPS Concerns | Other |
| ALLEGATION OUTCOME | OUTCOME EXPLANATION | | |
| Valid | VALID because there was enough evidence gathered to substantiate the allegations of other. | | |

### III. CPS ACTIONS

| WAS CHILD ALLEGEDLY ABUSED WHILE IN A "CHILD CARE SERVICE" (As defined by CPSL)? | ☐ YES | ☒ NO |
|---|---|---|

Commonwealth of Pennsylvania

In the Interest Of:

Camella Reed, A Minor
Date of Birth: 08/31/2017

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO: CP-51-DP-0002701-2017
FID: 51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
|---|---|---|
| Banister, Robin Winthrop | Attorney - Howard, Winchella | In Person |
| Frierson, Lue B. | Attorney - Reed, Cameron | Did Not Attend |
| Defender Association - Child Advocacy Unit | GAL for Child - Reed, Camella | In Person |
| Reed, Cameron | Father | In Person |
| Howard, Winchella | Mother | In Person |
| Reed, Camella | Child | Did Not Attend |

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACSPRATT, DACAUHART, DHS -BARFIELD, DHSSW -FOREST, L FRIERSON E, R BANISTER p, MOTHER, FATHER, AGENCY -SW, CBH,     bc

AND NOW, this 6th day of September, 2018, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL

The current placement goal for the child is return to parent or guardian.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of9-4-18

## ORDER OF COURT - On the basis of the above findings, IT IS HEREBY ORDERED THAT:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care. The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available,The Village

The additional condition of visitation is - wkly. supervised visits to continue for parents as arranged by the parties

## FINDINGS/ORDERS

THE COURT FURTHER FINDS:Dhssw reports mother attends Community Council for mental -health treatment, Dhs 1 entered, mother is currently employed

THE COURT FURTHER ORDERS:Dhs commit stands, Dhssw to refer mother for an intensive case manager

In The Interest Of:  Camella Reed, A Minor

and IDS services, mother to continue her mental-health treatment, father re-ref. to CEU -forthwith drug -alcohol screen, assessment, dual diagnosis, monitoring, and 3 random drug -alcohol screens prior to ncd - 1501 Arch Street Philadelphia, pa, father to comply with CEU recommendations and a parenting capacity evaluation, recomm. of mother's PCE to be implemented, re-ref. parents to family school, parents to comply with all services and recommendations, Dhs to provide mother's employment and therapy information to child advocate, Dhs to file child support claims on parents

## NEXT SCHEDULED COURT DATE(S)

Next Scheduled Court Date: - Permanency Review Hearing - 12/06/2018 - 10:30AM - 1501 Arch Street - Courtroom 5B - Judge Allan L. Tereshko

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT:

_____
Judge Allan L. Tereshko

Copies To:ACSPRATT, DACAUHART, DHS -BARFIELD, DHSSW -FOREST, L FRIERSON  E, R BANISTER p, MOTHER, FATHER

Philadelphia County Clerk of Courts Received 11/20/2018 5:08 PM
Philadelphia County Clerk of Courts Filed 11/20/2018 5:08 PM
CP-51-AP-0000929-2018

# PETITION FOR
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

RE:  Camella Christine Reed Camella C. Reed
DHS # 620543 E
[DHS Social Work Services staff:  Barbara Forest]

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 683-5168
Attorney's Identification Number:         318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF          :    AP#
**Camella Christine Reed**   :    FID: 51-FN-002936-2012
**Camella C. Reed**          :

## PETITION FOR
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

## RULE

**AND NOW**, this _____ day of _____,

20 _____, to Judicially resolve the attached Petition, it is hereby **ORDERED** and **DECREED** that

an evidentiary hearing is set for **Philadelphia Family Court, 1501 Arch Street Philadelphia, PA**

**19102, 5th Floor, Courtroom 5B, for the 6th day of December, 2018, at 10:30 AM**

At least ten (10) days written notice shall be given to the parent or parents, putative father, or

the parents or guardian of the *minor parent* whose rights are to be terminated. Service shall be

accomplished either by regular mail and certified mail, return receipt requested, or by personal

service to his, her or their last known addresses.

**BY THE COURT:**

_____
                                                                    **J.**

**DHS # 620543 E**

1

Attorney's Name:                              Michael Pratt, Esquire
Attorney's Address:                           1515 Arch Street, 16th Floor
                                              Philadelphia, PA 19102-1595
Attorney's Telephone Number:                  (215) 683-5168
Attorney's Identification Number:             318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF          :        AP#
**Camella Christine Reed**   :        FID: 51-FN-002936-2012
**Camella C. Reed**          :

## PETITION FOR INVOLUNTARY TERMINATION
## OF PARENTAL RIGHTS

**TO THE HONORABLE, THE JUDGES OF THE SAID COURT:**

1. Petitioner, Philadelphia Department of Human Services, Children and Youth Division (hereinafter "DHS"), is the local government agency responsible for the care and supervision of dependent children in Philadelphia.

2. The above-named child is a dependent under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301 - 6365 (1982 & Supp. 1990)

3. This child's mother is **Winchella Howard.** Her last known address is **5321 Wayne Avenue, Apt. 301, Philadelphia, PA, 19144 OR 2706 Ridge Avenue, Philadelphia, PA, 19121.** She is of **the African-American** race and **the unknown** faith. The mother's birthdate is **September 30, 1981.** The mother's marital status is **unknown.**

4. This child's putative/natural/presumptive father is **Cameron Deross Reed, Sr. Cameron D. Reed.** His last known address is **5321 Wayne Avenue, Apt. 301, Philadelphia, PA, 19144.** He is of **the African-American** race and **the unknown** faith. The father's birthdate is **June 19, 1967.** The father's marital status is **unknown.**

2

5. The child, who was born on **August 31, 2017**, in **Philadelphia, PA**, was adjudicated dependent on **January 23, 2018** and committed to the Petitioner on **October 10, 2017**. The child has been in the custody of the Petitioner continuously since **October 10, 2017**.

6. That the Petitioner's statutory ground(s) for termination, pursuant to 23 Pa.C.S.A. § 2511 is/are (list applicable sections):

☒    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

☒    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

☐    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

☐    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

☒    2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

☐    2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

3

☐      2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

☒      2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

☐      2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

        i)      an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

        ii)     a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

        iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

        iv)     an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

☐      2511(a)(10) the parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child or another child of the parent based on a judicial adjudication or a founded report where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).

☐      2511(a)(11)  the parent is required to register as a sexual offender under 42 Pa.C.S. ch. 97 subch. h (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

7.  That other factors and considerations for termination pursuant to the Adoption Act is/are as follows:

☒ 2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court

4

shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

8. Termination of the parental rights of **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed** would best serve the needs and welfare of **Camella Christine Reed Camella C. Reed**;

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and supervised by the State Department of Public Welfare;

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, Philadelphia, PA 19102;

11. The Petitioner is willing and able to take custody of the child until such time as the child is adopted.

WHEREFORE, the Philadelphia Department of Human Services prays this Honorable Court to enter an **ORDER:**

1. Directing a finding of involuntary termination of the parental rights of **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed;**

2. Directing the transfer of custody of **Camella Christine Reed Camella C. Reed** to the Philadelphia Department of Human Services;

3. Authorizing the Philadelphia Department of Human Services to give consent to the adoption of **Camella Christine Reed Camella C. Reed** without further consent of or notification to **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed.**

BY:

_Michael Pratt_

Michael Pratt, Esquire

5

Attorney's Name:        Michael Pratt, Esquire
Attorney's Address:        1515 Arch Street, 16th Floor
                Philadelphia, PA 19102-1595
Attorney's Telephone Number:   (215) 683-5168
Attorney's Identification Number:  318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF    :  AP#
**Camella Christine Reed**  :  FID: 51-FN-002936-2012
**Camella C. Reed**     :

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

By its Petition, Petitioner, the Philadelphia Department of Human Services, Children and

Youth Division, having filed a Petition proceeding under the "Adoption Act", 1980, October 15, P.L.

934, No. 163, Section 1, effective January 1, 1981, seeks a DECREE for involuntary termination of

the parental rights of **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed** to

**Camella Christine Reed Camella C. Reed**; the Court makes the following Findings of Fact and

Conclusions of Law:

The Court, after a hearing on the Petition for Involuntary Termination of Parental Rights and

after taking testimony and/or receiving a Stipulation as to the Facts as the basis for the involuntary

termination of parental rights, finds that the Petitioner has established by clear and convincing

evidence the following:

## FINDINGS OF FACT

1. The subject of this Petition is a minor child named **Camella Christine Reed Camella C. Reed** who was born on **August 31, 2017** in **Philadelphia, PA.**

2. The mother of the child is **Winchella Howard** who was born on **September 30, 1981** in **unknown.** Her last known address is **5321 Wayne Avenue, Apt. 301, Philadelphia, PA, 19144 OR 2706 Ridge Avenue, Philadelphia, PA, 19121.** She is of **the African-American** race and **the unknown** faith.

3. The mother **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with the child. She has also failed to consistently visit, plan for, and provide for the child throughout her time in placement.**

4. The putative/natural/presumptive father of the child is **Cameron Deross Reed, Sr. Cameron D. Reed** who was born on **June 19, 1967** in **unknown.** His last known address is **5321 Wayne Avenue, Apt. 301, Philadelphia, PA, 19144.** He is of **the African-American** race and **the unknown** faith.

5. The putative/natural/presumptive father **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with the child. He has also failed to consistently visit, plan for, and provide for the child throughout her time in placement.**

6. The child was adjudicated dependent on **January 23, 2018** by the Honorable **Allan L. Tereshko.** The Family Service Plan goal has been changed to **Adoption.**

7. Since **October 10, 2017**, the child has been without essential parental care, control and subsistence necessary for the child's physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time;

8. The said child has been in the care and custody of the Petitioner continuously for a period in excess of six (6) months, specifically since **October 10, 2017.**

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter;

7

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, 8th floor, Philadelphia, PA 19102.

11. The Petitioner is willing and able to take custody of the child and to arrange for and consent to his/her adoption by suitable persons;

WHEREFORE, the Court of Common Pleas of Philadelphia County arrives at the following:

8

## CONCLUSIONS OF LAW

1. **Camella Christine Reed Camella C. Reed** has been without essential parental care, control and subsistence necessary for his/her physical and mental well-being;

2. Under the Juvenile Act, 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74, the disposition best suited to the protection and physical, mental and moral welfare of the above-named child is Adoption.

3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed** to **Camella Christine Reed Camella C. Reed** and may ask for custody of said child;

4. All prerequisites for the filing of a Petition for Involuntary Termination and the entry of such a Decree have been met;

5. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard and Cameron Deross Reed, Sr. Cameron D. Reed:** (*check the applicable subsections*):

[x]    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

[ ]    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

9

[x]   2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]   2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]   2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]   2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]   2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)      an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)     a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

[ ]   2511(a)(10) the parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child or another child of the parent based on a judicial

10

adjudication or a founded report where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).

[ ]   2511(a)(11) the parent is required to register as a sexual offender under 42 Pa.C.S. ch. 97 subch. h (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

[x]   2511 (b) Other Considerations. –

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

6. This Honorable Court having jurisdiction over this matter grants the Decree prayed for in the pleadings.

**BY THE COURT:**

_____
J.

DATED: _____

11

## VERIFICATION

I, Michael Pratt, Esquire, being duly sworn according to law, depose and say that I am an Attorney of the within-named corporation; that I am fully authorized to make this Verification on its behalf; and that the facts set forth in the foregoing Petition are true and correct to the best of my knowledge, information and belief. The Petitioner is aware that false statements contained herein are subject to the penalties of 18 Pa. Cons. Stat. § 4904.

_Michael Pratt_
Michael Pratt, Esquire

DATED: 11/20/18

12

Attorney's Name:                                  Michael Pratt, Esquire
Attorney's Address:                               1515 Arch Street, 16th Floor
                                                  Philadelphia, PA 19102-1595
Attorney's Telephone Number:                      (215) 683-5168
Attorney's Identification Number:                 318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF              :        AP#
**Camella Christine Reed**      :        FID: 51-FN-002936-2012
**Camella C. Reed**             :

## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

AND NOW, this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Winchella Howard.**

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard**:

*(check the applicable subsections)*:

[x]     2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]     2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

13

[ ]    2511(a)(3) The parent is the presumptive but not the natural father of the child;

[ ]    2511(a)(4) The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]    2511(a)(5) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7) The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

14

[ ]    2511(a)(10) the parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child or another child of the parent based on a judicial adjudication or a founded report where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).

[ ]    2511(a)(11) the parent is required to register as a sexual offender under 42 Pa.C.S. ch. 97 subch. h (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

[x]    2511 (b) Other Considerations. --

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3.  Specific findings have been placed on the record at the end of the evidentiary hearing.

4.  **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Winchella Howard are forever terminated.**

5.  The adoption of **Camella Christine Reed Camella C. Reed** may continue without further notice to or consent of **Winchella Howard**.

6.  The custody of **Camella Christine Reed Camella C. Reed** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Camella Christine Reed Camella C. Reed.**

**BY THE COURT:**

_____
                                                                                  **J.**

15

Attorney's Name:                                    Michael Pratt, Esquire
Attorney's Address:                                 1515 Arch Street, 16th Floor
                                                    Philadelphia, PA 19102-1595
Attorney's Telephone Number:                        (215) 683-5168
Attorney's Identification Number:                   318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF          :        AP#
**Camella Christine Reed**   :        FID: 51-FN-002936-2012
**Camella C. Reed**          :

## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

**AND NOW**, this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Cameron Deross Reed, Sr. Cameron D. Reed.**

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Cameron Deross Reed, Sr. Cameron D. Reed**:

*(check the applicable subsections)*:

[x]     2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]     2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]     2511(a)(3)  The parent is the presumptive but not the natural father of the child;

16

[ ]     2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]     2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]     2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]     2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]     2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]     2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

    i)      an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

    ii)     a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

    iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

    iv)     an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

17

[ ]     2511(a)(10) the parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child or another child of the parent based on a judicial adjudication or a founded report where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).

[ ]     2511(a)(11) the parent is required to register as a sexual offender under 42 Pa.C.S. ch. 97 subch. h (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

[x]     2511 (b) Other Considerations. –
> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3. Specific findings have been placed on the record at the end of the evidentiary hearing.

4. **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Cameron Deross Reed, Sr. Cameron D. Reed are forever terminated.**

5. The adoption of **Camella Christine Reed Camella C. Reed** may continue without further notice to or consent of **Cameron Deross Reed, Sr. Cameron D. Reed.**

6. The custody of **Camella Christine Reed Camella C. Reed** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Camella Christine Reed Camella C. Reed.**

**BY THE COURT:**

_____
J.

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**ADOPTION BRANCH**

| | | |
|---|---|---|
| IN RE: ADOPTION OF | : | AP# |
| **Camella Christine Reed** | : | FID: 51-FN-002936-2012 |
| **Camella C. Reed** | : | **Termination Hearing Date:**_____ |

## Adoption Plan Status Form

**I.**   **CHECK APPROPRIATE BOXES:**

[x]   Foster parent adoption;
[ ]   No adoptive family identified;
[ ]   To be/has been registered with:
       [ ]   Pennsylvania Adoption Exchange;
       [ ]   Three Rivers;
       [ ]   National Adoption Exchange; and
       [ ]   Other: _____
[ ]   Listed for finalization;
[ ]   Other _____

**II.**   **LIST IMPEDIMENTS TO FINALIZING ADOPTION:**

**III.**   **LIST EFFORTS MADE TO REMOVE IMPEDIMENTS:**

19

# EXHIBIT

# "A"

20

## STATEMENT OF FACTS RE:
## CAMELLA CHRISTINE REED
## CAMELLA C. REED

a. This family has been known to the Department of Human Services (DHS) due to the failure of the children's parents, Winchella Howard and Cameron Reed, to provide their children with adequate food and safe, appropriate housing as well as Mr. Reed's substance abuse and Ms. Howard's mental health problems. Two of Camella's siblings, Christen and Cambria, were diagnosed with neurofibromatosis, a genetically-inherited disorder, and Ms. Howard and Mr. Reed did not ensure that they received appropriate medical care. Furthermore, they did not ensure that Calvin, who was born on May 28, 2013, was tested to determine if he also suffered from neurofibromatosis.

b. On approximately September 10, 2012, after several unsuccessful attempts, Ms. Howard allowed DHS into the home while Mr. Reed was not present. DHS observed that there were exposed wires, extension cords in the kitchen, unsafe bunkbeds, and unsafe heaters. Cameron was found in a car seat on the floor surrounded by clothing, Cambria was found with a blender blade in her mouth, and Christen was found with a screw in his mouth. Ms. Howard and Mr. Reed continue to reside in this home to date.

c. Over the course of 36 months, Ms. Howard attended Family School, but she continued to have difficulty meeting the children's basic needs. Mr. Reed refused to cooperate with services and treatment, and refused to allow DHS to enter the home again without his presence. Ms. Howard and Mr. Reed's children Cameron, Cambria and Christen were committed to DHS on November 9, 2012, and adjudicated dependent on November 9, 2012. Ms. Howard and Mr. Reed's child Calvin was committed to DHS on August 28, 2013 and adjudicated dependent on November 4, 2013.

d. On June 24, 2014, Assessment & Treatment Alternatives, Inc. (ATA), completed a Parenting Capacity Evaluation (PCE) for Ms. Howard. Ms. Howard was diagnosed with Persistent Depressive Disorder (Dysthymia). There were several issues noted that interfere with Ms. Howard being able to provide both safety and permanency to her children. These barriers include a minimization of the role she played in the situation which precipitated DHS' involvement and the inability to acknowledge her children's behavioral problems. Ms. Howard also minimizes Mr. Reed's substance abuse. Ms. Howard has neglected to take responsibility for her actions and projected blame on the city for the removal of her children. Ms. Howard also denied all allegations that her home was unkempt, chaotic, and that her children were not up to date with their immunizations. It was noted that Ms. Howard appears to be functioning in the borderline range of intelligence, and does not function well in situations that are, or become, complex.

e. On July 15, 2014, ATA completed a PCE for Mr. Reed. During the interview, Mr. Reed tended to get defensive, preoccupied, and at times perseverate when confronted with the inconsistency

21

of his answers. Mr. Reed's hostility, alleged substance abuse and his relationship with Ms. Howard are issues for which he would have benefited from counseling if he had participated. Mr. Reed minimizes the role he played in the situation which precipitated DHS' involvement and failed to acknowledge any of DHS concerns and indicated the reason his children were removed was due to false allegations regarding safety hazards in the home. Mr. Reed failed to recognize any behavioral problems with his children, stating just that they are hyperactive. It was noted that there are concerns regarding Mr. Reed and Ms. Howard failing to take their children to medical appointments.

f. On February 26, 2015, ATA completed a PCE for Ms. Howard. Ms. Howard was diagnosed with Intellectual Disability, Mild, as she is functioning in the borderline range of intelligence. During the interview, Ms. Howard expressed her desire to have her children returned to her care, however, there continue to be substantial barriers that interfere with her ability to provide safety and permanency to her children. These barriers include a minimization of the role she and Mr. Reed played in the situation which precipitated DHS' involvement and the inability to acknowledge her children's behavioral problem/special needs. There is an ongoing concern due to Ms. Howard's failure and/or inability to prevent these barriers going forward. In addition, Ms. Howard lacks appropriate housing and is unable to recognize any issues with the inappropriate suitable sleeping arrangements she suggested for the children. It was noted that Ms. Howard was unable to demonstrate any notable progress since her last evaluation in developing the capacity to provide safety and permanency to her children.

g. On April 4, 2016, ATA completed a PCE for Mr. Reed. Mr. Reed continues to deny and minimize the concerns presented by DHS, and has demonstrated a pattern of superficial compliance with his parental objectives. Mr. Reed has the belief that engaging in a task asked of him is in itself completion of the task. Prior to reunification being considered, it is imperative that Mr. Reed enroll in individual therapy and adhere to the identified treatment goals. Mr. Reed does not present with the capacity to provide safety and/or permanency to his children.

h. On July 12, 2016, the parental rights of Ms. Howard and Mr. Reed were involuntarily terminated as to their children, Cameron, Cambria, Christen and Calvin.

i. On September 15, 2017, DHS received a General Protective Services (GPS) report which alleged that Winchella Howard gave birth to Camella Reed; that Ms. Howard stated that all her children had been placed in DHS' care; and that Camella was born on August 31, 2017, weighed 4 pounds and 12 ounces, and was born at 30 weeks gestation. It was further alleged that Ms. Howard was not employed, that Ms. Howard denied drug or alcohol use, denied having mental health issues, and stated that Cameron Reed, Camella's father, is involved in Camella's care. This report was determined to be valid.

j. On September 15, 2017, DHS visited Albert Einstein Medical Cneter (AEMC) and learned that Camella remained hospitalized and was being treated for a kidney disorder.

22

k. On September 15, 2017, DHS made a home visit, but no one answered the door. An unidentified adult male stated, from inside the family's apartment, that he would not permit DHS to enter the home without an appointment and stated that Ms. Howard could only meet with DHS if there was a scheduled appointment. A notification letter was left and a visit was scheduled for September 16, 2017, with the agreement of the adult male.

l. On September 16, 2017, DHS attempted a home visit; however, DHS could not gain access to the apartment complex. DHS telephone Ms. Howard twice and Mr. Reed once; however, neither parent answered the telephone. DHs left voicemail messages for them reminding them of the scheduled visits and asking them to contact DHS. DHS received no reply.

m. On September 20, 2017, DHS learned that Ms. Howard had visited Camella only three times since her discharged from the hospital. DHS also learned that Ms. Howard was unable to diaper Camella properly during her visits and had to be helped by Mr. Reed.

n. On September 26, 2017, DHS attempted a home visit; however, DHS could not gain access to the apartment complex. DHS telephoned Ms. Howard and Mr. Reed; however, there was no answer and DHS left voicemail messages.

o. On September 28, 2017, DHS again telephoned Ms. Howard and Mr. Reed, but neither parent answered the telephone. DHS left messages asking them to contact DHS.

p. On October 2, 2017, DHS made a home visit. An adult male answered the knock at the door but did not open the door. He refused to allow DHS into the home and speak to Ms. Howard without an appointment. He refused to allow DHS to schedule an appointment by leaving a notification letter at the home and insisted that the appointment must be scheduled via a mailed letter. The adult male refused to discuss Camella's care with DHS.

q. Ms. Howard has limited parenting skills and significant cognitive delays. Mr. Reed has a history of substance abuse.

r. On October 10, 2017, Camella was ready for discharge. DHS obtained an Order of Protective Custody (OPC) and Camella was placed in a foster home through The Village.

s. At the shelter care hearing held on October 12, 2017, the Court lifted the OPC, ordered the temporary commitment to DHS to stand, ordered Ms. Howard and Mr. Reed to fully cooperate with DHS, ordered Ms. Howard and Mr. Reed to sign all medical releases, and ordered DHS to conduct a home assessment and appropriate clearances on all adults residing in the home of Ms. Howard and Mr. Reed within five days.

t. On January 23, 2018, an adjudicatory hearing was held for Camella. The Honorable Allan L. Tereshko discharged the temporary commitment to DHS; adjudicated Camella dependent; and committed Camella to the care and custody of DHS. The Court referred Ms. Howard and Mr. Reed to attend an amended PCE; referred Mr. Reed to the Clinical Evaluation Unit (CEU) for

23

a forthwith drug screen, assessment and three random drug screens prior to the next court date; referred Ms. Howard for out-patient therapy. The Court ordered Ms. Howard and Mr. Reed be notified of all of Camella's medical appointments. The Court permitted weekly supervised line of sight, line of hearing, two hour visitation at the agency for Ms. Howard. Ms. Howard and Mr. Reed were present at the hearing.

u. On January 23, 2018, the Court found Aggravated Circumstances exist as to Ms. Howard and Mr. Reed pursuant to 42 Pa.C.S. §6302 (aggravated circumstances (5)). The Honorable Allan L. Tereshko ordered that efforts continue to be made to preserve the family and reunify Camella with Ms. Howard and Mr. Reed.

v. On April 19, 2018, a permanency review hearing was held for Camella. The Court referred Ms. Howard and Mr. Reed for parenting and family school; referred Mr. Reed to the CEU for a forthwith drug screen, three random drug screens, assessment, and monitoring. The court ordered Ms. Howard and Mr. Reed to attend their PCE and to continue to sign for Camella's medical releases. The Court ordered Ms. Howard to re-engage in Northwestern Human Services (NHS) for her mental health. The Court permitted supervised visitation at the agency for Ms. Howard and Mr. Reed. Ms. Howard and Mr. Reed were present at the meeting.

w. On June 7, 2018, a permanency review hearing was held for Camella. The Court ordered Ms. Howard and Mr. Reed to comply with their PCE, to comply with Family School and to comply with all their Family Service Plan (FSP) objectives, services and recommendations. The Court ordered a Support Complaint as to Ms. Howard and Mr. Reed be made. The Court referred Ms. Howard to Behavioral Health Services (BHS) for consultation and evaluation; referred Mr. Reed back to the CEU for assessment, forthwith drug and alcohol screen and three random drug and alcohol screens prior to the next court date. The Court found that Ms. Howard and Mr. Reed were discharged from Family School due to lack of participation. The Court permitted two hour supervised visits for Ms. Howard and Mr. Reed at the agency to continue. Ms. Howard failed to appear at the hearing. Mr. Reed failed to appear at the hearing.

x. On June 12, 2018, ATA completed a PCE for Ms. Howard. Ms. Howard was diagnosed with Intellectual Disability, Mild, as she is functioning in the borderline range of intelligence. At the time of the current evaluation, Ms. Howard continued to minimize the reasons that her parental rights were terminated for her other children and their ultimate adoption. Ms. Howard has demonstrated a pattern of limited insight which combined with cognitive limitations raises concern with her ability to be responsive to the overall ability to anticipate and plan for the multiple issues that arise in caring for a young child and, specifically, the medical needs of Camella. Camella is diagnosed with kidney dysplasia and neurofibromatosis, which requires ongoing medical care, monitoring and responsiveness. Should Camella display any medical concerns, she must be brought to the emergency room immediately. There are concerns that Ms. Howard will not be as vigilant with Camella's medical needs as she needs to be. This concerned is reinforced by Ms. Howard's lack of knowledge regarding Camella's condition. At the time of the evaluation, Ms. Howard was unable to identify Camella's diagnosis and what services that she is receiving. The additional concern was expressed regarding Mr. Reed's

24

ongoing noncompliance with DHS and the case objectives necessary for reunification. Ms. Howard and Mr. Reed maintain a relationship and reside together. Mr. Reed's lack of compliance and efforts towards reunification, poses a risk to Camella due to his presence in the home. It was opined that Ms. Howard does not present with the capacity to provide safety and permanency to Camella and it is unlikely she will develop the capacity to do so in a timely manner. It was recommended that Ms. Howard engage in individual therapy to assist her in addressing her reported mood symptoms, including depression and irritability. She should be supported in developing insight into the reasons that her children are not in her care and processing her associated emotions in a therapeutic setting. Ms. Howard should participate in available programming to help her develop an understanding of Camella's medical needs and caring for those identified medical needs. It was further recommended that an intensive case manager should be appointed to assist Ms. Howard. Ms. Howard's DHS worker and/or therapist should aid her in obtaining services if qualified from the Department of Intellectual Disabilities. Ms. Howard's visits with Camella should remain supervised and unsupervised visitation should not be considered until progress has been made towards these recommendations.

y. On August 24, 2018, DHS held a Family Service Plan (FSP) meeting. The goal identified for Camella was adoption. The parental objectives established for Ms. Howard were to: 1) attend BHS consultation/evaluation and follow the provider's recommendations, 2) sign authorizations for obtaining information of progress, medications and attendance, 3) attend visitations with Camella to improve relationship, 4) attend Camella's medical appointments and follow up with agency provider, 5) sign consents for Camella and 6) attend parenting and medical training. The parental objectives established for Mr. Reed were to: 1) attend CEU for evaluation and dual diagnosis, and follow the recommendations of the provider, 2) sign authorizations for obtaining information of progress, medications and attendance, 3) attend visitations with Camella to improve relationship, 4) attend Camella's medical appointments and follow up with agency provider and 5) sign consents for Camella. Ms. Howard and Mr. Reed participated in the meeting.

z. On September 6, 2018, a permanency review hearing was held for Camella. The Court ordered DHS to refer Ms. Howard for intensive case management and Intellectual Disability Services (IDS); ordered Ms. Howard to continue her mental health treatment and ordered Ms. Howard's PCE to be implemented. The Court ordered Mr. Reed to comply with the CEU recommendations and the PCE. The Court ordered DHS to file child support claims against Ms. Howard and Mr. Reed. The Court re-referred Mr. Reed to the CEU for a forthwith drug and alcohol screen, assessment, dual diagnosis, monitoring and three random drug and alcohol screens prior to next court date. The Court re-referred Ms. Howard and Mr. Reed to Family School and ordered them to comply with all services and recommendations. The Court permitted continuing weekly supervised visits for Ms. Howard and Mr. Reed as arranged by the parties. Ms. Howard and Mr. Reed were present at the meeting.

aa. DHS and CUA agree with the goal of adoption.

bb. Reunification with Winchella Howard is not an appropriate permanency option as she has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Camella. She has also failed to consistently visit, plan for, and provide for Camella throughout her time in placement.

cc. Reunification with Cameron Reed is not an appropriate permanency option as he has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Camella. He has also failed to consistently visit, plan for, and provide for Camella throughout her time in placement.

dd. The termination of the parental rights of Winchella Howard and Cameron Reed, and the goal change to adoption is in the best interest of Camella, as she is in a loving home where her needs are being met. Camella has been residing with her foster parent, Brittnee Walker, since November 2017. Ms. Walker is interested in adopting Camella.

# EXHIBIT

# "B"



COMMONWEALTH OF PENNSYLVANIA • DEPARTMENT OF HEALTH

**VITAL RECORDS**

WARNING: IT IS ILLEGAL TO DUPLICATE THIS COPY BY PHOTOSTAT OR PHOTOGRAPH

## *Certification of Birth*

Date of Birth: **AUGUST 31, 2017**

State File Number: **099698-2017**

Date Issued: **AUGUST 22, 2018**

Date Filed: **OCTOBER 03, 2017**

Name: **CAMELLA CHRISTINE REED**

Sex: **FEMALE**

Time of Birth: **04:41 AM**

Place of Birth: **PHILADELPHIA COUNTY**
**PHILADELPHIA, PENNSYLVANIA**

Parent: **WINCHELLA HOWARD**

Parent: **CAMERON DEROSS REED SR**

This is to certify that this is a true copy of the record which is on file in the Pennsylvania Department of Health, in accordance with the Vital Statistics Law of 1953, as amended.

*Audrey C. Marrocco*

Audrey C. Marrocco
State Registrar

THE DOCUMENT FACE CONTAINS A YELLOW BACKGROUND AND EMBOSSED SEAL
THE BACK CONTAINS SPECIAL LINES WITH TEXT

H105 105 ID Rev. (2/2018)

WARNING: THIS DOCUMENT IS PRINTED ON SECURITY WATERMARKED PAPER
DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK

0003752378

**DETACH HERE**

**TEAR AT THIS PERFORATION**

**DETACH HERE**

PHILADELPHIA DHS - WINNIFER SMITH
1515 ARCH ST, ONE PARKWAY BLDG
8TH FL, BIRTH CERT
PHILADELPHIA, PENNSYLVANIA 19102

Order Number: **20180830004**

`6579800606`

**17WAB269K30041051**
# Acknowledgment of Paternity
### FOR A CHILD BORN TO AN UNMARRIED MOTHER
COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF HUMAN SERVICES
P.O. BOX 8018
HARRISBURG, PA 17105-8018

**RETURN COMPLETED FORM TO:** ☞

| TRACKING NUMBER | FOR OFFICIAL USE ONLY |
|---|---|
| **0844949** | |

**THIS FORM MUST BE COMPLETED IN BLUE OR BLACK INK**

## PRINT CHILD'S INFORMATION
(FIRST) Amellia (JR, II, III, IV)
(MIDDLE) Christine   SEX ☐ MALE  ☒ FEMALE
(LAST) Reed
DATE OF BIRTH (MMDDYYYY) 08 31 2017   SOCIAL SECURITY NUMBER, IF AVAILABLE

## PRINT CHILD'S BIRTHPLACE INFORMATION
CITY OF BIRTH Philladelphila   STATE PA   CO. #
WAS THE CHILD BORN IN THE UNITED STATES? ☒ YES ☐ NO   IF NO, WHAT COUNTRY
FOR OFFICIAL USE - CITY   TWP/BORO/CO. #

## PRINT BIRTH MOTHER'S INFORMATION
(FIRST) Winchelle
(MIDDLE)
(LAST) Howard
SOCIAL SECURITY NUMBER (IF NONE, SEE REVERSE SIDE) 184649267   DATE OF BIRTH (MMDDYYYY) 09 30 1981

## PRINT BIRTH FATHER'S INFORMATION
(FIRST) Cameron (JR, II, III, IV) SR
(MIDDLE) DERIOSIS
(LAST) REED
SOCIAL SECURITY NUMBER (IF NONE, SEE REVERSE SIDE) 174N69226   DATE OF BIRTH (MMDDYYYY) 06 19 1967

According to Pennsylvania law the father of a child born to an <u>unmarried</u> woman may file an Acknowledgment of Paternity form with the Department of Human Services (DHS). (23 Pa. C.S. §5103) The Acknowledgment of Paternity form is considered conclusive evidence of paternity that does not require approval by the court.

I understand that:
### RIGHTS, RESPONSIBILITIES, AND OBLIGATIONS
1. The acknowledgment of paternity is completely voluntary and may be cancelled by either party by submitting a signed written statement to the DHS AOP Program at: P.O. Box 8018, Harrisburg, PA 17105-8018. The statement must be submitted within 60 days after the Acknowledgment of Paternity form is signed or the date of a court proceeding relating to the child (whichever is sooner). After the 60 days expires, the acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence. An order for support shall not be suspended during the period of challenge, except for good cause.
2. By signing this Acknowledgment of Paternity form, the father shall have all the rights and duties regarding the child as if he had been married to the mother at the time of the child's birth. The child shall have all the same rights and duties as to the father which the child would have had if the father had been married to the mother at the time of birth.
3. By signing this Acknowledgment of Paternity form, the parents are required to provide child support and healthcare coverage until the child reaches at least 18 years of age or graduates high school, whichever occurs later, unless otherwise ordered by the court.
4. If both parents sign the Acknowledgment of Paternity form, the father's name shall be listed on the child's birth certificate.
5. If the birth mother fails or refuses to sign the Acknowledgment of Paternity form, the alleged father may sign the form. By signing the Acknowledgment without the mother's consent, the father has the right to receive notice of any legal proceeding to terminate any parental rights involving the child.
6. If either party has any doubts that the individual signing the Acknowledgment is the father, he/she has the right to speak with an attorney for legal advice, at his/her own expense. Either party may request genetic testing to determine paternity by contacting the Domestic Relations Section of his/her local county court. PLEASE NOTE: By signing this Acknowledgment of Paternity form, you give up the right to genetic testing to determine paternity, unless you cancel the Acknowledgment in writing within 60 days of signing the form.

I hereby consent to the acknowledgment of paternity that the birth father named above is the father of my child named above, and further state that I was unmarried at the time of this child's birth. I understand the Rights, Responsibilities, and Obligations listed above and that false statements made herein are subject to the penalties of 18 Pa. C.S. §4904 *(relating to unsworn falsification to authorities).*

SIGNATURE OF BIRTH MOTHER *Winchelle Howard*   DATE 09 22 2017
MOTHER'S ADDRESS (Include Street, City, State and Zip Code): 5321 Wayne Ave Apt 706 Phila pA 19144
WITNESSED BY (CANNOT BE BIRTH MOTHER OR BIRTH FATHER) *Aubrey R.*

I freely and voluntarily acknowledge that I am the father of the child named above. I understand the Rights, Responsibilities, and Obligations listed above and that false statements made herein are subject to the penalties of 18 Pa. C.S. §4904 *(relating to unsworn falsification to authorities).*

SIGNATURE OF BIRTH FATHER *Cameron Reed*   DATE 09 22 2017
FATHER'S ADDRESS (Include Street, City, State and Zip Code): 5321 Apartment Wayne Ave Phila pa 19144
WITNESSED BY (CANNOT BE BIRTH MOTHER OR BIRTH FATHER) *Aubrey R.*

DHS / BCSE COPY   PA/CS 611  8/15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned Petition for Goal Change to Adoption was filed on ____11/20/18____ in the Court of Common Pleas of Philadelphia County Family Court Division and served upon the below listed persons by eService or by first class U.S. mail on ____11/20/18____.

COUNSEL OF RECORD:

Robin Winthrop Banister, Esq.
*(counsel for mother)*

Lue B. Frierson, Esq.
*(counsel for father)*

Defender Association - Child Advocacy Unit
*(counsel for child)*

DATE:____11/20/18____

_Michael Pratt_
Michael Pratt, Esquire
Deputy City Solicitor

MP/arm/klm

28

March 7
2:00



# CITY OF PHILADELPHIA

**DEPARTMENT OF HUMAN SERVICES**
1515 Arch Street, Philadelphia, PA 19102
215-683-4DHS (4347)
www.phila.gov/dhs

**Commissioner**

ANNE MARIE AMBROSE

**Deputy Commissioners**

BRIAN CLAPIER, PMA
TIMENE FARLOW, JJS
VANESSA GARRETT HARLEY, CYD

7/8/2014

Cameron Reed
5321 Wayne Avenue, Apt.301
Philadelphia, PA 19102

DHS #:      620543
Case Name: Reed

Dear Mr. Reed:

State law requires that the Department of Human Services prepare a Family Service Plan and Child Permanency Plans for all the children and youth in your family who are in placement. The Department is also required to regularly review progress and revise these plans as needed. You are invited to participate in this process at a meeting that will take place at DHS/Clients' Reception Center located at 1515 Arch Street on 7/29/2014 at 4: 00PM.

The Department of Human Services and its placement agencies are committed to working with you to reunify your family as soon as possible. For this to happen, it is important that you participate. At this meeting, specific goals and objectives will be established in order to reunify your family as soon as possible.

While the Department is committed to reunifying your family, it must take steps to provide children and youth with safe, permanent homes. Therefore, it is important for you to know that if the goals and objectives are not met within the specific time frames and safe and timely reunification is not possible, the Department will take the necessary steps to change the goal of your Family Service Plan to another permanent goal. Adoption is the next best permanency option for children and youth. If the tasks required in your Family Service Plan are not completed within 12 months from the initial placement date, the Department of Human Services may be required to file petitions to have your rights as a parent terminated.

You have the right to be represented at this meeting by either an attorney or any person you would like to speak for you. I am sending a copy of this letter to any youth 14 years of age or older, as well as to any advocate that is involved.

It is extremely important that you attend all meetings and court hearings regarding your family. If the above time and date are not convenient, please contact me as soon as possible and an effort will be made to select a more convenient date and time. If you fail to appear, we will develop a plan and begin to work on the contents of that plan.

I look forward to seeing you at the Family Service Plan meeting.

Sincerely,

, DHS Worker
215-683-

Naomi Carroll, DHS Supervisor
215-683-6652

cc: Provider Agency
    Child Advocate

If you have a question, complaint, concern, or suggestion about DHS and its operations
call the Commissioner's Action Response Office at 215-683-4DHS (4347)
or visit our website: dhs.phila.gov and click on the "suggestions" link.

**ARC**
Achieving Reunification Center

714 Market Street, Suite 500, Philadelphia, PA 19106
Phone 267-514-3500 - Fax 267-514-3783
www.arcenter.org

January 14, 2014

Mr. Cameron Reed
5321 Wayne Avenue Apt. 301
Philadelphia, PA  19144

Re: ARC Referral

Dear Mr. Reed:

Congratulations! You have been referred to the Achieving Reunification Center (ARC) by Gladys Watson your Department of Human Services Social Worker on January 14, 2014.

ARC is a unique program that helps parents that have the goal of reunification with their children currently in an out of home placement such as a foster home, group home, or residential treatment facility. ARC offers a one-stop service center designed to provide services to assist parents in achieving the goals outlined in their Family Service Plan (FSP), and their child/ren's Individual Service Pan (ISP). We offer the following types of services and support:

- Behavioral Health
- Employment and Education
- Parent Education
- Housing/Financial Services
- Technology Training Services

- Fatherhood Support
- A Children Learning Center
- Visitation
- Legal Services
- Incentives

Please contact me; Kiyana Brown your assigned Reunification Support Specialist, at the number below to schedule your Intake and Orientation on one of the following days: Tuesday or Thursday 11:00am or 2:00pm and Saturday at 11:00am.

At the time of your appointment please bring your FSP and/or your child's ISP, along with two forms of identification and a pay stub if you are employed. We look forward to helping you toward achieving your goals and ultimately reunifying you with your child/ren.

Sincerely,

Kiyana Brown
Reunification Support Specialist
267-514-3500 ext. 143

Lesha Gobadan, MSW
Reunification Support Coordinator
267-514-3500 ext. 140

cc: Gladys Watson, Department of Human Services
    Carni Turner, PCV
    Cameron Reed, Parent/Caregiver

[IP] Referral Acknowledgement Letter 2014-01

Michael Pratt Esquire
1515 Arch Street 16th Floor
Philadelphia Law Department
ATTORNey ID# 318608
Family Court 1501 Arch St.
Termination of parentay
Rights, my family
Mr. Cameron Reed father
and Ms. WinChella Howard
On December 6, 2018
1030 AM, michael Pratt
typed up a forgert
Court petitions attached
agent my family. He
is a assistant City
Solicitor for the City
of Philadelphia, Under
Constitutional law He
Committed perjury against
my family. and wire
fraud illegally copying
birth Certificates in
philadelphia.





*Certificate of Completion*
*of*
*Health Promotion Council's*

*REMix: Relationship Education*

*in the Mix*

*October 6, 2014*

# Cameron Reed

*completed twenty-four hours of a skills-based healthy relationship education class.*

_____
*Maurice Bueno, Parent Educator*

_____
*Larry Woody, Parent Educator*



HEALTH
PROMOTION
COUNCIL

Health Promotion Council

# Certificate of Perfect Attendance

is hereby granted to

*Cameron Reed*

for attendance at twelve out of twelve skills-based parenting workshops through

## Focus on Fathers

Granted: May 8th, 2014

Maurice L. Bueno, MAUS., Parent Educator

D Juan M. Diggs, Parent Facilitator

Case 2:20-cv-01102-ER     Document 1     Filed 02/20/20     Page 60 of 404



# CERTIFICATE OF ACHIEVEMENT

## THIS CERTIFICATE IS AWARDED TO

## Cameron Reed

FOR SUCCESSFUL COMPLETION FOR ANGER MANAGEMENT WORKSHOPS

## COMMUNITY COUNCIL

_____        10/18/2014
SIGNATURE                                                    DATE

_____        _____
SIGNATURE                                                    DATE

Case 2:20-cv-01102-ER    Document 1    Filed 02/20/20    Page 61 of 404



Health Promotion Council

# Certificate of Completion

is hereby granted to

## Cameron Reed

to certify the completion of 24 hours of skills-based parenting instruction through

## Focus on Fathers

Granted: May 8th, 2014

_____
Maurice L. Bueno, MAUS., Parent Educator

_____
D'Juan M. Diggs, Parent Facilitator

## Important Privacy Notice

Federal Rule of Civil Procedure 5.2 prohibits litigants in a non-habeas proceeding from submitting documents that contain personal information. Unless the Court orders otherwise, personal identifying information in Court filings must be limited as follows:

• Social security numbers, taxpayer-identification numbers, and financial **account numbers must include only the last four digits** (e.g., xxx-xx-1234)

• Birth dates must **include the year of birth only** (e.g., xx/xx/2000)

• Names of persons under the age of 18 must be indicated by **initials only** (e.g., A.B.)

You are responsible for protecting the privacy of this information in your filings. If your documents, including attachments, contain any information that does not comply with this rule, please black out that information before sending your documents to the Court.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _____ day of _____ , 20_____.

Signature of Plaintiff _Cameron Reed_

Mailing Address _219 Berkley St_

_Philadelphia e_

_Pg. 19144_

Telephone Number _267-454-5744_

Fax Number *(if you have one)* _____

E-mail Address _reedcameron7331@gmail.com_

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20_____, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern District of Pennsylvania.

Signature of Plaintiff: _____

Inmate Number _____





September 13, 2017
3:56pm

CP-51-DP-0001979-2012

In The Interest Of: Christian Reed, A Minor

THE COURT FURTHER FINDS:    Child doing well, was Receiving Services thru Elwyn, Meeting Scheduled today for Services.

THE COURT FURTHER ORDERS:    Parents to comply with Second Part of Parenting Capacity Evaluation, comply with all FSP Objectives, Services and Recommendations.    Parents referred back to CEU for Evaluation, Full Drug & Alcohol Screen Dual Diagnosis once they Avail themselves to DHS.    Presbyterian Children's Village is to provide Parents with Advance' Notice for child's Medical/Treatment Appointments.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - Permanency Review Hearing - 08/08/2014 - 11:30AM - 1801 Vine Street - Courtroom L

**SERVICE**

Copies To:    ACS Fritz Haverstick, DACAU Michelle Payne attorney for child, Harry Levin attorney for father, Community Legal Services M. Jinowski attorney for mother, DHS S/W Gladys Watson, DHS Rep. Regina Cade, Family School S/W, Presbyterian Children's Village S/W

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

RECOMMENDED:

*Michael H. Campbell*

Master Michael Campbell

This Master's recommendation is not final until confirmed by the Court below.  A party may challenge the Master's recommendation by filing a motion with the clerk of courts within three (3) days of receipt of the recommendation.

## ORDER

AND NOW, this _____ day of _____, _____, after consideration this court finds the recommendation by the Master is in the best interest of the child and is hereby adopted and ordered.

BY THE COURT:

_____
Judge

Compensation of pain
mental distress Einstein
Hospital, The Hospital
Violated my patient Bills
of Rights. I winchella
was denied standards of
medical care causing me
to lacking economic
resources my body was
mentally broken down.,
By being traimatized,
this tye of Behavior
All Around the world is
Unconstitotional. I would
like the court to hole
Einstein Hospital, responsible
for Violated my patient
Bill of Rights by
allowed DHS of Philadelphia
to remove Camella Reed
my child from
Einstein preemie Ward
5501 old York Rd,
Phila. Pa. 19141

educate people that they do not have to accept ~~that~~ child slaughter that are being perpetrated on the American working Human services and Philadelphia court for personal injuries inflicted. They do not have to accept child slaughter and they can bring public officials accountable thorough names are important were going for individual accountability, we are showing why no DHS state worker or a city employee should have immunity for breaking existing laws policies and procedures. they They did not act in their official capacity is important here as a city solicitor

Michael Pratt, Esquire
Assistant City Soliciter

Court Faud is a
Crime in United
States of American
Profit from children
and family in Philbelphia
D.H.S contackors make
money Selling children,
to set Fedel money,
Preyed on By
City of Phildelphia
Hunman Sevice. No money
go to the family in
need the money so
to ents of
Depantment of Human
Sevice. The Court
order Fase medical
for children, make
~~Thotetor~~ a money every
year, Money the form

**pennsylvania**
DEPARTMENT OF HUMAN SERVICES

June 5, 2019

CAMERON REED
219 BERKEY STREET
PHILADELPHIA, PA  19144

RE:    Request for Information

Dear Mr. Reed:

We have received your recent correspondence and have taken the following action:

☒    Enclosed is a copy of the Child Protective Services Investigation report you requested. The report has been redacted in accordance with CPSL regulations regarding confidential information and any material relating to those who participated in the investigation.

☐    Enclosed is a copy of the preliminary report (CY47). The report has been redacted in accordance with the Child Protective Services Law with respect to the referral source and individuals who may have cooperated with the investigation.

☐    Per your request, we have researched our records per the information supplied to us; there are no records pertaining to the individual and/or family that you requested.

☐    The law no longer permits disclosure of the information you have requested.  In accordance with the Child Protective Service Law (23 PA C.S. §6340 (c) (relating to release of information in confidential reports), except for certain reports made to law enforcement officials or the district attorney's office under subsection (a)(9) and (10) and in response to a law enforcement official investigating allegations of false reports, the release of information that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited.

☐    The CPSL does not have any provision for appealing Unfounded reports nor does it have provisions for early expunction of Unfounded reports.

☐    Other:

Sincerely,

*Teri J. Warner*

Teri J. Warner, Supervisor
Quality Assurance/Administrative Support Unit

ChildLine & Abuse Registry
Office of Children, Youth and Families
5 Magnolia Drive-Hillcrest Bldg #53 | PO Box 2675 Harrisburg, PA 17110 | P 717.231-4256 | F 717.772.1567 | www.dhs.pa.gov

Passive participation conduct
of custody support masters
Private attorneys professional
corporations social workers
CPS DHS LSW etc a
a corrupt Family Court victim
Claimants name identity.

B and court ordered abuse
torture blocked education
injuries and disabilities
lost wages crimes committed
against family victim
Claimant the impact
these crimes against
American families is
generation

CPS Corruption in
Government Court
Reform US Citizens
Docket measures US
incident docket database
Report by victim ~~claim~~ claimants
report by posting each
incident event of Corrupt
family court professionals
~~assul~~ assaults murder
torture and injury
suffered ~~cps~~ caused
by the Criminal and
passive

# Forensic Mental Health Services, LLC

1225 Vine Street   Philadelphia, PA  19107
Tel: 215-514-1170     Fax: 215-405-2108
www.forensiceval.org

October 23, 2015

To Whom It May Concern,

This letter is to verify that Cameron Reed (DOB: 6/19/1967) completed part one of his parenting capacity evaluation on 2/5/2014 and part two on 7/15/2014. Additionally, Mr. Reed participated in Supervised Therapeutic Visits from 11/18/2014-2/10/2015. He was scheduled to complete an addendum on 10/8/2015, but cancelled that appointment. He is currently on the waiting list to be scheduled to come back in. Once an appointment becomes available, he will be contacted.

If there are any further questions, feel free to contact 215-405-2100.

Ashley Guy
ATA Scheduling

Case 2:20-cv-01102-ER    Document 1    Filed 02/20/20    Page 74 of 404

# The Law Dictionary

*Featuring Black's Law Dictionary Free Online Legal Dictionary 2nd Ed.*

Navigation

Search…    🔍

# What is **ABANDONMENT**?

the voluntary relinquishment of all rights, title, or claim to property that rightfully belongs to the owner of the property. Stocks, bonds or mutual funds held in a brokerage account where the owner can't be located or contacted is an example of abandonment. The laws of escheat may cause the property to be taken control by the state.

## Free Quit Claim Deed Form

Quit Claim Deed Form. All States. Legally Binding. Immediate Use. Print & Do

## More On This Topic

1. Three Things to Know About Tenancy in Common
2. Three Ways Divorce in Texas is Different
3. Filling Out A Quit Claim Deed Form
4. Laws For Posting No Trespassing Signs
5. Adding A Name To A Property Deed
6. Difference Between Joint Tenancy and Tenancy in Common
7. How Do Michigan Quick Claim Deed Laws Work?
8. Filing a Quit Claim in Florida
9. What Is Ingress & Egress In Real Estate?
10. How Does Divorce Affect Inheritance?

## Related Legal Terms

HOWARD,
WINCHELLA
DOB: 09/30/1981  35 Y  F
DOS: 08/31/2017
ATT: FRISCH MD, MARK B
FIN: 35766754
MRN: 100130849

HOWARD,
WINCHELLAGIRL
DOB: 08/31/2017          F
DOS: 08/31/2017
ATT: Hirsch MD, Daniel S
FIN: 6994342
MRN: 101386282

**BRiGGS**
Healthcare·

Hospital No.  6994342

| | IDENT-A-BAND® Bracelet | Infant's Birth Date | Time | Sex |
|---|---|---|---|---|
| Printed Number | Signature, Person Applying IDENT-A-BAND® Bracelet | 8/31/17 @ | 0441 | FeMale |

New 9/28/12 53340
59844

PRINTS

Signature, Person Taking Prints

| | Color or Race | Weight 2180 Kg | Length |
|---|---|---|---|
| | | 4 lb 8 oz | |

**TO BE COMPLETED IN DELIVERY ROOM**

MOTHER'S RIGHT INDEX FINGERPRINT

INFANT'S LEFT FOOTPRINT (or palmprint)

INFANT'S RIGHT FOOTPRINT (or palmprint)

| Signature, Persons Confirming Sex and Identification | Physician _Mark B Frisch MD_ | Delivery Room Nurse | Nursery Nurse |
|---|---|---|---|

UPON DISCHARGE – Affix Infant's Ident-A-Band™ bracelet below and have statement signed and witnessed.

Howard Winchella
8/31/17 6994342

Date 10/10/17

**POOR QUALITY ORIGINAL**

HOWARD,
WINCHELLAGIRL
DOB: 08/31/2017
DOS: 08/31/2017
ATT: Hirsch MD, Daniel S
FIN: 6994342
MRN: 101386282
F

**I CERTIFY** that during the discharge procedure I checked the Ident-A-Band® bracelets sealed on the baby and on me and found that they were identically numbered 53340 and contained correct identifying information. I certify that I have received my baby.

Signed _____  Mother

Witness
Gradllao eP.



**CITY OF PHILADELPHIA**

**DEPARTMENT OF HUMAN S.**
1515 Arch Street, Philadelphia, PA
215-683-4DHS (4347)
www.phila.gov/dhs

**Commissioner**

ANNE MARIE AMBROSE

**Deputy Commissioners**

TIMENE FARLOW, JJS
VANESSA GARRETT HARLEY, CYD
SUSAN KINNEVY, PMA

Wednesday, January 08, 2014

Winchella Howard
5321 Wayne Avenue # 301
Philadelphia, PA  19144

RE:    Children and Youth in Household
DHS #: 620543 REED

Dear Winchella Howard:

As you know, I have been conducting an assessment regarding whether your family is in need of general protective services pursuant to a report we received at the Department. This letter is to advise you that my assessment has not found substantial evidence that your family is in need of general protective services as defined by the Child Protective Services Law and Regulations of the Commonwealth of Pennsylvania. We are therefore closing the case on your family.

Should you need services from the Department in the future, please do not hesitate to call 215-683-4DHS.

Sincerely,

Gladys Watson, DHS Worker
215-683-5653

Naomi Carroll, DHS Supervisor
215-683-6651.

MS Howard,

My _____ _____ _____

215-683-6651

GPS Concluded Closing

# Amendment IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

. On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside in the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of the children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of the children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

. On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of the children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

. On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of the children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and



administrative solution
for a way the
only way that I
could see to get
this notice or
the states are
are we being
restrained the
state agencies
from touching or
having anything

to do that are (malpractice) lawsuits facing with a patient in a hospital ~~alright~~ alright so and that only opportunity is the risk mangement department give you the risk management department is Concerned only about mitigating rist for losses suit not just medical

**PENN VALLEY**
C H E M I C A L

of about that
could happen while
someone is under
their so called
care so the hospital
risk management
office is their own
entity and ~~the~~ ~~them~~
um they govern
themselves in other
words they they're
not answerable to
the state agency
they're not answerable
to local police.

but the way make
them free not
to be answerable
to the local police
is to have in a
higher Jurisdiction
in a federal court
the ~~proof~~ proof
and evidence
filed or why
the people trying
to get access to
your patient the mother
and the child

# Amendment IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Philadelphia County Clerk of Courts Filed 3/7/2019 3:40 PM

Commonwealth of Pennsylvania

In the Interest Of:

Camella Christine Reed, A Minor
Date of Birth: 08/31/2017

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-AP-0000929-2018
FID:          51-FN-002936-2012

# DECREE OF INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing: ACS-Michael Pratt, GAL-Kathleen Knese, Dhs Rep-Sophia Barfield, Dhssw-Barbara Forrest, The Village, Dr.Russell, The Village, Mother-Winchella Howard, Father-Cameron Reed, Caregiver, Mother ATTY-Robin Banister-P, Father ATTY-Lue Frierson-P. (ALL PERSONS APPEARING SERVED)
DCR-SG, RB

AND NOW, this 7th day of March, 2019, after review of the record and after an evidentiary hearing following due notice the court makes the following findings and judicial determinations.

## DECREE GRANTED

Decree granted as to Putative Father.

## FINDINGS

Petitioner has established by clear and convincing evidence that there is a legal basis for terminating parental rights of CAMERON DEROSS REED, SR. AKA CAMERON D. REED

The following subsection(s) of 23 Pa.C.S.A. §2511 establish the basis for terminating the parental rights of CAMERON DEROSS REED, SR. AKA CAMERON D. REED

2511(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

2511(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

2511(b) Other Considerations - The court in terminating the rights of a parent shall give primary considerations to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be termination solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

Specific findings have been placed on the record at the end of the evidentiary hearing.

## ORDER OF COURT

It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of CAMERON DEROSS REED, SR. AKA CAMERON D. REED are forever terminated.

The adoption of CAMELLA CHRISTINE REED CAMELLA C. REED may continue without further notice to or consent of CAMERON DEROSS REED, SR. AKA CAMERON D. REED

The custody of CAMELLA CHRISTINE REED CAMELLA C. REED is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption

22

Commonwealth of Pennsylvania

In the Interest Of:

Camella Reed, A Minor
Date of Birth: 08/31/2017

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-DP-0002701-2017
FID:          51-FN-002936-2012

# AGGRAVATED CIRCUMSTANCES ORDER

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
|---|---|---|
| Reed, Cameron | Father | In Person |
| Howard, Winchella | Mother | In Person |
| Reed, Camella | Child | Did Not Attend |
| Banister, Robin Winthrop | Attorney for Mother (Howard, Winchella) | Substitute Counsel |
| Frierson, Lue B. | Attorney for Father (Reed, Cameron) | In Person |
| Defender Association - Child Advocacy Unit | Guardian Ad Litem for Child (Reed, Camella) | In Person |

**PERSONS APPEARING AT HEARING**

The following persons appeared at this hearing: ACS PRATT, DHS REP - CHERRY, DHS SW- SMITH, MOTHER, FATHER, ATTY LUE FRIERSON FOR FATHER - P, ATTY LUE FRIERSON SIF ATTY ROBIN BANISTER FOR MOTHER - EXCUSED, DACAU, DCR RB

AND NOW, this 23rd day of January, 2018

**FINDINGS**

The parental rights of the parent have been involuntary terminated with respect to another child of the parent; proven as to Mother and Father.

**ORDER OF COURT – Based on the above findings, IT IS ORDERED THAT:**

**REASONABLE EFFORTS TO REUNIFY**

Efforts shall continue to be made to preserve the family and reunify the Child with the Mother and Father. A Permanency Hearing shall be held within 90 days.

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT:

Judge Allan L. Tereshko

Copies To: ACS JOYCE, DHS REP - CHERRY, DHS SW- SMITH, MOTHER, FATHER, ATTY LUE FRIERSON FOR FATHER - P, ATTY LUE FRIERSON SIF ATTY ROBIN BANISTER FOR MOTHER - EXCUSED, DACAU

Commonwealth of Pennsylvania

In the Interest Of:

Camella Reed, A Minor
Date of Birth: 08/31/2017

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-DP-0002701-2017
FID:    51-FN-002936-2012

# ORDER OF ADJUDICATION AND DISPOSITION

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
|---|---|---|
| Reed, Cameron | Father | In Person |
| Howard, Winchella | Mother | In Person |
| Reed, Camella | Child | Did Not Attend |
| Banister, Robin Winthrop | Attorney for Mother (Howard, Winchella) | Substitute Counsel |
| Frierson, Lue B. | Attorney for Father (Reed, Cameron) | In Person |
| Defender Association - Child Advocacy Unit | Guardian Ad Litem for Child (Reed, Camella) | In Person |

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing: ACS - Michael Pratt, DHS Rep - Patricia Cherry, DHS SW - Rachel Smith, DHS Intake - Jones, Father's Atty - Lue Frierson (P) and SIF Mother's Atty - Robin Banister (E), DACAU - Flanagan, Mother, Father, DCR MD

AND NOW, this 23rd day of January, 2018, after an adjudicatory hearing:

## THE COURT FINDS that:

### FINDINGS OF FACT

Findings of fact are as follows: based on the allegations in the petition.

### CLEAR AND CONVINCING EVIDENCE EXISTS

The Court finds that clear and convincing evidence exists to substantiate the allegations set forth in the petition.

### ADJUDICATION OF DEPENDENCY

After consideration of the evidence, it is ORDERED that the Child is found, by clear and convincing evidence, to be a Dependent Child.

(1) The child is without proper care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.

(10) The child is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

## DISPOSITION

### CHILD REMOVED FROM HOME

The Court finds that based upon the findings of abuse, neglect or dependency of the minor Child, it is in the best interest of the Child to be removed from the home of Winchella Howard and Cameron Reed, Relationship: Mother and Father

**REASONABLE EFFORTS TO PREVENT REMOVAL FROM HOME**

Further, the Court hereby finds that to allow this child to remain in the home would be contrary to the child's welfare, and that the Philadelphia Department of Human Services made Reasonable Efforts to prevent or eliminate the need for removal of this child from the home.

**CUSTODY/PLACEMENT**

Legal Custody of the Child shall transfer to the Philadelphia Department of Human Services.

**CUSTODY AND CONDITIONS**

PLACEMENT - The Child is to be placed, by the agency, in Foster Care through The Village. The Child's placement is the least restrictive placement that meets the needs of the Child and there is no less restrictive alternative available.

VISITATION - The additional condition of visitation is set forth as follows: Mother is to have weekly supervised, line of sight/line of hearing, visits with the Child at the agency for 2 hours. Visitation may be modified by agreement of the parties.

**CHILD'S SAFETY**

The child is safe in the current placement setting. Safety as of 1/19/2018.

**CURRENT PERMANENT PLACEMENT PLAN**

The current placement goal for the child is return to parent or guardian.

**MEDICAL CONSENT**

It is further ORDERED that if the child is in the legal custody of the county agency as defined by the Juvenile Act at 42 Pa.C.S. § § 6301-6365, the County Children and Youth Services Agency has the authority to consent to routine treatment of the child only if the parents are unavailable to sign.

**FINANCIAL SUPPORT**

It is further ORDERED and DECREED that the individual(s) legally responsible for the financial support of the child shall pay support to the county in an amount as determined by the Family Court Division.

**INDIAN STATUS**

The child is not Indian as defined in 25 U.S.C. 1903(4), and the Indian Child Welfare Act does not apply to these proceedings.

**ADDITIONAL FINDINGS/ORDERS**

The Court Further Finds:

The Court Further Orders: ADJ DEP - Temp Commit Discharged - Full Commit to DHS. Parents to be notified of all the Child's medical appointments. Parents to attend amended PCE. Father referred to CEU for a forthwith screen, assessment, and three randoms prior to the next court date. Mother is referred for out-patient therapy. DHS Exhibits 1-16 are presented to the court and entered into evidence.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - Initial Permanency Review Hearing - 04/19/2018 -  9:30AM - 1501 Arch Street - Courtroom 5B - Judge Allan L. Tereshko

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

CP-51-DP-00027ʊ ı

In The Interest Of:  Camella Reed, A Minor

BY THE COURT:

_Allan J. Tereshko_

Judge Allan L. Tereshko

Copies To: ACS - Michael Pratt, DHS Rep - Patricia Cherry, DHS SW - Rachel Smith, DHS Intake - Jones, Father's Atty - Lue Frierson (P) and SIF Mother's Atty - Robin Banister (E), DACAU - Flanagan, Mother, Father

Oct 11 2017 11:35am        P002/002



**CITY OF PHILADELPHIA**

**DEPARTMENT OF HUMAN SERVICES**
1515 Arch Street, Philadelphia, PA 19102
215-683-4DHS (4347)
www.phila.gov/dhs

Commissioner

CYNTHIA F. FIGUEROA

POOR QUALITY ORIGINAL

HOWARD ,
WINCHELLAGIRL
DOB: 08/31/2017          F
DOS: 08/31/2017
ATT: Hirsch MD, Daniel S
FIN: 6994342
MRN: 101386282

Date: 10/11/2017

RE: Camella Reed
D.O.B: 8/31/17
DHS#: 620543

To: Einstein

This is to inform you that pursuant to the Juvenile Act, a Court has determined that to allow the above named child to remain at home is contrary to the welfare of the child. Therefore, the child has been taken into protective custody by the Philadelphia Department of Human Services (DHS) pursuant to a Court Order granted by:

Judge Furlong on 10/10/17

If you have any questions, please contact the below signed DHS worker. In case of emergency, DHS can be reached 24 hours a day by calling 215-683-6100.

Sincerely,

Print name: Channel Jones
Email Channel.W.Jones@phila.gov
Phone: 215-683-4871

POOR QUALITY ORIGINAL

If you have a question, complaint, concern, or suggestion about DHS and its operations call the Commissioner's Action Response Office (CARO) at 215-683-6000





September 17, 2017
12:16pm



September 24, 2017
11:39am





September 1, 2017
12:46pm



September 17, 2017
12:16pm



September 13, 2017
3:56pm



September 13, 2017
3:56pm



**August 31, 2017**
      **6:48am**



September 21, 2017
5:14pm



September 13, 2017
3:56pm



September 21, 2017
5:14pm

**In the Interest Of:**

Reed, Camella , **a Minor**

## ADDITIONAL PARTICIPANTS WITH RELATIONSHIP TO CHILD

| Name | DOB | Address (Indicate if Whereabouts Unknown) | Phone | Relationship to Child |
|---|---|---|---|---|
| Reed, Cameron | 7/16/2007 | Department of Human Services, 1515 Arch St Philadelphia, PA 19102 | | Sibling |
| Reed, Cambria | 1/14/2009 | Department of Human Services, 1515 Arch St Philadelphia, PA 19102 | | Sibling |
| Reed, Calvin | 5/29/2013 | Department of Human Services, 1515 Arch St Philadelphia, PA 19102 | | Sibling |
| Howard, Christen Shaylen | 3/23/2011 | Department of Human Services, 1515 Arch St Philadelphia, PA 19102 | | Sibling |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

AOPC Form Updated *Rev 5/12/2016*



Philadelphia County Clerk of Courts Received 10/17/2017 11 58 AM

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

In the Interest of: Camella Reed
Docket No.: CP-51-DP-0002701-2017
FID: 51-FN-002936-2012

## DEPENDENCY PETITION

### SUMMONS-HEARING INFORMATION-IMPORTANT

### CITACIÓN-INFORMACIÓN DE AUDIENCIA-IMPORTANTE

YOU ARE HEREBY DIRECTED BY THE COURT TO APPEAR AT A HEARING ON THE FOLLOWING DATE TO RESPOND TO THE ENCLOSED PETITION:

POR LA PRESENTE USTED ESTÁ OBLIGADO POR LA CORTE PARA APARECER EN UNA AUDIENCIA EN LA FECHA SIGUIENTE PARA RESPONDER A LA PETICIÓN QUE SE ADJUNTA:

**PRE-HEARING CONFERENCE:** Thursday, October 19, 2017, at 11:00 AM
CONFERENCE ROOM/SALA 4.72

**HEARING:** COURTROOM/SALA 5B, Thursday, October 19, 2017, at 11:30 AM
FAMILY COURT/LA CORTE DE LA FAMILIA
1501 ARCH STREET
PHILADELPHIA, PA 19102

A Pre-Hearing Conference will be held on the date, time, and place listed above. The purpose of the pre-hearing conference is to discuss the information in the attached petition and to decide what services, if any, are needed for you and your children.

The pre-hearing conference is a very important way for you and the other parties to work together to plan for your child. **If you do not attend the pre-hearing conference, decisions about your child may be made without you.**

The court will appoint a lawyer to represent you at the pre-hearing conference and at all hearings held for your child in Family Court. The court will send you a letter to tell you the name and telephone number of your lawyer. Your lawyer will contact you to help you prepare for the pre-hearing conference.

**Failure to appear at this hearing may result in the issuance of a bench warrant for your arrest.**

DHS # 620543

PETITIONER:
City of Philadelphia
Department of Human Services
1515 Arch Street
Philadelphia, PA 19102
BY:
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
(215) 683-5135

## IN THE COURT OF COMMON PLEAS
## OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

Child ☒is ☐is not currently under the supervision of the county agency.

1. Petitioner, the City of Philadelphia Department of Human Services, is the local government agency responsible for the care and supervision of dependent children in Philadelphia, Pennsylvania.

2. The above-named juvenile is a dependent child under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S. §§6301-6365. It is in the best interests of this child and the public that this petition be filed with the Court.

3. Petitioner has made reasonable efforts to prevent placement of this minor child.

4. This child is currently in the legal custody of DHS.

5. Upon information provided by the social worker, this child is dependent and/or abused pursuant to the Juvenile Act (42 Pa.C.S. §6302 (Dependent Child) (1, 3)) and/or the Child Protective Services Law (23 Pa.C.S. §6303(b) (1)) in that:

a. This petition is filed pursuant to an Order of Protective Services (OPC) obtained by the Department of Human Services (DHS) on October 10, 2017.

b. This family has been known to DHS due to the failure of the children's parents, Winchella Howard and Cameron Reed, to provide their children with adequate food and safe, appropriate housing as well as Mr. Reed's substance abuse and Ms. Howard's mental health problems. Two of Camella's siblings, Christian and Cambria, were diagnosed with neurofibromatosis, a genetically-inherited disorder, and Ms. Howard and Mr. Reed did not ensure that they received appropriate medical care. Furthermore, they did not ensure that Calvin, who was born on May 28, 2013, was tested to determine if he also suffered from neurofibromatosis.

c. After several unsuccessful attempts, Ms. Howard allowed DHS into the

home while Mr. Reed was not present. DHS observed that there were exposed wires, extension cords in the kitchen, unsafe bunkbeds, and unsafe heaters. Cameron was found in a car seat on the floor surrounded by clothing, Cambria was found with a blender blade in her mouth, and Christen was found with a screw in his mouth. Ms. Howard and Mr. Reed continue to reside in this home to date.

d.      Ms. Howard attended Family School, but she continued to have difficulty meeting the children's basic needs. Mr. Reed refused to cooperate with services and treatment, and refused to allow DHS to enter the home again without his presence.

e.      On July 12, 2016, the parental rights of Ms. Howard and Mr. Reed were involuntarily terminated as to their children, Cameron, Cambria, Christen, and Calvin.

f.      On September 15, 2017, DHS received a General Protective Services (GPS) report which alleged that Winchella Howard gave birth to Camella Reed; that Ms. Howard stated that all of her children had been placed in DHS' care; and that Camella was born on August 31, 2017, weighed 4 pounds and 12 ounces, and was born at 30 weeks gestation. It was further alleged that Ms. Howard was not employed, that Ms. Howard denied drug or alcohol use, denied having mental health issues, and stated that Cameron Reed, Camella's father, is involved in Camella's care. This report is pending determination.

g.      On September 15, 2017, DHS visited Albert Einstein Medical Center (AEMC) and learned that Camella remained hospitalized and was being treated for a kidney disorder.

h.      On September 15, 2017, DHS made a home visit, but no one answered the door. An unidentified adult male stated, from inside the family's apartment, that he would not permit DHS to enter the home without an appointment and stated that Ms. Howard could only meet with DHS if there was an scheduled appointment. A notification letter was left and a visit was scheduled for September 16, 2017, with the agreement of the adult male.

i.      On September 16, 2017, DHS attempted a home visit; however, DHS could not gain access to the apartment complex. DHS telephoned Ms. Howard twice and Mr. Reed once; however, neither parent answered the telephone. DHS left voicemail messages for them reminding them of the scheduled visits and asking them to contact DHS. DHS received no reply.

j.      On September 20, 2017, DHS learned that Ms. Howard had visited Camella only three times since her discharge from the hospital. DHS also learned that Ms. Howard was unable to diaper Camella properly during her visits and had to be helped by Mr. Reed.

k.      On September 26, 2017, DHS attempted a home visit; however, DHS could not gain access to the apartment complex. DHS telephoned Ms. Howard and Mr. Reed; however, there was no answer and DHS left voicemail messages.

l.      On September 28, 2017, DHS again telephoned Ms. Howard and Mr. Reed, but neither parent answered the telephone. DHS left messages asking them to contact DHS.

m.      On October 2, 2016, DHS made a home visit. An adult male answered the knock at the door but did not open the door. He refused to allow DHS into the home and to speak with Ms. Howard without an appointment. He refused to allow DHS to schedule an appointment by leaving a notification letter at the home and insisted that the appointment must be scheduled via a mailed letter. The adult male refused to discuss Camella's care with DHS.

n.      Ms. Howard has limited parenting skills and significant cognitive delays. Mr. Reed has a history of substance abuse.

o.      On October 10, 2017, Camella was ready for discharge. DHS obtained an OPC and Camella was placed in a foster home through The Village.

p.      At the shelter care hearing held on October 12, 2017, the Court lifted the OPC, ordered the temporary commitment to DHS to stand, ordered Ms. Howard and Mr. Reed to fully cooperate with DHS, ordered Ms. Howard and Mr. Reed to sign all medical releases, and ordered DHS to conduct a home assessment and appropriate clearances on all adults residing in the home of Ms. Howard and Mr. Reed within five days.

q.      DHS has determined that there is a sufficient basis to find that aggravated circumstances exist pursuant to 42 Pa.C.S. §6302 (aggravated circumstances (5)).

r.      On July 12, 2016, the parental rights of Ms. Howard and Mr. Reed were involuntarily terminated as Cameron Reed, Cambria Reed, Christen Reed, and Calvin Reed.

s.      DHS is recommending that the child be committed to the City of Philadelphia Department of Human Services.

6. The following services and/or referrals have been offered, provided and/or considered to enable the parent to care for this child: IHS/FSS; RSRI; parent training; mental health services; substance abuse treatment. In-home services will not reasonably eliminate the risk of harm to the child because the parents have refused to cooperate with DHS, services, and treatment.

7. Pre-Dispositional Statement pursuant to Pa. R.J.C.P. Rule 1511:

Petitioner hereby recommends the following disposition:

☐ DHS is recommending that the child be permitted to remain with his/her parents, guardians or other custodians whom the Court prescribes, including supervision as directed by the Court for the protection of the child.

☒ DHS is recommending that the child be committed to the City of Philadelphia Department of Human Services.

☐ DHS is recommending that the child be placed in the temporary legal custody of an individual resident within or without this Commonwealth as to be determined by the Court.

☒WHEREFORE, Petitioner prays this Honorable Court adjudicate this child dependent and order the disposition best suited to the welfare of the child.

☐WHEREFORE, Petitioner prays this Honorable Court order the disposition best suited to the welfare of the child.

☒WHEREFORE, Petitioner prays this Honorable Court order the release of drug and alcohol treatment records or related information regarding the child or the child's parents to the Department of Human Services.

☒WHEREFORE, Petitioner prays this Honorable Court determine that aggravated circumstances exist.

☒WHEREFORE, Petitioner prays this Honorable Court determine whether reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made.

*Violated*

Petitioner, the City of Philadelphia Department of Human Services by and through its counsel, the City of Philadelphia Law Department, verifies that the statements made in this petition are true and correct to the best of Petitioner's knowledge, information, and belief and that Petitioner is aware that false statements contained herein are made subject to penalties of 18 Pa. C.S. §4904.

Respectfully Submitted,

_Jonathan Houlon_

Jonathan Houlon
Chief Deputy City Solicitor
Attorney Identification No. 77263
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA  19102
(215) 683-5135 (phone)
(215) 683-5162 (fax)

DATED: October 17, 2017
(RYC/MJ)
/lbn

**NOTICE**

1. The Department of Human Services has filed the attached petition in Family Court. If you fail to come to the hearing on this petition, you may lose legal custody of your child or children. You also may be arrested and brought to Court by a Sheriff if you do not come to the first hearing. You have the right to have a lawyer to represent you and if you are indigent and cannot afford counsel the Court will appoint counsel for you. If you want to find a lawyer, you may telephone Community Legal Services, Inc. at (215) 981-3765, or Lawyer Referral and Information Service at (215) 238-1701.

2. At the court hearing, visitation shall be discussed, and where appropriate, arranged between you and the children. If the Court finds that visits pose a grave threat to the child, are inconsistent with the placement goal, or are not in the best interest of the child, visitation may not be granted.

**AVISO**

1. El Departmento de Servicios Humanos ha solicitado la petición adjunta en la Corte de la Familia. Si usted no cumple con venir a la audiencia acerca de esta petición usted puede perder la custodia legal de su niño o niños. Tambien usted puede ser traído a la corte por el Alguacil si usted no cumple con venir a la audiencia. Usted tiene el derecho de solicitar a un abogado que lo represente. Si usted necesita un abogado usted puede comunicarse con Servicios Legales de la Comunidad, Inc. al (215) 981-3765 o al Servicio de Referencia de Abogados al (215) 238-1701.

2. En la audiencia en la corte se hablará sobre las visitas, y se harán los arreglos apropiados entre usted y los niños. Si la corte encuentra que las visitas presentan una seria amenaza para los niños, son contradictorias con la meta de la colocación, o no son lo mejor para los niños, es posible que no se otorguen las visitas.

## AFFIDAVIT OF SERVICE

A copy of this petition was served on the following person(s) via first class United States mail, and certified mail, return receipt requested:

| | | |
|---|---|---|
| Mother: | Winchella Howard | Return Receipt No.: <u>7016 0340 0000 9142 9730</u> |
| Address: | 5321 Wayne Avenue, Apt. 301 Philadelphia, PA 19144 | |
| Father: | Cameron Reed | Return Receipt No.: <u>7016 0340 0000 9142 9747</u> |
| Address: | 5321 Wayne Avenue, Apt. 301 Philadelphia, PA 19144 | |
| Child: | Camella Reed | Return Receipt No.: <u>7016 0340 0000 9142 9754</u> |
| Address: | The Village foster home | |
| Guardian: | | Return Receipt No.: _____ |
| Address: | | |

A copy of this petition was served on the following persons via first class United States mail:

| | | |
|---|---|---|
| Counsel for Child: | Defenders Association - Child Advocacy Unit | ☒ e-Service |
| Address: | | |
| Counsel for Mother: | Robin Banister, Esquire | ☒ e-Service |
| Address: | | |
| Counsel for Father: | Lue Frierson, Esquire | ☐ e-Service |
| Address: | 2333 St. Albans Place Philadelphia. PA 19146 | |
| Counsel for Guardian: | | ☐ e-Service |
| Address: | | |

Date: October 17, 2017

*Jonathan Houlon*

Jonathan Houlon
Chief Deputy City Solicitor

## UPDATED CASE INFORMATION FOR AOPC

Docket # CP-51-DP-<u>0002701</u>-<u>2017</u>

Child's corrected name _____

Child's corrected DOB _____

Child's corrected gender    ☐ M    ☐ F

Child's corrected Race _____

Child's corrected Hispanic Ethnicity    ☐ Yes    ☒ No

Child's current address _____

Is this address to be kept confidential?    ☐ Yes    ☐ No

Mother's corrected name _____

Mother's corrected DOB _____

Mother's corrected address _____

Mother's corrected telephone number <u>215-667-7727</u>

Father's corrected name _____

Father's corrected DOB _____

Father's corrected address _____

Father's corrected telephone number <u>267-242-2287</u>

Interpreter (other than Spanish) _____

Health Promotion Council

# Certificate of Perfect Attendance

is hereby granted to

## Cameron Reed

for attendance at twelve out of twelve skills-based parenting workshops through

## Focus on Fathers

Granted: May 8th, 2014

_____
Maurice L. Bueno, MAUS., Parent Educator

_____
D. Juan M. Diggs, Parent Facilitator



September 17, 2017
12:16pm



September 13, 2017
3:56pm

## CHILD PROTECTIVE SERVICES INVESTIGATION REPORT (TITLE 23 PA. C.S.A CHAPTER 63)

| | YES | NO |
|---|---|---|
| WAS CHILD REMOVED FROM ALLEGED ABUSIVE SETTING? | ☐ | ☒ |
| WERE LAW ENFORCEMENT OFFICIALS NOTIFIED OF THE REPORT? | ☐ | ☒ |
| WAS THERE A RELIGIOUS BASIS FOR THE CHILD'S CONDITION? | ☐ | ☒ |
| DID THE CHILD DIE AS A RESULT OF THIS INCIDENT OF ABUSE/NEGLECT? | ☐ | ☒ |

SERVICES PLANNED OR PROVIDED

Case Management Services

## IV. INVESTIGATION/ASSESSMENT STATUS

INVESTIGATION/ASSESSMENT DECISION

Valid

PLEASE EXPLAIN IN DETAIL THE BASIS FOR THE INVESTIGATION OUTCOME AND CASE OUTCOME SELECTED AND SPECIFY CRIMINAL ACTION

Valid and accepted for services.

It was confirmed that 3 of MOT's children are adopted and 1 is in placement. Both parent's parental rights were involuntary terminated for their older children. MOT is reported to have a very low parent capacity and father is not cooperative with any services to assist with reunifying his children. An OPC was obtained on 10/10/17 due to the parent's lack of cooperation with DHS and the child was placed in foster care in the same agency as her biological siblings.

## V. NEED FOR PROTECTIVE SERVICES

Other Medical Condition-Child

## VI. APPROVALS

| COUNTY WHERE ABUSE OCCURRED | INVESTIGATING COUNTY/REGION | INVESTIGATING WORKER NAME |
|---|---|---|
| Philadelphia | Philadelphia | Jones, Channel W |
| SUPERVISOR NAME | | DATE OF APPROVAL |
| Davis, Stephanie | | |
| ADMINISTRATOR/DESIGNEE | | DATE OF APPROVAL |
| Miller, Olivia B | | 9/15/2017 |
| LEGAL REVIEW | | DATE OF REVIEW |
| Unspecified | | |
| OUTCOME DETERMINATION DATE | | |
| 11/7/2017 | | |

## VII. CHANGE OF STATUS

## CHILD PROTECTIVE SERVICES INVESTIGATION REPORT (TITLE 23 PA. C.S.A CHAPTER 63)

### I. IDENTIFYING INFORMATION

| DATE OF INCIDENT BEGIN | REFERRAL TYPE | REFERRAL RECEIVED DATE | REFERRAL ID |
|---|---|---|---|
| 9/15/2017 | GPS | 9/15/2017 3:22:56 PM | 7985698 |
| DATE OF INCIDENT END | | | |

### 1. ALLEGED VICTIM/SUBJECT CHILD

| NAME | | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Camella C Reed | | | Female |
| ADDRESS | | COUNTY | SSN |

### 2. PARENTS/LEGAL GUARDIAN

| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Winchella Howard | Mother-Biological | | Female |
| ADDRESS | | COUNTY | SSN |
| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
| Cameron D Reed | Father-Unknown | | Male |
| ADDRESS | | COUNTY | SSN |

### 3. ALLEGED PERPETRATOR/PERSON RESPONSIBLE

| NAME | RELATIONSHIP TO CHILD | DATE OF BIRTH | GENDER |
|---|---|---|---|
| Winchella Howard | Mother-Biological | | Female |
| ADDRESS | | COUNTY | SSN |

### 4. FAMILY HOUSEHOLD COMPOSITION

### 5. AGENCY WITH CUSTODY INFORMATION

| AGENCY NAME | UNKNOWN AGENCY NAME | CONTACT NAME/CARE OF | UNKNOWN CONTACT NAME/CARE OF |
|---|---|---|---|
| | ☐ | | ☐ |
| ADDRESS TYPE | ADDRESS | UNKNOWN | COUNTY |
| | | ☐ | |
| DIRECTIONS/LOCATION EXPLANATION | | | |
| CONTACT TYPE | CONTACT | | |

### 6. THE INITIAL REFERRAL SOURCE

### II. NATURE OF ABUSE/NEGLECT

| ALLEGED VICTIM/SUBJECT CHILD | ALLEGED PERPETRATOR/RESPONSIBLE PERSON | CATEGORY OF ABUSE/NEGLECT | SUBCATEGORY OF ABUSE/NEGLECT |
|---|---|---|---|
| Camella C Reed | Winchella Howard | GPS Concerns | Other |
| ALLEGATION OUTCOME | OUTCOME EXPLANATION | | |
| Valid | VALID because there was enough evidence gathered to substantiate the allegations of other. | | |

### III. CPS ACTIONS

| WAS CHILD ALLEGEDLY ABUSED WHILE IN A "CHILD CARE SERVICE" (As defined by CPSL)? | ☐ YES | ☒ NO |
|---|---|---|

| PAGE 1 OF 2 | COMMONWEALTH OF PENNSYLVANIA - DEPARTMENT OF HUMAN SERVICES | CY48 (11/2018) |
|---|---|---|



**CITY OF PHILADELPHIA**

DEPARTMENT OF HUMAN SERVICES
1515 Arch Street, Philadelphia, PA 19102
215-683-4DHS (4347)
www.phila.gov/dhs

Commissioner

ANNE MARIE AMBROSE

Deputy Commissioners

TIMENE FARLOW, JJS
VANESSA GARRETT HARLEY, CYD
SUSAN KINNEVY, PMA

Tuesday, July 22, 2014

Cameron Reed
5321 Wayne Avenue # 301
Philadelphia, PA 19144

DHS #: 620543 REED

Dear Cameron Reed:

We are the new Social Work Services Team assigned to provide supports and services to your family along with the Provider Agencies involved. It is our hope that we can work together to quickly resolve any problems or issues that have been identified.

I will be contacting you to schedule a visit, in the meantime, please feel free to contact me at the number below if you have any questions.

Sincerely,

Shante Johnson, DHS Worker
215-683-6651

Shahodah Bohannon, DHS Supervisor
215-683-6645

cc: Child Advocate
    Parent Advocate
    Provider

Notification of Assigned Worker-Supervisor

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 122 of 404

Ms. Winchella Howard
November 8, 2013
Page 2

We were not able to finish our conversation about your children's cases on November 4 after the hearing and I would very much like to discuss things in detail with you so that you are clear on exactly what needs to happen in order to get your children back into your care.  Please give me a call at (215) 981-3791 as soon as possible so that we can discuss these important issues.  I look forward to hearing from you very soon.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

Enclosures

COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

October 17, 2013

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA 19144

Dear Ms. Howard:

This is to inform you of your children's October 15, 2013 adjudicatory hearing. It is unfortunate that you did not attend the hearing, but your husband did attend and his testimony convinced Judge Tereshko that your children should have another chance to stay at home with you. DHS and the Child Advocate wanted your children to be put into placement.

Please work hard to make sure your home stays clean and that you have enough food for the children. Mr. Belton will make sure that the children's medical care is up to date. If any medical appointments are needed for the children, please make sure those appointments happen right away. Cameron must attend school every day.

Another hearing has been scheduled for **November 26, 2013 at 10:30 a.m. in Courtroom "G", 1801 Vine Street**. You must attend this hearing.

If things improve, the Department of Human Services will be happy to allow your children to remain in your care. If things do not improve, DHS and the Child Advocate will again be requesting that your children be placed in foster care on November 26.

While our plan is for you to continue working with IHPS and for the children to remain with you, I always want my clients to have a back-up plan. I want you to think of relatives or friends who could possibly take the children if the court decides they should be placed at some time in the future.

I will be working on your case with paralegal Lili Smack. Please call either one of us: I can be reached at (215) 981-3791 and Ms. Smack can be reached at (215) 981-3780. We both look forward to hearing from you very soon.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

■ COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

June 6, 2014

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

This is to inform you that your children's dependency cases have been administratively relisted.  Your children's cases will now be heard on **June 20, 2014 at 11:30 a.m. in Courtroom "G", 1801 Vine Street**.  You and your husband must both attend this hearing.

Please give me a call at (215) 981-3791 to confirm that you understand that you now have a hearing on June 20.

Sincerely,

*Marjorie A. Janoski /dh*

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh



COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh



COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

Marjorie A. Janoski /dh

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh



COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

Marjorie A. Janoski /dh

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh



COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

Child's Name:   Christian Howard                    Period Covered:   **11/04/13-12/18/13**

## CHILD'S SECTION

### Child's Strengths/Interests

*Overall assessment of child's status, including child's strengths and interests; describe how the plan for the child's services encourages these strengths and interests and/or uses them to improve identified needs.*

Christian is a two year old little boy who is currently residing with Ms. Leona Butts.  He has been diagnosised with Neurofibromatosis.  He needs to be seen by the doctor quarterly so his blood pressure can be monitored. Christian is currently going through an evaluation for Autism through Elwyn and Childlink. PCV worker has made outreach to the The Center for Autism.  The Center for Autism will contact Ms. Butts to schedule an appointment.  Christian has weekly visitation with his parents and siblings at PCV.  Reunification is the current goal.

### Plan for Daily Care and Treatment

*Address specific efforts to assist child's adjustment to placement setting (e.g., transitional issues/concerns identified by the parents including objects or rituals which may provide comfort for the child); address ongoing issues in the placement setting*

| Objectives | | Target Dates For Progress | | Person Responsible | |
|---|---|---|---|---|---|
| C1 | Caseworker will provide one-to-one counseling to the child to assist with and monitor ISP objectives. | C1 | 12/18/13 | C1 | PCV worker |
| C2 | Foster/Kinship parent and child will be cooperative with caseworker counseling. | C2 | 12/18/13 | C2 | Ms. Butts & PCV worker |
| C3 | Foster/Kinship parent will be available for counseling, implement counseling in caring for child's needs and behavioral issues, and provide supervision appropriate to those needs. | C3 | 12/18/13 | C3 | Ms. Butts & PCV worker |
| C4 | Foster/Kinship parent will comply with all agency guidelines, assist with ISP as outlined, and submit required documentation to caseworker. | C4 | 12/18/13 | C4 | Ms. Butts & PCV worker |
| C5 | | C5 | | C5 | |
| C6 | | C6 | | C6 | |

### Recreational, Social, Cultural, Spiritual Activities

| Objectives | | Target Dates For Progress | | Person Responsible | |
|---|---|---|---|---|---|
| R1 | Christian will included in all family activities and vacations | R1 | 12/18/13 | R1 | Ms. Butts |
| R2 | Foster family will provide appropriate social interactions for Christian , such as participating in play groups and/or daycare | R2 | 12/18/13 | R2 | Ms. Butts |
| R3 | | R3 | | R3 | |
| R4 | | R4 | | R4 | |

### Educational/Developmental/Vocational:  CM-15A, CM-16B

| | | | |
|---|---|---|---|
| Is the youth enrolled in an appropriate educational/vocational setting? <br> Date Enrolled: | Y ☐   N ☒ | If under 5 years old, has the child been referred for an Early Intervention Evaluation? | Y ☒   N ☐ <br> Date Referred: 11/01/13 |
| Does the child have an IEP? <br> Date of last IEP: | Y ☐   N ☒ | Is the child receiving Early Intervention Services? | Y ☐   N ☒ |
| Does the child have TSS or other support in the school setting? | Y ☐   N ☒ | Is the most recent report card attached? | Y ☐   N ☒ |
| Is the child receiving tutoring & supportive services in subjects? | Y ☐   N ☒ | Is the child involved in extra-curricular activities? | Y ☐   N ☒ |

| Objectives | | Target Dates For Progress | | Person Responsible | |
|---|---|---|---|---|---|
| EDV1: | Christian will be exposed to age appropriate activities to meet his developmental milestones. | EDV1: | 12/18/13 | EDV1: | Ms. Butts |
| EDV2: | Christian will continue to receive therapies thru ChildLink until he is able to be enrolled in a day program when he turns 3. | EDV2: | 12/18/13 | EDV2: | Ms. Butts |
| EDV3: | Foster parents will continue to monitor his development and keep worker updated with progress, therapy schedules, and documentation | EDV3: | 12/18/13 | EDV3: | Ms. Butts |
| EDV4: | | EDV4: | | EDV4: | |
| EDV5: | | EDV5: | | EDV5: | |

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 832-2101
Attorney's Identification Number:         318608


## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH


IN RE: ADOPTION OF                    :      AP#
**Christen Shaylen Howard**           :      FID: 51-FN-002936-2012
**aka Christian Reed**                :
**aka Christian Howard**              :
**aka Christen Howard**               :


## PETITION FOR INVOLUNTARY TERMINATION
## OF PARENTAL RIGHTS


## TO THE HONORABLE, THE JUDGES OF THE SAID COURT:

1. Petitioner, Philadelphia Department of Human Services, Children and Youth Division (hereinafter "DHS"), is the local government agency responsible for the care and supervision of dependent children in Philadelphia.

2. The above-named child is a dependent under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301 - 6365 (1982 & Supp. 1990)

3. This child's mother is **Winchella Howard**. Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. She is of **the African American** race and **the unknown** faith. The mother's birthdate is **September 30, 1981**. The mother's marital status is **unknown**.

4. This child's putative/natural/presumptive father is **Cameron Deross Reed aka Cameron Reed**. His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. He is of **the African American** race and **the unknown** faith. The father's birthdate is **June 19, 1967**. The father's marital status is **unknown**.

2

5. The child, who was born on **March 23, 2011**, in **Philadelphia, PA**, was adjudicated dependent on **November 4, 2013** and committed to the Petitioner on **November 4, 2013**. The child has been in the custody of the Petitioner continuously since **November 4, 2013**.

6. That the Petitioner's statutory ground(s) for termination, pursuant to 23 Pa.C.S.A. § 2511 is/are (list applicable sections):

☒      2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

☒      2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

☐      2511(a)(3)  The parent is the presumptive but not the natural father of the child;

☐      2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

☒      2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

☐      2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

3

☐    2511(a)(7) The parent is the father of a child who was conceived as a result of rape; and

☒    2511(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

☐    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

    i)     an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

    ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

    iii)   an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

    iv)   an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

7. That other factors and considerations for termination pursuant to the Adoption Act is/are as follows:

☒ 2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

8. Termination of the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** would best serve the needs and welfare of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard;**

4

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and supervised by the State Department of Public Welfare;

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, Philadelphia, PA 19102;

11. The Petitioner is willing and able to take custody of the child until such time as the child is adopted.

WHEREFORE, the Philadelphia Department of Human Services prays this Honorable Court to enter an **ORDER:**

1. Directing a finding of involuntary termination of the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed;**

2. Directing the transfer of custody of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** to the Philadelphia Department of Human Services;

3. Authorizing the Philadelphia Department of Human Services to give consent to the adoption of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** without further consent of or notification to **Winchella Howard and Cameron Deross Reed aka Cameron Reed.**

BY:

_____
Michael Pratt, Esquire

5

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 832-2101
Attorney's Identification Number:         318608


## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF            :        AP#
**Christen Shaylen Howard**   :        FID: 51-FN-002936-2012
**aka Christian Reed**        :
**aka Christian Howard**      :
**aka Christen Howard**       :


## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW


By its Petition, Petitioner, the Philadelphia Department of Human Services, Children and

Youth Division, having filed a Petition proceeding under the "Adoption Act", 1980, October 15, P.L.

934, No. 163, Section 1, effective January 1, 1981, seeks a DECREE for involuntary termination of

the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to

**Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard**; the

Court makes the following Findings of Fact and Conclusions of Law:

The Court, after a hearing on the Petition for Involuntary Termination of Parental Rights and

after taking testimony and/or receiving a Stipulation as to the Facts as the basis for the involuntary

termination of parental rights, finds that the Petitioner has established by clear and convincing

evidence the following:

6

## FINDINGS OF FACT

1. The subject of this Petition is a minor child named **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** who was born on **March 23, 2011** in **Philadelphia, PA.**

2. The mother of the child is **Winchella Howard** who was born on **September 30, 1981** in **Philadelphia, PA.** Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** She is of **the African American** race and **the unknown** faith.

3. The mother **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

4. The putative/natural/presumptive father of the child is **Cameron Deross Reed aka Cameron Reed** who was born on **June 19, 1967** in **Philadelphia, PA.** His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** He is of **the African American** race and **the unknown** faith.

5. The putative/natural/presumptive father **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

6. The child was adjudicated dependent on **November 4, 2013** by the Honorable **Allan L. Tereshko.** The Family Service Plan goal has been changed to **Adoption.**

7. Since **November 4, 2013,** the child has been without essential parental care, control and subsistence necessary for the child's physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time;

8. The said child has been in the care and custody of the Petitioner continuously for a period in excess of six (6) months, specifically since **November 4, 2013.**

7

9.  The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter;

10.  The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, 8th floor, Philadelphia, PA 19102.

11.  The Petitioner is willing and able to take custody of the child and to arrange for and consent to his/her adoption by suitable persons;

WHEREFORE, the Court of Common Pleas of Philadelphia County arrives at the following:

## CONCLUSIONS OF LAW

1. **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** has been without essential parental care, control and subsistence necessary for his/her physical and mental well-being;

2. Under the Juvenile Act, 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74, the disposition best suited to the protection and physical, mental and moral welfare of the above-named child is Adoption.

3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** and may ask for custody of said child;

4. All prerequisites for the filing of a Petition for Involuntary Termination and the entry of such a Decree have been met;

5. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed**:
(*check the applicable subsections*):

[x]    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

9

[ ]    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]    2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

10

iv)     an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or

(iii).

[x]     2511 (b) Other Considerations. -

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

6. This Honorable Court having jurisdiction over this matter grants the Decree prayed for in the pleadings.

**BY THE COURT:**

_____
                                                            J.

DATED: _____

11

## VERIFICATION

I, Michael Pratt, Esquire, being duly sworn according to law, depose and say that I am an Attorney of the within-named corporation; that I am fully authorized to make this Verification on its behalf; and that the facts set forth in the foregoing Petition are true and correct to the best of my knowledge, information and belief. The Petitioner is aware that false statements contained herein are subject to the penalties of 18 Pa. Cons. Stat. § 4904.

_____
Michael Pratt, Esquire

DATED: ___12/22/15___

12

Attorney's Name:

Attorney's Address:

Attorney's Telephone Number:

Attorney's Identification Number:

Michael Pratt, Esquire

1515 Arch Street, 16th Floor

Philadelphia, PA 19102-1595

(215) 832-2101

318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

| | | |
|---|---|---|
| IN RE: ADOPTION OF | : | AP# |
| **Christen Shaylen Howard** | : | FID: 51-FN-002936-2012 |
| **aka Christian Reed** | : | |
| **aka Christian Howard** | : | |
| **aka Christen Howard** | : | |

## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

**AND NOW**, this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Winchella Howard**.

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard**:

(*check the applicable subsections*):

[x]    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

13

[x]    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

[ ]    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]    2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

14

ii)     a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)     an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

[x]     2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3. Specific findings have been placed on the record at the end of the evidentiary hearing.

4. **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Winchella Howard are forever terminated.**

5. The adoption of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** may continue without further notice to or consent of **Winchella Howard.**

6. The custody of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard.**

**BY THE COURT:**

_____

**J.**

15

Attorney's Name:                        Michael Pratt, Esquire
Attorney's Address:                     1515 Arch Street, 16th Floor
                                        Philadelphia, PA 19102-1595
Attorney's Telephone Number:            (215) 832-2101
Attorney's Identification Number:       318608


## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF          :       AP#
**Christen Shaylen Howard**  :       FID: 51-FN-002936-2012
**aka Christian Reed**       :
**aka Christian Howard**     :
**aka Christen Howard**      :


## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS


**AND NOW,** this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Cameron Deross Reed aka Cameron Reed.**

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Cameron Deross Reed aka Cameron Reed**:
(*check the applicable subsections*):

[x]     2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]     2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

16

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

[ ]    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]    2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

17

[x]    2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3. Specific findings have been placed on the record at the end of the evidentiary hearing.

4. **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Cameron Deross Reed aka Cameron Reed are forever terminated.**

5. The adoption of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** may continue without further notice to or consent of **Cameron Deross Reed aka Cameron Reed**.

6. The custody of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Christen Shaylen Howard aka Christian Reed aka Christian Howard aka Christen Howard.**

<div align="center">

**BY THE COURT:**

_____

J.

</div>

18

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**ADOPTION BRANCH**

IN RE: ADOPTION OF   :  AP#
**Christen Shaylen Howard**  :  FID: 51-FN-002936-2012
**aka Christian Reed**   :  **Termination Hearing Date:**_____
**aka Christian Howard**  :
**aka Christen Howard**  :

## Adoption Plan Status Form

**I.** **CHECK APPROPRIATE BOXES:**
  [x] Foster parent adoption;
  [ ] No adoptive family identified;
  [ ] To be/has been registered with:
    [ ] Pennsylvania Adoption Exchange;
    [ ] Three Rivers;
    [ ] National Adoption Exchange; and
    [ ] Other: _____
  [ ] Listed for finalization;
  [ ] Other _____

**II.** **LIST IMPEDIMENTS TO FINALIZING ADOPTION:**

**III.** **LIST EFFORTS MADE TO REMOVE IMPEDIMENTS:**

19

# EXHIBIT

# "A"

20

**STATEMENT OF FACTS RE:**
**CHRISTEN SHAYLEN HOWARD**
**AKA CHRISTIAN REED AKA CHRISTIAN HOWARD**
**AKA CHRISTEN HOWARD**

a.    On September 10, 2012, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the children's parents, Winchella Howard and Cameron Reed, failed to provide Cameron, Cambria, and Christian with adequate food and safe housing. The report alleged that Ms. Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there had been no running water in the home for the last eight months; and that the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home was malodorous due to standing waste in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Ms. Howard is unemployed and appeared to be depressed. This report was substantiated.

b.    DHS made numerous attempts to assess the children's safety, without success, and subsequently filed dependent petitions for the children.

c.    At the adjudicatory hearing held on November 9, 2012, the Court adjudicated Cameron, Cambria, and Christian dependent based on present inability to provide proper parental care and control and committed them to the custody of DHS.

d.    The children were subsequently returned to the care of Ms. Howard and Mr. Reed on November 20, 2012 and the Court discharge their commitments and their dependent petitions.

e.    On April 19, 2013, DHS received a GPS report alleging that Christian was diagnosed with neurofibromatosis; that Ms. Howard was first asked to take Christian to St. Christopher's Hospital for Children for an evaluation in November 2012; that several appointments were made for Ms. Howard and Mr. Reed to take Christian for an evaluation; and that Christian has still not been evaluated. The report alleged that there was concern regarding Christian's development and the psychological effect that the disease could cause; that neurofibromatosis attacks the central nervous tissue; and that Christian was developmentally delayed. This report was substantiated.

f.    On April 24, 2013, DHS and the DHS visiting nurse made a joint-visit to the family's home to investigate the allegations of the GPS report. Ms. Howard and Mr. Reed stated that they were not aware of the appointments for Christian. Mr. Reed stated that he did not know that Christian's doctor wanted him to take Christian for an evaluation for neurofibromatosis and that the doctor did not discuss Christian's condition with him.

g.    DHS subsequently learned that Cambria was also diagnosed as suffering from neurofibromatosis.

21

h.  DHS also learned that Cambria has severe behavioral issues and is prescribed medication. Ms. Howard stated that she does not provide Cambria with her medication because she believes that it makes her behavior worse.

i.  On May 28, 2013, Ms. Howard gave birth to Calvin.

j.  DHS referred the family for Rapid Service Response Initiative (RSRI) to assist with scheduling the children's medical appointments.

k.  On July 9, 2013, DHS implemented In-Home Protective Services (IHPS) through the Family Support Center.

l.  On or about September 11, 2013, DHS learned that the family was scheduled to be evicted from the home on September 15, 2013. IHPS spoke with Mr. Reed about the family's planned living arrangements and Mr. Reed stated that the family would be residing with relatives; however, Mr. Reed became evasive and failed to provide IHPS with an address.

m.  DHS learned that as of September 14, 2013, Mr. Reed and Ms. Howard had not made any housing arrangements.

n.  On September 17, 2013, IHPS went to the home. The family could be heard inside of the apartment; however, no one answered the door.

o.  On September 18, 2013, DHS attempted to visit the family, without success.

p.  On October 15, 2013, an adjudicatory hearing was held before the Honorable Allan L. Tereshko, who deferred adjudication and ordered that DHS implement supervision in the family's home. Judge Tereshko also ordered that Ms. Howard be referred to Behavioral Health Services (BHS) for a consultation/evaluation; that DHS re-inspect the family's home prior to October 27, 2013; that IHPS through Family Support Center continue; that Mr. Reed and Ms. Howard comply with all IHPS services and recommendations; and that Mr. Reed and Ms. Howard cooperate with DHS, the agency, and the Child Advocate.

q.  DHS learned that Calvin was also diagnosed as suffering from neurofibromatosis.

r.  On November 4, 2013, an adjudicatory hearing was held before Judge Tereshko, who adjudicated the children dependent and fully committed them to DHS. Judge Tereshko ordered that the children were to be removed from the family home and placed on November 4, 2013, with police assistance if necessary; that the family be referred to Family School; that Mr. Reed and Ms. Howard to be referred for a Parenting Capacity Evaluation (PCE); and that Ms. Howard be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug and alcohol screen and a dual diagnosis assessment.

s.  On February 7, 2014, a permanency review hearing was held before Judge Tereshko, who found that Mr. Reed and Ms. Howard had achieved moderate compliance with the permanency plan. Judge Tereshko ordered that Ms. Howard and Mr. Reed have weekly

22

supervised visits at the agency; that Ms. Howard attend Family School as arranged by the parties; that Mr. Reed and Ms. Howard attend the children's medical appointments; that Mr. Reed be referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; ; that Mr. Reed comply with CEU recommendations ; that Mr. Reed comply with Family School; that Ms. Howard be re-referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; that Ms. Howard comply with CEU recommendations; that Ms. Howard attend PCE scheduled for February 12, 2014; that Ms. Howard complete part two of the PCE; and that Ms. Howard and Mr. Reed be referred to the Achieving Reunification Center (ARC).

t.    On May 2, 2014, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on March 6, 2014. The report also stated that Mr. Reed's drug screen on February 7, 2014 was positive for cocaine and marijuana.

u.    On May 9, 2014, a permanency review hearing was held before Juvenile Master Michael Campbell, who found that Mr. Reed had achieved minimal compliance with the permanency plan, in that he was non-compliant with Family Service Plan (FSP) objectives, services, and recommendations; that Mr. Reed had rescheduled toe second part of the PCE on three occasions and still had yet to complete it. Master Campbell ordered that Mr. Reed and Ms. Howard comply with the second part of the PCE; that they comply with all FSP objectives, services, and recommendations; and that they be re-referred to CEU for a full drug and alcohol screen and dual diagnosis assessment, once they avail themselves.

v.    On June 20, 2014, a permanency review hearing was held before the Honorable Walter Olszewski, who found that Mr. Reed had achieved minimal compliance with the permanency plan. Judge Olszewski ordered that Mr. Reed be re-referred to CEU for a forthwith drug screen and assessment; that he complete the second part of the PCE scheduled for July 15, 2014; that he be re-referred to ARC; that Ms. Howard be referred to BHS for consultation/evaluation; and that Ms. Howard sign releases of information.

w.    On June 24, 2014, Ms. Howard underwent a PCE conducted at Assessment & Treatment Alternatives, Inc. (ATA) by William Russell, Ph.D. and Samantha Brenner, M.A. The PCE stated that there are several barriers to Ms. Howard providing safety and permanency to the children; that those barriers include a minimization of the role she played in the situation which precipitated DHS involvement and the inability to acknowledge her children's behavioral problems; that she also minimizes Mr. Reed's drug use; that Ms. Howard neglected to take responsibility for her children not receiving appropriate medical treatment; that she projected blame on the city for the removal of her children; and that she denied all allegations that her home was unkempt, chaotic, and that the children were not up to date on their immunizations. The PCE also stated that Ms. Howard was diagnosed with persistent depressive disorder and that she does not function well in complex situations. The PCE recommendations were for Ms. Howard to obtain appropriate housing with an adequate number of bedrooms for her children; that the home be inspected frequently to assess for safety hazards and/or the home being unkempt; that the home be affordable based on income; that she obtain employment; that she participate in available programming to help

23

parents continue to develop skills as well as receive professional and peer support; that she receive psychoeducation on the seriousness of the children's medical needs and the importance of taking them to their medical appointments; and that Ms. Howard should participate in individual therapy to assist her with understanding her depressed mood and increasing her ability to anticipate problems.

x. On July 2, 2014, Ms. Howard underwent a psychological evaluation which was conducted by Stacey A. Summers, Psy.D. The evaluation stated that most of Ms. Howard's problems can be directly related to her cognitive deficits; that she can become easily overwhelmed and the confused, which impedes her functioning in daily life; that Ms. Howard would benefit from case management services geared toward individuals with intellectual disabilities; that without these support services Ms. Howard would likely have difficulty securing the resources necessary to have her children return to her care; and that it was recommended that Ms. Howard participate in individual outpatient therapy in order to handle her current life stressors as well as to manage her anxious and depressive symptoms.

y. On July 15, 2014, Mr. Reed underwent a PCE at ATA conducted by Mr. Russell and Ms. Brenner. The PCE stated that Mr. Reed minimizes the role he played in the situation which precipitated DHS involvement; that he failed to acknowledge any DHS concerns; he indicated the reason his children were removed was due to false allegations of safety hazards in the home; that he failed to recognize any behavior problems with the children; that he glossed over any financial problems; and he projected blame on DHS for his inability to afford and purchase a suitable home. The PCE recommendations were for Mr. Reed to participate in drug and alcohol treatment with random drug screens; that he and Ms. Howard should attend couples counseling to address any pas and/or current issues in their relationship; that he should obtain suitable and stable housing; that the home should have enough bedrooms to accommodate the children; that the home should be inspected for safety hazards prior to the children being allowed to reside there; and that the home should be affordable based on income.

z. On August 29, 2014, CEU submitted a report as to Mr. Reed, which referred him to outpatient drug and alcohol treatment.

aa. On September 2, 2014, a permanency review hearing was held before Master Campbell, who ordered that Ms. Howard and Mr. Reed continue to have weekly supervised visits at the agency; that the parents are to continue calling and confirming visits 24 hours in advance; re-referred Mr. Reed to CEU for a forthwith drug screen assessment, and four random drug screens prior to the next scheduled hearing; that DHS explore drug and alcohol treatment and mental health options for Mr. Reed; that Ms. Howard be referred for Intellectual Disability services; that Ms. Howard continue with her mental health treatment; and that Mr. Reed continue attending ARC.

bb. On December 1, 2014, CEU submitted a report as to Mr. Reed, which stated that on October 15, 2014, Mr. Reed reported that he was engaged in durg and alcohol treatment at Gaudenzia Outreach 1 and that, per Gaudenzia Outreach 1 staff, Mr. Reed is not now and has never been enrolled in treatment through their facility.

24

cc.   On December 2, 2014, a permanency review hearing was held before Judge Tereshko, who too note that the children's concurrent placement plan was Adoption. Judge Tereshko ordered that Ms. Howard and Mr. Reed's be set forth as supervised with Parents Therapeutic through ATA; that Ms. Howard comply with The PCE Addendum; that Mr. Reed be re-referred to CEU for a forthwith full drug and alcohol screen, monitoring, and three random drug and alcohol screens prior to the next scheduled hearing; that Ms. Howard and Mr. Reed comply with all FSP objectives, services, and recommendations.

dd.   On February 4, 2015, DHS held an FSP meeting. The permanency goal for Cameron, Cambria, Christian, and Calvin was changed to "Adoption." The parental objectives established for Ms. Howard were to attend all appointment for the children and comply with all treatments recommendations; to make herself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in court ordered mental health evaluations and sign releases of information; to comply with all treatment recommendations including therapy and or medication management as prescribed; to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; to ensure that all utilities remain operable at all times; to attend Family School; and to obtain employment. The parental objectives established for Mr. Reed were to attend all appointment for the children and comply with all treatments recommendations; to make himself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in family therapy with Ms. Howard; to participate in drug and alcohol treatment and comply with all recommendations; to participate in services through the Achieving Reunification Center (ARC); to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; and to ensure that all utilities remain operable at all times.

ee.   On February 26, 2015, Ms. Howard participated in a PCE Addendum at ATA conducted by Dr. Russell and Ms. Peterson. The PCE Addendum stated that Ms. Howard was unable to demonstrate any notable progress since her last evaluation in developing the capacity to provide for her children; that there remain concerns regarding her capacity to provide safety and permanency to her children; that she continues to minimize the role she and Mr. Reed played in the situation which precipitated DHS involvement; that she continues to not acknowledge the children's behavioral problems/special needs; that she has yet to acquire appropriate housing; that she continues to be unemployed; that, despite recommendations from two separate evaluations, she has yet to enroll in mental health treatment; and that, in light of the lack of progress, her cognitive limitations, and her difficulty recognizing her children's needs, an intensive case manager should be assigned to her case. The PCE Addendum also stated that Ms. Howard appeared to be functioning in the borderline range in intelligence and a diagnosis of Intellectual Disability, Mild should be explored.

ff.   On March 2, 2015, CEU submitted a report as to Mr. Reed, which stated that Mr. Reed failed to provide verification of his enrollment in drug and alcohol treatment.

25

gg. On March 3, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed be referred to CEU for a forthwith drug screen, three random drug screens, an assessment, and monitoring.

hh. On May 14, 2015, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on April 6, 2015. The report also stated that Mr. Reed did go to CEU on May 11, 2015, but failed to reschedule an appointment to be assessed.

ii. On May 18, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed and Ms. Howard be offered weekly supervised visits at the agency; that Mr. Reed be re-referred for a PCE; that Ms. Howard be referred to BHS for consultations and/or evaluations; and that Mr. Reed be referred to CEU for an assessment, forthwith drug screen, and three random drug screens prior to the next scheduled hearing.

jj. On September 1, 2015, a permanency review hearing was held before Juvenile Master William Rice, who ordered that Family School be discharged; that Mr. Reed appear for the scheduled appointment for a PCE addendum on October 15, 2015; and that the next scheduled hearing be listed as a Status of a Goal Change hearing.

kk. Cambria, Christian, and Calvin are diagnosed as suffering from neurofibromatosis. Neurofibromatosis is a genetically-inherited disorder in which the nerve tissue grows tumors (neurofibromas) that may be benign and may cause serious damage by compressing nerves and other tissues. The disorder affects all neural crest cells (Schwann cells, melanocytes, and endoneurial fibroblasts). Cellular elements from these cell types proliferate excessively throughout the body, forming tumors; melanocytes also function abnormally in this disease, resulting in disordered skin pigmentation and café au lait spots. The tumors may cause bumps under the skin, colored spots, skeletal problems, pressure on spinal nerve roots, and other neurological problems. Neurofibromatosis is an autosomal dominant disorder, which means only one copy of the affected gene is needed for the disorder to develop. Therefore, if only one parent has neurofibromatosis, his or her children have a 50 percent chance of developing the condition as well.

ll. Mr. Reed is diagnosed as suffering from neurofibromatosis.

mm. Ms. Howard is diagnosed with persistent depressive disorder.

nn. Reunification with Winchella Howard is not an appropriate permanency option as she has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

oo. Reunification with Cameron Deross Reed is not an appropriate permanency option as he has failed to achieve full and continuous compliance with the established FSP objectives to

26

facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

pp.   The termination of the parental rights of Winchella Howard and Cameron Deross Reed and the goal change to adoption is in the best interest of Cameron, Cambria, Christian, and Calvin, as they are in loving homes where their needs are being met. Cameron and Calvin have been residing with Arcella Walker since November 7, 2013 and Ms. Walker is interested in adopting Cameron and Calvin. Cambria and Christian have been residing with Ronya Wilson since May 8, 2014 and Ms. Wilson is interested in adopting Cambria and Christian.

27

# St. Christopher's
## Pediatric Associates

300 A Street
Philadelphia, PA 19134-1095
Tel: 215-427-5000
www.stchristophershospital.com

Metabolic/Genetic Program, Neurology Section
Phakomatosis Clinic
Provider: Reena Jethva, MD, Geneticist
Phone: 215-427-5483, 215-427-5470, Fax: 215-427-4393

---

# PATIENT PLAN
## Christien Howard
09/12/2013 1:00 PM
Visit Type: Consultation (99245)

---

Thank you for choosing us for your healthcare needs. The following is a summary of the outcome of today's visit and other instructions and information we hope you find helpful.

Reason(s) for visit: Cafe au lait macules/patches.

---

### Assessment/ Plan
**Neurofibromatosis, type 1** (237.71), Chronic.
Today's instructions / counseling includes age-appropriate counselling for condition.
**Speech delay** (315.39)

Neurofibromatosis 1 (NF1) is a genetic condition that is characterized by multiple café au lait spots as well as other hyperpigmenation, skin lesions, and systemic involvement. Learning disabilities may be seen in around half of individuals with NF1. The various findings in NF1 may occur at different ages and it is important for patients to be followed by physician who are familiar with the disorder.

The diagnosis of NF1 is usually based on clinical findings and certain diagnostic criteria. If a patient has two or more of the following, they have a clinical diagnosis of NF1: Six or more café au lait macules >5 mm in greatest diameter in prepubertal individuals and >15 mm in greatest diameter in postpubertal individuals, two or more neurofibromas of any type or one plexiform neurofibroma, freckling in the axillary or inguinal regions, optic glioma, two or more Lisch nodules (iris hamartomas) of the eyes, osseous lesion (such as sphenoid dysplasia or tibial pseudarthrosis), or an affected first-degree relative (parent, sib, or offspring) with NF1. Other features include macrocephaly, scoliosis, risk of seizures, or vasculopathy.

This patient has both a family history and classic skin findings, that do fit the criteria for having NF1. In addition to the care guidelines provided below, his primary care physician, family, and other physicians should monitor for signs and symptoms of NF1. We did provide counselling, informational paperwork, and information on possible support services.

We briefly reviewed the inheritance as well. The gene for NF1 is known and it is a autosomal dominant disorder, meaning only one affected copy is necessary to have the condition. Mutations are inherited by a parent in about half the cases and occur de novo (not present in a parent) in the rest. One can test for heterozygous mutations of NF1, which is sometimes necessary to confirm the diagnosis. An individual with NF1 has a 50% chance of passing on the affected gene to their own offspring.

Management by experienced professionals is important, with referral to specialists as needed for treatment of complications involving the eye, central or peripheral nervous system, cardiovascular system, or musculoskeletal systems. For this patient, we recommend the following:
---------Annual physical examination by a physician familiar with the disorder. We can see this child annually. If there are interim concerns about changes in neurofibromas or hyperpigmented patches growing significantly or about new lesions that need evaluation, the patient can be seen sooner. We discussed that neurofibromas that affect vision, other bodily function, nerves, or comfort (location, friction, pain) can potentially be removed although

Howard, Christien   DOB 03/23/2011   DOS 09/12/2013
Page 1 of 2 pages

## Past Medical/Surgical History

| Condition | MoYr | Date | Procedure | MoYr | Date | Comment |
|---|---|---|---|---|---|---|
| Cafe au laits/neurofibromatosis 1 | | | | | | |
| Developmental delays | | | Early intervention | | | |

## Family History

| Yes / No | Disease Detail | Family Member | Comments |
|---|---|---|---|
| | Alive and well | 2 Maternal aunt | |
| | Alive and well | 2 Paternal aunt | |
| | Alive and well | 4 Paternal uncle | |
| | Alive and well | Brother | |
| Yes | Cafe au laits | Brother | |
| No | Developmental delay | Family h/o | |
| No | Hearing impairment | Family h/o | |
| No | Seizure disorder | Family h/o | |
| Yes | Neurofibromatosis type 1 | Father | African American, nonconsanguinous.  ~5'7" |

Cafe au laits, neurofibromas,
No known learning issues or seizures.

| | Disease Detail | Family Member | Comments |
|---|---|---|---|
| | Alive and well | Half brother (M) | |
| | Alive and well | Maternal grandfather | |
| | Alive and well | Maternal grandmother | |
| | Asthma | Mother | African American, nonconsanguinous.  ~5'8" |
| | Alive and well | Paternal grandfather | |
| | Alive and well | Paternal grandmother | |
| Yes | Neurofibromatosis type 1 | Sister | Multiple cafe au laits |

## Pediatric Social History

Primary language is English.

**Primary Residence:**
Lives with mom, dad, sister, brother.  Also has a half-brother who lives with grandmother.

**Child Care/Supervisory Care:**
Mother 7 day(s) per week.

**Tobacco Exposure:**
No passive smoke exposure.

## Medications (added, continued or stopped this visit)

## Allergies

No known allergies.
Reviewed, no changes.

## Review of Systems

**Constitutional:**
Positive for:
- Comments:  Picky eater.

Negative for fever, irritability and lethargy.

**HEENT:**
Positive for:
- Comments:  Still has not had hearing evaluation.
- Comments:  Still has not had ophthalmology evaluation.

Negative for eye discharge and vision loss.
Negative for ear drainage, hearing loss and nasal drainage.

**Respiratory:**
Negative for asthma, cough, dyspnea and wheezing.

Howard, Christien                                    03/23/20112/6

**Height/Weight/BMI**

| Height Ft | In | cm | Weight lb | oz | kg | BMI (kg/m2) |
|---|---|---|---|---|---|---|
| 3.0 | 3.61 | 100.60 | 39.02 | | 17.700 | 17.48 |

**Head/Neck/Waist/Hip Circumference**

| Head cm % In | Neck cm In | Waist In cm | Hip In cm | Waist / Hip |
|---|---|---|---|---|
| 20.51 52.10 | | | | |

**Instructions/Education**

| Status | Order |
|---|---|
| completed | age-appropriate counselling for condition |

**Services Billed This Visit**

| Service | CPT | Mod | Dx 1 | Dx 2 | Dx 3 | Dx 4 |
|---|---|---|---|---|---|---|
| OFFICE/OUTPT EM EST COMPREHENSIVE/HIGH 40 MINS | 99215 | | 237.71 | 229.8 | 315.31 | |

Sincerely,

,M.D.

Electronically signed by: Reena N. Jethva MD  07/24/2014

Document generated by: Reena Jethva  07/24/2014



**St. Christopher's**
**Pediatric Associates**

3601 A Street
Philadelphia, PA 19134-1095
Tel: 215-427-5000
www.stchristophershospital.com

Metabolic/Genetic Program, Neurology Section
Phakomatosis Clinic
Provider: Reena Jethva, MD, Geneticist
Phone: 215-427-5483, 215-427-5470, Fax: 215-427-4393

---

PATIENT:           Christien Howard
DATE OF BIRTH:     03/23/2011
DATE:              09/12/2013 1:00 PM
VISIT TYPE:        Consultation
HISTORIAN:         mother

---

This 2 year 5 month old male patient was referred by Lauren Carr for consultation of cafe au lait findings.

**History of Present Illness**
This 2 year 5 month old male presents with:
**1. Cafe au lait macules/patches**
The symptoms began 29 months ago. The symptoms are reported as being moderate. The symptoms occur constantly. The location is body. Aggravating factors include lack of appropriate evaluation. Relieving factors include appropriate evaluation. He states the symptoms are stable.

Current history: He has cafe au laits all over his body. Unchanged since birth (and were noted at birth). His father has NF type 1. His sister is believed to have it as well. He has a younger infant sibling who has also been noted to have similar skin findings. No raised lesions. No delayed motor skills or concerns for bone deformities.

In review of birth history, the child was born at full term gestation to a 29 year old G4 P3-4 mother with the following reported pregnancy complications: none. No smoking. No alcohol or substance use. Born via vaginal delivery with following reported complications: none. Birth weight: 7 lb 9 oz. Perinatal complications: none. Discharged at approximately couple days. Formula: formula fed.

Developmental:
Met early neonatal milestones? Yes, equal movement of all extremities, positive grasp, positive Moro, early smile, good early close eye contact, early vocalizations/cooing
Head control? 2-3 mo
Sitting? 6-7 mo
Walking? 1.5 years
Fine motor? no issues
First words? delayed
Language development? limited to 4-5 words, both expressive and receptive language delays
Eye contact? normal
Social skills? concern for interaction with other kids and tends to play by himself
Early intervention needed? Yes, he has had evaluation and is awaiting start of therapies. Concern about texture issues with certain foods, social and language development. Mother is uncertain about what therapies he will need.

Hospitalizations/Surgeries? None
Other diagnoses/ROS? Speech delay concerns and possible social delays.

**Chronic Problems**
Neurofibromatosis, type 1
**Chronic Problems Addressed Today**
**1. Neurofibromatosis, type 1.** Status: Chronic.

Howard, Christien                    03/23/2011 1/6

## Past Medical/Surgical History

| Condition | MoYr | Date | Procedure | | MoYr | Date | Comment |
|-----------|------|------|-----------|--|------|------|---------|
| Cafe au laits/neurofibromatosis 1 | | | | | | | |
| Developmental delays | | | Early intervention | | | | |

## Family History

| Yes / No | Disease Detail | Family Member | Comments | |
|----------|----------------|---------------|----------|--|
| | Alive and well | 2 Maternal aunt | | |
| | Alive and well | 2 Paternal aunt | | |
| | Alive and well | 4 Paternal uncle | | |
| | Alive and well | Brother | | |
| Yes | Cafe au laits | Brother | | |
| No | Developmental delay | Family h/o | | |
| No | Hearing impairment | Family h/o | | |
| No | Seizure disorder | Family h/o | | |
| Yes | Neurofibromatosis type 1 | Father | African American, nonconsanguinous. ~5'7" | |

Cafe au laits, neurofibromas,
No known learning issues or seizures.

| | Alive and well | Half brother (M) | | |
|--|----------------|------------------|--|--|
| | Alive and well | Maternal grandfather | | |
| | Alive and well | Maternal grandmother | | |
| | Asthma | Mother | African American, nonconsanguinous. ~5'8" | |
| | Alive and well | Paternal grandfather | | |
| | Alive and well | Paternal grandmother | | |
| Yes | Neurofibromatosis type 1 | Sister | Multiple cafe au laits | |

## Pediatric Social History

Primary language is English.
**Primary Residence:**
Lives with mom, dad, sister, brother. Also has a half-brother who lives with grandmother.
**Child Care/Supervisory Care:**
Mother 7 day(s) per week.
**Tobacco Exposure:**
No passive smoke exposure.

## Medications (added, continued or stopped this visit)

## Allergies

No known allergies.
Reviewed, no changes.

## Review of Systems

**Constitutional:**
Positive for:
- Comments: Picky eater.

Negative for fever, irritability and lethargy.

**HEENT:**
Positive for:
- Comments: Still has not had hearing evaluation.
- Comments: Still has not had ophthalmology evaluation.

Negative for eye discharge and vision loss.
Negative for ear drainage, hearing loss and nasal drainage.

**Respiratory:**
Negative for asthma, cough, dyspnea and wheezing.

Howard, Christien                         03/23/2011 12/6

**Cardiovascular:**
Negative for irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, decreased appetite, diarrhea and vomiting.

**Genitourinary:**
Negative for dysuria and hematuria.

**Metabolic/Endocrine:**
Positive for:
- Comments:  No unusual odors to body fluids
No issues with overnight fasting
No dietary restrictions/aversions.

Negative for cold intolerance, generalized weakness, heat intolerance and hypoglycemia.

**Neuro/Psychiatric:**
Positive for:
- Psychiatric symptoms.

Negative for appropriate interaction and consolable.
Negative for focal weakness, gait disturbance, incoordination, seizures and tremors.

Neurological
See history of the Present Illness.
Psychiatric
See History of Present Illness.
**Dermatologic:**
Positive for:
- Pigment change.

Negative for pruritus and rash.

See History of Present Illness.
**Musculoskeletal:**
Negative for bone/joint symptoms.

**Hematology:**
Negative for easy bleeding and easy bruising.

**Immunology:**
Negative for animals at home, environmental allergies and food allergies.

**Vital Signs**
**Height**

| Time | ft | in | cm | Last Measured | Method | % |
|------|-----|-------|-------|------------|----------|-----|
| 1:56 PM | 2.0 | 11.63 | 90.50 | 09/12/2013 | measured | 46 |

**Weight / BSA / BMI**

| Time | lb | oz | kg | Context | % | BMI kg/m2 | BSA m2 |
|------|-------|-----|--------|----------------------|-----|-----------|--------|
| 1:56 PM | 34.39 | | 15.600 | dressed without shoes | ~98 | 19.04 | .63 |

**Head / Neck / Waist / Hip Circumference**

| Time | Head in cm | % | Neck in cm | Waist in cm | Hip in cm | Waist / Hip |
|------|-----------|--------|-----------|-------------|-----------|-------------|
| 1:56 PM | 20.24 | 51.40 ~60-85 | | | | |

**Measured By**

| Time | |
|------|--|
| 1:56 PM | Jenny Morales |

**Physical Exam**
**Constitutional:** Patient appears well nourished and well developed.  No acute distress noted.
**Head/Face:**
Facial features are symmetric.

Howard, Christien                          03/23/20113/6

Eyebrows are normal.

The skull is atraumatic (normocephalic).

Hair and scalp are normal.

**Eyes:**

Right

General eye condition is normal.

Lid/lash: normal.

No injection.

PERRLA.

EOM's intact - no nystagmus.

Left

General eye condition is normal.

Lid/lash: normal.

No injection.

PERRLA.

EOM's intact - no nystagmus.

**Ears:**

Right

Unremarkable to inspection. Hearing grossly intact.

Left

Unremarkable to inspection. Hearing grossly intact.

**Nose / Mouth / Throat:** Nose and throat are clear with an intact palate. Mucous membranes are moist. No oral lesions noted. Teeth and gums are normal for age.

**Neck / Thyroid:**

Inspection reveals symmetry. No thyromegaly or thyroid nodules detected. Range of motion is supple (normal). No submandibular adenopathy. No cervical adenopathy.

**Respiratory:** Normal to inspection. Lungs are clear to auscultation bilaterally. Normal respiratory effort is noted.

**Cardiovascular:** Regular rate and rhythm. No murmurs, gallops, or rubs.

**Vascular:**

Pulses

Radial pulses: normal. Femoral pulses: normal. Dorsalis pedis pulses: normal. Capillary refill is: less than 2 seconds.

**Abdomen:** Abdomen is soft, non-tender and non-distended. No organomegaly noted. No masses.

**Genitourinary:** Normal male genitalia. Testes are normal and descended bilaterally.

**Integumentary:**

No rashes or significant skin lesions detected by palpation.

First visible lesion: see below, The type of lesion is cafe au lait.

Nails appear normal. Hair is normal in distribution and quality.

**Back / Spine:**

Inspection reveals no abnormality. No kyphosis. No scoliosis.

**Musculoskeletal:**

Normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.

Gait is normal.

**Extremities:** No edema, cyanosis or clubbing.

**Neurological:**

Level of Consciousness: Normal.

Sensory: intact.

Motor: No motor weakness .

Balance & Gait: Balance and gait intact .

Coordination: Coordination intact .

Fine Motor: Skills normal .

Biceps deep tendon reflex is 2+ bilaterally.

Patellar reflex is 2+ bilaterally.

**Psychiatric:**

The patient is not agitated, is not anxious, has normal knowledge, has deficient language, has poor attention span and concentration,

The patient demonstrates the appropriate mood and affect.

**Comments:** Cafe au lait <0.5 cm: multiple small CAL on L flank and axilla (larger than freckling) and scattered on body.

Cafe au lait >0.5 cm: forehead, anterior chest, L flank, R forearm (large), R armpit (large), R chest, R upper arm, R near elbow, R abdomen, R anterior thigh, R posterior thigh, R shin, R outer ankle, L hip, L anterior thigh, L inguinal area, L wrist, L antecubital fossa, upper back X 3, R mid back, L midback, also large hyperpigmented patch on lower back extending to buttocks and hip/thighs.

Other skin pigment abn.: no classic axilla/inguinal "freckling" but many noted CAL as above.

Howard, Christien                                   03/23/2011 14/6

**Clinical Assessment**
The patient is a 2-year old male who presents with concern for neurofibromatosis type 1 and fulfilling criteria for diagnosis.    Having no difficulty with ambulation.  With no spasticity.  The patient is seizure free.  Full assessment and plan below.

**Assessment/ Plan**
**Neurofibromatosis, type 1** (237.71), Chronic.
Today's instructions / counseling includes age-appropriate counselling for condition.
**Speech delay** (315.39)

Neurofibromatosis 1 (NF1) is a genetic condition that is characterized by multiple café au lait spots as well as other hyperpigmenation, skin lesions, and systemic involvement.  Learning disabilities may be seen in around half of individuals with NF1. The various findings in NF1 may occur at different ages and it is important for patients to be followed by physician who are familiar with the disorder.

The diagnosis of NF1 is usually based on clinical findings and certain diagnostic criteria.  If a patient has two or more of the following, they have a clinical diagnosis of NF1: Six or more café au lait macules >5 mm in greatest diameter in prepubertal individuals and >15 mm in greatest diameter in postpubertal individuals, two or more neurofibromas of any type or one plexiform neurofibroma, freckling in the axillary or inguinal regions, optic glioma, two or more Lisch nodules (iris hamartomas) of the eyes, osseous lesion (such as sphenoid dysplasia or tibial pseudarthrosis), or an affected first-degree relative (parent, sib, or offspring) with NF1.  Other features include macrocephaly, scoliosis, risk of seizures, or vasculopathy.

This patient has both a family history and classic skin findings, that do fit the criteria for having NF1.  In addition to the care guidelines provided below, his primary care physician, family, and other physicians should monitor for signs and symptoms of NF1.  We did provide counselling, informational paperwork, and information on possible support services.

We briefly reviewed the inheritance as well.  The gene for NF1 is known and it is a autosomal dominant disorder, meaning only one affected copy is necessary to have the condition.  Mutations are inherited by a parent in about half the cases and occur de novo (not present in a parent) in the rest.  One can test for heterozygous mutations of NF1, which is sometimes necessary to confirm the diagnosis.  An individual with NF1 has a 50% chance of passing on the affected gene to their own offspring.

Management by experienced professionals is important, with referral to specialists as needed for treatment of complications involving the eye, central or peripheral nervous system, cardiovascular system, or musculoskeletal systems.  For this patient, we recommend the following:
---------Annual physical examination by a physician familiar with the disorder.  We can see this child annually.  If there are interim concerns about changes in neurofibromas or hyperpigmented patches growing significantly or about new lesions that need evaluation, the patient can be seen sooner.  We discussed that neurofibromas that affect vision, other bodily function, nerves, or comfort (location, friction, pain) can potentially be removed although there is a risk of growing back.  We tried to note large café au lait and neurofibroma locations on the exam.
---------Annual ophthalmologic examination in children, less frequently in adults. Hearing evaluations can be done routinely (such as at school and at pediatrician office) unless specific concerns arise. This child needs both evaluations per what mother reported.
---------Regular developmental assessment of children.  Adequate learning resources (such as an IEP at school) or early intervention are important to optimizing performance.  This child does have developmental delays and will need close monitoring and evaluation for support services.  It is important to receive not only school support but emotional/social support as patients with NF type 1 can be affected in both areas.  Regular re-evaluation by the school is important to optimize resources.  The child would also benefit from seeing our developmental pediatrician for at least a one time assessment.
---------Regular blood pressure monitoring ideally every 6 months (at least annually at our visit and hopefully in between at pediatrician or other specialist visits).  There is a risk of renal involvement.  If blood becomes borderline high or high, he should be referred for further work-up for hypertension.
---------We typically recommend at least a baseline brain MRI and then consider a brain MRI on as needed basis during the childhood years.  We will consider within the next couple years or as indicated clinically.  Depending on results and signs/symptoms, it may be beneficial to have regular child neurology follow-up.
---------Counselling and information on support groups/organizations was provided.
---------Other evaluations and monitoring based on systemic involvement:

Again, it was a pleasure to see this child, who should follow-up with us in one year or sooner if needed.  We did learn that there is a younger infant sibling who has cafe au laits as well and would benefit from evaluation in our clinic. Mother plans to make an appointment for him soon.

Howard, Christien                              03/23/20115/6

**Instructions / Education**

| Status | Ordered | Completed | Order |
|---|---|---|---|
| completed | 09/17/2013 | 09/17/2013 | age-appropriate counselling for condition |

**Electronically signed by: Reena N. Jethva MD 09/17/2013 12:51 PM**

**Document generated by: Reena Jethva 09/17/2013**

**CC Providers:**
Lauren Carr
501 Cetronia Road
Allentown, PA 18104

**Instructions / Education**

| Status |
|---|

Howard, Christien                                03/23/2011 6/6



## St. Christopher's Pediatric Associates

360 A Street
Philadelphia, PA 19134-1095
Tel: 215-427-5000
www.stchristophershospital.com

Metabolic/Genetic Program, Neurology Section
Phakomatosis Clinic
Provider: Reena Jethva, MD, Geneticist
Phone: 215-427-5483, 215-427-5470, Fax: 215-427-4393

---

| | |
|---|---|
| PATIENT: | Christien Howard |
| DATE OF BIRTH: | 03/23/2011 |
| DATE: | 09/12/2013 1:00 PM |
| VISIT TYPE: | Consultation |
| HISTORIAN: | mother |

---

This 2 year 5 month old male patient was referred by Lauren Carr for consultation of cafe au lait findings.

### History of Present Illness
This 2 year 5 month old male presents with:
**1. Cafe au lait macules/patches**
The symptoms began 29 months ago. The symptoms are reported as being moderate. The symptoms occur constantly. The location is body. Aggravating factors include lack of appropriate evaluation. Relieving factors include appropriate evaluation. He states the symptoms are stable.

Current history: He has cafe au laits all over his body. Unchanged since birth (and were noted at birth). His father has NF type 1. His sister is believed to have it as well. He has a younger infant sibling who has also been noted to have similar skin findings. No raised lesions. No delayed motor skills or concerns for bone deformities.

In review of birth history, the child was born at full term gestation to a 29 year old G4 P3-4 mother with the following reported pregnancy complications: none. No smoking. No alcohol or substance use. Born via vaginal delivery with following reported complications: none. Birth weight: 7 lb 9 oz. Perinatal complications: none. Discharged at approximately couple days. Formula: formula fed.

Developmental:
Met early neonatal milestones? Yes, equal movement of all extremities, positive grasp, positive Moro, early smile, good early close eye contact, early vocalizations/cooing
Head control? 2-3 mo
Sitting? 6-7 mo
Walking? 1.5 years
Fine motor? no issues
First words? delayed
Language development? limited to 4-5 words, both expressive and receptive language delays
Eye contact? normal
Social skills? concern for interaction with other kids and tends to play by himself
Early intervention needed? Yes, he has had evaluation and is awaiting start of therapies. Concern about texture issues with certain foods, social and language development. Mother is uncertain about what therapies he will need.

Hospitalizations/Surgeries? None
Other diagnoses/ROS? Speech delay concerns and possible social delays.

### Chronic Problems
Neurofibromatosis, type 1
### Chronic Problems Addressed Today
**1. Neurofibromatosis, type 1.** Status: Chronic.

Howard, Christien                           03/23/2011 1/6

## Past Medical/Surgical History

| Condition | MoYr | Date | Procedure | MoYr | Date | Comment |
|---|---|---|---|---|---|---|
| Cafe au laits/neurofibromatosis 1 | | | | | | |
| Developmental delays | | | Early intervention | | | |

## Family History

| Yes / No | Disease Detail | Family Member | Comments |
|---|---|---|---|
| | Alive and well | 2 Maternal aunt | |
| | Alive and well | 2 Paternal aunt | |
| | Alive and well | 4 Paternal uncle | |
| | Alive and well | Brother | |
| Yes | Cafe au laits | Brother | |
| No | Developmental delay | Family h/o | |
| No | Hearing impairment | Family h/o | |
| No | Seizure disorder | Family h/o | |
| Yes | Neurofibromatosis type 1 | Father | African American, nonconsanguinous. ~5'7" |
| | Cafe au laits, neurofibromas, | | |
| | No known learning issues or seizures. | | |
| | Alive and well | Half brother (M) | |
| | Alive and well | Maternal grandfather | |
| | Alive and well | Maternal grandmother | |
| | Asthma | Mother | African American, nonconsanguinous. ~5'8" |
| | Alive and well | Paternal grandfather | |
| | Alive and well | Paternal grandmother | |
| Yes | Neurofibromatosis type 1 | Sister | Multiple cafe au laits |

## Pediatric Social History
Primary language is English.
**Primary Residence:**
Lives with mom, dad, sister, brother.  Also has a half-brother who lives with grandmother.
**Child Care/Supervisory Care:**
Mother 7 day(s) per week.
**Tobacco Exposure:**
No passive smoke exposure.

## Medications (added, continued or stopped this visit)

## Allergies
No known allergies.
Reviewed, no changes.

## Review of Systems
**Constitutional:**
Positive for:
- Comments:  Picky eater.

Negative for fever, irritability and lethargy.

**HEENT:**
Positive for:
- Comments:  Still has not had hearing evaluation.
- Comments:  Still has not had ophthalmology evaluation.

Negative for eye discharge and vision loss.
Negative for ear drainage, hearing loss and nasal drainage.

**Respiratory:**
Negative for asthma, cough, dyspnea and wheezing.

Howard, Christien                                    03/23/2011 12/6

**Cardiovascular:**
Negative for irregular heartbeat/palpitations.

**Gastrointestinal:**
Negative for abdominal pain, constipation, decreased appetite, diarrhea and vomiting.

**Genitourinary:**
Negative for dysuria and hematuria.

**Metabolic/Endocrine:**
Positive for:
- Comments: No unusual odors to body fluids
No issues with overnight fasting
No dietary restrictions/aversions.

Negative for cold intolerance, generalized weakness, heat intolerance and hypoglycemia.

**Neuro/Psychiatric:**
Positive for:
- Psychiatric symptoms.

Negative for appropriate interaction and consolable.
Negative for focal weakness, gait disturbance, incoordination, seizures and tremors.

Neurological
See history of the Present Illness.
Psychiatric
See History of Present Illness.
**Dermatologic:**
Positive for:
- Pigment change.

Negative for pruritus and rash.

See History of Present Illness.
**Musculoskeletal:**
Negative for bone/joint symptoms.

**Hematology:**
Negative for easy bleeding and easy bruising.

**Immunology:**
Negative for animals at home, environmental allergies and food allergies.

**Vital Signs**
**Height**

| Time | ft | in | cm | Last Measured | Method | % |
|---|---|---|---|---|---|---|
| 1:56 PM | 2.0 | 11.63 | 90.50 | 09/12/2013 | measured | 46 |

**Weight / BSA / BMI**

| Time | lb | oz | kg | Context | % | BMI kg/m2 | BSA m2 |
|---|---|---|---|---|---|---|---|
| 1:56 PM | 34.39 | | 15.600 | dressed without shoes | ~98 | 19.04 | .63 |

**Head / Neck / Waist / Hip Circumference**

| Time | Head in cm | % | Neck in cm | Waist in cm | Hip in cm | Waist / Hip |
|---|---|---|---|---|---|---|
| 1:56 PM | 20.24 | 51.40 ~60-85 | | | | |

**Measured By**

| Time | |
|---|---|
| 1:56 PM | Jenny Morales |

**Physical Exam**
**Constitutional:** Patient appears well nourished and well developed. No acute distress noted.
**Head/Face:**
Facial features are symmetric.

Howard, Christien                        03/23/2011 13/6

# St. Christopher's Pediatric Associates

3601 A Street
Philadelphia, PA 19134-1095
Tel: 215-427-5000
www.stchristophershospital.com

| | |
|---|---|
| Patient: | Christien Howard |
| Date of Birth: | 03/23/2011 |
| Date: | 07/10/2014 2:00 PM |
| Historian: | parents |
| Visit Type: | Office Visit |

History of Present Illness:
1. metabolic

**Social History**
Reviewed, no changes.  Last detailed document date: 09/12/2013.

## Vital Signs
**Height:**

| Time | ft | in | cm | Last Measured | Method | % | Measured By |
|---|---|---|---|---|---|---|---|
| 1:41 PM | 3.0 | 3.61 | 100.60 | 07/10/2014 | measured | 79 | Nataly Arroyo |

**Weight / BSA / BMI:**

| Time | lb | oz | kg | Context | % | BMI kg/m2 | BSA m2 | Measured By |
|---|---|---|---|---|---|---|---|---|
| 1:41 PM | 39.02 | | 17.700 | dressed without shoes | 0 | 17.48 | 0.70 | Nataly Arroyo |

**Blood Pressure:**

| Time | BP mm/Hg | Position | Side | Site | Method | Cuff Size | Measured By |
|---|---|---|---|---|---|---|---|
| 1:41 PM | | | | | manual | pediatric | Nataly Arroyo |

**Head / Neck/Waist / Hip Circumference:**

| Time | Head in cm | % | Neck in cm | Waist in cm | Hip in cm | Waist/ Hip | Measured By |
|---|---|---|---|---|---|---|---|
| 1:41 PM | 20.51  52.10 | 0 | | | | | Nataly Arroyo |

**Medications Active Prior to Today's Visit**
None.

## Allergies
No known allergies.
Reviewed, no changes.

Electronically signed by:  Reena N. Jethva MD  07/10/2014

**Document generated by: Nataly Arroyo 07/10/2014**

**DEPARTMENT OF HUMAN SERVICES**
1515 Arch Street, Philadelphia, PA 19102
215-683-4DHS (4347)

**Commissioner**
CYNTHIA F. FIGUEROA

**First Deputy Commissioner**
JESSICA S. SHAPIRO

**Deputy Commissioners**

**Child Welfare Operations**
KIMBERLY ALI

**Finance**
CHRISTOPHER SIMI

**Juvenile Justice Services**
TIMENE FARLOW

**Administration and Management**
VONGVILAY MOUNELASY

**Performance Management and Accountability**
LIZA RODRIGUEZ

## CITY OF PHILADELPHIA

**Winchella Howard**
**5321 Wayne Avenue**
**#301**
**Philadelphia, PA  19144**

Dear <u>Ms. Howard</u>:                                    <u>(Mother)</u>

    Enclosed are materials which describe the plan for services to be provided to the <u>Reed</u> family for the next six months.  They are forwarded to you for your information and reference during that period.

**Enclosures:  (only those checked)**
Initial Family Service Plan (FSP)
Review of the FSP                                                <u>X</u>
Revision of the FSP                                            <u>X</u>
Initial Child Permanency Plan (CPP)                    <u>X</u>
Review Child Permanency Plan
Revision Child Permanency Plan
Current Court Order (Dispositional Order)          <u>X</u>
and petition for the upcoming hearing

The next court hearing will be on: <u>9/6/18</u> in Court Room "<u>5B</u>" at <u>10:30 A.M.</u>
The location for the hearing will be Philadelphia Family Court, <u>1501 Arch Street – Phila., PA 19102</u>.

    If you have any questions about these materials, please contact me or my supervisor at the telephone numbers listed below.  If we are unavailable, leave a voice mail message so that we can return your call.

Thank You,

Barbara Forest, Social Worker
215-683-6229

Marsha Trotter, Supervisor
215-683-6213

**DHS Date Stamp:    7/31/18**

**PLEASE SEE REVERSE SIDE OF THIS LETTER DESCRIBING YOUR RIGHTS AS A PARENT OF A CHILD RECEIVING SERVICES FROM DHS.**

rh/7th/OF

---

If you have a question, complaint, concern, or suggestion about DHS and its operations
call the Commissioner's Action Response Office (CARO) at 215-683-6000
or visit our website:  dhs.phila.gov and click on the "suggestions" link.

COURT LETTER  (Rev. 10/2016)

| FAMILY SERVICE PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| ☐ INITIAL  ☒ REVISION | CHILDREN AND YOUTH DIVISION |

| 1. CASE NAME | 2. CYD CASE NUMBER | 3. DATE ACCEPTED FOR SERVICE |
|---|---|---|
| Reed | 620543 | 6/18/2013 |

| 4. DATE OF FAMILY SERVICE PLAN | 5. DATE OF THIS REVISION | 6. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/12/2017 | 6/25/2018 | 12/5/2018 |

**7. IDENTIFYING INFORMATION - ALL FAMILY MEMBERS AND SIGNIFICANT OTHERS**

| SUF | NAME | DOB | ADDRESS & ZIP (IF UNKNOWN INDICATE) | TELEPHONE NO. |
|---|---|---|---|---|
| E | Camelia Reed | 8/31/2017 | 1832 Latona St  19147 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| MOTHER | Winchella Howard | 9/30/1981 | 5321 Wayne Ave#301, Phila Pa  19144 | |
| FATHER | Cameron Reed | 6/19/1967 | 5321 Wayne Ave Phila Pa 19144 #301 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| SIGNIFICANT OTHER (identify relationship) | | | | |
| | | | | |
| | | | | |
| | | | | |

**8. WRITE CIRCUMSTANCES UNDER WHICH CASE WAS ACCEPTED FOR SERVICE:**
**DESCRIBE:** (A) SPECIFIC SITUATION; (B) EFFECT ON CHILDREN; (C) CONTRIBUTING FACTORS TO SITUATION **OR** WRITE THE REASON FOR REVISION.

Revision needed to change the goal to adoption.

2018 JUL 27 PM 12:01

**9. Primary and Concurrent Permanency Goals or Alternate Plan**

Enter each child's suffix as applicable.

- Child remains in the home with a goal of family stabilization and is not at imminent risk of placement outside the home.

  ———

- Child remains in the home with a goal of family stabilization and:

  o Is at imminent risk of placement outside the home. Absent effective preventative services provided for in this service plan, foster care is the planned placement for the child. Foster care is defined at foster family homes, kinship foster homes, group homes, emergency shelters, residential facilities, child-care institutions, and pre-adoptive homes.

  ———

  o Is at imminent risk of placement outside the home. Absent effective preventative services provided for in this service plan, placement outside the home in a setting other than foster care is the planned placement for the child (hospitalization, secure residential treatment, juvenile detention, or other secure juvenile facilities).

  ———

Enter each child's suffix for both:

|  | Primary Goal | Concurrent Goal |
|---|---|---|
| – Child entered or remains in placement outside the home with a goal of: | | |
| o Leaving DHS custody and: | | |
| ▪ Returning to his or her parent, guardian, or custodian. | ——— | ——— |
| ▪ Adoption. | E | ——— |
| ▪ Placement with a permanent legal custodian (PLC). | ——— | ——— |
| o Remaining in DHS custody and: | | |
| ▪ Placement with a fit and willing relative. | ——— | E |
| ▪ Placement in another planned permanent living arrangement (APPLA). (Only for youth age 16 years and older with court approval). | ——— | ——— |

Family Service Plan (Page 2) Rev. 9-13-16

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 172 of 404

| CASE NAME: | Reed | CASE NO. | 620543Reed |
| --- | --- | --- | --- |

| | OBJECTIVE SECTION 1 of 4: PARENTS and LEGAL GUARDIANS | | |
| --- | --- | --- | --- |
| | PRIMARY GOAL | | |

| Objective | Actions to Achieve Objectives (specify by whom and how often | Services to be Provided | Provider Name and Phone No. | Completion Date |
| --- | --- | --- | --- | --- |
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, AND NEEDS AND APPROPRIATENESS OF SERVICES, AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY. | CASE MANAGEMENT | Department of Human Services Children and Youth Division 215-683-6100 | 6/18/18 |
| | Ms Howard to be referred to BHS for a consultation/evaluation and to follow through with recommendation or provider | mental health | BHS, CBH | 6/18/18 |
| | Mr Reed referred to CEUfor evaluation-dual diagonsis and to follow recommendations of provider.   Provide three random drug screens. | mental health, D&A | Mental Health, D*A | 6/18/18 |
| | Mr Reed and Ms Howard to sign all releases for CYD to obtain information regarding progress of reports, medications and attendances. | compliance | DHS  215-693-6229 | 6/18/18 |
| | Mr Reed and Ms Howard to attend child's medical appointments and follow up with provider | medical care | The Village, St Christopehers | 6/18/18 |
| | Ms Howard to attend parenting and medical training if needed. | parenting | the Village, TBD | 6/18/18 |
| | Ms Howard and Mr Reed to sign all consents for medical treatments for child | medical consents | the Village , DHS | 6/18/18 |
| | Parents to comply  with PCE evaluations. | PCE | ATA | 6/18/18 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER Document 1 Filed 02/20/20 Page 173 of 404

## FSP OBJECTIVES FOR PARENTS

1. To understand how and why child(ren) were injured.

2. To learn and use non-violent, non-physical discipline methods.

3. To provide the child(ren) with adequate supervision at all times.

4. To meet the child(ren)'s daily basic needs including food and clothing.

5. To learn and understand age appropriate behavior and expectations for child(ren).

6. To provide adequate and safe living conditions.

7. To protect the child from any further abuse.

8. Other _____

## FSP OBJECTIVES FOR PARENTS, CHILDREN, and YOUTH

9. To achieve and maintain recovery from drug and/or alcohol problems.

10. To stabilize mental health problems.

11. To correct or stabilize physical health, vision, hearing or dental problems.

12. To understand sexual victimization and to resolve issues that occurred due to the abuse.

13. To eliminate family violence.

14. To understand and engage in responsible sexual behavior.

15. To improve the relationship between parent(s) and child(ren).

16. To address deficits around mastery of age appropriate developmental tasks and skills.

## FSP OBJECTIVES PARENTS AND YOUTH OVER 16 YEARS

17. To obtain and complete job training and or seek and maintain employment.

18. Other _____

## FSP OBJECTIVES FOR CHILDREN and YOUTH

19. To perform satisfactorily in school.

20. To acquire social skills and age appropriate relationships.

21. Other _____

## FSP OBJECTIVES for OTHERS

22. Cooperate with the certification process.

23. Visit with child or youth on a consistent basis.

24. Establish and maintain nurturing relationship with the child or youth.

25. Other _____

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER Document 1 Filed 02/20/20 Page 174 of 404

| CASE NAME: | Reed | | CASE NO. | 620543 | |
|---|---|---|---|---|---|

## OBJECTIVE SECTION 2 of 4: PARENTS, LEGAL GUARDIANS, and OTHERS
## CONCURRENT GOAL / ALTERNATE PLAN
(Placement Services)          (In-Home Services)

| Objective | Actions to Achieve Objectives (specify by whom and how often | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|---|
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, AND NEEDS AND APPROPRIATENESS OF SERVICES, AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY. | CASE MANAGEMENT | Department of Human Services Children and Youth Division 215-683-6100 | 12/5/18 |
| | Ms Howard referred to BHS for evaluation and follow recommendations of provider. | mental health | CBH, BHS | 12/5/18 |
| | Mr Reed referred to CEU for dual diagonisis and to follow recommendations of provider | mental health, D7A | CEU | 12/5/18 |
| | Parents to sign authorizations for CYD to obtain progress reports, attendance and medication. | compliance, releases | DHS-215-683-4275 | 12/5/18 |
| | Parents to allow DHS to asses the home prior to 1/23/18. | compliance, home asessment | DHS -215-683-4275 | 12/5/18 |
| | Parents to attend visitation to improve relationship | visitation, medical care | the Village | 12/5/18 |
| | Parents to attend medicasl appointments and follow up with providers. | foster care, medical | the Village , St Christopehers | 12/5/18 |
| | Ms Howard to attend parenting and or medical training if necessary. | parenting | the Village, TBD | 12/5/18 |
| | Parents to sign consents for needed medical treatment. | medical concerns | the Village, DHS | 12/5/18 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER Document 1 Filed 02/20/20 Page 175 of 404

## FSP OBJECTIVES FOR PARENTS

1. To understand how and why child(ren) were injured.

2. To learn and use non-violent, non-physical discipline methods.

3. To provide the child(ren) with adequate supervision at all times.

4. To meet the child(ren)'s daily basic needs including food and clothing.

5. To learn and understand age appropriate behavior and expectations for child(ren).

6. To provide adequate and safe living conditions.

7. To protect the child from any further abuse.

8. Other _____

## FSP OBJECTIVES FOR PARENTS, CHILDREN, and YOUTH

9. To achieve and maintain recovery from drug and/or alcohol problems.

10. To stabilize mental health problems.

11. To correct or stabilize physical health, vision, hearing or dental problems.

12. To understand sexual victimization and to resolve issues that occurred due to the abuse.

13. To eliminate family violence.

14. To understand and engage in responsible sexual behavior.

15. To improve the relationship between parent(s) and child(ren).

16. To address deficits around mastery of age appropriate developmental tasks and skills.

## FSP OBJECTIVES PARENTS AND YOUTH OVER 16 YEARS

17. To obtain and complete job training and or seek and maintain employment.

18. Other _____

## FSP OBJECTIVES FOR CHILDREN and YOUTH

19. To perform satisfactorily in school.

20. To acquire social skills and age appropriate relationships.

21. Other _____

## FSP OBJECTIVES for OTHERS

22. Cooperate with the certification process.

23. Visit with child or youth on a consistent basis.

24. Establish and maintain nurturing relationship with the child or youth.

25. Other _____

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 176 of 404

| CASE NAME: | ReedReed | CASE NO.: | | DATE OF REVIEW: | 6/25/18 |
|---|---|---|---|---|---|

### REVIEW Section 1 of 4: PARENTS and LEGAL GUARDIANS
### PRIMARY GOAL

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occurred | Objectives Achieved |
|---|---|---|---|---|---|
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, NEEDS AND APPROPRIATENESS OF SERVICES AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY | CASE MANAGEMENT | yes | yes | no |
| | Ms Howard  referred to BHS for consutation/evaluation and to follow recommendations of provider | mental health | yes | no | no |
| | Father referred to CEU for evaluation-dual diagonisis and to follow recommendations of provider | mental health, D&A | yes | no | no |
| | Parents to sign authorization for CYD to obtain information of progress, medications and attendance. | compliance, releases | yes | yes | no |
| | Parents to attend visitation  to improve parent-child relationship | visitation, foster care | yes | yes | no |
| | Parents to attend medical appoinmtments  and follow up with provider agency | foster care, medical | yes | yes | no |
| | Mother to attend parenting and or medical training | parenting | yes | yes | no |
| | Parents to sign al l consents for child | medical  consents | yes | yes | no |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 177 of 404

DESCRIBE YOUR ASSESSMENT OF PROGRESS ALLEVIATING PROBLEMS/CONDITIONS NECESSITATING SERVICE:    (Continue on subsequent review pages as needed).

Placement continues to be necessary and appropriate. Father's objectives are not being met at this time. mother continues to meet some of her objectives.

Continue on p. _____

GIVE ASSESSMENT OF CHILDREN'S CONTINUED SAFETY AT HOME:    (Continue on subsequent review pages as needed).

Camella appears to be safe in the home with basic needs being met.

Continue on p. _____

| RESULTS OF THE REVIEW: | ☒ REVISIONS NEEDED TO FSP | SIGNATURE OF SOCIAL WORKER: | *Barbara Forest* |
| | ☐ SERVICES NO LONGER NEEDED | SIGNATURE OF SUPERVISOR: | *Marsha W Liotte* |

Family Service Plan Rev. 9-13-16

P. 8 of 21

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 178 of 404

| CASE NAME: | ReedReed | CASE NO.: | | DATE OF REVIEW: | 6/25/18 |
|---|---|---|---|---|---|

## REVIEW Section 2 of 4: PARENTS, LEGAL GUARDIANS, and OTHERS
## CONCURRENT GOAL / ALTERNATE PLAN
(Placement Services)          (In-Home Services)

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occurred | Objectives Achieved |
|---|---|---|---|---|---|
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, NEEDS AND APPROPRIATENESS OF SERVICES AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY | CASE MANAGEMENT | yes | yes | no |
| | Ms Howard t be referred to BHS for consultation/evaluation and to follow through with provider | mental health ✔ | yes | no | no |
| | Father to be referred to CEU for evaluation-dual diagonsis and monitroing. Father to follow recommendations of provider. | mental lhealth, D&A | yes | no | no |
| | Parents to sign authorization for CYD to obtain information of progress reports, atendance and medications. | compliance, releases | yes | yes | no |
| | Parents to allow DHS to assess home prior to NCD of 1/23/18. | home assessment | yes | yes | yes |
| | Parents to visit consistently to improve the relationship with the child | visitation | yes | yes | no |
| | Parents to attend child's medical appointments and follow up with provider. | foster care , medical | yes | yes | no |
| | Ms Howard to attend parenting and medical training if needed. | parenting | yes | yes | no |
| | Parents to sign consents for medical care of the child | medical consents | yes | yes | no |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Family Service Plan Rev. 9-13-16

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 179 of 404

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | |

DESCRIBE YOUR ASSESSMENT OF PROGRESS ALLEVIATING PROBLEMS/CONDITIONS NECESSITATING SERVICE:   (Continue on subsequent review pages as needed).

Continued from p. _____

Camella is still in need of placement at this time.  Basic needs and medical needs are being met by the foster parent.  Father appears not be compliant with necessary objectives. Mother continues to work on some of the objectives.

Continue on p. _____

GIVE ASSESSMENT OF CHILDREN'S CONTINUED SAFETY AT HOME:      (Continue on subsequent review pages as needed).

Continued from p. _____

Camella appears to be safe in the foster home.

Continue on p. _____

RESULTS OF THE REVIEW:      ☒    REVISIONS NEEDED TO FSP         SIGNATURE OF SOCIAL WORKER: _Barbara Forest_

_Supervisor_      _Marsha D Troth_

Family Service Plan Rev. 9-13-16      P. 10 of 21

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 180 of 404

| ☐ SERVICES NO LONGER NEEDED | SIGNATURE OF SUPERVISOR: _____ |
|---|---|

## PLAN DEVELOPMENT and COMPLETION

I.    Insert NAMES of parents, child(ren), their representatives, and service providers, and DHS Social Worker and Supervisor.
     NOTE: Signatures of DHS Social Worker and Supervisor should be written on the last two lines of section across from K & L.
II.    Describe RELATIONSHIP to family of each individual in I.
III.    Insert **Regular** and **Emergency** Telephone numbers for PARENTS, CHILDREN in PLACEMENT, DHS Staff. Add other known telephone numbers.
IV. A.    Document the OPPORTUNITY provided to parties listed in I. TO PARTICIPATE in development of Plan by inserting the date and method used.
     Method Codes are: (A) Physically Given; (B) Physically Present; (C) By Telephone; (D) By Letter or Written Communication; (E) Whereabouts unknown; (F) No Participation; (G) Other (Describe) _____
   B.    Document date and method of individual's ACTUAL PARTICIPATION. Use same method code as A. above. If none, write "none."
     NOTE: If parent(s)' whereabouts are unknown, list name in L and write "Whereabouts Unknown" in IV. and V.
V.    Document DISTRIBUTION OF COPIES of FSP, its CPP's and Parents Rights to Appeal by inserting date in appropriate column. NOTICE of PARENTS RIGHTS to APPEAL is on the reverse of this form. Insert date forms are distributed to parents across from parent names in I.
     Please remember that a copy of forms must be sent to COURT when petition is made for custody, judicial, and dispositional reviews.
VI.    SIGNATURES - Parent(s) or legal guardian and children age 14 and older must be given the OPPORTUNITY to SIGN the FSP & related forms. Identify individual's signature by inserting line letter from I. in column to the left of Signature Line. Insert date form is signed. Please remember SIGNATURE CONSTITUTES AGREEMENT WITH THE PLAN.

| CASE NAME: | Reed | | | | | | CASE NO. | 620543 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **I.** | **II.** | **III** | | **IV.** | | | | **V.** | |
| | NAMES | RELATIONSHIP | TELEPHONE | | DATE AND METHOD CODE OF INVITATION TO PARTICIPATE | | DATE AND METHOD CODE OF ACTUAL PARTICIPATION | | PLAN & RIGHTS DISTRIB. DATE | |
| | | | REGULAR | EMERGENCY | | | | | GIVEN | MAILED |
| a. | Winchella Howard | MOTHER | | | 6/8/2018 | D | 6/25/18 | B | | |
| b. | Cameron Reed | FATHER | | | 6/8/2018 | D | 6/25/18 | B | | |
| c. | Gillian Dagress | CA | 2677656819 | | 6/8/2018 | D | none | F | | |
| d. | Lue B. Frierson, ESQ | FAT ATTY | | | 6/8/2018 | D | none | F | | |
| e. | Robins W. Banister Esq | MOT ATTY | 2157603242 | | 6/8/2018 | D | none | F | | |
| f. | Arielle Fonrose | PSW | | | 6/8/2018 | D | none | F | | |
| g. | | | | | | | | | | |
| h. | | | | | | | | | | |
| i. | | | | | | | | | | |
| j. | | | | | | | | | | |
| k | Barbara Forest | DHS SOC. WORKER | 3-6229 | 215-683-6100 | Signature: Barbara Forest | | | | Date: 6/25/18 | |
| l. | Marsha Trotter | DHS SUPERVISOR | 3-6213 | 215-683-6100 | Signature: Marsha D Trotter | | | | Date: 7/10/18 | |

| VI. SIGNATURES (Signature constitutes agreement) | DATE | VI. SIGNATURES (Signature constitutes agreement) | DATE |
|---|---|---|---|
| a. | Refused to sign | 6/25/18 | | |
| b. | Refused to sign | 6/25/18 | | |

Family Service Plan Rev. 9-13-16

P. 19 of 21

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 181 of 404

## ADVERTENCIA DE SUS DERECHOS DE APELAR

Como padre de un menor que recibe servicios del Departmento de Servicios Humanos (DHS) o de agencias relacionadas, Ud. tiene el derecho de apelar los siguientes:

cualquiera desicion hecha por DHS que pueda resultar en una negacion, o reduccion, o descontinuacion, o suspension, o conclusion de servicios.

si DHS, como la agencia del condado, no responde prontamente a su solicitud de servicios sociales.

Hay dos formas de apelar la desicion de DHS:

A) Si su caso ha sido visto en la Corte Familiar (Family Court), usted tiene el derecho de pedirle a un oficial de la Corte que se efectue una Vista sobre la desicion de DHS con respecto a Ud. y su familia. Si desea una Vista en la Corte Familiar, haga el favor de marcar el encasillado. ☐ DHS tramitara una Vista ante la Corte urgentemente.

B) Usted tambien puede apelar la desicion de DHS con la Oficina de Vistas y Audiencias del Departamento de Bienestar Publico Department of Public Welfare del estado de Pennsylvania. Si asi lo desea, haga el favor de marcar el encasillado. ☐

Se le concede 15 dias a partir de la fecha de esta advertencia para enviar esta carta, con su firma, a su tranbajador social en DHS. Si no envia esta carta en el tiempo estipulado, no sera posible iniciar el proceso de apelacion.

Si decide apelar, Ud. puede contar con los servicios de un abogado o otro representante. Si desea un abogado, pero no tiene recursos para pagarle, pongase en contacto con:

Servicio Legales Comunitarios (Community Legal Services)
1424 Chestnut Street
Philadelphia, PA 19102
Telefono: (215) 981-3700

## ADVERTENCIA ADICIONAL A PADRES CON HIJOS EN EL CUIDADO DE DHS

Usted sera notificado antes de cualquier cambio en el lugar de estancia de su(s) hijo(s) - a menos que este cambio sea en un caso de emergencia. Tambien sera notificado si cambia los arreglos que se han hecho para las visitas con sus hijos.

Usted siempre puede pedir que se le devuelva su(s) hijo(s) en cualquier momento, siempre que esta peticion sea hecha por los medios apropriados.

Se espera que Usted trabaje para alcanzarlas metas y plan de accion descritas en este plan. Si Usted se niega a seguir este plan, es posible que el Departamento comienze el procedimiento legal para terminar sus derechos de padre.

Si Usted no esta de acuerdo con este plan, no lo firme. Ademas tiene el derecho de apelarlo con las Oficinas de Vistas y Audiencias del Depatamento de Bienestar Publico de Pennsylvania o en la Corte Menor de Philadelphia, Division Juvenil.

## ADVERTENCIA A TODOS LOS PADRES

Los paders tienen que avisar al Departamento de Servicios Humanos (DHS) con 24 horas de anticipacion cuando ellos o el hijo o la hija se cambian de direccion o se mudan.

## NOTICE OF PARENTS' RIGHT TO APPEAL

As a parent of a child receiving services from the Department of Human Services (DHS), you have the right to appeal:

any determination made which results in a denial, reduction, discontinuance, suspension or termination of service.

the County Agency's failure to act upon a request for service with reasonable promptness.

You have the right to appeal DHS' determination in either of two ways:

A) If the Family Court is involved with your case, you may ask the Court to schedule a hearing regarding DHS' action regarding you and your children. If you wish to have a hearing in Family Court, please check this box. ☐

B) You have the right to appeal DHS' determination to the State's Department of Public Welfare (DPW) Office of Hearing and Appeals. Please check this box if you wish to do this. ☐

You have 15 calendar days from the date this notice was given or mailed to you (see V. on other side), to return this notice to your DHS social worker. If you do not return the notice within hat period, you will not be able to appeal DHS's decision to a fair hearing.

If you decide to appeal, you have the right to be represented by an attorney or other representative. If you wish to be represented by a lawyer and cannot afford one, contact:

Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19102
Telephone: (215) 981-3700

During your appeal procedure, or if you fail to appeal the determination in the attached plan, the attached service plan as signed by the DHS social worker is in effect.

## ADDITIONAL NOTICE TO PARENTS OF CHILDREN IN PLACEMENT

Except for emergencies, you will be notified prior to any change in the placement location or visiting arrangements unless the goal of placement is adoption.

You can request the return of your child at any time through the appropriate channels.

You are expected to work toward the goal and objectives of this plan. Consistent failure to do so may result in the initiation of action in accordance with law to terminate your parental rights.

If you disagree with this plan, you are not required to sign it and have the right to appeal to the Office of Appeals, Pennsylvania Department of Public Welfare, or the Philadelphia Court of Common Pleas, Juvenile Division as delineated above.

## NOTICE TO ALL PARENTS

Parents must notify DHS within 24 hours of any change of address for your child or family.



**Community Council Health Systems** Page 1 of 4
4900 Wyalusing Ave. Phila. Pa 19131

| | | | |
|---|---|---|---|
| Client Name: | **WINCHELLA HOWARD 9/30/1981** | Date/Time: | **5/20/2014 4:00 PM to 5:00 PM** |
| Address: | **5321 Wayne Ave** | Insurance: | **0017922584** |
| | **Philadelphia PENNSYLVANIA 19144** | Employee Name: | **David Frankel M.D. Psychiatrist** |
| Service ID / Type: | **887625 / AS EM CBEMD** | | |
| CPT / Dx: | **90792 296.82 / 296.82 - ATYPICAL DEPRESSIVE DISORDER 2 0017922584 OMH** | | |

# START CBE (PART II) EVALUATION

## EVALUATION

**Outpatient Service Type**: Evaluation
**Chief Complaint / Presenting Problems (Check all items reported by patient)**: Depressed Mood
Appetite Problems
Sleep Problems
Family / Parenting Problems
**Data obtained from**: : Patient
**Summary/Overview**: ...
33 y. o. AA female who is referred by DHS.

The pt. says that her children were taken by DHS about 8 or 9 months ago. The pt. relates a story about her water having gotten turned off, because of work being done by the city. She says that she and her partner were buying water, and using it for cooking, washing. She says that this went on for about 2 months. Someone phoned DHS, and told them that pt. had been out of water for 9 months.

In order to satisfy DHS, the couple moved. The place that they moved to was called "too cluttered" by DHS. The next place they moved to was also deemed unsuitable for some reason.

The pt.'s partner works in environmental services. She is a stay - at - home mother. The pt. says that she has become quite depressed. She is unable to sleep through the night. She has no energy, and would like to stay in bed. She feels hopeless at times. Her appetite varies. There are no psychotic symptoms.
**Review of Psychiatric Syndromes (findings which help narrow the differential diagnosis)**: ...
The pt. describes an increasingly severe depression. There is no history of mania. No psychotic symptoms.

## BEHAVIORAL HEALTH

**Current Behavioral Health Treatment (Comment on Effectiveness of and Compliance to Current Treatments)**: ...
The pt. has begun treatment at ARC. She feels like she is making some progress although she is still depressed.

## MEDICAL

**Any medications?**: None
**List the current medications, dosage of each, effectiveness, compliance, reason for stopping and for how long client was on the medication**: ...
No meds.
**List previous psychotropic medication trials, dosage regimen, date of last dose, effectiveness, compliance, reason stopped and how long taken**: ...
No meds.
**General Health Status**: Good
**Medical, Surgical and Physical Trauma History**: : ...
Iron Deficiency anemia. Takes ferrous sulfate.
**Allergies**: No
**Family Medical History**: ...

COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

June 23, 2014

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard·

Your kids' cases were in court on June 20, 2014.  DHS said you are doing everything you are supposed to do.  Unfortunately, Mr. Reed is not doing everything he is supposed to do.

Please keep doing all the things you are doing now.  I want you to work with Ms. Smack (215-981-3780) on the issues that we need to address to get the children back with you.

Your kids' cases will come back to court on **September 2, 2014 at 10:30 a.m. in Courtroom "G", 1801 Vine Street**.  You must attend this hearing.

Again, Ms. Smack can be reached at (215) 981-3780 and I can be reached at (215) 981-3791.  We both look forward to working with you and hearing from you frequently.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

December 2, 2014

Ms. Winchella Howard
C/o Genea Davis
The Village
6517 Chester Avenue
Philadelphia, PA  19142

Dear Ms. Howard:

I am sending this letter to you through Ms. Davis because you do not get the letters I send to you at your apartment on Wayne Avenue.

Your kids' cases were in court on December 2, 2014.  The kids remain in foster care.  You are doing much better at Family School and you are in therapy.  You are making good progress.  Mr. Reed is making progress too

Ms. Davis is helping you do your SSI application and is helping you apply for ID services.  Please work with her to get both of these things done.  If you need extra help, please call Ms. Lili at (215) 981-3780.

Your kids' cases will come back to court on **March 3, 2015 at 9:30 a.m. in Courtroom 5B, 1801 Vine Street**.  You must attend this hearing.

Please keep up the great work and give me a call if you have any questions or concerns.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

December 2, 2014

Ms. Genea Davis
Treatment Foster Care Case Manager
The Village
6517 Chester Avenue
Philadelphia, PA  19142

Dear Ms. Davis:

I have enclosed a letter for Winchella Howard as she never receives the mail that I send to her on Wayne Avenue. I would appreciate it if you would give this letter to her the next time you see her. I can be reached at (215) 981-3791 if you have any questions or concerns.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

Enclosure



# Community Council Health Systems Page 1 of 4
4900 Wyalusing Ave. Phila. Pa 19131

| | | | |
|---|---|---|---|
| Client Name: | **WINCHELLA HOWARD 9/30/1981** | Date/Time: | **5/20/2014 4:00 PM to 5:00 PM** |
| Address: | **5321 Wayne Ave** | Insurance: | **0017922584** |
| | **Philadelphia PENNSYLVANIA 19144** | Employee Name: | **David Frankel M.D. Psychiatrist** |
| Service ID / Type: | **887625 / AS EM CBEMD** | | |
| CPT / Dx: | **90792 296.82 / 296.82 - ATYPICAL DEPRESSIVE DISORDER 2 0017922584 OMH** | | |

## START CBE (PART II) EVALUATION

### EVALUATION

**Outpatient Service Type**: Evaluation
**Chief Complaint / Presenting Problems (Check all items reported by patient)**: Depressed Mood
Appetite Problems
Sleep Problems
Family / Parenting Problems
**Data obtained from:** : Patient
**Summary/Overview:** ...
33 y. o. AA female who is referred by DHS.

The pt. says that her children were taken by DHS about 8 or 9 months ago. The pt. relates a story about her water having gotten turned off, because of work being done by the city. She says that she and her partner were buying water, and using it for cooking, washing. She says that this went on for about 2 months. Someone phoned DHS, and told them that pt. had been out of water for 9 months.

In order to satisfy DHS, the couple moved. The place that they moved to was called "too cluttered" by DHS. The next place they moved to was also deemed unsuitable for some reason.

The pt.'s partner works in environmental services. She is a stay - at - home mother. The pt. says that she has become quite depressed. She is unable to sleep through the night. She has no energy, and would like to stay in bed. She feels hopeless at times. Her appetite varies. There are no psychotic symptoms.
**Review of Psychiatric Syndromes (findings which help narrow the differential diagnosis):** ...
The pt. describes an increasingly severe depression. There is no history of mania. No psychotic symptoms.

### BEHAVIORAL HEALTH

**Current Behavioral Health Treatment (Comment on Effectiveness of and Compliance to Current Treatments):** ...
The pt. has begun treatment at ARC. She feels like she is making some progress although she is still depressed.

### MEDICAL

**Any medications?:** None
**List the current medications, dosage of each, effectiveness, compliance, reason for stopping and for how long client was on the medication:** ...
No meds.
**List previous psychotropic medication trials, dosage regimen, date of last dose, effectiveness, compliance, reason stopped and how long taken:** ...
No meds.
**General Health Status:** Good
**Medical, Surgical and Physical Trauma History:** : ...
Iron Deficiency anemia. Takes ferrous sulfate.
**Allergies:** No
**Family Medical History:** ...

| Commonwealth of Pennsylvania | IN THE FAMILY COURT OF PHILADELPHIA COUN PENNSYLVANIA |
|---|---|
| In the Interest Of: | JUVENILE DIVISION |
| Cameron Reed, A Minor<br>Date of Birth: 07/16/2007 | DOCKET NO:    CP-51-DP-0001977-2012<br>FID:    51-FN-002936-2012 |

# MASTER'S RECOMMENDATION - PERMANENCY REVIEW

**PERSONS APPEARING AT HEARING**

The following persons appeared at this hearing: ACS Fritz Haverstick, DACAU Michelle Payne attorney for child, Harry Levin attorney for father, Community Legal Services M. Jinowski attorney for mother, DHS S/W Gladys Watson, DHS Rep. Regina Cade, Family School S/W, Presbyterian Children's Village S/W, Dep. Court Rep.: KD

AND NOW, this 9th day of May, 2014, the court finds:

**CONTINUING PLACEMENT - Necessity and Appropriateness**

The placement of the child continues to be necessary and appropriate.

**PERMANENCY PLAN - Compliance**

MOTHER - There has been moderate compliance with the permanency plan as to the mother, in that Mother receives Services thru ARC, Mental Health Services thru Community Counsel, complied with First Part of Parenting Capacity Evaluation. Mother receives Services thru Family School.

FATHER - There has been minimal compliance with permanency plan, in that Father Non-Compliant with FSP Objectives, Services and Recommendations. Father was Referred to ARC, Non-Compliant did not Comply with Second Half of Parenting Capacity Evaluation (Rescheduled 3 times). Report Submitted to the Court from CEU for Father.

**PERMANENCY PLAN - Reasonable efforts to finalize**

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

**CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility**

The current placement goal for the child is return to parent or guardian.

**CURRENT PLACEMENT - Child's Safety**

The child is safe in the current placement setting, Safe as of 4/30/2014

**ORDER OF COURT - On the basis of the above findings, IT IS HEREBY ORDERED THAT:**

Visitation - The additional condition(s) of visitation is set forth as Supervised with Parents as Arranged by the parties.

**ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:**

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care thru Presbyterian Children's Village. The Child's placement is the le st restrictive placement that meets the needs of the child and there is no less restrictive alternative av

RDERS

CP-51-DP-0001977-2012

In The Interest Of:  Cameron Reed, A Minor

THE COURT FURTHER FINDS:   Child doing well.

THE COURT FURTHER ORDERS:    Parents to comply with Second Part of Parenting Capacity Evaluation, comply with all FSP Objectives, Services and Recommendations.   Parents referred back to CEU for Evaluation, Full Drug & Alcohol Screen Dual Diagnosis once they Avail themselves to DHS.   Presbyterian Children's Village is to provide Parents with Advance Notice for child's Medical/Treatment Appointments.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - Permanency Review Hearing - 08/08/2014 - 11:30AM - 1801 Vine Street - Courtroom L

**SERVICE**

Copies To:   ACS Fritz Haverstick, DACAU Michelle Payne attorney for child, Harry Levin attorney for father, Community Legal Services M. Jinowski attorney for mother, DHS S/W Gladys Watson, DHS Rep. Regina Cade, Family School S/W, Presbyterian Children's Village S/W

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

RECOMMENDED:

_Michael Campbell_

Master Michael Campbell

This Master's recommendation is not final until confirmed by the Court below.  A party may challenge the Master's recommendation by filing a motion with the clerk of courts within three (3) days of receipt of the recommendation.

**ORDER**

AND NOW, this _7th_ day of _MAY_, _2014_, after consideration this court finds the recommendation by the Master is in the best interest of the child and is hereby adopted and ordered.

BY THE COURT:

_____
Judge

2

y's Name:                              Michael Pratt, Esquire
ey's Address:                          1515 Arch Street, 16th Floor
                                       Philadelphia, PA 19102-1595
Attorney's Telephone Number:           (215) 832-2101
Attorney's Identification Number:      318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF              :      AP#
**Christen Shaylen Howard**     :      FID: 51-FN-002936-2012
**aka Christian Reed**          :
**aka Christian Howard**        :
**aka Christen Howard**         :

## PETITION FOR
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

## RULE

**AND NOW,** this _____ day of _____,
20 _____, to Judicially resolve the attached Petition, it is hereby **ORDERED** and **DECREED** that

an evidentiary hearing is set for **Philadelphia Family Court, 1501 Arch Street Philadelphia, PA**

**19102, 5th Floor, Courtroom 5B, for the 6th day of January, 2016, at 2:00 P.M.**

At least ten (10) days written notice shall be given to the parent or parents, putative father, or

the parents or guardian of the *minor parent* whose rights are to be terminated.  Service shall be

accomplished either by regular mail and certified mail, return receipt requested, or by personal

service to his, her or their last known addresses.

## BY THE COURT:

_____ **J.**

**DHS # 620543 C**

1

# CHILD PERMANENCY PLAN OBJECTIVES

## CPP OBJECTIVE FOR PROVIDER

22     To provide child with a safe environment that will promote healthy growth and development.

## CPP OBJECTIVES FOR PARENT AND CHILD

23     To maintain relationship between parent(s) and child through participation in placement activities and through regular visitation.

24     Other: _____

## CPP OBJECTIVES FOR CHILD

25     To perform satisfactorily in school.

26     To resolve personal problems/issues and improve adjustment.

27     To understand responsible sexual behavior.

28     To provide youth with the opportunity to obtain skills for independent living.

29     To achieve a permanent home for the child through finalized adoption.

30     To receive regular or rehabilitative health care services.

31     To receive needed mental health treatment.

32     To avoid inpatient or institutional care through provision of medially oriented personal care services.

33     To acquire social skills and age appropriate relationships.

34     To address deficits around mastery of age appropriate developmental tasks and skills.

35     Other: _____

## CPP OBJECTIVES FOR OTHERS

36     Establish and maintain nurturing relationship with the child or youth.

37     Exercise the Reasonable and Prudent Parent standard.

38     Provide mentoring to youth.

39     Other: _____

# PETITION FOR GOAL CHANGE TO ADOPTION

RE:  Cameron Deross Reed, Jr. aka Cameron Reed
DHS # 620543 A
[DHS Social Work Services staff:  Ashley John]



Attorney's Name:
Attorney's Address:

Attorney's Telephone Number:
Attorney's Identification Number:

Michael Pratt, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
(215) 832-2101
318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                                    :        Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**              :        FID:  51-FN-002936-2012
**aka Cameron Reed**                      :

## PETITION FOR GOAL CHANGE TO ADOPTION

## RULE

**AND NOW**, this _____ day of _____,

20 _____, to Judicially resolve the attached Petition, it is hereby **ORDERED** and **DECREED** that

an evidentiary hearing is set for **Philadelphia Family Court, 1501 Arch Street Philadelphia, PA**

**19102, 5th Floor, Courtroom 5B, for the 6th day of January, 2016, at 2:00 P.M.**

The petition filed with the Court shall be mailed to all parties and their counsel of record at

least 15 days in advance of the hearing.  Service shall be accomplished either by regular mail and

certified mail, return receipt requested, or by personal service to his, her or their last known

addresses.

**BY THE COURT:**

_____
                                                            **J.**

**DHS # 620543 A**

1

Attorney's Name:
Attorney's Address:

Michael Pratt, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595

Attorney's Telephone Number:
Attorney's Identification Number:

(215) 832-2101
318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                              :        Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**        :        FID:  51-FN-002936-2012
**aka Cameron Reed**                :

## PETITION FOR GOAL CHANGE TO ADOPTION

1. Petitioner, Philadelphia Department of Human Services, Children and Youth Division (hereinafter "DHS"), is the local government agency responsible for the care and supervision of dependent children in Philadelphia.

2. The above-named child is dependent under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301 - 6365 (1982 & Supp. 1990)

3. This child's mother is **Winchella Howard**. Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. She is of **the African American** race and **the unknown** faith. The mother's birthdate is **September 30, 1981**. The mother's marital status is **unknown**.

4. This child's putative/natural/presumptive father is **Cameron Deross Reed aka Cameron Reed**. His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. He is of **the African American** race and **the unknown** faith. The father's birthdate is **June 19, 1967**. The father's marital status is **unknown**.

5. The child, who was born on **July 16, 2007**, in **Philadelphia, PA**, was adjudicated dependent on **November 4, 2013** and committed to the Petitioner on **November 4, 2013**. The child has been in the custody of the Petitioner continuously since **November 4, 2013**.

2

6. Petitioner hereby petitions this Honorable Court pursuant to 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74 that the disposition best suited to the protection and physical, mental and moral welfare of the above-named child is Adoption.

7. Upon information and belief, the facts which support this goal change to adoption are as follows:

See <u>Statement of Facts</u> attached hereto and incorporated herein as "Exhibit A."

WHEREFORE, petitioner prays this Honorable Court to order that the disposition best suited to the welfare of the child is the goal of Adoption.

Respectfully submitted,

Michael Pratt, Esquire
Assistant City Solicitor

3

Attorney's Name:
Attorney's Address:

Michael Pratt, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
Attorney's Telephone Number:               (215) 832-2101
Attorney's Identification Number:          318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                                    :        Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**              :        FID: 51-FN-002936-2012
**aka Cameron Reed**                      :

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

By its Petition, Petitioner, the Philadelphia Department of Human Services, Children and

Youth Division, having filed a Petition proceeding under 42 Pa.C.S.A. § 6351 and 55 Pa. Code

§ 3130.74 seeks a goal change to Adoption for the above child, the Court makes the following

Findings of Fact and Conclusions of Law:

The Court, after a hearing on the Petition for Goal Change and after taking testimony and/or

receiving a Stipulation as to the Facts as the basis for the goal change, finds that the Petitioner has

established by clear and convincing evidence the following:

4

## FINDINGS OF FACT

1. The subject of this Petition is a minor child named **Cameron Deross Reed, Jr. aka Cameron Reed** who was born on **July 16, 2007** in **Philadelphia, PA**.

2. The mother of the child is **Winchella Howard** who was born on **September 30, 1981** in **Philadelphia, PA**. Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. She is of **the African American** race and **the unknown** faith.

3. The mother **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

4. The putative/natural/presumptive father of the child is **Cameron Deross Reed aka Cameron Reed** who was born on **June 19, 1967** in **Philadelphia, PA**. His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. He is of **the African American** race and **the unknown** faith.

5. The putative/natural/presumptive father **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

6. The child was adjudicated dependent on **November 4, 2013** by the Honorable **Allan L. Tereshko.** The Family Service Plan goal has been changed to **Adoption.**

7. Since **November 4, 2013,** the child has been without essential parental care, control and subsistence necessary for the child's physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time;

8. The said child has been in the care and custody of the Petitioner continuously for a period in excess of six (6) months, specifically since **November 4, 2013.**

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter;

5

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, 8th floor, Philadelphia, PA  19102.

11. The Petitioner is willing and able to take custody of the child and to arrange for and consent to his/her adoption by suitable persons;

WHEREFORE, the Court of Common Pleas of Philadelphia County arrives at the following:

6

## CONCLUSIONS OF LAW

1. **Cameron Deross Reed, Jr. aka Cameron Reed** has been without essential parental care, control and subsistence necessary for his/her physical and mental well-being and mental well-being;

2. Under the Juvenile Act, 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. §671 et. seq.) the disposition best suited to the safety, protection and physical, mental and moral welfare of the above-named child is Adoption.

3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to **Cameron Deross Reed, Jr. aka Cameron Reed** and may ask for custody of said child;

4. This Honorable Court having jurisdiction over this matter grants the Order prayed for in the pleadings.

**BY THE COURT:**

_____
                                                              J.

DATED: _____

## VERIFICATION

I, Michael Pratt, being duly sworn according to law, depose and say that I am an Attorney of the within-named corporation; that I am fully authorized to make this Verification on its behalf; and that the facts set forth in the foregoing Petition are true and correct to the best of my knowledge, information and belief. The Petitioner is aware that false statements contained herein are subject to the penalties of 18 Pa. Cons. Stat. § 4904.

_____
Michael Pratt, Esquire

DATED: _____12/20/15_____

8

Attorney's Name:                             Michael Pratt, Esquire
Attorney's Address:                          1515 Arch Street, 16th Floor
                                             Philadelphia, PA 19102-1595
Attorney's Telephone Number:                 (215) 832-2101
Attorney's Identification Number:            318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                          :        Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**    :        FID:  51-FN-002936-2012
**aka Cameron Reed**            :

## ORDER

    **AND NOW,** this _____ day of _____, 20 _____ , after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations:

1. Specific findings have been placed on the record at the end of the evidentiary hearing.

2. **It is hereby ORDERED that the disposition best suited to the welfare of the child is the goal of Adoption.**

### BY THE COURT:

_____
                                                                        **J.**

9

# EXHIBIT

# "A"

10

## STATEMENT OF FACTS RE:
## CAMERON DEROSS REED, JR.
## AKA CAMERON REED

a. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the children's parents, Winchella Howard and Cameron Reed, failed to provide Cameron, Cambria, and Christian with adequate food and safe housing. The report alleged that Ms. Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there had been no running water in the home for the last eight months; and that the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home was malodorous due to standing waste in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Ms. Howard is unemployed and appeared to be depressed. This report was substantiated.

b. DHS made numerous attempts to assess the children's safety, without success, and subsequently filed dependent petitions for the children.

c. At the adjudicatory hearing held on November 9, 2012, the Court adjudicated Cameron, Cambria, and Christian dependent based on present inability to provide proper parental care and control and committed them to the custody of DHS.

d. The children were subsequently returned to the care of Ms. Howard and Mr. Reed on November 20, 2012 and the Court discharge their commitments and their dependent petitions.

e. On April 19, 2013, DHS received a GPS report alleging that Christian was diagnosed with neurofibromatosis; that Ms. Howard was first asked to take Christian to St. Christopher's Hospital for Children for an evaluation in November 2012; that several appointments were made for Ms. Howard and Mr. Reed to take Christian for an evaluation; and that Christian has still not been evaluated. The report alleged that there was concern regarding Christian's development and the psychological effect that the disease could cause; that neurofibromatosis attacks the central nervous tissue; and that Christian was developmentally delayed. This report was substantiated.

f. On April 24, 2013, DHS and the DHS visiting nurse made a joint-visit to the family's home to investigate the allegations of the GPS report. Ms. Howard and Mr. Reed stated that they were not aware of the appointments for Christian. Mr. Reed stated that he did not know that Christian's doctor wanted him to take Christian for an evaluation for neurofibromatosis and that the doctor did not discuss Christian's condition with him.

g. DHS subsequently learned that Cambria was also diagnosed as suffering from neurofibromatosis.

11

h. DHS also learned that Cambria has severe behavioral issues and is prescribed medication. Ms. Howard stated that she does not provide Cambria with her medication because she believes that it makes her behavior worse.

i. On May 28, 2013, Ms. Howard gave birth to Calvin.

j. DHS referred the family for Rapid Service Response Initiative (RSRI) to assist with scheduling the children's medical appointments.

k. On July 9, 2013, DHS implemented In-Home Protective Services (IHPS) through the Family Support Center.

l. On or about September 11, 2013, DHS learned that the family was scheduled to be evicted from the home on September 15, 2013. IHPS spoke with Mr. Reed about the family's planned living arrangements and Mr. Reed stated that the family would be residing with relatives; however, Mr. Reed became evasive and failed to provide IHPS with an address.

m. DHS learned that as of September 14, 2013, Mr. Reed and Ms. Howard had not made any housing arrangements.

n. On September 17, 2013, IHPS went to the home. The family could be heard inside of the apartment; however, no one answered the door.

o. On September 18, 2013, DHS attempted to visit the family, without success.

p. On October 15, 2013, an adjudicatory hearing was held before the Honorable Allan L. Tereshko, who deferred adjudication and ordered that DHS implement supervision in the family's home. Judge Tereshko also ordered that Ms. Howard be referred to Behavioral Health Services (BHS) for a consultation/evaluation; that DHS re-inspect the family's home prior to October 27, 2013; that IHPS through Family Support Center continue; that Mr. Reed and Ms. Howard comply with all IHPS services and recommendations; and that Mr. Reed and Ms. Howard cooperate with DHS, the agency, and the Child Advocate.

q. DHS learned that Calvin was also diagnosed as suffering from neurofibromatosis.

r. On November 4, 2013, an adjudicatory hearing was held before Judge Tereshko, who adjudicated the children dependent and fully committed them to DHS. Judge Tereshko ordered that the children were to be removed from the family home and placed on November 4, 2013, with police assistance if necessary; that the family be referred to Family School; that Mr. Reed and Ms. Howard to be referred for a Parenting Capacity Evaluation (PCE); and that Ms. Howard be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug and alcohol screen and a dual diagnosis assessment.

s. On February 7, 2014, a permanency review hearing was held before Judge Tereshko, who found that Mr. Reed and Ms. Howard had achieved moderate compliance with the permanency plan. Judge Tereshko ordered that Ms. Howard and Mr. Reed have weekly

12

supervised visits at the agency; that Ms. Howard attend Family School as arranged by the parties; that Mr. Reed and Ms. Howard attend the children's medical appointments; that Mr. Reed be referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; ; that Mr. Reed comply with CEU recommendations ; that Mr. Reed comply with Family School; that Ms. Howard be re-referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; that Ms. Howard comply with CEU recommendations; that Ms. Howard attend PCE scheduled for February 12, 2014; that Ms. Howard complete part two of the PCE; and that Ms. Howard and Mr. Reed be referred to the Achieving Reunification Center (ARC).

t.    On May 2, 2014, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on March 6, 2014. The report also stated that Mr. Reed's drug screen on February 7, 2014 was positive for cocaine and marijuana.

u.    On May 9, 2014, a permanency review hearing was held before Juvenile Master Michael Campbell, who found that Mr. Reed had achieved minimal compliance with the permanency plan, in that he was non-compliant with Family Service Plan (FSP) objectives, services, and recommendations; that Mr. Reed had rescheduled toe second part of the PCE on three occasions and still had yet to complete it. Master Campbell ordered that Mr. Reed and Ms. Howard comply with the second part of the PCE; that they comply with all FSP objectives, services, and recommendations; and that they be re-referred to CEU for a full drug and alcohol screen and dual diagnosis assessment, once they avail themselves.

v.    On June 20, 2014, a permanency review hearing was held before the Honorable Walter Olszewski, who found that Mr. Reed had achieved minimal compliance with the permanency plan. Judge Olszewski ordered that Mr. Reed be re-referred to CEU for a forthwith drug screen and assessment; that he complete the second part of the PCE scheduled for July 15, 2014; that he be re-referred to ARC; that Ms. Howard be referred to BHS for consultation/evaluation; and that Ms. Howard sign releases of information.

w.    On June 24, 2014, Ms. Howard underwent a PCE conducted at Assessment & Treatment Alternatives, Inc. (ATA) by William Russell, Ph.D. and Samantha Brenner, M.A. The PCE stated that there are several barriers to Ms. Howard providing safety and permanency to the children; that those barriers include a minimization of the role she played in the situation which precipitated DHS involvement and the inability to acknowledge her children's behavioral problems; that she also minimizes Mr. Reed's drug use; that Ms. Howard neglected to take responsibility for her children not receiving appropriate medical treatment; that she projected blame on the city for the removal of her children; and that she denied all allegations that her home was unkempt, chaotic, and that the children were not up to date on their immunizations. The PCE also stated that Ms. Howard was diagnosed with persistent depressive disorder and that she does not function well in complex situations. The PCE recommendations were for Ms. Howard to obtain appropriate housing with an adequate number of bedrooms for her children; that the home be inspected frequently to assess for safety hazards and/or the home being unkempt; that the home be affordable based on income; that she obtain employment; that she participate in available programming to help

13

parents continue to develop skills as well as receive professional and peer support; that she receive psychoeducation on the seriousness of the children's medical needs and the importance of taking them to their medical appointments; and that Ms. Howard should participate in individual therapy to assist her with understanding her depressed mood and increasing her ability to anticipate problems.

x. On July 2, 2014, Ms. Howard underwent a psychological evaluation which was conducted by Stacey A. Summers, Psy.D. The evaluation stated that most of Ms. Howard's problems can be directly related to her cognitive deficits; that she can become easily overwhelmed and the confused, which impedes her functioning in daily life; that Ms. Howard would benefit from case management services geared toward individuals with intellectual disabilities; that without these support services Ms. Howard would likely have difficulty securing the resources necessary to have her children return to her care; and that it was recommended that Ms. Howard participate in individual outpatient therapy in order to handle her current life stressors as well as to manage her anxious and depressive symptoms.

y. On July 15, 2014, Mr. Reed underwent a PCE at ATA conducted by Mr. Russell and Ms. Brenner. The PCE stated that Mr. Reed minimizes the role he played in the situation which precipitated DHS involvement; that he failed to acknowledge any DHS concerns; he indicated the reason his children were removed was due to false allegations of safety hazards in the home; that he failed to recognize any behavior problems with the children; that he glossed over any financial problems; and he projected blame on DHS for his inability to afford and purchase a suitable home. The PCE recommendations were for Mr. Reed to participate in drug and alcohol treatment with random drug screens; that he and Ms. Howard should attend couples counseling to address any pas and/or current issues in their relationship; that he should obtain suitable and stable housing; that the home should have enough bedrooms to accommodate the children; that the home should be inspected for safety hazards prior to the children being allowed to reside there; and that the home should be affordable based on income.

z. On August 29, 2014, CEU submitted a report as to Mr. Reed, which referred him to outpatient drug and alcohol treatment.

aa. On September 2, 2014, a permanency review hearing was held before Master Campbell, who ordered that Ms. Howard and Mr. Reed continue to have weekly supervised visits at the agency; that the parents are to continue calling and confirming visits 24 hours in advance; re-referred Mr. Reed to CEU for a forthwith drug screen assessment, and four random drug screens prior to the next scheduled hearing; that DHS explore drug and alcohol treatment and mental health options for Mr. Reed; that Ms. Howard be referred for Intellectual Disability services; that Ms. Howard continue with her mental health treatment; and that Mr. Reed continue attending ARC.

bb. On December 1, 2014, CEU submitted a report as to Mr. Reed, which stated that on October 15, 2014, Mr. Reed reported that he was engaged in durg and alcohol treatment at Gaudenzia Outreach 1 and that, per Gaudenzia Outreach 1 staff, Mr. Reed is not now and has never been enrolled in treatment through their facility.

14

cc.    On December 2, 2014, a permanency review hearing was held before Judge Tereshko, who too note that the children's concurrent placement plan was Adoption. Judge Tereshko ordered that Ms. Howard and Mr. Reed's be set forth as supervised with Parents Therapeutic through ATA; that Ms. Howard comply with The PCE Addendum; that Mr. Reed be re-referred to CEU for a forthwith full drug and alcohol screen, monitoring, and three random drug and alcohol screens prior to the next scheduled hearing; that Ms. Howard and Mr. Reed comply with all FSP objectives, services, and recommendations.

dd.    On February 4, 2015, DHS held an FSP meeting. The permanency goal for Cameron, Cambria, Christian, and Calvin was changed to "Adoption." The parental objectives established for Ms. Howard were to attend all appointment for the children and comply with all treatments recommendations; to make herself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in court ordered mental health evaluations and sign releases of information; to comply with all treatment recommendations including therapy and or medication management as prescribed; to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; to ensure that all utilities remain operable at all times; to attend Family School; and to obtain employment. The parental objectives established for Mr. Reed were to attend all appointment for the children and comply with all treatments recommendations; to make himself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in family therapy with Ms. Howard; to participate in drug and alcohol treatment and comply with all recommendations; to participate in services through the Achieving Reunification Center (ARC); to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; and to ensure that all utilities remain operable at all times.

ee.    On February 26, 2015, Ms. Howard participated in a PCE Addendum at ATA conducted by Dr. Russell and Ms. Peterson. The PCE Addendum stated that Ms. Howard was unable to demonstrate any notable progress since her last evaluation in developing the capacity to provide for her children; that there remain concerns regarding her capacity to provide safety and permanency to her children; that she continues to minimize the role she and Mr. Reed played in the situation which precipitated DHS involvement; that she continues to not acknowledge the children's behavioral problems/special needs; that she has yet to acquire appropriate housing; that she continues to be unemployed; that, despite recommendations from two separate evaluations, she has yet to enroll in mental health treatment; and that, in light of the lack of progress, her cognitive limitations, and her difficulty recognizing her children's needs, an intensive case manager should be assigned to her case. The PCE Addendum also stated that Ms. Howard appeared to be functioning in the borderline range in intelligence and a diagnosis of Intellectual Disability, Mild should be explored.

ff.    On March 2, 2015, CEU submitted a report as to Mr. Reed, which stated that Mr. Reed failed to provide verification of his enrollment in drug and alcohol treatment.

15

gg.    On March 3, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed be referred to CEU for a forthwith drug screen, three random drug screens, an assessment, and monitoring.

hh.    On May 14, 2015, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on April 6, 2015. The report also stated that Mr. Reed did go to CEU on May 11, 2015, but failed to reschedule an appointment to be assessed.

ii.    On May 18, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed and Ms. Howard be offered weekly supervised visits at the agency; that Mr. Reed be re-referred for a PCE; that Ms. Howard be referred to BHS for consultations and/or evaluations; and that Mr. Reed be referred to CEU for an assessment, forthwith drug screen, and three random drug screens prior to the next scheduled hearing.

jj.    On September 1, 2015, a permanency review hearing was held before Juvenile Master William Rice, who ordered that Family School be discharged; that Mr. Reed appear for the scheduled appointment for a PCE addendum on October 15, 2015; and that the next scheduled hearing be listed as a Status of a Goal Change hearing.

kk.    Cambria, Christian, and Calvin are diagnosed as suffering from neurofibromatosis. Neurofibromatosis is a genetically-inherited disorder in which the nerve tissue grows tumors (neurofibromas) that may be benign and may cause serious damage by compressing nerves and other tissues. The disorder affects all neural crest cells (Schwann cells, melanocytes, and endoneurial fibroblasts). Cellular elements from these cell types proliferate excessively throughout the body, forming tumors; melanocytes also function abnormally in this disease, resulting in disordered skin pigmentation and café au lait spots. The tumors may cause bumps under the skin, colored spots, skeletal problems, pressure on spinal nerve roots, and other neurological problems. Neurofibromatosis is an autosomal dominant disorder, which means only one copy of the affected gene is needed for the disorder to develop. Therefore, if only one parent has neurofibromatosis, his or her children have a 50 percent chance of developing the condition as well.

ll.    Mr. Reed is diagnosed as suffering from neurofibromatosis.

mm.    Ms. Howard is diagnosed with persistent depressive disorder.

nn.    Reunification with Winchella Howard is not an appropriate permanency option as she has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

oo.    Reunification with Cameron Deross Reed is not an appropriate permanency option as he has failed to achieve full and continuous compliance with the established FSP objectives to

16

facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

pp.    The termination of the parental rights of Winchella Howard and Cameron Deross Reed and the goal change to adoption is in the best interest of Cameron, Cambria, Christian, and Calvin, as they are in loving homes where their needs are being met. Cameron and Calvin have been residing with Arcella Walker since November 7, 2013 and Ms. Walker is interested in adopting Cameron and Calvin. Cambria and Christian have been residing with Ronya Wilson since May 8, 2014 and Ms. Wilson is interested in adopting Cambria and Christian.

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above-captioned Petition for Goal Change to Adoption was filed on ___12/22/15___ in the Court of Common Pleas of Philadelphia County Family Court Division and served upon the below listed persons, by first class U.S. mail, on ___12/22/15___ .

COUNSEL OF RECORD:

Community Legal Services, Inc.,
1424 Chestnut Street
Philadelphia, PA 19102
*(counsel for mother)*

Harry R. Levin, Esquire
1615 Jackson Street
Philadelphia, PA 19145
*(counsel for father)*

Defender Association of Philadelphia
Child Advocacy Unit – 9th Floor
The Packard Building
1441 Sansom Street
Philadelphia, PA 19102
*(counsel for child)*

DATE: ___12/22/15___

_____
Michael Pratt, Esquire
Assistant City Solicitor

MP/ig/klm

18

# PETITION FOR GOAL CHANGE TO ADOPTION

**RE:  Cameron Deross Reed, Jr. aka Cameron Reed**
**DHS # 620543 A**
**[DHS Social Work Services staff:  Ashley John]**



Attorney's Name:                               Michael Pratt, Esquire
Attorney's Address:                            1515 Arch Street, 16<sup>th</sup> Floor
                                                  Philadelphia, PA 19102-1595

Attorney's Telephone Number:            (215) 832-2101
Attorney's Identification Number:        318608

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**JUVENILE BRANCH**

| | | |
|---|---|---|
| IN RE: | : | Docket No: CP-51-DP-0001977-2012 |
| **Cameron Deross Reed, Jr.** | : | FID: 51-FN-002936-2012 |
| **aka Cameron Reed** | : | |

<u>**PETITION FOR GOAL CHANGE TO ADOPTION**</u>

<u>**RULE**</u>

**AND NOW**, this _23ʳᵈ_ day of _December_ ,

20 _15_ , to Judicially resolve the attached Petition, it is hereby **ORDERED** and **DECREED** that

an evidentiary hearing is set for **Philadelphia Family Court, 1501 Arch Street Philadelphia, PA**

**19102, 5th Floor, Courtroom <u>5B</u>, for the <u>6th</u> day of <u>January</u>, 20<u>16</u>, at <u>2:00 P.M.</u>**

The petition filed with the Court shall be mailed to all parties and their counsel of record at

least 15 days in advance of the hearing.  Service shall be accomplished either by regular mail and

certified mail, return receipt requested, or by personal service to his, her or their last known

addresses.

**BY THE COURT:**

DHS # 620543 A

1

Attorney's Name:                         Michael Pratt, Esquire
Attorney's Address:                      1515 Arch Street, 16th Floor
                                         Philadelphia, PA 19102-1595
Attorney's Telephone Number:             (215) 832-2101
Attorney's Identification Number:        318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                              :        Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**        :        FID:  51-FN-002936-2012
**aka Cameron Reed**                :

### PETITION FOR GOAL CHANGE TO ADOPTION

1. Petitioner, Philadelphia Department of Human Services, Children and Youth Division (hereinafter "DHS"), is the local government agency responsible for the care and supervision of dependent children in Philadelphia.

2. The above-named child is dependent under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301 - 6365 (1982 & Supp. 1990)

3. This child's mother is **Winchella Howard**. Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. She is of **the African American** race and **the unknown** faith. The mother's birthdate is **September 30, 1981**. The mother's marital status is **unknown**.

4. This child's putative/natural/presumptive father is **Cameron Deross Reed aka Cameron Reed**. His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. He is of **the African American** race and **the unknown** faith. The father's birthdate is **June 19, 1967**. The father's marital status is **unknown**.

5. The child, who was born on **July 16, 2007**, in **Philadelphia, PA**, was adjudicated dependent on **November 4, 2013** and committed to the Petitioner on **November 4, 2013**. The child has been in the custody of the Petitioner continuously since **November 4, 2013**.

2

6. Petitioner hereby petitions this Honorable Court pursuant to 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74 that the disposition best suited to the protection and physical, mental and moral welfare of the above-named child is Adoption.

7. Upon information and belief, the facts which support this goal change to adoption are as follows:

See **Statement of Facts** **attached hereto and incorporated herein as "Exhibit A."**

WHEREFORE, petitioner prays this Honorable Court to order that the disposition best suited to the welfare of the child is the goal of Adoption.

Respectfully submitted,

Michael Pratt, Esquire
Assistant City Solicitor

3

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 832-2101
Attorney's Identification Number:         318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                              :       Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**        :       FID: 51-FN-002936-2012
**aka Cameron Reed**                :

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

By its Petition, Petitioner, the Philadelphia Department of Human Services, Children and

Youth Division, having filed a Petition proceeding under 42 Pa.C.S.A. § 6351 and 55 Pa. Code

§ 3130.74 seeks a goal change to Adoption for the above child, the Court makes the following

Findings of Fact and Conclusions of Law:

The Court, after a hearing on the Petition for Goal Change and after taking testimony and/or

receiving a Stipulation as to the Facts as the basis for the goal change, finds that the Petitioner has

established by clear and convincing evidence the following:

4

## FINDINGS OF FACT

1. The subject of this Petition is a minor child named **Cameron Deross Reed, Jr. aka Cameron Reed** who was born on **July 16, 2007** in **Philadelphia, PA.**

2. The mother of the child is **Winchella Howard** who was born on **September 30, 1981** in **Philadelphia, PA.** Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** She is of **the African American** race and **the unknown** faith.

3. The mother **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

4. The putative/natural/presumptive father of the child is **Cameron Deross Reed aka Cameron Reed** who was born on **June 19, 1967** in **Philadelphia, PA.** His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** He is of **the African American** race and **the unknown** faith.

5. The putative/natural/presumptive father **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

6. The child was adjudicated dependent on **November 4, 2013** by the Honorable **Allan L. Tereshko.** The Family Service Plan goal has been changed to **Adoption.**

7. Since **November 4, 2013,** the child has been without essential parental care, control and subsistence necessary for the child's physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time;

8. The said child has been in the care and custody of the Petitioner continuously for a period in excess of six (6) months, specifically since **November 4, 2013.**

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter;

5

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, 8th floor, Philadelphia, PA 19102.

11. The Petitioner is willing and able to take custody of the child and to arrange for and consent to his/her adoption by suitable persons;

WHEREFORE, the Court of Common Pleas of Philadelphia County arrives at the following:

6

## CONCLUSIONS OF LAW

1. **Cameron Deross Reed, Jr. aka Cameron Reed** has been without essential parental care, control and subsistence necessary for his/her physical and mental well-being and mental well-being;

2. Under the Juvenile Act, 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. §671 et. seq.) the disposition best suited to the safety, protection and physical, mental and moral welfare of the above-named child is Adoption.

3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to **Cameron Deross Reed, Jr. aka Cameron Reed** and may ask for custody of said child;

4. This Honorable Court having jurisdiction over this matter grants the Order prayed for in the pleadings.

**BY THE COURT:**

_____
                                                                    J.

DATED: _____

7

## VERIFICATION

I, Michael Pratt, being duly sworn according to law, depose and say that I am an Attorney of the within-named corporation; that I am fully authorized to make this Verification on its behalf; and that the facts set forth in the foregoing Petition are true and correct to the best of my knowledge, information and belief. The Petitioner is aware that false statements contained herein are subject to the penalties of 18 Pa. Cons. Stat. § 4904.

_____
Michael Pratt, Esquire

DATED: _____12/20/15_____

8

Attorney's Name:          Michael Pratt, Esquire
Attorney's Address:       1515 Arch Street, 16th Floor
                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:   (215) 832-2101
Attorney's Identification Number:   318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## JUVENILE BRANCH

IN RE:                          :    Docket No: CP-51-DP-0001977-2012
**Cameron Deross Reed, Jr.**    :    FID:  51-FN-002936-2012
**aka Cameron Reed**            :

## ORDER

AND NOW, this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations:

1. Specific findings have been placed on the record at the end of the evidentiary hearing.

2. **It is hereby ORDERED that the disposition best suited to the welfare of the child is the goal of Adoption.**

**BY THE COURT:**

_____
                                   **J.**

9

# EXHIBIT

# "A"

10

**STATEMENT OF FACTS RE:**
**CAMERON DEROSS REED, JR.**
**AKA CAMERON REED**

a.   On September 10, 2012, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the children's parents, Winchella Howard and Cameron Reed, failed to provide Cameron, Cambria, and Christian with adequate food and safe housing. The report alleged that Ms. Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there had been no running water in the home for the last eight months; and that the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home was malodorous due to standing waste in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Ms. Howard is unemployed and appeared to be depressed. This report was substantiated.

b.   DHS made numerous attempts to assess the children's safety, without success, and subsequently filed dependent petitions for the children.

c.   At the adjudicatory hearing held on November 9, 2012, the Court adjudicated Cameron, Cambria, and Christian dependent based on present inability to provide proper parental care and control and committed them to the custody of DHS.

d.   The children were subsequently returned to the care of Ms. Howard and Mr. Reed on November 20, 2012 and the Court discharge their commitments and their dependent petitions.

e.   On April 19, 2013, DHS received a GPS report alleging that Christian was diagnosed with neurofibromatosis; that Ms. Howard was first asked to take Christian to St. Christopher's Hospital for Children for an evaluation in November 2012; that several appointments were made for Ms. Howard and Mr. Reed to take Christian for an evaluation; and that Christian has still not been evaluated. The report alleged that there was concern regarding Christian's development and the psychological effect that the disease could cause; that neurofibromatosis attacks the central nervous tissue; and that Christian was developmentally delayed. This report was substantiated.

f.   On April 24, 2013, DHS and the DHS visiting nurse made a joint-visit to the family's home to investigate the allegations of the GPS report. Ms. Howard and Mr. Reed stated that they were not aware of the appointments for Christian. Mr. Reed stated that he did not know that Christian's doctor wanted him to take Christian for an evaluation for neurofibromatosis and that the doctor did not discuss Christian's condition with him.

g.   DHS subsequently learned that Cambria was also diagnosed as suffering from neurofibromatosis.

11

h.   DHS also learned that Cambria has severe behavioral issues and is prescribed medication. Ms. Howard stated that she does not provide Cambria with her medication because she believes that it makes her behavior worse.

i.   On May 28, 2013, Ms. Howard gave birth to Calvin.

j.   DHS referred the family for Rapid Service Response Initiative (RSRI) to assist with scheduling the children's medical appointments.

k.   On July 9, 2013, DHS implemented In-Home Protective Services (IHPS) through the Family Support Center.

l.   On or about September 11, 2013, DHS learned that the family was scheduled to be evicted from the home on September 15, 2013. IHPS spoke with Mr. Reed about the family's planned living arrangements and Mr. Reed stated that the family would be residing with relatives; however, Mr. Reed became evasive and failed to provide IHPS with an address.

m.   DHS learned that as of September 14, 2013, Mr. Reed and Ms. Howard had not made any housing arrangements.

n.   On September 17, 2013, IHPS went to the home. The family could be heard inside of the apartment; however, no one answered the door.

o.   On September 18, 2013, DHS attempted to visit the family, without success.

p.   On October 15, 2013, an adjudicatory hearing was held before the Honorable Allan L. Tereshko, who deferred adjudication and ordered that DHS implement supervision in the family's home. Judge Tereshko also ordered that Ms. Howard be referred to Behavioral Health Services (BHS) for a consultation/evaluation; that DHS re-inspect the family's home ᵗⁿ October 27, 2013; that IHPS through Family Support Center continue; that Mr. ⁻˙ Howard comply with all IHPS services and recommendations; and that Mr. ⁻ᵈ cooperate with DHS, the agency, and the Child Advocate.

··⁻ᵒⁿosed as suffering from neurofibromatosis.

, was held before Judge Tereshko, who
ommitted them to DHS. Judge Tereshko
from the family home and placed on
necessary; that the family be referred to Family
ᴐe referred for a Parenting Capacity Evaluation
ᴐ the Clinical Evaluation Unit (CEU) for a
ᴊual diagnosis assessment.

,view hearing was held before Judge Tereshko, who
, had achieved moderate compliance with the
ᵢdered that Ms. Howard and Mr. Reed have weekly

12

supervised visits at the agency; that Ms. Howard attend Family School as arranged by the parties; that Mr. Reed and Ms. Howard attend the children's medical appointments; that Mr. Reed be referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; ; that Mr. Reed comply with CEU recommendations ; that Mr. Reed comply with Family School; that Ms. Howard be re-referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; that Ms. Howard comply with CEU recommendations; that Ms. Howard attend PCE scheduled for February 12, 2014; that Ms. Howard complete part two of the PCE; and that Ms. Howard and Mr. Reed be referred to the Achieving Reunification Center (ARC).

t.     On May 2, 2014, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on March 6, 2014. The report also stated that Mr. Reed's drug screen on February 7, 2014 was positive for cocaine and marijuana.

u.     On May 9, 2014, a permanency review hearing was held before Juvenile Master Michael Campbell, who found that Mr. Reed had achieved minimal compliance with the permanency plan, in that he was non-compliant with Family Service Plan (FSP) objectives, services, and recommendations; that Mr. Reed had rescheduled toe second part of the PCE on three occasions and still had yet to complete it. Master Campbell ordered that Mr. Reed and Ms. Howard comply with the second part of the PCE; that they comply with all FSP objectives, services, and recommendations; and that they be re-referred to CEU for a full drug and alcohol screen and dual diagnosis assessment, once they avail themselves.

v.     On June 20, 2014, a permanency review hearing was held before the Honorable Walter Olszewski, who found that Mr. Reed had achieved minimal compliance with the permanency plan. Judge Olszewski ordered that Mr. Reed be re-referred to CEU for a forthwith drug screen and assessment; that he complete the second part of the PCE scheduled for July 15, 2014; that he be re-referred to ARC; that Ms. Howard be referred to BHS for consultation/evaluation; and that Ms. Howard sign releases of information.

w.     On June 24, 2014, Ms. Howard underwent a PCE conducted at Assessment & Treatment Alternatives, Inc. (ATA) by William Russell, Ph.D. and Samantha Brenner, M.A. The PCE stated that there are several barriers to Ms. Howard providing safety and permanency to the children; that those barriers include a minimization of the role she played in the situation which precipitated DHS involvement and the inability to acknowledge her children's behavioral problems; that she also minimizes Mr. Reed's drug use; that Ms. Howard neglected to take responsibility for her children not receiving appropriate medical treatment; that she projected blame on the city  for the removal of her children; and that she denied all allegations that her home was unkempt, chaotic, and that the children were not up to date on their immunizations. The PCE also stated that Ms. Howard was diagnosed with persistent depressive disorder and that she does not function well in complex situations. The PCE recommendations were for Ms. Howard to obtain appropriate housing with an adequate number of bedrooms for her children; that the home be inspected frequently to assess for safety hazards and/or the home being unkempt; that the home be affordable based on income; that she obtain employment; that she participate in available programming to help

13

parents continue to develop skills as well as receive professional and peer support; that she receive psychoeducation on the seriousness of the children's medical needs and the importance of taking them to their medical appointments; and that Ms. Howard should participate in individual therapy to assist her with understanding her depressed mood and increasing her ability to anticipate problems.

x.     On July 2, 2014, Ms. Howard underwent a psychological evaluation which was conducted by Stacey A. Summers, Psy.D. The evaluation stated that most of Ms. Howard's problems can be directly related to her cognitive deficits; that she can become easily overwhelmed and the confused, which impedes her functioning in daily life; that Ms. Howard would benefit from case management services geared toward individuals with intellectual disabilities; that without these support services Ms. Howard would likely have difficulty securing the resources necessary to have her children return to her care; and that it was recommended that Ms. Howard participate in individual outpatient therapy in order to handle her current life stressors as well as to manage her anxious and depressive symptoms.

y.     On July 15, 2014, Mr. Reed underwent a PCE at ATA conducted by Mr. Russell and Ms. Brenner. The PCE stated that Mr. Reed minimizes the role he played in the situation which precipitated DHS involvement; that he failed to acknowledge any DHS concerns; he indicated the reason his children were removed was due to false allegations of safety hazards in the home; that he failed to recognize any behavior problems with the children; that he glossed over any financial problems; and he projected blame on DHS for his inability to afford and purchase a suitable home. The PCE recommendations were for Mr. Reed to participate in drug and alcohol treatment with random drug screens; that he and Ms. Howard should attend couples counseling to address any pas and/or current issues in their relationship; that he should obtain suitable and stable housing; that the home should have enough bedrooms to accommodate the children; that the home should be inspected for safety hazards prior to the children being allowed to reside there; and that the home should be affordable based on income.

z.     On August 29, 2014, CEU submitted a report as to Mr. Reed, which referred him to outpatient drug and alcohol treatment.

aa.    On September 2, 2014, a permanency review hearing was held before Master Campbell, who ordered that Ms. Howard and Mr. Reed continue to have weekly supervised visits at the agency; that the parents are to continue calling and confirming visits 24 hours in advance; re-referred Mr. Reed to CEU for a forthwith drug screen assessment, and four random drug screens prior to the next scheduled hearing; that DHS explore drug and alcohol treatment and mental health options for Mr. Reed; that Ms. Howard be referred for Intellectual Disability services; that Ms. Howard continue with her mental health treatment; and that Mr. Reed continue attending ARC.

bb.    On December 1, 2014, CEU submitted a report as to Mr. Reed, which stated that on October 15, 2014, Mr. Reed reported that he was engaged in durg and alcohol treatment at Gaudenzia Outreach 1 and that, per Gaudenzia Outreach 1 staff, Mr. Reed is not now and has never been enrolled in treatment through their facility.

14

cc.    On December 2, 2014, a permanency review hearing was held before Judge Tereshko, who too note that the children's concurrent placement plan was Adoption. Judge Tereshko ordered that Ms. Howard and Mr. Reed's be set forth as supervised with Parents Therapeutic through ATA; that Ms. Howard comply with The PCE Addendum; that Mr. Reed be re-referred to CEU for a forthwith full drug and alcohol screen, monitoring, and three random drug and alcohol screens prior to the next scheduled hearing; that Ms. Howard and Mr. Reed comply with all FSP objectives, services, and recommendations.

dd.    On February 4, 2015, DHS held an FSP meeting. The permanency goal for Cameron, Cambria, Christian, and Calvin was changed to "Adoption." The parental objectives established for Ms. Howard were to attend all appointment for the children and comply with all treatments recommendations; to make herself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in court ordered mental health evaluations and sign releases of information; to comply with all treatment recommendations including therapy and or medication management as prescribed; to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; to ensure that all utilities remain operable at all times; to attend Family School; and to obtain employment. The parental objectives established for Mr. Reed were to attend all appointment for the children and comply with all treatments recommendations; to make himself available to discuss any issues regarding the children; to call to confirm prior to visits; to participate in family therapy with Ms. Howard; to participate in drug and alcohol treatment and comply with all recommendations; to participate in services through the Achieving Reunification Center (ARC); to ensure that the health or safety hazards at the residence are corrected, such as exposed wiring, securely covered heating system, and a functioning toilet; and to ensure that all utilities remain operable at all times.

ee.    On February 26, 2015, Ms. Howard participated in a PCE Addendum at ATA conducted by Dr. Russell and Ms. Peterson. The PCE Addendum stated that Ms. Howard was unable to demonstrate any notable progress since her last evaluation in developing the capacity to provide for her children; that there remain concerns regarding her capacity to provide safety and permanency to her children; that she continues to minimize the role she and Mr. Reed played in the situation which precipitated DHS involvement; that she continues to not acknowledge the children's behavioral problems/special needs; that she has yet to acquire appropriate housing; that she continues to be unemployed; that, despite recommendations from two separate evaluations, she has yet to enroll in mental health treatment; and that, in light of the lack of progress, her cognitive limitations, and her difficulty recognizing her children's needs, an intensive case manager should be assigned to her case. The PCE Addendum also stated that Ms. Howard appeared to be functioning in the borderline range in intelligence and a diagnosis of Intellectual Disability, Mild should be explored.

ff.    On March 2, 2015, CEU submitted a report as to Mr. Reed, which stated that Mr. Reed failed to provide verification of his enrollment in drug and alcohol treatment.

15

gg.  On March 3, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed be referred to CEU for a forthwith drug screen, three random drug screens, an assessment, and monitoring.

hh.  On May 14, 2015, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on April 6, 2015. The report also stated that Mr. Reed did go to CEU on May 11, 2015, but failed to reschedule an appointment to be assessed.

ii.  On May 18, 2015, a permanency review hearing was held before Judge Tereshko, who ordered that Mr. Reed and Ms. Howard be offered weekly supervised visits at the agency; that Mr. Reed be re-referred for a PCE; that Ms. Howard be referred to BHS for consultations and/or evaluations; and that Mr. Reed be referred to CEU for an assessment, forthwith drug screen, and three random drug screens prior to the next scheduled hearing.

jj.  On September 1, 2015, a permanency review hearing was held before Juvenile Master William Rice, who ordered that Family School be discharged; that Mr. Reed appear for the scheduled appointment for a PCE addendum on October 15, 2015; and that the next scheduled hearing be listed as a Status of a Goal Change hearing.

kk.  Cambria, Christian, and Calvin are diagnosed as suffering from neurofibromatosis. Neurofibromatosis is a genetically-inherited disorder in which the nerve tissue grows tumors (neurofibromas) that may be benign and may cause serious damage by compressing nerves and other tissues. The disorder affects all neural crest cells (Schwann cells, melanocytes, and endoneurial fibroblasts). Cellular elements from these cell types proliferate excessively throughout the body, forming tumors; melanocytes also function abnormally in this disease, resulting in disordered skin pigmentation and café au lait spots. The tumors may cause bumps under the skin, colored spots, skeletal problems, pressure on spinal nerve roots, and other neurological problems. Neurofibromatosis is an autosomal dominant disorder, which means only one copy of the affected gene is needed for the disorder to develop. Therefore, if only one parent has neurofibromatosis, his or her children have a 50 percent chance of developing the condition as well.

ll.  Mr. Reed is diagnosed as suffering from neurofibromatosis.

mm.  Ms. Howard is diagnosed with persistent depressive disorder.

nn.  Reunification with Winchella Howard is not an appropriate permanency option as she has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

oo.  Reunification with Cameron Deross Reed is not an appropriate permanency option as he has failed to achieve full and continuous compliance with the established FSP objectives to

facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.

pp.    The termination of the parental rights of Winchella Howard and Cameron Deross Reed and the goal change to adoption is in the best interest of Cameron, Cambria, Christian, and Calvin, as they are in loving homes where their needs are being met. Cameron and Calvin have been residing with Arcella Walker since November 7, 2013 and Ms. Walker is interested in adopting Cameron and Calvin. Cambria and Christian have been residing with Ronya Wilson since May 8, 2014 and Ms. Wilson is interested in adopting Cambria and Christian.

17

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above-captioned Petition for Goal Change to Adoption was filed on ___12/22/15___ in the Court of Common Pleas of Philadelphia County Family Court Division and served upon the below listed persons, by first class U.S. mail, on ___12/22/15___ .

COUNSEL OF RECORD:

Community Legal Services, Inc.,
1424 Chestnut Street
Philadelphia, PA 19102
*(counsel for mother)*

Harry R. Levin, Esquire
1615 Jackson Street
Philadelphia, PA 19145
*(counsel for father)*

Defender Association of Philadelphia
Child Advocacy Unit – 9th Floor
The Packard Building
1441 Sansom Street
Philadelphia, PA 19102
*(counsel for child)*

DATE:___12/22/15___

___Michael Pratt___
Michael Pratt, Esquire
Assistant City Solicitor

MP/ig/klm

18

1. Petitioner, the City of Philadelphia Department of Human Services, is the local government agency responsible for the care and supervision of dependent children in Philadelphia, Pennsylvania.

2. The above-named juvenile is a dependent child under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S. §§6301-6365. It is in the best interests of this child and the public that this petition be filed with the Court.

3. Petitioner has made reasonable efforts to prevent placement of this minor child.

4. This petition is filed at the same time as petitions for 2 sibling(s): Cameron Reed and Cambria Reed.

5. This child is currently in the legal custody of his parent.

6. Upon information provided by the social worker, this child is dependent and/or abused pursuant to the Juvenile Act (42 Pa.C.S. §6302 (Dependent Child)(1)) and/or the Child Protective Services Law (23 Pa.C.S. §6303(b)(1)) in that:

**SEE ATTACHED STATEMENT OF FACTS**

7. The following services and/or referrals have been offered, provided and/or considered to enable the parent to care for this child: Mental Health Services, IHPS/FSS; RSRI, Housing/Shelter, Substance Abuse Treatment. In-Home services will not reasonably eliminate the risk of harm to the child because the parents lack appropriate housing and have been uncooperative with DHS.

8. Pre-Dispositional Statement pursuant to Pa. R.J.C.P. Rule 1511:

Petitioner hereby recommends the following disposition:

Child to be committed to the City of Philadelphia Department of Human Services

WHEREFORE, Petitioner prays this Honorable Court adjudicate this child dependent and order the disposition best suited to the welfare of the child.

WHEREFORE, Petitioner prays this Honorable Court order the release of drug and alcohol treatment records or related information regarding the child's parents to the Department of Human Services.

Petitioner, the City of Philadelphia Department of Human Services by and through its counsel, the City of Philadelphia Law Department, verifies that the statements made in this petition are true and correct to the best of Petitioner's knowledge, information, and belief and that Petitioner is aware that false statements contained herein are made subject to penalties of 18 Pa. C.S. §4904.

Respectfully Submitted,

Barbara A. Ash
Chief Deputy City Solicitor
Attorney Identification No. 37301
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
(215) 683-5135 (phone)
(215) 683-5162 (fax)

Dated: 11/01/2012
TD/BAA
tzb

## NOTICE

1. The Department of Human Services has filed the attached petition in Family Court. If you fail to come to the hearing on this petition, you may lose legal custody of your child or children. You also may be arrested and brought to Court by a Sheriff if you do not come to the first hearing. You have the right to have a lawyer to represent you and if you are indigent and cannot afford counsel the Court will appoint counsel for you. If you want to find a lawyer, you may telephone Community Legal Services, Inc. at (215) 981-3765, or Lawyer Referral and Information Service at (215) 238-1701.

2. At the court hearing, visitation shall be discussed, and where appropriate, arranged between you and the children. If the court finds that visits pose a grave threat to the child, are inconsistent with the placement goal, or are not in the best interest of the child, visitation may not be granted.

## AVISO

1. El Departmento de Servicios Humanos ha solicitado la petición adjunta en la Corte de la Familia. Si usted no cumple con venir a la audiencia acerca de esta petición usted puede perder la custodia legal de su niño o niños. Tambien usted puede ser traído a la corte por el Alguacil si usted no cumple con venir a la audiencia. Usted tiene el derecho de solicitar a un abogado que lo represente. Si usted necesita un abogado usted puede comunicarse con Servicios Legales de la Comunidad, Inc. al (215) 981-3765 o al Servicio de Referencia de Abogados al (215) 238-1701.

2. En la audiencia en la corte se hablará sobre las visitas, y se harán los arreglos apropiados entre usted y los niños. Si la corte encuentra que las visitas presentan una seria amenaza para los niños, son contradictorias con la meta de la colocación, o no son lo mejor para los niños, es posible que no se otorguen las visitas.

**AFFIDAVIT OF SERVICE**

A copy of this petition was served on the following person(s) via first class United States mail, and certified mail, return receipt requested:

| | | | |
|---|---|---|---|
| Mother:<br>Address: | Winchella Howard<br>109 W. Hansberry Street<br>Philadelphia, PA 19144 | Return Receipt#: | 7011 2970 0004 0480 8485 |
| Father:<br>Address: | Cameron Reed<br>109 W. Hansberry Street<br>Philadelphia, PA 19144 | Return Receipt#: | 7011 2970 0004 0480 8478 |
| Child:<br>Address: | Christian Reed<br>109 W. Hansberry Street<br>Philadelphia, PA 19144 | Return Receipt#: | 7011 2970 0004 0480 3695 |

A copy of this petition was served on the following persons via first class United States mail:


_____

Barbara A. Ash
Chief Deputy City Solicitor


Date: 11/01/2012

## STATEMENT OF FACTS

a. This is an urgent petition.

b. On September 10, 2012, the Department of Human Services (DHS) received a General Protective Service (GPS) report alleging that Cameron, Cambria, and Christian's parents, Winchella Howard and Cameron Reed, failed to provide the children with adequate food and safe housing. The report alleged that Winchella Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there was no running water in the home for the last eight months; and the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home had a horrible smell due to the waste being backed up in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Winchella Howard is unemployed and appeared to be depressed. This report was substantiated.

c. On September 10, 2012, DHS visited the family's home at 109 West Hansberry Street in Philadelphia, Pennsylvania. No one answered the door; however, DHS observed Winchella Howard looking through the front window of the home. The Social Work Services Manager identified herself as a DHS employee and placed her employee identification card against the front window; however, Winchella Howard refused to open the door. DHS contacted the Philadelphia Police for assistance. The Philadelphia Police observed children in the home, but no one answered the door. DHS left a letter that informed Winchella Howard and Mr. Reed of the GPS report and requested that they contact DHS.

d. On September 11, 2012, DHS visited the family's home. No one answered the door. DHS observed that the letter that was left on September 10, 2012 was no longer at the door. Later that day, DHS telephoned Winchella Howard. Winchella Howard agreed to allow DHS to come to the home. DHS returned to the family's home and met with Winchella Howard and Mr. Reed. DHS observed the children in the home and they appeared to be clean. Winchella Howard informed DHS that there was no running water in the home, and that the water was not working due to complications with the pipes and the Philadelphia Water Department. Mr. Reed informed DHS that the family would be moving to another home by the end of the week.

e. On September 12, 2012, DHS telephoned Mr. Reed and informed him that the children could not reside in the home without running water. Mr. Reed stated to DHS that he was in the process of making arrangements for the family to leave the home.

f. On September 13, 2012, Mr. Reed telephoned DHS and stated that the family had moved to the home of the children's maternal aunt, Jeanne Howard, at 564 Kohn Street in Norristown, Pennsylvania.

g. On September 17, 2012, DHS visited Jeanne Howard's home. DHS met with Winchella Howard and

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 3 |
| 2. Parent understood content | 3 |
| 3. Parent was open to learning and suggestions | 3 |
| 4. Parent is working on Monthly Parenting Goal | 3 |
| TOTAL: | 12  /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Calvin is very quiet, | Calvin does not babbles and coo. |
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
| Calvin sits there on all fours. He does not crawl. | Calvin is very quiet Calvin gets very fus. when he's restrained in a seat. |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family: See other rap-up sheet

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _Kaley A. Hutchins B_

Teacher/Assistant Completing Form: _J. Pato_

# FAMILY SCHOOL CASE MANAGEMENT/WRAPUP

DATE: 3/25/14 TOPIC: Spring Fling FAMILY NAME: Reed

CHILD: Calvin Present:YES/NO  CHILD: _____ Present:YES/NO

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| To what extent do the following describe the family's involvement: | RATING |
|---|---|
| **MEALTIME** | |
| 1. Prepared food for child | 3 |
| 2. Met Child's Needs During Mealtime/Hand Over Hand during meals | 3 |
| 3. Gave Proper Proportions | 3 |
| 4. Encouraged child to eat | 3 |
| TOTAL: | 12 /16 |
| **PARENT/CHILD INTERACTION** | |
| 1. Parent Participated in structured activities | 2 |
| 2. Encouraged child to participate | 2 |
| 3. Reinforced child with Praise | 2 |
| 4. Parent took initiative to engage child during free play | 2 |
| Mother failed to engage w/ her son during PCI. TOTAL: | 8 /16 |
| **EDUCATION** | |
| 1. Parent has a bond/attachment with child  TOO EARLY to SEE | 2 |
| 2. Parent keep child safe throughout the day | 3 |
| 3. Parent showed Time Management skills and was efficient throughout their day | 3 |
| 4. Parent accepted redirection and followed through with suggestions | 3 |
| TOTAL: | 11 /16 |

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| | |
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:

_____

_____

_____

_____

_____

Incident Reports/FYI's/Additional Information:

_____

_____

_____

_____

Social Worker of the Day: _____

Teacher/Assistant Completing Form: _____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:
MOM CALLED TO SAY NOT COMING

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: Nicholas Purin

Teacher/Assistant Completing Form:_____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:
See other sheet excused.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _McLaughlin, MSS_

Teacher/Assistant Completing Form: _____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:
MOM DID NOT ATTEND DUE TO NOT BEEN INCLUDED IN THIS MIP. EXCUSED

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _____

Teacher/Assistant Completing Form: _____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 4 |
| 2. Parent understood content | 4 |
| 3. Parent was open to learning and suggestions | 4 |
| 4. Parent is working on Monthly Parenting Goal | 4 |
| TOTAL: | 16 /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Crys to get need met | babbles freely during play. |
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
| sits w/support, bangs on objects; pivots in circle; combat crawl | smiles at adults faces |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total:  31 /64

Concerns/Follow Up/Next Steps For The Family:
none - schedule feeding needed.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _____

Teacher/Assistant Completing Form: _____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 4 |
| 2. Parent understood content | 4 |
| 3. Parent was open to learning and suggestions | 4 |
| 4. Parent is working on Monthly Parenting Goal | 4 |
| TOTAL: | 16 /16 |

## CHILD DEVELOPMENT

**Cognitive Development** (Ability to learn and solve problems, approaches to learning)
Christen uses no language and does not respond to his name. He plays by himself.

**Language Development** (Expressive and Receptive, Understanding and Communicating)
Christen used no language to communicate his wants & needs today.

**Physical Development** (Ability to use and control large and small muscles)
Christen walks and runs. He does movements like bouncing up and down numerous times in a row.

**Social-Emotional Development** (Ability to interact with self and others)
Christen plays alone. He didn't try to interact w/ other children today.

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)
Daily Total: 45 /64

Concerns/Follow Up/Next Steps For The Family:
It's the Mother's first day at family school. She is still learning the family school schedule. Staff would like to see her communicate more with her kids.
Safety - left the him alone in the bathroom.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _Mulaughlin M88_

Teacher/Assistant Completing Form: _Nicole Fields_

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 4 |
| 2. Parent understood content | 4 |
| 3. Parent was open to learning and suggestions | 4 |
| 4. Parent is working on Monthly Parenting Goal | 4 |
| TOTAL: | 16 /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Christen uses no language and does not respond to his name. He plays by himself. | Christen used no language to communicate his wants & needs today. |

| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
|---|---|
| Christen walks and runs. He does movements like bouncing up and down numerous times in a row. | Christen plays alone. He didn't try to interact w/ other children today. |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)   Daily Total: 45 /64

Concerns/Follow Up/Next Steps For The Family: It's the Mother's first day at family school. She is still learning the family school schedule. Staff would like to see her communicate more with her kids.
Safety - left the him alone in the bathroom.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _Michelle Quellin M88_

Teacher/Assistant Completing Form: _Nicole Fields_

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 4 |
| 2. Parent understood content | 4 |
| 3. Parent was open to learning and suggestions | 4 |
| 4. Parent is working on Monthly Parenting Goal | 4 |
| TOTAL: | 16  /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Cries to get need met | babbles freely during play. |
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
| sits w/support, bangs on objects; pivots in circle; combat crawl | smiles at adults faces |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: 31  /64

Concerns/Follow Up/Next Steps For The Family: none - schedule feeding needed.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _____

Teacher/Assistant Completing Form: _____

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 3 |
| 2. Parent understood content | 3 |
| 3. Parent was open to learning and suggestions | 3 |
| 4. Parent is working on Monthly Parenting Goal | 3 |
| TOTAL: | 12 /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Christian has **Autism** and is in need of services. He does Not understand or solve problems easily | Christian does Not have Verbal Communication skills. He often moans, screams and cries to sign his wants/needs. |

| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
|---|---|
| I have No Concerns at this time Christian is able to run, jump and stands with ease. He is able to use both small/large muscle with ease. | Christian does Not do well amongst other children. He hits, scracthes and yells amongst himself as well as other children. |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family: Lack of supervision, and time management.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _Kelley A Hughes B/_

Teacher/Assistant Completing Form: _Tamiya Mont_

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 3 |
| 2. Parent understood content | 3 |
| 3. Parent was open to learning and suggestions | 3 |
| 4. Parent is working on Monthly Parenting Goal | 3 |
| TOTAL: | 12 /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Christian has Autism and is in need of services. He does Not understand or solve problems easily | Christian does Not have Verbal Communication skills. He often Moans, screams and cries to sign his wants/needs. |
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
| I have No Concerns at this time Christian is able to run, jump and stands with ease. He is able to use both small/large muscle with ease. | Christian does Not do well amongst other children. He hits, scracthes and yells amongst himself as well as other children. |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:
Lack of supervision, and time management.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: Keluy A Hashu B/

Teacher/Assistant Completing Form: Tamya Mont



**Parent/Caregiver: Winchella Howard**     **Date: 01/23/2014**  *March 4, 2014*

**RSS: Kiyana Brown**     **NCD: May 9, 2014**  *March 4*

Case 2:20-cv-01102-ER    Document 1    Filed 02/20/20    Page 247 of 404

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 *PAN 12 to 2* |
| 2 | *She said 3 Neclass until my kids* **Women's Empowerment Group** 2:00PM-3:30PM *had* **Visit** *with Kids* 5PM-6PM | 4 *Sawed RSS worker & MH couseling* | 5 *Doctor* | 6 *1801 court house 10:00am* | 7 **REMIX** 12PM-2PM | 8 **PAN** 12PM-2PM  *MH 2600* |
| 9 | 10 **Women's Empowerment Group** 2:00PM-3:30PM **Visit** 5PM-6PM | *11 Trolley* 11 **Family School** 9AM-2PM  *11:30*  *215-307-3732* | *Doctor* 12 | 13 **Family School** 9AM-2PM | 14 **REMIX** 12PM-2PM | 15 **PAN** 12PM-2PM |
| 16 | 17 **Women's Empowerment Group** 2:00PM-3:30PM **Visit** 5PM-6PM | 18 **Family School** 9AM-2PM | 19 *DOCTOR* | 20 **Family School** 9AM-2PM | 21 **REMIX** 12PM-2PM | 22 **PAN** 12PM-2PM |
| 23 | 24 **Women's Empowerment Group** 2:00PM-3:30PM **Visit** 5PM-6PM | 25 **Family School** 9AM-2PM | 26 *Doctor* | 27 **Family School** 9AM-2PM | 28 ***Meeting w/RSS** 11:30AM **REMIX** 12PM-2PM | 29 **PAN** 12PM-2PM |

Form -22
9-21-06

| 30 | 31 Women's Empowerment Group 2:00PM-3:30PM Visit 5PM-6PM | | | | | |
|---|---|---|---|---|---|---|

**Parent Signature:**

*Winchelle Howard*

Meet with RSS for Next Calendar Appointment on

**Friday March 28, 2014 @ 11:30AM**

Kiyana Brown, MSW
Reunification Support Specialist (RSS)

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 248 of 404

Form -22
9-21-06

letter is received, we should have authorization and the family should call my secretary for instructions about scheduling Christien if they have not already done so.

---------Annual ophthalmologic examination in children, less frequently in adults. Hearing evaluations can be done routinely (such as at school and at pediatrician office) unless specific concerns arise. This child needs both evaluations based on history today and needs an official audiology evaluation given the hearing concerns.

---------Regular developmental assessment of children. Adequate learning resources (such as an IEP at school) or early intervention are important to optimizing performance. This child does have developmental delays with significant speech delays and possible social delays concerning for possible autism spectrum disorder. He will need close monitoring and evaluation for support services. It is important to receive not only school support but emotional/social support as patients with NF type 1 can be affected in both areas. Regular re-evaluation by the school is important to optimize resources. The child would benefit from seeing our developmental pediatrician to further consider the diagnosis of autism spectrum. The appointment can take 6-12 months so the family should call right away. A developmental pediatrician can be seen here at St. Christopher's and reached through the operator.

---------Regular blood pressure monitoring ideally every 6 months (at least annually at our visit and hopefully in between at pediatrician or other specialist visits). There is a risk of renal involvement. If blood becomes borderline high or high, he should be referred for further work-up for hypertension.

---------Monitor for skeletal anomalies such as scoliosis.

---------We typically recommend at least a baseline brain MRI during mid-childhood and then consider a brain MRI on as needed basis during the childhood years. We would have waited until he was older but given that we are requesting an MRI of the spine and he has marked developmental delays, we have ordered an MRI of the brain and orbits as well. It is possible that the procedure may require anesthesia and may require two separate visits depending on duration of imaging. Results should be reviewed by us as well as child neurologist. He should have neurologic follow-up and the neurologist may be able to help determine whether autism spectrum disorder is an appropriate diagnosis as well.

---------Counselling and information on support groups/organizations has been provided.

---------Other evaluations and monitoring based on systemic involvement: n/a

Again, it was a pleasure to see this child, who should follow-up with us in one year or sooner if needed. We did learn that there is a younger infant sibling who has cafe au laits as well and would benefit from evaluation in our clinic. Mother plans to make an appointment for him soon.

_RJethva_, M.D.

Electronically signed by: Reena N. Jethva MD  07/24/2014

Commonwealth of Pennsylvania

In the Interest Of:

Cameron Reed, A Minor
Date of Birth: 07/16/2007

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:          CP-51-DP-0001977-2012
FID:                   51-FN-002926-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:  ACS Daniel Goren, DACAU attorney for child, Harry Levin attorney for father, Community Legal Services M. Ginowski attorney for mother, DHS S/W Johns, DHS Rep. Carlisa Smith, The Village S/W's, Family School S/W Randolph, Mother Winchelia Howard, Father Cameron Reed appeared.  Dep. Court Rep.: KD

AND NOW, this 2nd day of December, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been substantial compliance with permanency plan, in that Mother complying with FSP Objectives, Services and Recommendations, completed Parenting Capacity Evaluation, receives Mental Health Services thru Community Counsel, attends Family School.
FATHER - There has been substantial compliance with permanency plan, in that Father was Referred to ARC for Services, receives Drug & Alcohol Counseling thru Gaudenzia.  Father did Complete Parenting Capacity Evaluation, currently Not Participating in Couples Counseling.  Father Complying with all FSP Objectives, Services and Recommendations.  Report Submitted to the Court from CEO for Father.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## CONCURRENT PLACEMENT PLAN

The concurrent placement plan for the child is Adoption.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 7/29/2014, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 11/24/2014

## AS TO WHETHER A PETITION TO TERMINATE PARENTAL RIGHTS HAS OR WILL BE FILED:

The child has NOT been in placement for 15 of the last 22 months. Specifically, the child has been in placement for 12 months.

## ORDER OF COURT - On the basis of the above findings, IT IS HEREBY ORDERED THAT:

DPCMS 3801

1

Printed: 12/02/2014 10:31:34AM

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | 2 |
| 2. Parent understood content | 2 |
| 3. Parent was open to learning and suggestions | 2 |
| 4. Parent is working on Monthly Parenting Goal | 2 |
| TOTAL: | 8 /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Calvin recognize his mother, cry to get need met | Calvin babbles, and coos. |

| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |
|---|---|
| Calvin scoots pulls up to stand and walk. | Calvin was quiet at times. |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: 44 /64

Concerns/Follow Up/Next Steps For The Family:
see christian's wrap up sheet.

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _____ R, BSW

Teacher/Assistant Completing Form:_____

## FAMILY SCHOOL CASE MANAGEMENT/ WRAP UP

DATE: 8/28/14    TOPIC: Summer Fun   FAMILY NAME: Reed

CHILD: Calvin    Present:YES/NO   CHILD:_____ Present:YES/NO

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| To what extent do the following describe the family's involvement: | RATING |
|---|---|
| **MEALTIME** | |
| 1. Prepared food for child | 3 |
| 2. Met Child's Needs During Mealtime/Hand Over Hand during meals | 3 |
| 3. Gave Proper Proportions | 3 |
| 4. Encouraged child to eat | 3 |
| TOTAL: | 12 /16 |
| **PARENT/CHILD INTERACTION** | |
| 1. Parent Participated in structured activities | 3 |
| 2. Encouraged child to participate | 3 |
| 3. Reinforced child with Praise | 3 |
| 4. Parent took initiative to engage child during free play | 3 |
| TOTAL: | 12 /16 |
| **EDUCATION** | |
| 1. Parent has a bond/attachment with child | 3 |
| 2. Parent keep child safe throughout the day | 3 |
| 3. Parent showed Time Management skills and was efficient throughout their day | 2 |
| 4. Parent accepted redirection and followed through with suggestions | 3 |
| TOTAL: | 12/16 |

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total: _____ /64

Concerns/Follow Up/Next Steps For The Family:
X baby had an appointment

Incident Reports/FYI's/Additional Information:

Social Worker of the Day: _Carel Radd M A, BA_

Consistent Completing Form:

## FAMILY SCHOOL CASE MANAGEMENT/ WRAP UP

DATE: 8/26/14   TOPIC: Summer Fun   FAMILY NAME: Howard

CHILD: Christen   Present:YES/NO   CHILD: _____   Present:YES/NO

## SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| To what extent do the following describe the family's involvement: | RATING |
|---|---|
| **MEALTIME** | |
| 1. Prepared food for child | |
| 2. Met Child's Needs During Mealtime/Hand Over Hand during meals | |
| 3. Gave Proper Proportions | |
| 4. Encouraged child to eat | |
| TOTAL: | /16 |
| **PARENT/CHILD INTERACTION** | |
| 1. Parent Participated in structured activities | |
| 2. Encouraged child to participate | |
| 3. Reinforced child with Praise | |
| 4. Parent took initiative to engage child during free play | |
| TOTAL: | /16 |
| **EDUCATION** | |
| 1. Parent has a bond/attachment with child | |
| 2. Parent keep child safe throughout the day | |
| 3. Parent showed Time Management skills and was efficient throughout their day | |
| 4. Parent accepted redirection and followed through with suggestions | |
| TOTAL: | /16 |

_Absent_ (handwritten across the MEALTIME section)

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| PARENTING CLASS | RATING |
|---|---|
| 1. Parent was attentive, participating and shared vocally | |
| 2. Parent understood content | |
| 3. Parent was open to learning and suggestions | |
| 4. Parent is working on Monthly Parenting Goal | |
| TOTAL: | /16 |

## CHILD DEVELOPMENT

| Cognitive Development (Ability to learn and solve problems, approaches to learning) | Language Development (Expressive and Receptive, Understanding and Communicating) |
|---|---|
| Physical Development (Ability to use and control large and small muscles) | Social-Emotional Development (Ability to interact with self and others) |

(0-16 = Needs Improvement; 17-32 = Acceptable; 33-48 = Satisfactory; 49-64 = Superior)

Daily Total:          /64

Concerns/Follow Up/Next Steps For The Family:
☑ Christian had an appointment

Incident Reports/FYI's/Additional Information:

al Worker of the Day: Clord Rockoll, BA

her/Assistant Completing Form:

## FAMILY SCHOOL CASE MANAGEMENT/ WRAP UP

DATE: 8-26-14    TOPIC: Summertime    FAMILY NAME: Reed

CHILD: Calvin    Present: YES/NO    CHILD: _____    Present: YES/NO

SKILLS RATING (1=POOR; 2=FAIR; 3=GOOD; 4=VERY GOOD)

| To what extent do the following describe the family's involvement: | RATING |
|---|---|
| **MEALTIME** | |
| 1. Prepared food for child | |
| 2. Met Child's Needs During Mealtime/Hand Over Hand during meals | |
| 3. Gave Proper Proportions | |
| 4. Encouraged child to eat | |
| TOTAL: | /16 |
| **PARENT/CHILD INTERACTION** | |
| 1. Parent Participated in structured activities | |
| 2. Encouraged child to participate | |
| 3. Reinforced child with Praise | |
| 4. Parent took initiative to engage child during free play | |
| TOTAL: | /16 |
| **EDUCATION** | |
| 1. Parent has a bond/attachment with child | |
| 2. Parent keep child safe throughout the day | |
| 3. Parent showed Time Management skills and was efficient throughout their day | |
| 4. Parent accepted redirection and followed through with suggestions | |
| TOTAL: | /16 |

PETITIONER:
City of Philadelphia
Department of Human Services
1515 Arch Street
Philadelphia, PA 19102
BY:
City of Philadelphia Law Department
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
(215) 683-5135

**IN THE COURT OF COMMON PLEAS**
**OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**JUVENILE BRANCH**

---

In the Interest of: Christian Reed                    :        Docket No.:
DOB: 03/24/2011, a minor.                             :        FID:
                                                      :        D#
Address: 109 W. Hansberry Street                      :        J#:
Philadelphia, PA 19144                                :        Filing Date: 11/01/2012

SUMMARY ALLEGATIONS:

Sex: Male                                               School: n/a
Race: Black                                             Child Lives With: parents
Native American History or Affiliation: N/A
Hispanic: N/A
Religion: not reported                                  Marital Status of Parents: Single
Mother's Name: Winchella Howard                         Telephone No.: (215) 667-7727
Address: 109 W. Hansberry Street
Philadelphia, PA 19144
Father's Name: Cameron Reed                             Telephone No.: (215) 254-8881
Address: 109 W. Hansberry Street
Philadelphia, PA 19144
Guardian's Name: N/A                                    Telephone No.: N/A
Address: N/A
Nearest Adult Relative: N/A
Address of Nearest Adult Relative: N/A
Nature of Alleged Dependency: 42 Pa.C.S. §6302 (Dependent Child)(1)
Taken Into Custody By: N/A
Date and Time Taken Into Custody: N/A
DHS Social Work Services Staff: Valerie Coverdale        Telephone No.: (215) 683-6838
Location of Child at Filing: Winchella Howard and Cameron Reed, parents
Child is not currently under supervision of the county agency

Child's Name:   Christian Howard                          Period Covered:   11/04/13-12/18/13

| EDV6: | EDV6: | EDV6: |
|---|---|---|
| EDV7: | EDV7: | EDV7: |
| EDV8: | EDV8: | EDV8: |

| Additional Provider #1  (ED#1) | Additional Provider #2  (ED#2) |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Phone:  (    )              Ext. | Phone:  (    )              Ext. |
| Specific Service: | Specific Service: |
| Plan Attached?  Y ☐   N ☐   Date Requested: | Plan Attached?  Y ☐   N ☐   Date Requested: |

### Independent Living Skills:  SP-6   (Mandatory for youth 14 years or older)

| | | |
|---|---|---|
| Has an Independent Living Skills Assessment been completed? | Y ☐   N ☐ | If youth is a male and 18 years of age, is youth registered with Selective Service?   Y ☐   N ☐ |
| Has an Independent Living Skills Assessment been updated? | Y ☐   N ☐  Date: | If youth is 17.5 or older: has a board extension been discussed?   Y ☐   N ☐  Date: |
| Is the most recent Independent Living Skills Inventory attached? | Y ☐   N ☐ | Has a referral been made to the Achieving Independence Center (AIC)? *(Youth aged 16 & over)*   Y ☐   N ☐ |

| Objectives | Target Dates For Progress | Person Responsible |
|---|---|---|
| LS1: | LS1: | LS1: |
| LS2: | LS2: | LS2: |
| LS3: | LS3: | LS3: |

### Medical/Dental Health:  *(address EPSDT, Physical, Dental, Eye, Immunizations and new medical issues)*

| Objectives | | Target Dates For Progress | Person Responsible |
|---|---|---|---|
| PH1 | Physical examination within 60 days (CM-12A). Due by:   12/04/2013 | PH1:   12/18/13 | PH1:   Ms. Butts |
| PH2 | Dental examination, if 3 or older (CM-13A). Due by: | PH2: | PH2: |
| PH3 | Maintain ongoing routine physical care (CM-12B). ☐ Birth to 6 months – every 6 weeks ☐ 7 months to 23 months – every 3 months ☐ Over 23 months - **Annual** | PH3: | PH3: |
| PH4 | Maintain ongoing routine dental care (CM-13B) ☒ (Pay close attention to child who is two years plus) ☐ 3 years and older – every 9 months (recommend every 6 months) | PH4:   12/18/13 | PH4:   Ms. Butts |
| PH5 | Maintain ongoing routine eye care ☒ Under 5 years -- N/A ☐ 5 years and older -- once per year | PH5: | PH5: |
| PH6 | Confirm immunization and/or establish immunization schedule within 60 days of placement (CM-14) | PH6: | PH6: |
| PH7 | ☐ Obtain/update health and medical information by next review. | PH7: | PH7: |
| PH8 | ☐ Ensure medical/health care for any specific condition, including medically necessary monitoring of medication | PH8: | PH8: |
| PH9 | **Foster parent will submit all medical/dental documentation to PCV Social worker in a timely manner.** | PH9:   12/18/13 | PH9:   Ms. Butts |
| PH10 | **Foster parent wil submit all non-routine documentation to PCV Social worker in a timely manner.** | PH10:   12/18/13 | PH10:   Ms. Butts |
| PH11 | | PH11: | PH11: |

's this child placed in Medical Foster Care?                    ☐ Yes   ☒ No
f "Yes", is Medical Treatment Plan attached to ISP?        ☐ Yes   ☒ No

Child's Name:    Christian Howard                                    Period Covered:    11/04/13-12/18/13

## Winchella Howard (MOTHER)
## FAMILY SECTION

*Complete a Family Section goal page for each parent individually as well as any other alternative permanency resource identified in this plan. This page is designated for the "Mother" who is referenced on Page 1 and all information relating only to the "mother" should be provided in the 3 subsequent sections*

| Parent/Guardian Plan | |
|---|---|
| *Identify the strengths and needs for this person* | |
| Strengths: | Needs: *(relating to achieving Permanency Goal)* |
| Mother has shown that she has a great love for her son. She has attended visitation since Christian has been placed in foster care. | Mother needs to obtain and maintain suitable housing<br><br>Mother needs to have MH evaluation<br><br>Mother needs to maintain supervised visitation at PCV.<br><br>Mother needs to have parenting capacity.<br><br>Mother needs to attend the ARC. |

### Parent/Guardian Services
*Indicate specific plan to address barriers to achieving permanency and additional needs identified through your assessment*

| Objectives: *(be sure to address as needed: living conditions, financial conditions, supports, parenting {to include child-caregiver interactions & developmental stimulation}, caregiver interactions, parent service needs {for caregiver history section & caregiver personal characteristics}, and employment)* | Target Dates for Progress | Person Responsible |
|---|---|---|
| PGS1    Mother needs to obtain and maintain suitable housing | PGS1    12/18/13 | PGS1    Ms. Howard |
| PGS2    Mother needs to have MH evaluation | PGS2    12/18/13 | PGS2    Ms. Howard |
| PGS3    Mother needs to maintain supervised visitation at PCV. | PGS3    12/18/13 | PGS3    Ms. Howard |
| PGS4    Mother needs to have parenting capacity. | PGS4    12/18/13 | PGS4    Ms. Howard |
| PGS5    Mother needs to attend the ARC. | PGS5    12/18/13 | PGS5    Ms. Howard |
| PGS6 | PGS6 | PGS6 |
| PGS7 | PGS7 | PGS7 |

### Safety Plan
*Address issues that affect child's safety if the child were discharged to the care of the mother:*

| Objectives | *(for the home where the child may be reunited/discharged)* | Target Dates for Progress | Person Responsible |
|---|---|---|---|
| SP/P1 | Placement provider will conduct home visit to the parent's or guardian's home to assess safety prior to unaccompanied initial home visit by child | SP/P1    12/18/13 | SP/P1    PCV worker |
| SP/P2 | Placement provider will conduct a home visit to any other visitation resource prior to an unaccompanied home visit by the child | SP/P2    12/18/13 | SP/P2    PCV worker |
| SP/P3 | | SP/P3 | SP/P3 |
| SP/P4 | | SP/P4 | SP/P4 |

Child's Name:  Christian Howard                                    Period Covered:  **11/04/13-12/18/13**

| Legal Family/Guardian Visits:  CM-2B | |
|---|---|
| Are any visits supervised?    ☒ Yes    ☐ No | Who is responsible for supervising the visit?<br>PCV worker |
| If visit is supervised, at whose instruction?<br><br>County:          ☒ Yes    ☐ No<br>Court Order:    ☒ Yes    ☐ No | ☒ A written visitation plan has been given to the parent(s)/guardian(s) *(see attached)*  Date: 12/2/13   Period Covered: 12/2/13-02/10/14 |
| | ☒ Provider will assist with transportation by:  PCV will provide tokens to parents. |

| |
|---|
| If visit is NOT supervised by the agency worker, how will the visit be monitored/reviewed? NA |
| Who will be visiting?    ☒ Mother *    ☒ Father *    ☐ Guardian *    ☒ Sibling(s) *    ☐ Other *       *SEE ATTACHED VISITATION PLAN* |
| How will feedback on quality of interaction be provided to parent by staff/foster/kinship parent:  *(please be specific)*    Feedback will be given to mother after the visit. |
| Other Visitation Restrictions Pertain to:    ☐ Mother    ☐ Father    ☐ Other:  _____ |
| Explain, in detail, any restrictions:   NA |

| | | |
|---|---|---|
| Have the restrictions been approved by the County Worker? | ☐ Yes | ☒ No |
| Have the Visit Restrictions been Court Ordered? | ☐ Yes | ☒ No |
| Has the Court Order been received stating these restrictions? | ☐ Yes | ☒ No |

| Purpose of Visitation |
|---|
| *Address specific plan/purpose for visits with each visiting resource (e.g., mother, father, guardian, siblings, other permanency resources) and the role of visitation in promoting permanency* |
| Visitation will provide parents and child a chance to develop and maintain a bond while Christan is in Foster Care. |

| Alternative Permanency Plan<br>*Identify alternative plan options being developed* | | |
|---|---|---|
| Objectives | Target Dates for Progress | Person Responsible |
| APP1   Concurrent placement goal has been identified:<br>          ☐ Yes    ☒ No<br>If "Yes", specify: | APP1      12/18/13 | APP1    PCV worker & DHS worker |
| APP2   Identify/locate missing parent or other relative | APP2 | APP2 |
| APP3 | APP3 | APP3 |

P--          ~~tire Report)                                                      (Visits Page of ISP)

Child's Name: Christian Howard                    Period Covered: 11/04/13-12/18/13

## ISP Signature Page

**Social Worker to review with parent(s) and child (*14 or older MUST be invited*) BEFORE signing:**

- I have been informed that my child and/or I may be accompanied at the planning meeting by a spokesperson of our choice.

- I understand that I am expected to work towards the goals of this plan and that consistent failure to do so may result in initiation of action, in accordance with the law, to terminate my parental rights.

- I understand that a copy of this plan will be forwarded to the County Children and Youth agency and will be subject to review in court.

- I understand that if I disagree with this plan, I may enclose a statement of my disagreement and I am not required to sign this ISP.

- My signature below indicates agreement with the contents of this ISP.

Statement of disagreement is attached ☐ or N/A ☐

This ISP Report contains Pages Numbered: ⟶   Page #'s: 1,2,3,4,5,6,9,10,11
(e.g., #1, 2, 3, 4, 5, 8, 11, 12)

Winchello Howard   12-3-13
**Parent or Guardian**            Date          **Parent or Guardian**              Date

**Parent or Guardian**            Date

**Child**                          Date          **County Agency**                  Date

12-3-13
**Provider Agency Supervisor**     Date          **Provider Agency Representative**  12/3/13  Date

**Foster/Kinship Caregiver**       Date          **Foster/Kinship Caregiver**       Date

**Legal Representative**

**Representing Whom**              Date          **Name/Representing Whom**          Date

**Agency Signatures: (Optional)**

                                   Date                                             Date

(Entire Report)                                   (Signature Page of ISP)

# FAMILY SERVICE PLAN OBJECTIVE

| CASE NAME: | Reed | CASE NO. | 620543 |
|---|---|---|---|

| Objective | Actions to Achieve Objectives (specify by whom and how often | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|---|
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, AND NEEDS AND APPROPRIATENESS OF SERVICES, AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY. | CASE MANAGEMENT | Department of Human Services Children and Youth Division 215-683-6100 | 12/18/2014 |
| | DHS/The Villiage( formerly PCV) will provide casemanagement services to include ongoing periodic assessment of | Casemanagement services | Department of Human Services 215-683-6652/The | 12/18/2014 |
| | safety, risk, needs and appropriateness of services and will make changes to the family service plan as necessary | | Villiage 215- 730- 2255 | |
| | DHS/Provider Agency to meet the childen's daily needs including food/clothing | Monitoring | The Villiage 215-730-2255 | 12/18/2014 |
| | To correct/or stabilize physical health, vision, hearing or dental problems | | | |
| | 1.The Villiage will ensure Christian, Cambria and Calvin receive appropriate medical evaluuations and treatment for gentic condition | Medical Treatment | The Villiage/St. Christopher AHospital | 12/18/2014 |
| | 2. Ms. Howard/Mr. Reed will attend all appointments for children; they will comply with all recommended treatments | Well Child visits Gentic Testing Visits | The Villiage 215-730-2240/St. Christopher Hosp | 12/18/2014 |
| | To demonstrate a concerned, cooperative response to children and service provision | | | 12/18/2014 |
| | 1. Mr. Reed/Ms. Howerd will make themselvges available to meet with foster | Parental responsaibility | Cameron Reed/Winchella Howard | 12/18/2014 |
| | are provider socila workers to discuss concerns, progress and any problems associated with the children | Goal setting/completion | 2150626-1424&267-636-3914 | 12/18/2014 |
| | 2. Mr. Reed/Ms. Howard will call agency at the assigned time to confirm attendance at the visits. | Parental Responsibility | Mr. Reed/Ms. Howard | 12/18/2014 |
| | To Stabilize Mental Health problems | | | |
| | 1. Ms. Howard will participate in court order MH evaluation; to sign releases of info | Psychiatric/psychological evaluations | BHS-1801 Vine Street Philadelphia, PA&NHS | 12/18/2014 |
| | 2. Ms.Howard will comply w ith all treatment recommendations including therapy and RX Mgmt asprescribed. | Individual Counseling/or Grp Therapy | BHS-1801 Vine Street | 12/18/2014 |
| | To provide adequate and safe living conditions | To sign release/DHS/Provider | DHS/The Villa 215-683-6652 | 12/18/2014 |
| | 1.Ms. Howard/Mr. Reed will make sure that the following health, or safety hazards at the residence are corrected; exposed wiring, securely covered heating system/flusha | Parental Responsibility | Mr. Reed/Ms. Howard | 12/18/2014 |
| | toilet. All utilities must remain operable at all times. | Parental Responsibilities | Mr. Reed and Ms. Howard | 12/18/2014 |
| | To address deficits re: mastery of age appropriae developmental taks/skills | Evaluation EL Services | The Villiage 215-730-2240 | 12/18/2014 |

FAMILY SERVICE PLAN (85-457) (Page 4) Rev. 1-28-13

Case 2:20-cv-01102-ER Document 1 Filed 02/20/20 Page 262 of 404

# FAMILY SERVICE PLAN OBJECTIVES

| CASE NAME: | CASE NO.: |
|---|---|

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Provider Name & Telephone No. | Completion Date |
|---|---|---|---|---|
| | (Christian will be evaluated to determine his educational learning wstyle/needs | Education, Speech therapy, O.T&specialized se. | Elwynn Sers.-Dr. Huffman 215-472-5437 | 12/18/2014 |
| | Cameron  will receive specialized services in Fall 2014 | &Special instructions Specialized Services | 2-5437/St.Christ.Hosp for Genet. Dr. Huffmane | 12/18/2014 |
| | | Child Links Services Assessment | Elwynn Services | 12/18/2014 |
| | Calvin will to be evaluated | To be evaluated at DuPont Hosptial 7/23/14 | Dr.Huff. 215-472-5437 DuPont Hosp. for Genetic | 12/18/2014 |
| | Cambria to receive specialized services,. | To be evaluated for specialized services | PCP@Covenant Hse/Dr.Mark Cobb | 12/18/2014 |
| | The children will acquire social skills and age appropriae relationships | Play groups, camp, sport and recreational acti | Recreational Activities. | 12/18/2014 |
| | Cameron will attend school as scheduled and complete all school acssignments | Education | Highland Park ElementarySchool | 12/18/2014 |
| | Cambria toattend Kindergarden in FALL 2014 As per court order, DHS to obtain child's birth certificate | Kindergrden  Fall 2014 Birth Certificate | TBD BC. 8/1/2014 | 12/18/2014 |
| | | Medical Treatment | | 12/18/2014 |
| | Cameron receives medical care | Medical treatment | Dr. Huffman 53rd and Cedar Ave Phila., PA 215-472-5437 | 12/18/2014 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FAMILY SERVICE PLAN (85-457) (Page 8) Rev. 1-28-13

Case 2:20-cv-01102-ER Document 1   Filed 02/20/20   Page 263 of 404

# FAMILY SERVICE PLAN OBJECTIVES

| CASE NAME: | CASE NO.: | DATE OF REVIEW: 7/29/2014 |
|---|---|---|

**For review of Children's Objectives only, Identify if Services were provided, Actions Occurred, and Objectives Achieved**

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occurred | Objective Achieved |
|---|---|---|---|---|---|
| | (Christian will be evaluated to determine his educational learning wstyle/needs | Education, Speech therapy, O.T&specialized se. | YES | YES | NO |
| | Cameron will receive specialized services in Fall 2014 | &Special instructions Specialized Services | YES | YES | NO |
| | | Child Links Services Assessment | YES | YES | NO |
| | Calvin will to be evaluated | To be evaluated at DuPont Hosptial 7/23/14 | YES | YES | NO |
| | Cambria to receive specialized services,. | To be evaluated for specialized services | YES | YES | YES |
| | The children will acquire social skills and age appropriae relationships | Play groups, camp, sport and recreational acti | YES | YES | NO |
| | Cameron will attend school as scheduled and complete all school acssignments | Education | YES | YES | NO |
| | Cambria toattend Kindergarden in FALL 2014 As per court order, DHS to obtain child's birth certificate | Kindergrden Fall 2014 Birth Certificate | YES | NO | NO |
| | | Medical Treatment | YES | YES | NO |
| | Cameron receives medical care | Medical treatment | YES | YES | NO |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

FAMILY SERVICE PLAN (85-457) (Page 10) Rev. 1-28-13

Commonwealth of Pennsylvania

In the Interest Of:

Cameron Reed, A Minor
Date of Birth: 07/16/2007

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:     CP-51-DP-0001977-2012
FID:            51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/19/14.

## ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

## FINDINGS/ORDERS

THE COURT FURTHER ORDERS:   Motion for reconsideration granted. Remain as committed. Child is authorized to  travel with foster parent to South Carolina from 8/16/14 through 8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation. DHS to re-refer father to ARC. Mother is referred to BHS for consultation/evaluation. Mother is sign releases of information.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14. The court denies request for foster parent being appointed as educational surrogate. Any future delays, Child

# CHILD PERMANENCY PLAN REVIEW

JUVENILE NUMBER:

CHILD'S NAME: **CAMERON REED**

CASE NUMBER/SUFFIX: **620543**

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 266 of 404

DATE OF REVIEW: 7/29/14 NC / 06/03/2014 NC

RESULTS: ☒ REVISIONS NEEDED TO FSP/CPP   ☐ SERVICES NO LONGER NEEDED

SIGNATURE OF SOCIAL WORKER: *Nadine Carrel*

SIGNATURE OF SUPERVISOR: *Nadine Carrel*

Please see Objectives _____ in the Family Service Plan.

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | SERVICES PROVIDED | ACTIONS OCCURRED | OBJECTIVES ACHIEVED |
|---|---|---|---|---|---|
| **PROVIDER'S OBJECTIVE/ACTIONS** | | | | | |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Provider Monitoring | YES | YES | NO |
| 22 | Provider will take measures to assure Child Safety | Supervision / Monitoring | YES | YES | NO |
| 22 | Provider will schedule & ensure monthly sibling visits | Sibling Visits | YES | NO | NO |
| **PARENT'S LEGAL GUARDIAN'S BJECTIVES/ACTIONS** | | | | | |
| 23 | Parents will maintain all contact & visits w/ child | Visitation | YES | YES | NO |
| 24 | Parents will have Parenting Capacity EVALUATIONS. | Evaluation | YES | NO | NO |
| 24 | Parents will attend ARC as Scheduled | ARC | YES | YES | NO |
| 24 | Ms. Howard will participate in MH Therapy | Therapy/Counseling | YES | YES | NO |
| **CHILD'S OBJECTIVES/ACTIONS** | | | | | |
| 25 | Cameron will attend school daily and complete all assignments. | Education | YES | YES | NO |
| 25 | Cameron will receive tutoring as needed/recommended. | Education | YES | YES | NO |
| | | | | | |
| | | | | | |
| | | | | | |

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| ☐ INITIAL  ☒ REVISION | CHILDREN AND YOUTH DIVISION |

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | | B. BIRTHDATE |
|---|---|---|
| Cameron Reed | | 7/16/2007 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-A | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| | A. AGENCY | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | The Villiage | Arcella Walker |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 7005 Hazel Avenue; Upper Darby, PA |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to):*

☒ ALLEGED ABUSE OR NEGLECT                      ☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED     ☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE     ☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER     ☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR       ☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect. Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home. Ms. Howard often appeared diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER _____ |
| ☐ OTHER _____ | HOMEMAKER | ☐ | ☐ | |
| | OTHER _____ | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION  / /          ☐ VISITATION PLAN  / /

☐ SERVICE  / /                     ☐ GOAL  / /

☐ OTHER REASON *(Specify: Include date)*

## 6. PLACEMENT GOAL *(Check Only One)*

| LEAVE DHS CUSTODY | DHS RETAINS CUSTODY | IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT 683-0949 OR 683-6100 (V, TTY) |
|---|---|---|
| ☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN<br>☐ ADOPTION<br>☐ PLACE WITH PERMANENT LEGAL CUSTODIAN | ☐ PLACEMENT WITH A FIT AND WILLING RELATIVE<br>☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT | |

| CHILD PERMANENCY PLAN(Continued) | CHILD'S NAME : CAMERON REED | DHS #: 620543 -A |
|---|---|---|

| PROVIDER SOCIAL WORKER | DHS SOCIAL WORKER |
|---|---|
| Candace Campbell | |

☐ INITIAL PLACEMENT    ☐ CHANGE IN PLACEMENT    ☒ UPDATE    DATE  6/3/2014

### * * HEALTH INFORMATION * *

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| Clinic | | | |
| Physician | Huffman DeVaughn Pamela | 5249 Cedas Ave, Suite C | 215 472 5437 |
| Dentist | | Phila., PA 19143 | |
| Psych | | | |
| Other | | | |
| Other | | | |
| Other | | | |

MEDICAL HEALTH PROBLEM (*Diagnosis must be provided by practitioner*)
NOne at present

MEDICATIONS:   None at Present

### **RECORD OF IMMUNIZATIONS**

| IMMUNIZATIONS | DATES OF IMMUNIZATION/BOOSTER | | | | | COMMENTS |
|---|---|---|---|---|---|---|
| DPT Tap, DPT, Td | 9.20.07; 12.06.07; 10.20.08; | 10.27.09; 2.15.12 | | | | |
| OPV Polio | 9.20.07; 12.06.07; 10.30.08; | 2.15.12 | | | | |
| MMR HepB | 9.20.07; 12.06.07; 10.30.08; | | | | | |
| MEASLES MMR | 10.30.08; 02.15.12 | | | | | |
| TETANUS Varicella | 10.30.08; 2.15.12 | | | | | |
| FLU (HIB) | | | | | | |
| OTHER (Specify) | | | | | | |
| OTHER (Specify) | | | | | | |

### **EDUCATIONAL INFORMATION**

☐ Child under 5 (not school age)    ☒ School age child    Grade 1    ☐ Child not enrolled   Reason for no enrollment _____

INITIAL PLACEMENT ONLY:         Name:  John B. Kelly          Address: 5116 Pulaski Ave
Name and address of child' school prior                                Phila., PA. 19144
to placement

Name of school after placement(if child transferred schools):  Highland Park Elementary

Describe efforts to keep child in school of origin and reason for transferring child to another school (where applicable):   Although maintaining the neighborhood school was important, it was not feasible given that Cameron's foster placement is in Upper Darby, PA.

Child Permanency Plan    Rev. 4.12.11

| CHILD PERMANENCY PLAN   (continued) | CASE NAME REED | DHS # 620543 |
|---|---|---|
| PROVIDER SOCIAL WORKER<br>Candace Campbell | DHS SOCIAL WORKER | |

## **PREPARATION FOR INDEPENDENCE**

☐ Youth will be referred to Adolescent Initiative Program          ☐ YES ___/___/___          ☒ NO     Much too young
                                                                                          (Date)                                                          (Reason)

☐ Youth was referred ___/___/___ to Adolescent Initiative Program and is awaiting decision as to acceptance.

☐ Youth was accepted by the Adolescent Initiative Program beginning: ___/___/___

☐ Youth was rejected by the Adolescent Initiative Program: ___/___/___

☐ Youth completed the Adolescent Initiative Program: ___/___/___

☐ Youth will receive the following services from the indicated providers.

| SERVICE(S) | PROVIDER(S) | SERVICE IS INAPPROPRIATE BECAUSE: |
|---|---|---|
| ☐ Housing (e.g. leases, maintenance, ,tenant rights | | |
| ☐ Employment (e.g., counseling,  referral, placement | | |
| ☐ Vocational Training | | |
| ☐ Education (e.g., counseling, referral, financial aid applications) | | |
| ☐ Life Skills (e.g., budgeting, communication, food preparation) | | |
| ☐ Other | | |

Child Permanency Plan – Rev. 4-12-11

JUVENILE NUMBER:

CHILD'S NAME:

CAMERON REED

CASE NUMBER/SUFFIX:

620543 -A

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | PROVIDER NAME & PHONE NO. | COMPLETION DATE |
|---|---|---|---|---|
| | Please see Objectives _____ in the Family Service Plan. | | | |
| **PROVIDER'S OBJECTIVE/ACTIONS** | | | | |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Supervision/Monitoring and provision of services. | PCV - 215-730-2267 | 12/18/2014 |
| 22 | Provider will schedule and ensure sibling visits occur on an at least monthly basis. | SIBLING VISITS - PROVIDER TO TRANSPORT AS NECESSARY | PCV - 215-730-2240 | 12/18/2014 |
| 22 | Provider will ensure all measures are taken to address and assure child safety. | Supervision/Monitoring | PCV - 215-730-2267 | 12/18/2014 |
| **PARENT'S LEGAL GUARDIAN'S OBJECTIVES/ACTIONS** | | | | |
| 23 | Parents will maintain all contact and visits with child | Visitation | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Mr. Reed will comply with all court ordered evaluations, urine submission, and MH/DA assessments. | Evaluations; MH/DA assessments | PCV - 215-730-2267/DHS -215-683-6100 | 12/18/2014 |
| 24 | Ms Howard will continue to actively participate in therapy/counseling as recommended | Therapy/counseling Monitoring | PCV - 215-730-2267/DHS -215-683-6100 | 12/18/2014 |
| 24 | Parents will participate in and sign all necessary consents for Cameron to receive appropriate services i.e. education/medical. | Parental cooperation/explanation of needed services. Provider monitoring. | PCV - 215-730-2267 | 12/18/2014 |
| **CHILD'S OBJECTIVES/ACTIONS** | | | | |
| 25 | Cameron will attend school on a daily basis and complete all assignments | Education Monitoring | Highland Park Elementary School1 | 12/18/2014 |
| 34 | Cameron will participate in remedial/educational testing to achieve personsl academic best. | Educational testing Tutoring as recmmended/necessary | Highland Park Elementary School1 | 12/18/2014 |
| 33 | Cameron will develop age appropriate social skills. | Recreation, sports, suppor grp; or therapy | PCV - 215-730-2267 | 12/18/2014 |
| | | | | |
| | | | | |

Commonwealth of Pennsylvania

In the Interest Of:

Cambria Reed, A Minor
Date of Birth: 01/14/2009

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-DP-0001978-2012
FID:          51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/16/14.

## ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in treatment  Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

## FINDINGS/ORDERS

THE COURT FURTHER ORDERS:   Motion for reconsideration granted. Remain as committed. Child is authorized to  travel with foster parent to South Carolina from 8/16/14 through 8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation. DHS to re-refer father to ARC. Mother is referred to BHS for consultation/evaluation. Mother is sign releases of information. DHS to obtain child's birth certificate.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14. The court denies request for foster parent being appointed as educational surrogate. Any future delays, Child

# PERMANENCY PLAN REVIEW

| CYD CASE NUMBER: 620543 B | FAMILY SURNAME: REED | DATE OF REVIEW: 06/03/14 |
|---|---|---|

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 272 of 404

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| To provide child with a safe environment that will promote healthy growth and development. | | Yes | Yes | Yes |
| 1. Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Foster care | No | Yes | |
| 2. Provider will schedule and transport (Cambria and all siblings) as needed/required for bi-monthly sibling visitation and continuation of sibling bonding. | Sibling visitation | Yes | No | |
| ********************************************************************** | END OF PROVIDER'S OBJECTIVES | ************************************* | | |
| To correct or stabilize physical health, vision, hearing or dental problems. | | Yes | Yes | No |
| 1. Cambria will receive appropriate medical evaluation to address general well-being and genetic condition. | Medical Treatment. | Yes | Yes | |
| 2. Mr. Reed/Ms. Howard, and Cambria will comply with all recomended treatments. | Medical Treatment. | Yes | Yes | |

85-457 (2) (REV. 07/04)

PAGE   1

# PERMANENCY PLAN REVIEW

| CYD CASE NUMBER: 620543 B | FAMILY SURNAME: REED | DATE OF REVIEW: 06/03/14 |
|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| Dual Diagnosis. | | | | |
| To stabilize mental health problems | | Yes | Yes | No |
| 1. Winchella Howard/Cameron Reed will participate in mental health evaluation. | Psychiatric/psychological evaluation | Yes | Yes | |
| 2. Winchella Howard/Mr. Reed will comply with all treatment recommendations including therapy and or medication as prescribed. | Psychiatric/psychological evaluation | Yes | No | |
| 3. Ms. Howard and Mr. Reedwill sign authorization for to allow CYD to obtain copies of evaluations and progress reports. | Psychiatric/psychological evaluation, Psychiatric or other recommended therapy including medication. | Yes | Yes | |
| ******************************************************************* | END OF PARENTS OBJECTIVES | ********************************* | ***** | ***** |
| To address deficits around mastery of age appropriate development tasks and skills. | | Yes | Yes | No |
| 1. Ms. Howard/Mr. Reed will participate in evaluation and recommended | Education or Therapeutic | Yes | No | |

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 274 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED | DATE OF REVIEW: | 7/29/14 06/03/14 NC |

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| treatment for child. | Services | | | |
| 2 . Cambria will participate in remedial or specialized services to overcome developmental delays | Education or Therapeutic Services | Yes | Yes | |
| To acquire social skills and age appropriate relationships. | | Yes | Yes | No |
| 1 . Cambria will participate in community based or sponsored peer groups, recreational, club or organizational activities. | Support , Recreation, Play Grp. | Yes | No | |
| | | | | |
| ****************************************************************** | END OF CHILD. OBJECTIVES | ********************************** | ***** | ***** |

85-457 (2) (REV. 07/04)

PAGE    4

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| | CHILDREN AND YOUTH DIVISION |

☐ INITIAL   ☒ REVISION

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | B. BIRTHDATE |
|---|---|
| Cambria Reed | 1/14/2009 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-B | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| | A. AGENCY | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | ☐ FORMTEXT The Villiage | Ronya Wilson |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 2345 W. Harold Street Phila., PA 19132 |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to)*:

☒ ALLEGED ABUSE OR NEGLECT

☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED

☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE

☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER

☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR

☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect. Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home. Ms. Howard often appeared diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER _____ |
| ☐ OTHER _____ | HOMEMAKER | ☐ | ☐ | |
| | OTHER _____ | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION   / /

☐ VISITATION PLAN   / /

☐ SERVICE   / /

☐ GOAL   / /

☐ OTHER REASON *(Specify: Include date)*

## 6. PLACEMENT GOAL *(Check Only One)*

**LEAVE DHS CUSTODY**

☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN

☐ ADOPTION

☐ PLACE WITH PERMANENT LEGAL CUSTODIAN

**DHS RETAINS CUSTODY**

☐ PLACEMENT WITH A FIT AND WILLING RELATIVE

☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT 683-0949 OR 683-6100 (V, TTY)

Child Permanency Plan   Rev. 4-12-11

| CHILD'S PERMANENCY PLAN (CONTINUED) | CHILD'S NAME  CAMBRIA REED | | DHS #  620543 ( B ) |
|---|---|---|---|
| PROVIDER SOCIAL WORKER  (Cami Turner) *Danaya Lewis* | | DHS SOCIAL WORKER    NAOMI CARROLL | |

X    INITIAL PLACEMENT           CHANGE IN PLACEMENT        UPDATE        DATE    **11/04/13**

### *** HEALTH INFORMATION ***

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| | Dr. Mark Kobb | Covenant House  251 E. Bringhurst Street  19144 | 215.844.1020 |

MEDICAL HEALTH PROBLEM (Diagnosis must be provided by practioner)

MEDICATONS:  None At Present

### *** RECORD OF IMMUNIZATIONS ***

| IMMUNIZATIONS | DATES OF IMMUNIZATION / BOOSTER | COMMENTS |
|---|---|---|
| DTAP H:b-I PV  DTAP  Polio-IPV  PCV-13 | 03.31.2009, 5.12.09; 7.14.09  09.03.2010   DTaP(aF)-3.06.12; DT(pd); 5.03.13  05.0313—PCV-7; 3.31.09; 5.12.09; 7.14.09  09.03.2010 | |

### *** EDUCATIONAL INFORMATION ***

X   CHILD NOT SCHOOL AGE            X    CHILD NOT ENROLLED

INITIAL PLACEMENT ONLY:
Name and addres of child's school at time of placement

DISTANCE BETWEEN PLACEMENT SITE AND SCHOOL AT TIME OF PLACEMENT:        mi    6

PLACEMENT LOCATION IS:        X   BEST SUITED TO CHILD'S            ONLY RESOURCE AVAILABLE

NAME AND ADDRESS OF CHILD'S CURRENT SCHOOL

SCHOOL GRADE LEVEL    0       PERFORMANCE        AT GRADE LEVEL        ABOVE GRADE LEVEL        BELOW GRADE LEVEL

SPECIAL PROGRAM:    N.A

85-467 REV. ( 07/04)        ADDITIONAL HEALTH AND EDUCATIONAL INFORMATION MAY BE FOUND IN THE CHILD'S  SECTION OF THE CASE RECORD

# PERMANENCY PLAN OBJECTIVES

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 277 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| To provide child with a safe environment that will promote healthy growth and development. | | | 12/18/14 |
| 1 . Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Foster care | PCV - 215-730-2240 | 12/18/14 |
| 2 . Provider will schedule and transport (Cambria and all siblings) as needed/required for bi-monthly sibling visitation and continuation of sibling bonding. | Sibling visitation | PCV - 215-730-2240 | 12/18/14 |
| ************************************************************************* | END OF PROVIDER'S OBJECTIVES | ************************************** | ******** |
| To correct or stabilize physical health, vision, hearing or dental problems. | | | 12/18/14 |
| 1 . Cambria will receive appropriate medical evaluation to address general well-being and genetic condition. | Well child visits Genetic Condition. | Mark E. Cobb - 215-844-1020 St. Chris | 12/18/14 |
| 2 . Parents and/or caregiver will comply with all recomended treatmentsfor Cambria. | Medical Treatment. | Covenant House- 215-844-1020 | 12/18/14 |
| 3 . Ms. Howard or Mr. Reed will sign authorization form will allow CYD to obtain medical records and reports. | Medical Treatment. | Covenant House/St. Chris | 12/18/14 |

85-457 (2) (REV. 07/04)

PAGE   1

# PERMANENCY PLAN OBJECTIVES

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 278 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| | | | 02-28/14 SC  12/19/14 |
| To stabilize mental health problems | | | |
| 1 . Winchella Howard will participate in mental health evaluation. Cameron Reed will participate in mental health evaluation. | Psychiatric/psychological evaluation | BHS ARC - 267-514-3500 | 12/18/14 NC |
| 2 . Winchella Howard/Mr. Reed will comply with all treatment recommendations including therapy and or medication as prescribed. | Psychiatric/psychological evaluation | BHS ARC - 267-514-3500 | 12/18/14 NC |
| 3 . Ms. Howard and Mr. Reedwill sign authorization for to allow CYD to obtain copies of evaluations and progress reports. | Psychiatric/psychological evaluation, Psychiatric or other recommended therapy including medication. | BHS ARC - 267-514-3500 | 12/18/14 NC |
| ********************************************************************** | END OF PARENTS OBJECTIVES | *************************************** ******** | |
| To address deficits around mastery of age appropriate development tasks and skills. | | | 12/18/14 NC |
| 1 . Ms. Howard/Mr. Reed will participate in evaluation and recommended treatment for child. | Education or Therapeutic Services | Elwyn Services - 215-222-8054 | 12/18/14 NC |
| 2 . Cambria will participate in remedial or specialized services to overcome developmental delays | Education or Therapeutic Services | Elwyn Services - 215-222-8054 | 12/18/14 NC |



Commonwealth of Pennsylvania

In the Interest Of:

Christian Reed, A Minor
Date of Birth: 03/23/2011

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:   CP-51-DP-0001979-2012
FID:         51-FN-002936-2012

# PERMANENCY REVIEW ORDER

PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/12/14.

ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

FINDINGS/ORDERS

THE COURT FURTHER ORDERS:  Motion for reconsideration granted. Remain as committed. Child is authorized to  travel with foster parent to South Carolina from 8/16/14 through  8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation. DHS to re-refer father to ARC. Mother is referred to BHS for consultation/evaluation. Mother is sign releases of information.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14.  Child receives speech, , occupational and special instruction through Elywn.

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 280 of 404

| CYD CASE NUMBER: 620543 C | FAMILY SURNAME: REED | DATE OF REVIEW: 07.29.14 06/03/14 |
|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| To provide child with a safe environment that will promote healthy | | Yes | Yes | No |
| growth and development. | | | | |
| 1. Provider will meet with child as planned, provide supervision of | Foster care | Yes | Yes | |
| placement, consult with child's care provider and family. | | | | |
| 2. Provider will insure the agreed upon objectives are meet and work to | Provider oversight | Yes | Yes | |
| insure child safety. | | | | |
| To insure frequent and ongoing contact between siblings. | | Yes | Yes | No |
| 1. Provider will insure that Christian has visits with his siblings on | Sibling visitation | Yes | No | |
| a bi-weekly basis. | | | | |
| 2. Provider will schedule and transport child and siblings as needed to | Sibling visits | Yes | No | |
| insure sibling visits occur. | | | | |
| ********************************************************************** | END OF PROVIDER'S OBJECTIVES | ********************************* | | |
| To meet the child(ren)'s daily basic needs including food and clothing | | Yes | Yes | No |
| 1. Ms. Howard/Mr. Reed will provide child(ren) with regular nutritious | Homemaker Service or | Yes | No | |

85-457 (2) (REV. 07/04)                                                                                                    PAGE    1

# CHILD PERMANENCY PLAN REVIEW (Continued)

**Review Questions**

1. Recommendation for this hearing and next six months:  This child should be:

- ☒ Returned to parent, guardian, custodian
- ☐ Continued in foster care for a specified period
- ☐ Placed for adoption
- ☐ Placed with permanent legal custodian
- ☐ Placed with a fit and willing relative
- ☐ Placed in another planned permanent living arrangement

2. Determine the continuing necessity for and appropriateness of the placement

Placement remains necessary. The placement setting is appropriate at this time. All basic needs are being met.

3. Determine extent of compliance with the service plan

Ms. Howard has been significantly compliant with the objectives and goals of the FSP. She has completed a number of the required wkshops at ARC. She visits with the children consistently. Ms. Howard has participated in the Parenting Capacity evaluation and remains cooperative with DHS and provider agency.

Mr. Reed has been minimually compliant. He has completed the Focus on Fathers grp at ARC. He refuses to attend/participate in other required wkshops. Mr. Reed has yet to complete the Parenting Capacity Evaluation which was ordered over 4 months ago. He visits with the children consistently. Christian is receiving EI service. As needed. medical visits/follow-up for Neurofibromatosis is being Addressed. Genetic condition Needs ongoing follow-up. Parents Need to Attend/participate in medical visits.

4. Determine extent of progress made toward alleviating circumstances that necessitated the original placement

Progres is difficult to determine as DHS has no doctmentation of the Parents parenting capacity. Ms. Howard; however, has been very coopertative and consitently completed assigned tasks. Visits are still supervised at the agency. Assessments will be made on-going.

| The goal of | REUNIFICATION | | will be achieved by | 12/19/2014 |
|---|---|---|---|---|
| | | | | Date |

Based on the results recorded on the Permanency / Dispositional Review Order attached, are revisions to the Child Permanency Plan required?   ☒ YES   ☐ NO

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| | CHILDREN AND YOUTH DIVISION |

☐ INITIAL    ☒ REVISION

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | B. BIRTHDATE |
|---|---|
| Christian Howard | 3/23/2011 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-C | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| | A. AGENCY | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | The Villiage | Arcella Walker |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 7005 Hazel Avenue; Upper Darby,PA |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to)*:

☒ ALLEGED ABUSE OR NEGLECT    ☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED    ☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE    ☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER    ☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR    ☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect. Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home. Ms. Howard often appearded diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER _____ |
| ☐ OTHER _____ | HOMEMAKER | ☐ | ☐ | |
| | OTHER _____ | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

☐ OTHER REASON *(Specify: Include date)*

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION   / /    ☐ VISITATION PLAN   / /

☐ SERVICE   / /    ☐ GOAL   / /

## 6. PLACEMENT GOAL *(Check Only One)*

**LEAVE DHS CUSTODY**

☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN
☐ ADOPTION
☐ PLACE WITH PERMANENT LEGAL CUSTODIAN

**DHS RETAINS CUSTODY**

☐ PLACEMENT WITH A FIT AND WILLING RELATIVE
☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT 683-0949 OR 683-6100 (V, TTY)

| CHILD PERMANENCY PLAN *(Continued)* | CHILD'S NAME : Christien Howard | | DHS #: 620543 - C |
|---|---|---|---|

| PROVIDER SOCIAL WORKER | DHS SOCIAL WORKER |
|---|---|
| Genea Davis | |

| ☐ INITIAL PLACEMENT | ☐ CHANGE IN PLACEMENT | ☒ UPDATE | DATE 06·03·2014 |
|---|---|---|---|

## * * HEALTH INFORMATION * *

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| Clinic | | | |
| Physician | Drs Huffman Devaughn Pamela | 5249 Cedar Ave, suite c | 215 472- |
| Dentist | | Phila, PA 19143 | 5437 |
| Psych | | | |
| Other | | | |
| Other | | | |
| Other | | | |

**MEDICAL HEALTH PROBLEM** *(Diagnosis must be provided by practitioner)*
Neurofibromatosis

**MEDICATIONS:** None at present

## **RECORD OF IMMUNIZATIONS**

| IMMUNIZATIONS | DATES OF IMMUNIZATION/BOOSTER | | | COMMENTS |
|---|---|---|---|---|
| DPT | DTAp-HepB-IPV 06.07.11; 8·22·11; 08.03.2012 | | | |
| OPV | DTap-UF   03·28·13   DT, ped – 06·28·13 | | | |
| MMR | DTap-HepB-IPV   06.07.2011; 08·22·11; 08.03·12 | | | |
| MEASLES | HIB(PRP-T)   06·07·11; 08·22·11, 08·03·12; 06·28·13 | | | |
| TETANUS | PcV13   06·07·11; 08·22·11, 08·03; 06·28·13 | | | |
| FLU (HIB) | Rotavirus (Rota feq) 06·07·2011; 08·22·11 | | | |
| OTHER (Specify) | | | | |
| OTHER (Specify) | | | | |

## **EDUCATIONAL INFORMATION**

☒ Child under 5 (not school age)   ☐ School age child   Grade _____   ☐ Child not enrolled   Reason for no enrollment _____

| INITIAL PLACEMENT ONLY: Name and address of child' school prior to placement | Name: | Address: |
|---|---|---|

Name of school after placement(if child transferred schools):   Undetermined at this time.

Describe efforts to keep child in school of origin and reason for transferring child to another school (where applicable):   Christien is now participating in a SEEDS to SEEDS Program due to his special needs.

anancy Plan   Rev 4 12 11

| CHILD PERMANENCY PLAN (continued) | CASE NAME Christian Howard | DHS # 620543 - C |
|---|---|---|
| PROVIDER SOCIAL WORKER Genea Davis | DHS SOCIAL WORKER | |

## **PREPARATION FOR INDEPENDENCE**

☐ Youth will be referred to Adolescent Initiative Program ☐ YES ___/___/___ (Date) ☒ NO ___Much too young___ (Reason)

☐ Youth was referred ___/___/___ to Adolescent Initiative Program and is awaiting decision as to acceptance.

☐ Youth was accepted by the Adolescent Initiative Program beginning: ___/___/___

☐ Youth was rejected by the Adolescent Initiative Program: ___/___/___

☐ Youth completed the Adolescent Initiative Program: ___/___/___

☐ Youth will receive the following services from the indicated providers.

| SERVICE(S) | PROVIDER(S) | SERVICE IS INAPPROPRIATE BECAUSE: |
|---|---|---|
| ☐ Housing (e.g. leases, maintenance, ,tenant rights | | |
| ☐ Employment (e.g., counseling, referral, placement | | |
| ☐ Vocational Training | | |
| ☐ Education (e.g., counseling, referral, financial aid applications) | | |
| ☐ Life Skills (e.g., budgeting, communication, food preparation) | | |
| ☐ Other | | |

Child Permanency Plan -- Rev. 4-12-11

# CHILD PERMANENCY PLAN OBJECTIVES

JUVENILE NUMBER:

CHILD'S NAME:

Christien Howard

CASE NUMBER/SUFFIX:

620543 - C

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | PROVIDER NAME & PHONE NO. | COMPLETION DATE |
|---|---|---|---|---|
| | Please see Objectives _____ in the Family Service Plan. | | | |
| **PROVIDER'S OBJECTIVE/ACTIONS** | | | | |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Supervision/monitoring - provision of services. | PCV - 215-730-2267 | 12/18/2014 |
| 22 | Provider will schedule and ensure sibling visitation occurs on at least a monthly basis. | SIBLING VISITS - TRANSPORT AS NECESSARY. | PCV - 215- 730-2240 | 12/18/2014 |
| 22 | Provider will ensure all measures are taken to address/assure child safety. | Supervision/Monitoring. | PCV - 215-730-2267 | 12/18/2014 |
| **PARENT'S LEGAL GUARDIAN'S OBJECTIVES/ACTIONS** | | | | |
| 24 | Ms. Howard will continue participation in Family School until completion. | Appropriate Parenting Skills - Education/Modeling. | Family School | 12/18/2014 |
| 23 | Ms. Howard/ Mr. Reed will maintain all contact and visits with children. | Visitation | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Ms. Howard will continue to actively participate in therapy/counseling as needed/necessary. | MH counseling/therapy | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Mr. Reed/Ms. Howard will comply with all evaluations, CEU assessments, and urine submission as court ordered. | Evaluations/MH and D/A assessments | PCV - 215-730-2267 | 12/18/2014 |
| **CHILD'S OBJECTIVES/ACTIONS** | | | | |
| 25 | Christien will attend school program as scheduled | EDUCATION | Delaware County IU 25 | 12/18/2014 |
| 34 | Christien will receive all necessary educational E.I. Services | OT, Special Instruction, and Speech Therapy | Elwyn E.I. | 12/18/2014 |
| 30 | Christien will receive all necssary follow up and testing for neurofibromatosis. | Medical Follow tests - Well Child Visits | St. Christopher's Hospital | 12/18/2014 |
| | | | | |
| | | | | |

Child Permanency Plan – Rev. 4-12-11

Commonwealth of Pennsylvania

**IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA**

In the Interest Of:

Camella Reed, A Minor
Date of Birth: 08/31/2017

JUVENILE DIVISION

DOCKET NO: CP-51-DP-0002701-2017
FID: 51-FN-002936-2012

# CONTINUANCE ORDER

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
|---|---|---|
| DHS Case Worker | Case Worker | In Person |
| DHS Representative | Children and Youth Services | In Person |
| Reed, Cameron | Father | In Person |
| Howard, Winchella | Mother | In Person |
| Reed, Camella | Child | Did Not Attend |
| Banister, Robin Winthrop | Attorney for Mother (Howard, Winchella) | Substitute Counsel |
| Frierson, Lue B. | Attorney for Father (Reed, Cameron) | In Person |
| Defender Association - Child Advocacy Unit | Guardian Ad Litem for Child (Reed, Camella) | In Person |
| Philadelphia Solicitor's Office | Attorney for Children and Youth Services (Philadelphia Department of Human Services) | In Person |

**PERSONS APPEARING AT HEARING**

The following persons appeared at this hearing: ACS PRATT, DHS REP - CHERRY, DHS SW'S - SMITH & JONES, THE VILLAGE CM - FARMER, ATTNY LUE FRIERSON FOR FATHER - P AND SIF ATTNY ROBIN BANISTER FOR MOTHER, MOTHER, FATHER, CASW, DACAU - GANGEL, DCR - TB

AND NOW, this 16th day of November, 2017,

**FINDINGS/ORDERS**

THE COURT FURTHER FINDS:
Child is placed in Foster Care through The Village. Safe as of 11/3/2017.
THE COURT FURTHER ORDERS:
Adjudication Further Deferred - Temp Commit Stands. Case continued as this ADJ Hearing will be contested. Counsel agree to waive the 10 Adj Date. Parents are to have supervised visits with the Child at the agency.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - Contested Adjudicatory Hearing - 01/23/2018 - 11:30AM - 1501 Arch Street - Courtroom 5B - Judge Allan L. Tereshko

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

CP-51-DP-0002701-2017

In The Interest Of:  Camella Reed, A Minor

BY THE COURT:

_____
Judge Allan L. Tereshko

Copies To: ACS PRATT, DHS REP - CHERRY, DHS SW'S - SMITH & JONES, THE VILLAGE CM - FARMER, ATTNY LUE FRIERSON FOR FATHER - P AND SIF ATTNY ROBIN BANISTER FOR MOTHER, MOTHER, FATHER, CASW, DACAU - GANGEL.

**theVillage**

November 15, 2017

Winchella Howard & Cameron Reed

Dear Winchella Howard & Cameron Reed,
I am writing to give you a visitation schedule for supervised visits with your daughter, Camella Reed.

***Please take note of the following instructions regarding visitation:**

> ➤ Your visits must be confirmed. Please contact **Arielle Fonrose at 215-730-2314 at theVillage on the bold dates listed below. Please contact Arielle Fonrose no later than 3:00pm on the Sunday before your visit to confirm that you will be available to visit with Camella Reed.** If I am not available, please leave a voicemail message on my voicemail box. I will check my messages to see if you have confirmed twenty four hours prior to visit. **If I do not hear from you by 3:00pm on Sunday, your visit will be cancelled.**

> ➤ Please remember to be on time for your visits. If you are **15 or more minutes late** to your visit, **Camella Reed** will not be present to visit with you, as I will assume that you are not planning to attend. Your visit will also not be re-scheduled. **If you need to cancel your visit the day of the visit, your visit will not be rescheduled.**

> ➤ Please also note that this schedule may need to be altered in the future. If there is a conflict you will be notified in advance and the visit will be rescheduled.

The visits are scheduled for: **Monday afternoon from 3:30-4:30pm, weekly.**

**The following are the dates for upcoming visits:**

MONDAYS
~~Wednesdays~~

| | | |
|---|---|---|
| 11/20/17 | 12/18/17 | 1/15/17 |
| 11/27/17 | 12/25/17** will change due to holiday | 1/22/17 |
| 12/4/17 | 1/1/17**    will change due to holiday | 1/29/17 |
| 12/11/17 | 1/8/17 | |

Please feel free to contact me or my supervisor, **Genea Davis (215-730-2255),** if you have any questions or concerns regarding this schedule.

Sincerely,

HOPE IN ACTION SINCE 1877

452 S. Roberts Rd., Rosemont, PA 19010 | 610.525.5400
Preheim Center 6517 Chester Ave., Philadelphia, PA 19142 | 215.730.2240

village1877.org

**RSS Assessment / Progress Report:**            **Service Area – Housing**

- ARC's Housing Specialist conducts Housing education workshops on Tenants Rights, Leasing and the Eviction Process, and provides one-on-one consultation to create a Housing Stabilization Plan to identify housing appropriate for reunification. In conjunction with ARC's Housing Specialist, PathwaysPA conducts Financial Counseling workshops on Credit and Money Management and provides one-on-one consultation to create a Personal Financial Plan to assist with securing housing appropriate for reunification.
- At the time of ARC Intake, Mr. Reed opted to decline ARC services to address the goal of Housing.
- Mr. Reed is not addressing the goal of Housing at ARC.

**RSS Assessment / Progress Report:**            **Service Area - Financial Counseling**

- The PathwaysPA Financial Educator offers group Financial Counseling workshops to educate Parents/Caregivers on budgeting and money management, savings and maintaining credit.
- At the time of ARC Intake, Mr. Reed opted to decline ARC services to address the goal of Financial Counseling.
- Mr. Reed is not addressing the goal of Financial Counseling at ARC.

**RSS Assessment / Progress Report:**            **Service Area - Mental Health**

- Mr. Reed was referred for Mental Health services at Community Council's Outpatient Satellite Clinic at ARC on 2/18/2014.
- The Outpatient Therapist and Psychiatrist at Community Council's Outpatient Satellite Clinic at ARC administer a 2 part Comprehensive Bio-psychosocial Evaluation (CBE). Parents/ Caregivers receive outpatient Mental Health therapy sessions with an assigned Therapist and medication management services with the Psychiatrist if necessary.
- Mr. Reed completed his Mental Health Evaluation on 2/18/2014.
- Mr. Reed has been discharged from Community Council's Outpatient Satellite Clinic at ARC effective 3/18/2014 as he is not eligible for Mental Health services due to having private medical insurance through his employer. Mr. Reed was directed to contact his medical insurance vendor to obtain a list of Mental Health clinicians.
- Mr. Reed is not addressing goal of Mental Health at ARC.

**RSS Assessment / Progress Report:**            **Service Area – Family Counseling**

- At the time of ARC Intake, Mr. Reed was advised by his RSS that Family Counseling is typically arranged in conjunction with the Placement Agency when clinically appropriate for the child.
- Ms. Reed will not be addressing the goal of Family Counseling at ARC.

**RSS Assessment / Progress Report:**            **Service Area - Drug and Alcohol**

- Mr. Reed was referred to ARC's Enhanced Services Liaison on 2/18/2014.
- The Enhanced Services Liaison (ESL) provides linkage to off-site Drug and Alcohol treatment facilities and conducts monthly monitoring meetings with Parents/Caregivers receiving treatment off-site. The ESL also offers Drug and Alcohol group education workshops to provide education and support for Parents/Caregivers in the recovery process.
- Mr. Reed completed an Intake appointment on 3/19/2014 with ARC's ESL. Mr. Reed was referred to the Parkside Recovery Germantown (5429 Germantown Ave.) for Intake and Assessment for Substance Abuse Intensive Outpatient Program (IOP) services on 3/20/2014. He did not report as scheduled.
- The ESL will serve as a liaison between ARC, Mr. Reed and Parkside Recovery to monitor his progress and enhance the probability of sobriety being maintained. Mr. Reed will be monitored for compliance with Parkside Recovery during monthly monitoring meetings with the ESL.
- Mr. Reed did not report for a follow up monitoring meeting with ARC's ESL on 3/26/2014. His attendance has been inconsiste' has he has had 1 absence.
- Mr. Reed will continue to address the goal of Drug and Alcohol at ARC.



COMMUNITY LEGAL SERVICES
OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

*Marjorie A. Janoski/dh*

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh



# COMMUNITY LEGAL SERVICES
## OF PHILADELPHIA

September 4, 2015

Ms. Winchella Howard
5321 Wayne Avenue
Apt. 301
Philadelphia, PA  19144

Dear Ms. Howard:

Your kids' cases were in court on September 1, 2015.  Ms. John and I talked to you about the cases and what the judge will be asked to do when we come back to court.  You decided you do not want to sign voluntary relinquishment of parental rights forms.

Your kids' cases will come back to court on **January 6, 2016 at 2:00 p.m. in Courtroom 5B, 1501 Arch Street**.  You must attend this hearing.  On January 6, Judge Tereshko will decide if your parental rights should be taken away from you so that the children can be adopted.

Please call me in the beginning of December so we can make an appointment to begin to prepare for the January 6 hearing.  I can be reached at (215) 981-3791 and I look forward to hearing from you.

Sincerely,

MARJORIE A. JANOSKI
Staff Attorney

MAJ/dh

**PETITION FOR**
**INVOLUNTARY TERMINATION OF PARENTAL RIGHTS**

**RE:  Calivn Clifford Reed aka Calvin Reed**
**DHS # 620543 D**
**[DHS Social Work Services staff:  Ashley John]**



Attorney's Name:
Attorney's Address:

Attorney's Telephone Number:
Attorney's Identification Number:

Michael Pratt, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
(215) 832-2101
318608

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
### ADOPTION BRANCH

IN RE: ADOPTION OF
**Calivn Clifford Reed
aka Calvin Reed**

     :
     :
     :

AP#
FID: 51-FN-002936-2012

## PETITION FOR
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

## RULE

AND NOW, this _____ day of _____,

20 _____, to Judicially resolve the attached Petition, it is hereby **ORDERED** and **DECREED** that

an evidentiary hearing is set for **Philadelphia Family Court, 1501 Arch Street Philadelphia, PA**

**19102, 5th Floor, Courtroom 5B**, for the **6th** day of **January, 2016**, at **2:00 P.M.**

At least ten (10) days written notice shall be given to the parent or parents, putative father, or

the parents or guardian of the *minor parent* whose rights are to be terminated. Service shall be

accomplished either by regular mail and certified mail, return receipt requested, or by personal

service to his, her or their last known addresses.

## BY THE COURT:

_____

                                   **J.**

**DHS # 620543 D**

1

Attorney's Name:
Attorney's Address:

Michael Pratt, Esquire
1515 Arch Street, 16th Floor
Philadelphia, PA 19102-1595
(215) 832-2101
318608

Attorney's Telephone Number:
Attorney's Identification Number:

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
### ADOPTION BRANCH

IN RE: ADOPTION OF
**Calivn Clifford Reed**
**aka Calvin Reed**

:        AP#
:        FID: 51-FN-002936-2012
:

## PETITION FOR INVOLUNTARY TERMINATION
## OF PARENTAL RIGHTS

## TO THE HONORABLE, THE JUDGES OF THE SAID COURT:

1. Petitioner, Philadelphia Department of Human Services, Children and Youth Division (hereinafter "DHS"), is the local government agency responsible for the care and supervision of dependent children in Philadelphia.

2. The above-named child is a dependent under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301 - 6365 (1982 & Supp. 1990)

3. This child's mother is **Winchella Howard**. Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. She is of **the African American** race and **the unknown** faith. The mother's birthdate is **September 30, 1981**. The mother's marital status is **unknown**.

4. This child's putative/natural/presumptive father is **Cameron Deross Reed aka Cameron Reed**. His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144**. He is of **the African American** race and **the unknown** faith. The father's birthdate is **June 19, 1967**. The father's marital status is **unknown**.

2

5. The child, who was born on **May 29, 2013**, in **Philadelphia, PA**, was adjudicated dependent on **November 4, 2013** and committed to the Petitioner on **November 4, 2013**. The child has been in the custody of the Petitioner continuously since **November 4, 2013**.

6. That the Petitioner's statutory ground(s) for termination, pursuant to 23 Pa.C.S.A. § 2511 is/are (list applicable sections):

☒    2511(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

☒    2511(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

☐    2511(a)(3) The parent is the presumptive but not the natural father of the child;

☐    2511(a)(4) The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

☒    2511(a)(5) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

☐    2511(a)(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

3

☐    2511(a)(7) The parent is the father of a child who was conceived as a result of rape; and

☒    2511(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

☐    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

7. That other factors and considerations for termination pursuant to the Adoption Act is/are as follows:

☒ 2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

8. Termination of the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** would best serve the needs and welfare of **Calivn Clifford Reed aka Calvin Reed**;

4

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and supervised by the State Department of Public Welfare;

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, Philadelphia, PA 19102;

11. The Petitioner is willing and able to take custody of the child until such time as the child is adopted.

WHEREFORE, the Philadelphia Department of Human Services prays this Honorable Court to enter an **ORDER**:

1. Directing a finding of involuntary termination of the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed**;

2. Directing the transfer of custody of **Calivn Clifford Reed aka Calvin Reed** to the Philadelphia Department of Human Services;

3. Authorizing the Philadelphia Department of Human Services to give consent to the adoption of **Calivn Clifford Reed aka Calvin Reed** without further consent of or notification to **Winchella Howard and Cameron Deross Reed aka Cameron Reed**.


BY:

_____
Michael Pratt, Esquire

5

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 832-2101
Attorney's Identification Number:         318608


## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH


IN RE: ADOPTION OF            :        AP#
**Calivn Clifford Reed**      :        FID: 51-FN-002936-2012
**aka Calvin Reed**           :


## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW


By its Petition, Petitioner, the Philadelphia Department of Human Services, Children and

Youth Division, having filed a Petition proceeding under the "Adoption Act", 1980, October 15, P.L.

934, No. 163, Section 1, effective January 1, 1981, seeks a DECREE for involuntary termination of

the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to

**Calivn Clifford Reed aka Calvin Reed**; the Court makes the following Findings of Fact and

Conclusions of Law:

The Court, after a hearing on the Petition for Involuntary Termination of Parental Rights and

after taking testimony and/or receiving a Stipulation as to the Facts as the basis for the involuntary

termination of parental rights, finds that the Petitioner has established by clear and convincing

evidence the following:

6

## FINDINGS OF FACT

1. The subject of this Petition is a minor child named **Calivn Clifford Reed aka Calvin Reed** who was born on **May 29, 2013** in **Philadelphia, PA.**

2. The mother of the child is **Winchella Howard** who was born on **September 30, 1981** in **Philadelphia, PA.** Her last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** She is of **the African American** race and **the unknown** faith.

3. The mother **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. She has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

4. The putative/natural/presumptive father of the child is **Cameron Deross Reed aka Cameron Reed** who was born on **June 19, 1967** in **Philadelphia, PA.** His last known address is **5321 Wayne Avenue, Apartment 301, Philadelphia, PA 19144.** He is of **the African American** race and **the unknown** faith.

5. The putative/natural/presumptive father **has failed to achieve full and continuous compliance with the established FSP objectives to facilitate reunification with Cameron, Cambria, Christian, and Calvin. He has also failed to consistently visit, plan for, and provide for Cameron, Cambria, Christian, and Calvin throughout their time in placement.**

6. The child was adjudicated dependent on **November 4, 2013** by the Honorable **Allan L. Tereshko.** The Family Service Plan goal has been changed to **Adoption.**

7. Since **November 4, 2013,** the child has been without essential parental care, control and subsistence necessary for the child's physical or mental well-being, and this situation cannot or will not be remedied by the parents within a reasonable period of time;

8. The said child has been in the care and custody of the Petitioner continuously for a period in excess of six (6) months, specifically since **November 4, 2013.**

9. The Petitioner is an Agency incorporated under the laws of the Commonwealth of Pennsylvania and the Philadelphia Home Rule Charter;

7

10. The Petitioner is situated in the City and County of Philadelphia, with its address being 1515 Arch Street, 8th floor, Philadelphia, PA 19102.

11. The Petitioner is willing and able to take custody of the child and to arrange for and consent to his/her adoption by suitable persons;

WHEREFORE, the Court of Common Pleas of Philadelphia County arrives at the following:

## CONCLUSIONS OF LAW

1. **Calivn Clifford Reed aka Calvin Reed** has been without essential parental care, control and subsistence necessary for his/her physical and mental well-being;

2. Under the Juvenile Act, 42 Pa.C.S.A. § 6351 and 55 Pa. Code § 3130.74, the disposition best suited to the protection and physical, mental and moral welfare of the above-named child is Adoption.

3. Under the Adoption Act of 1980, October 15, P.L. 934, No. 163, Section 1, the Philadelphia Department of Human Services may properly file a Petition for a Finding of Involuntary Termination of Parental Rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed** to **Calivn Clifford Reed aka Calvin Reed** and may ask for custody of said child;

4. All prerequisites for the filing of a Petition for Involuntary Termination and the entry of such a Decree have been met;

5. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard and Cameron Deross Reed aka Cameron Reed**:
(*check the applicable subsections*):

[x]    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

[ ]    2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

9

[x]    2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

10

[x]    2511 (b) Other Considerations. -

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

6. This Honorable Court having jurisdiction over this matter grants the Decree prayed for in the pleadings.

**BY THE COURT:**

_____
                                                                                    J.

DATED: _____

11

## VERIFICATION

I, Michael Pratt, Esquire, being duly sworn according to law, depose and say that I am an Attorney of the within-named corporation; that I am fully authorized to make this Verification on its behalf; and that the facts set forth in the foregoing Petition are true and correct to the best of my knowledge, information and belief. The Petitioner is aware that false statements contained herein are subject to the penalties of 18 Pa. Cons. Stat. § 4904.

_____
Michael Pratt, Esquire

DATED: ____12/22/15____

12

Attorney's Name:                          Michael Pratt, Esquire
Attorney's Address:                       1515 Arch Street, 16th Floor
                                          Philadelphia, PA 19102-1595
Attorney's Telephone Number:              (215) 832-2101
Attorney's Identification Number:         318608


## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH


IN RE: ADOPTION OF          :      AP#
**Calivn Clifford Reed**     :      FID: 51-FN-002936-2012
**aka Calvin Reed**          :


## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS


**AND NOW,** this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Winchella Howard**.

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Winchella Howard**:
(*check the applicable subsections*):

[x]     2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]     2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

13

[ ]     2511(a)(3)  The parent is the presumptive but not the natural father of the child;

[ ]     2511(a)(4)  The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]     2511(a)(5)  The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]     2511(a)(6)  In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]     2511(a)(7)  The parent is the father of a child who was conceived as a result of rape; and

[x]     2511(a)(8)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]     2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)      an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)     a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)     an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

14

[x]     2511 (b) Other Considerations. -

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3. Specific findings have been placed on the record at the end of the evidentiary hearing.

4. **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Winchella Howard are forever terminated.**

5. The adoption of **Calivn Clifford Reed aka Calvin Reed** may continue without further notice to or consent of **Winchella Howard.**

6. The custody of **Calivn Clifford Reed aka Calvin Reed** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Calivn Clifford Reed aka Calvin Reed.**

**BY THE COURT:**

_____

                                                    **J.**

15

Attorney's Name:                    Michael Pratt, Esquire
Attorney's Address:                 1515 Arch Street, 16th Floor
                                    Philadelphia, PA 19102-1595
Attorney's Telephone Number:        (215) 832-2101
Attorney's Identification Number:   318608

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FAMILY COURT DIVISION
## ADOPTION BRANCH

IN RE: ADOPTION OF          :    AP#
**Calivn Clifford Reed**    :    FID: 51-FN-002936-2012
**aka Calvin Reed**         :

## DECREE OF
## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

AND NOW, this _____ day of _____, 20 _____, after review of the record and after an evidentiary hearing following due notice, the Court makes the following findings and judicial determinations.

1. Petitioner has established by clear and convincing evidence that there is a legal basis for terminating the parental rights of **Cameron Deross Reed aka Cameron Reed.**

2. The following subsection(s) of 23 Pa.C.S.A. § 2511 establish the basis for terminating the parental rights of **Cameron Deross Reed aka Cameron Reed:**
(*check the applicable subsections*):

[x]    2511(a)(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing claim to a child or has refused or failed to perform parental duties.

[x]    2511(a)(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

[ ]    2511(a)(3)  The parent is the presumptive but not the natural father of the child;

16

[ ]    2511(a)(4) The child is in the custody of an agency, having been found under such circumstances that the identity or whereabouts of the parent is unknown and cannot be ascertained by diligent search and the parent does not claim the child within three months after the child is found;

[x]    2511(a)(5) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child;

[ ]    2511(a)(6) In the case of a newborn child, the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child;

[ ]    2511(a)(7) The parent is the father of a child who was conceived as a result of rape; and

[x]    2511(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

[ ]    2511(a)(9) The parent has been convicted of one of the following in which the victim was a child of the parent:

i)    an offense under 18 Pa.C.S. Ch. 25 (relating to criminal homicide);

ii)    a felony under 18 Pa.C.S. § 2702 (relating to aggravated assault);

iii)    an offense in another jurisdiction equivalent to an offense in subparagraph (i) or (ii); or

iv)    an attempt, solicitation or conspiracy to commit an offense in subparagraph (i), (ii) or (iii).

17

[x]     2511 (b) Other Considerations. -

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

3. Specific findings have been placed on the record at the end of the evidentiary hearing.

4. **It is hereby ORDERED, ADJUDGED and DECREED that the parental rights of Cameron Deross Reed aka Cameron Reed are forever terminated.**

5. The adoption of **Calivn Clifford Reed aka Calvin Reed** may continue without further notice to or consent of **Cameron Deross Reed aka Cameron Reed.**

6. The custody of **Calivn Clifford Reed aka Calvin Reed** is hereby transferred to the Philadelphia Department of Human Services, an approved agency that is hereby authorized to give consent to the adoption of **Calivn Clifford Reed aka Calvin Reed.**

**BY THE COURT:**

_____

                                                        **J.**

18

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FAMILY COURT DIVISION**
**ADOPTION BRANCH**

IN RE: ADOPTION OF                  :        AP#
**Calivn Clifford Reed**              :        FID: 51-FN-002936-2012
**aka Calvin Reed**                   :        **Termination Hearing Date:**_____

## Adoption Plan Status Form

**I.    CHECK APPROPRIATE BOXES:**

[x]    Foster parent adoption;
[ ]    No adoptive family identified;
[ ]    To be/has been registered with:
    [ ]    Pennsylvania Adoption Exchange;
    [ ]    Three Rivers;
    [ ]    National Adoption Exchange; and
    [ ]    Other: _____
[ ]    Listed for finalization;
[ ]    Other _____

**II.    LIST IMPEDIMENTS TO FINALIZING ADOPTION:**

**III.    LIST EFFORTS MADE TO REMOVE IMPEDIMENTS:**

19

# EXHIBIT

# "A"

20

## STATEMENT OF FACTS RE:
## CALIVN CLIFFORD REED
## AKA CALVIN REED

a.  On September 10, 2012, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the children's parents, Winchella Howard and Cameron Reed, failed to provide Cameron, Cambria, and Christian with adequate food and safe housing. The report alleged that Ms. Howard and Mr. Reed only fed the children once a day; that there was a limited amount of food in the family's home; that there had been no running water in the home for the last eight months; and that the children are unable to be bathed and appeared to be very dirty. The report further alleged that the family's home was dirty; that the home was malodorous due to standing waste in the toilet; that Mr. Reed was employed; that he used drugs and drank alcohol excessively; and that Ms. Howard is unemployed and appeared to be depressed. This report was substantiated.

b.  DHS made numerous attempts to assess the children's safety, without success, and subsequently filed dependent petitions for the children.

c.  At the adjudicatory hearing held on November 9, 2012, the Court adjudicated Cameron, Cambria, and Christian dependent based on present inability to provide proper parental care and control and committed them to the custody of DHS.

d.  The children were subsequently returned to the care of Ms. Howard and Mr. Reed on November 20, 2012 and the Court discharge their commitments and their dependent petitions.

e.  On April 19, 2013, DHS received a GPS report alleging that Christian was diagnosed with neurofibromatosis; that Ms. Howard was first asked to take Christian to St. Christopher's Hospital for Children for an evaluation in November 2012; that several appointments were made for Ms. Howard and Mr. Reed to take Christian for an evaluation; and that Christian has still not been evaluated. The report alleged that there was concern regarding Christian's development and the psychological effect that the disease could cause; that neurofibromatosis attacks the central nervous tissue; and that Christian was developmentally delayed. This report was substantiated.

f.  On April 24, 2013, DHS and the DHS visiting nurse made a joint-visit to the family's home to investigate the allegations of the GPS report. Ms. Howard and Mr. Reed stated that they were not aware of the appointments for Christian. Mr. Reed stated that he did not know that Christian's doctor wanted him to take Christian for an evaluation for neurofibromatosis and that the doctor did not discuss Christian's condition with him.

g.  DHS subsequently learned that Cambria was also diagnosed as suffering from neurofibromatosis.

h.  DHS also learned that Cambria has severe behavioral issues and is prescribed medication. Ms. Howard stated that she does not provide Cambria with her medication because she believes that it makes her behavior worse.

i.  On May 28, 2013, Ms. Howard gave birth to Calvin.

j.  DHS referred the family for Rapid Service Response Initiative (RSRI) to assist with scheduling the children's medical appointments.

k.  On July 9, 2013, DHS implemented In-Home Protective Services (IHPS) through the Family Support Center.

l.  On or about September 11, 2013, DHS learned that the family was scheduled to be evicted from the home on September 15, 2013. IHPS spoke with Mr. Reed about the family's planned living arrangements and Mr. Reed stated that the family would be residing with relatives; however, Mr. Reed became evasive and failed to provide IHPS with an address.

m.  DHS learned that as of September 14, 2013, Mr. Reed and Ms. Howard had not made any housing arrangements.

n.  On September 17, 2013, IHPS went to the home. The family could be heard inside of the apartment; however, no one answered the door.

o.  On September 18, 2013, DHS attempted to visit the family, without success.

p.  On October 15, 2013, an adjudicatory hearing was held before the Honorable Allan L. Tereshko, who deferred adjudication and ordered that DHS implement supervision in the family's home. Judge Tereshko also ordered that Ms. Howard be referred to Behavioral Health Services (BHS) for a consultation/evaluation; that DHS re-inspect the family's home prior to October 27, 2013; that IHPS through Family Support Center continue; that Mr. Reed and Ms. Howard comply with all IHPS services and recommendations; and that Mr. Reed and Ms. Howard cooperate with DHS, the agency, and the Child Advocate.

q.  DHS learned that Calvin was also diagnosed as suffering from neurofibromatosis.

r.  On November 4, 2013, an adjudicatory hearing was held before Judge Tereshko, who adjudicated the children dependent and fully committed them to DHS. Judge Tereshko ordered that the children were to be removed from the family home and placed on November 4, 2013, with police assistance if necessary; that the family be referred to Family School; that Mr. Reed and Ms. Howard to be referred for a Parenting Capacity Evaluation (PCE); and that Ms. Howard be referred to the Clinical Evaluation Unit (CEU) for a forthwith drug and alcohol screen and a dual diagnosis assessment.

s.  On February 7, 2014, a permanency review hearing was held before Judge Tereshko, who found that Mr. Reed and Ms. Howard had achieved moderate compliance with the permanency plan. Judge Tereshko ordered that Ms. Howard and Mr. Reed have weekly

22

supervised visits at the agency; that Ms. Howard attend Family School as arranged by the parties; that Mr. Reed and Ms. Howard attend the children's medical appointments; that Mr. Reed be referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; ; that Mr. Reed comply with CEU recommendations ; that Mr. Reed comply with Family School; that Ms. Howard be re-referred to CEU for a forthwith drug and alcohol screen, dual diagnosis assessment, and monitoring; that Ms. Howard comply with CEU recommendations; that Ms. Howard attend PCE scheduled for February 12, 2014; that Ms. Howard complete part two of the PCE; and that Ms. Howard and Mr. Reed be referred to the Achieving Reunification Center (ARC).

t.    On May 2, 2014, CEU submitted a progress report as to Mr. Reed, which stated that Mr. Reed failed to comply with the court ordered drug and alcohol assessment in that he was a no call/no show for his scheduled appointment on March 6, 2014. The report also stated that Mr. Reed's drug screen on February 7, 2014 was positive for cocaine and marijuana.

u.    On May 9, 2014, a permanency review hearing was held before Juvenile Master Michael Campbell, who found that Mr. Reed had achieved minimal compliance with the permanency plan, in that he was non-compliant with Family Service Plan (FSP) objectives, services, and recommendations; that Mr. Reed had rescheduled toe second part of the PCE on three occasions and still had yet to complete it. Master Campbell ordered that Mr. Reed and Ms. Howard comply with the second part of the PCE; that they comply with all FSP objectives, services, and recommendations; and that they be re-referred to CEU for a full drug and alcohol screen and dual diagnosis assessment, once they avail themselves.

v.    On June 20, 2014, a permanency review hearing was held before the Honorable Walter Olszewski, who found that Mr. Reed had achieved minimal compliance with the permanency plan. Judge Olszewski ordered that Mr. Reed be re-referred to CEU for a forthwith drug screen and assessment; that he complete the second part of the PCE scheduled for July 15, 2014; that he be re-referred to ARC; that Ms. Howard be referred to BHS for consultation/evaluation; and that Ms. Howard sign releases of information.

w.    On June 24, 2014, Ms. Howard underwent a PCE conducted at Assessment & Treatment Alternatives, Inc. (ATA) by William Russell, Ph.D. and Samantha Brenner, M.A. The PCE stated that there are several barriers to Ms. Howard providing safety and permanency to the children; that those barriers include a minimization of the role she played in the situation which precipitated DHS involvement and the inability to acknowledge her children's behavioral problems; that she also minimizes Mr. Reed's drug use; that Ms. Howard neglected to take responsibility for her children not receiving appropriate medical treatment; that she projected blame on the city for the removal of her children; and that she denied all allegations that her home was unkempt, chaotic, and that the children were not up to date on their immunizations. The PCE also stated that Ms. Howard was diagnosed with persistent depressive disorder and that she does not function well in complex situations. The PCE recommendations were for Ms. Howard to obtain appropriate housing with an adequate number of bedrooms for her children; that the home be inspected frequently to assess for safety hazards and/or the home being unkempt; that the home be affordable based on income; that she obtain employment; that she participate in available programming to help

23

# CITY OF PHILADELPHIA

1515 Arch Street, Philadelphia, PA 19102
215-683-4DHS (4347)

**Commissioner**
CYNTHIA F. FIGUEROA

**First Deputy Commissioner**
JESSICA S. SHAPIRO

**Deputy Commissioners**

**Child Welfare Operations**
KIMBERLY ALI

**Finance**
CHRISTOPHER SIMI

**Juvenile Justice Services**
TIMENE FARLOW

**Administration and Management**
VONGVILAY MOUNELASY

**Performance Management and Accountability**
LIZA RODRIGUEZ

Date: 12/14/2017

Winchella Howard
5321 Wayne Avenue
#301
Philadelphia, PA 19144

Dear Ms. Howard:     Regarding:     Camella Reed

Enclosed please find the following documents related to the next court hearing on your family's service from DHS/CYD:

Γ   petition filed with court
Γ   proposed Family Service Plan and Placement Amendment
Γ   proposed Family Service Plan and Placement Amendment Revision

Γ   Restraining Order
Γ   Dispositional Review Order which includes status of last court hearing, next court date and areas to be considered by the court at the next hearing.

The next court hearing will be held on 01/23/18 at 11:30 am in Court Room "5B" at Philadelphia Family Court, 1501 Arch Street. At that time we will recommend any changes to or continuation of your FSP/PA (if there is one in effect already).

As a parent of a child receiving services from the Department of Human Services (DHS), you have the right to appeal:

<   any determination made which results in a denial, reduction, discontinuance, suspension, or termination of service.
<   the County Agency's failure to act upon a request for service with reasonable promptness.

You have the right to appeal DHS's determination in either of two ways:

A)   If the Family Court is involved with your case, you may ask the Court to schedule a hearing regarding DHS's action regarding your children. Notify your DHS social worker who will arrange for an urgent Family Court Hearing.

B)   You have the right to appeal DHS's determination to the State's Department of Public Welfare (DPW) Office of Hearing and Appeals. You have 15 calendar days from the date at the top of this letter in which to notify your DHS social worker in writing. If you do not notify your DHS social worker within that period, you will not be able to appeal DHS's decision to a fair hearing.

If you decide to appeal, you have the right to be represented by an attorney or other representative. If you wish to be represented by a lawyer and cannot afford one, contact: Community Legal Services, 1424 Chestnut Street, Philadelphia, PA 19102 (Telephone: (215) 981-3700).

Sincerely,

Vivian Howard, Social Worker 215-683-5886
Jennifer Dixon, Supervisor 215-683-6314

Enclosure
cc:   Γ   Child 14 or older        -
      Γ   Child advocate           -   Defender Association
      Γ   Non-custodial parent     -
      Γ   Parent Advocate(s)       -   Robin Winthrop Banister, Esq. Atty for Mother/Lue B. Frierson, Esq. Atty for Father
      Γ   Other (Specify)          -

ms/6th

If you have a question, complaint, concern, or suggestion about DHS and its operations
call the Commissioner's Action Response Office (CARO) at 215-683-6000
or visit our website: dhs.phila.gov and click on the "suggestions" link.

BIXLER LETTER (Rev.10/2016)

Philadelphia County Clerk of Courts Filed 11/16/2017 12:16 PM

Commonwealth of Pennsylvania

In the Interest Of:

Camella Reed, A Minor
Date of Birth: 08/31/2017

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:   CP-51-DP-0002701-2017
FID:         51-FN-002936-2012

# CONTINUANCE ORDER

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
| --- | --- | --- |
| DHS Case Worker | Case Worker | In Person |
| DHS Representative | Children and Youth Services | In Person |
| Reed, Cameron | Father | In Person |
| Howard, Winchella | Mother | In Person |
| Reed, Camella | Child | Did Not Attend |
| Banister, Robin Winthrop | Attorney for Mother (Howard, Winchella) | Substitute Counsel |
| Frierson, Lue B. | Attorney for Father (Reed, Cameron) | In Person |
| Defender Association - Child Advocacy Unit | Guardian Ad Litem for Child (Reed, Camella) | In Person |
| Philadelphia Solicitor's Office | Attorney for Children and Youth Services (Philadelphia Department of Human Services) | In Person |

**PERSONS APPEARING AT HEARING**

The following persons appeared at this hearing: ACS PRATT, DHS REP - CHERRY, DHS SW'S - SMITH & JONES, THE VILLAGE CM - FARMER,  ATTNY LUE FRIERSON FOR FATHER - P AND SIF ATTNY ROBIN BANISTER FOR MOTHER, MOTHER, FATHER, CASW, DACAU - GANGEL, DCR - TB

AND NOW, this 16th day of November, 2017,

**FINDINGS/ORDERS**

THE COURT FURTHER FINDS:
Child is placed in Foster Care through The Village. Safe as of 11/3/2017.

THE COURT FURTHER ORDERS:
Adjudication Further Deferred - Temp Commit Stands. Case continued as this ADJ Hearing will be contested. Counsel agree to waive the 10 Adj Date. Parents are to have supervised visits with the Child at the agency.

**NEXT SCHEDULED COURT DATE(S)**

Next Scheduled Court Date: - Contested Adjudicatory Hearing - 01/23/2018 - 11:30AM - 1501 Arch Street - Courtroom 5B - Judge Allan L. Tereshko

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

CP-51-DP-0002701-2017

In The Interest Of:  Camella Reed, A Minor

BY THE COURT:

_Allan J. Tereshko_

Judge Allan L. Tereshko

Copies To: ACS PRATT, DHS REP - CHERRY, DHS SW'S - SMITH & JONES, THE VILLAGE CM - FARMER, ATTNY LUE FRIERSON FOR FATHER - P AND SIF ATTNY ROBIN BANISTER FOR MOTHER, MOTHER, FATHER, CASW, DACAU - GANGEL.

# ARC

Achieving Reunification Center
714 Market Street, Suite 500
Philadelphia, PA   19106
267-514-3500
www.arcenter.org

## Parent/Caregiver Closing Summary

| | | | |
|---|---|---|---|
| Name of P/C: | Cameron Reed | DHS Case # | 620543 |
| Date of Referral: | 1/13/2014 | Next Court Date: | - |
| Date of Intake: | 2/7/2014 | DHS Social Worker: | Gladys Watson |
| P/C Status: | Closed | Provider Agency: | PCV |
| P/C Closing Date: | 5/12/2014 | Provider Social Worker: | J. Davis |
| Date of Report: | 5/12/2014 | Reason for Closure: Reunification Support Specialist: | Goal Completion Brown, K. |

**ARC Services:** *Visit - 2013- to 2015*
1. Parent Education- Focus on Fathers *✓+done*
2. Housing
3. Financial Counseling
4. Family Counseling *✓+done*
5. Individual Counseling *✓+done*
6. Drug & Alcohol *✓+done*
7. Healthy Relationships *✓+done*
8. *Anger Mangement ✓+done*

**Referral / Intake Information:**

- Mr. Reed was referred to ARC on 1/13/2014 to address the goals Parent Education- Focus on Fathers, Housing, Financial Counseling, Family Counseling, Individual Counseling, Drug & Alcohol and Healthy Relationships.
- Mr. Reed was referred to ARC's Field Outreach on 1/21/2014 for face-to-face outreach in the form of home visits in an effort to engage him in services. Mr. Reed contacted his RSS on 1/29/2014 to schedule ARC Orientation and Intake for 2/6/2014. He did not report as scheduled.
- Mr. Reed reported to ARC unscheduled on 2/7/2014 to complete ARC Intake.
- Mr. Reed reported for ARC Orientation and meeting with his RSS on 2/18/2014 and was referred to ARC workshops.

**Summary:**

- This is the ARC Closing Summary for Mr. Reed. The previous Court Status Report was dated 4/9/2014.
- Attempts to support Mr. Reed with addressing his reunification goals have been have been successful as he has completed the goal of Parent Education-Focus on Fathers at ARC.
- As stated in the previous Court Status Report, Mr. Reed was referred to Focus on Fathers workshops at ARC on 2/18/2014 and was scheduled to begin workshops on 2/19/2014. Since the previous Court Status Report, Mr. Reed has attended 6 Focus on Fathers workshops and last reported on 5/18/2014. His attendance has been consistent as he has not had any absences. On 5/8/2014 Mr. Reed received a Certificate of Completion and Perfect Attendance for Focus on Fathers workshops. Mr. Reed has completed the goal of Parent Education – Focus on Fathers at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, Mr. Reed opted to decline ARC services to address the goal of Housing. Mr. Reed did not address the goal of Housing at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, Mr. Reed opted to decline ARC services to address the

# FAMILY SERVICE PLAN

**PHILADELPHIA DEPARTMENT OF HUMAN SERVIC**

**CHILDREN AND YOUTH**

☐ INITIAL          ☒ REVISION

| 1. CASE NAME | 2. CYD CASE NUMBER | 3. DATE ACCEPTED FOR SERVICE |
|---|---|---|
| Reed | 620543 | 6/18/2013 |

| 4. DATE OF FAMILY SERVICE PLAN | 5. DATE OF THIS REVISION | 6. DATE NEXT REVIEW DUE |
|---|---|---|
| 11/9/2013 | 7/29/2014 | 12/18/2014 |

**7. IDENTIFYING INFORMATION - ALL FAMILY MEMBERS AND SIGNIFICANT OTHERS**

| SUF | NAME | DOB | ADDRESS & ZIP (IF UNKNOWN INDICATE) | TELEPHONE NO. |
|---|---|---|---|---|
| A | Cameron Reed | 7/16/2007 | 5321 Wayne Aveneue Philadelphia, PA 19144 | |
| B | Cambria Reed | 1/14/2009 | 5321 Wayne Avenue Philadelphia, PA 19144 | |
| C | Christian Reed | 3/23/2011 | 5321 Wayne Aveneue Philadelphia, PA 19144 | |
| D | Calvin Reed | 5/29/2013 | 5321 Wayne Avenue Philadelphia, PA 19144 | |
| | | ☐ | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| MOTHER | Winchella Howard-Sufs ABCD | 9/30/1981 | 5321 Wayne Avenue Philadelphia, PA 19144 | 267-636- |
| FATHER | Cameron Reed sufs-ABCD | | 5321 Wayne Avenue Philadephia, PA 19144 | 3914 |
| | | | | 215-626- |
| | | | | 1424 |
| | | | | |
| | | | | |
| SIGNIFICANT OTHER (identify relationship) | | | | |
| | | | | |
| | | | | |
| | | | | |

**8. WRITE CIRCUMSTANCES UNDER WHICH CASE WAS ACCEPTED FOR SERVICE:**
   **DESCRIBE:**   (A) SPECIFIC SITUATION;   (B) EFFECT ON CHILDREN;   (C) CONTRIBUTING FACTORS TO SITUATION **OR** WRITE THE REASON FOR REVISION.

On 6/18/2013, this case became known to DHS via a GPS report alleging medical neglect. The report was substaniated and case opend for services, at which time, IHPS was implemented, however, circumsanceds did not alleviate safety threats and the children were subsequently placed in care.. Both Christian and Cambia are diagnosed with Neurofibromatosis( gentic disorder transmitted by their father). Cameron does not have the condition and it is unclear whether Calvin has the condition..

Cambira has been diagnosed with ADHD.

AFD, 6/18/2013, this FSP is a review/revision to reflect family's progress/non-compliance, changes and ongoing services, i.e. placement.

Child's Name:    Calvin Reed
Period Covered:  12/18/14-06/18/15

## "OTHER" Alternative Permanency Resource: ___
### FAMILY SECTION

Complete a Family Section goal page for _each_ parent individually as well as any other alternative permanency resource identified in this plan. This page is designated for "Other" Alternative Permanency Resource and all information relating only to this person should be provided in the 3 subsequent sections

### Parent/Guardian Plan
*Identify the strengths and needs for this person*

| Strengths: | Needs:  (relating to achieving Permanency Goal) |
|---|---|
|  |  |

### Parent/Guardian Services
*Indicate specific plan to address barriers to achieving permanency and additional needs identified through your assessment*

| Objectives:   (be sure to address as needed:  living conditions, financial conditions, supports, parenting (to include child-caregiver interactions & developmental stimulation), caregiver interactions, parent service needs {for caregiver history section & caregiver personal characteristics,} and employment) | Target Dates for Progress | Person Responsible |
|---|---|---|
| PGS1 | PGS1 | PGS1 |
| PGS2 | PGS2 | PGS2 |
| PGS3 | PGS3 | PGS3 |
| PGS4 | PGS4 | PGS4 |
| PGS5 | PGS5 | PGS5 |
| PGS6 | PGS6 | PGS6 |
| PGS7 | PGS7 | PGW7 |

### Safety Plan
*Address issues that affect child's safety if the child were discharged to the care of the "Other" Alternative Permanency Resource:*

| Objectives | (for the home where the child may be reunited/discharged) | Target Dates for Progress | Person Responsible |
|---|---|---|---|
| SP/P1 | Placement provider will conduct home visit to the parent's or guardian's home to assess safety prior to unaccompanied initial home visit by child | SP/P1 | SP/P1 |
| SP/P2 | Placement provider will conduct a home visit to any other visitation resource prior to an unaccompanied home visit by the child | SP/P2 | SP/P2 |
| SP/P3 |  | SP/P3 | SP/P3 |
| SP/P4 |  | SP/P4 | SP/P4 |

(Other {Alt. Perm. Resource}'s Page of ISP)

# ARC

Achieving Reunification Center
714 Market Street, Suite 500
Philadelphia, PA   19106
267-514-3500
www.arcenter.org

## Parent/Caregiver Closing Summary

| | | | |
|---|---|---|---|
| Name of P/C: | Cameron Reed | DHS Case # | 620543 |
| Date of Referral: | 1/13/2014 | Next Court Date: | - |
| Date of Intake: | 2/7/2014 | DHS Social Worker: | Gladys Watson |
| P/C Status: | Closed | Provider Agency: | PCV |
| P/C Closing Date: | 5/12/2014 | Provider Social Worker: | J. Davis |
| Date of Report: | 5/12/2014 | Reason for Closure: | Goal Completion |
| | | Reunification Support Specialist: | Brown, K. |

### ARC Services:
1. Parent Education- Focus on Fathers
2. Housing
3. Financial Counseling
4. Family Counseling
5. Individual Counseling
6. Drug & Alcohol
7. Healthy Relationships

### Referral / Intake Information:
- Mr. Reed was referred to ARC on 1/13/2014 to address the goals Parent Education- Focus on Fathers, Housing, Financial Counseling, Family Counseling, Individual Counseling, Drug & Alcohol and Healthy Relationships.
- Mr. Reed was referred to ARC's Field Outreach on 1/21/2014 for face-to-face outreach in the form of home visits in an effort to engage him in services. Mr. Reed contacted his RSS on 1/29/2014 to schedule ARC Orientation and Intake for 2/6/2014. He did not report as scheduled.
- Mr. Reed reported to ARC unscheduled on 2/7/2014 to complete ARC Intake.
- Mr. Reed reported for ARC Orientation and meeting with his RSS on 2/18/2014 and was referred to ARC workshops.

### Summary:
- This is the ARC Closing Summary for Mr. Reed. The previous Court Status Report was dated 4/9/2014.
- Attempts to support Mr. Reed with addressing his reunification goals have been have been successful as he has completed the goal of Parent Education-Focus on Fathers at ARC.
- As stated in the previous Court Status Report, Mr. Reed was referred to Focus on Fathers workshops at ARC on 2/18/2014 and was scheduled to begin workshops on 2/19/2014.Since the previous Court Status Report, Mr. Reed has attended 6 Focus on Fathers workshops and last reported on 5/18/2014. His attendance has been consistent as he has not had any absences. On 5/8/2014 Mr. Reed received a Certificate of Completion and Perfect Attendance for Focus on Fathers workshops. Mr. Reed has completed the goal of Parent Education – Focus on Fathers at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, Mr. Reed opted to decline ARC services to address the goal of Housing. Mr. Reed did not address the goal of Housing at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, Mr. Reed opted to decline ARC services to address the

goal of Financial Counseling. Mr. Reed did not address the goal of Financial Counseling at ARC.

- As stated in the previous Court Status Report, Mr. Reed was referred for Mental Health services at Community Council's Outpatient Satellite Clinic at ARC on 2/18/2014. Mr. Reed completed Mental Health Evaluation on 2/18/2014. Mr. Reed was discharged from Community Council's Outpatient Satellite Clinic at ARC effective 3/18/2014 as he was not eligible for Mental Health services due to having private medical insurance through his employer. Mr. Reed was directed to contact his medical insurance vendor to obtain a list of Mental Health clinicians. Mr. Reed did not address the goal of Mental Health at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, Mr. Reed was advised by his RSS that Family Counseling is typically arranged in conjunction with the Placement Agency when clinically appropriate for the child. Ms. Reed did not address the goal of Family Counseling at ARC.
- As stated in the previous Court Status Report, Mr. Reed was referred to ARC's Enhanced Services Liaison on 2/18/2014. Since the previous Court Status Report, during a meeting with his RSS on 5/8/2014 Mr. Reed opted to decline ARC services to address the goal of Drug and Alcohol at ARC. Mr. Reed did not complete the goal of Drug and Alcohol at ARC.
- As stated in the previous Court Status Report, at the time of ARC Intake, the current cycle of Healthy Relationships workshops was in progress and closed for new referrals. Since the previous Court Status Report, during a meeting with his RSS on 5/8/2014 Mr. Reed opted to decline ARC services to address the goal of Healthy Relationships at ARC. Mr. Reed did not complete the goal of Healthy Relationships at ARC.
- Mr. Reed's ARC case was closed on 5/12/2014 for 'Goal Completion – Parent Education'. DHS SW and Placement Agency SW were notified by letter on 5/12/2014.

_____         5/12/2014

Kiyana Brown, MSW                        Date
Reunification Support Specialist

_____         5/13/2014

Lesha Gobadan, MSW                       Date
Reunification Support Coordinator

# FAMILY SERVICE PLAN

PHILADELPHIA DEPARTMENT OF HUMAN SERVICES

CHILDREN AND YOUTH DIVISION

| | X | INITIAL | | REVISION |
|---|---|---|---|---|

| 1. CYD CASE NUMBER 620543 | 2. FAMILY SURNAME REED | 3. DATE ACCEPTED FOR SERVICES 06/18/13 |
|---|---|---|
| 4. DATE OF FAMILY SERVICE PLAN 08/03/13 | 5. DATE OF THIS REVISION | 6. DATE NEXT REVIEW DUE 12/18/13 |

## 7. IDENTIFYING INFORMATION - ALL FAMILY MEMBERS AND SIGNIFICANT OTHERS

| SUF | NAME | DOB | ADDRESS AND ZIP (IF UNKNOWN INDICATE) | TLA |
|---|---|---|---|---|
| A | CAMERON REED | 07/16/07 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P | |
| B | CAMBRIA REED | 01/14/09 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P | DT |
| C | CHRISTIAN REED | 03/23/11 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P | DT |
| D | CALVIN REED | 05/28/13 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P | DT |

| PARENTS/ SIGNIFICANT OTHER NAME | | | | TELEPHONE |
|---|---|---|---|---|
| MOTHER | WINCHELLA HOWARD | 09/30/81 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P | 215 667-7727 |
| SUF | REL | FATHERS | | |
| ABCD | FAT | CAMERON REED | 06/19/67 | 5013 ERRINGER PLC Apt B PHILADELPHIA , P   215 254-8881 |
| | | SIGNIFICANT OTHER | | |

8. WRITE CIRCUMSTANCES UNDER WHICH CASE WAS ACCEPTED FOR SERVICE:   DESCRIBE:   (A) SPECIFIC SITUATION;
(B) EFFECT ON CHILDREN;   (C) CONTRIBUTING FACTORS TO SITUATION;   OR   WRITE THE REASON FOR REVISION.

The children have medical needs and the parents are not meeting those needs appropriately. Ms. Howard to address her

mental health issues.

## 9. PERMANENCY GOALS

[X] Child/ren remain/s in the home.

(check appropriate boxes below and list each child's suffix next to the appropri
statement)

Child Suffix(es)

[ ] The child is not at imminent risk of placement.

[X] The child is at imminent risk of removal from his/her home.
Absent effective preventive services, foster care is the planned
service for the child. Foster care is defined as foster family homes
kinship foster homes, group homes, emergency shelters, residentia
facilities, child care institutions and pre-adoptive homes.

ABCD

[ ] Absent effective preventive services provided for in this service
plan, placement outside of the home other than in foster care is th
planned placement for the child (hospitalization, secure residentia
treatment, juvenile detention or other secure juvenile facilities).

---

[ ] Child/ren entered or remain/s in substitute care with the goal of:

(check appropriate boxes and list child suffix(es) under the appropriate goal)

**LEAVE DHS CUSTODY**

Child Suffix(es)

| RETURN TO PARENT, GUARDIAN, CUSTODIAN

_____

| ADOPTION

_____

[ ] PLACE WITH PERMANENT LEGAL CUSTODIAN

_____

**DHS RETAINS CUSTODY**

[ ] ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

_____

| PLACEMENT WITH A FIT AND WILLING RELATIVE

_____

# FAMILY SERVICE PLAN OBJECTIVE

| CYD CASE NUMBER: 620543 | FAMILY SURNAME: **REED** |
|---|---|

## OBJECTIVE SECTION: PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| **All objectives** | | | |
| DHS will provide case management services to include ongoing periodic assessment of safety, risk, needs and appropriateness of services and will make changes to the family service plan as necessary | Case Management | Department of Human Services Children and Youth Division 215-683-6100 | |
| To meet the child(ren)'s daily basic needs including food and clothing | | | 12/18/13 |
| 1 . Ms. Howard and Mr. Reed will make sure children are clean and properly clothed | Monitoring | Family Supportive Services - 215-471-3251 | 12/18/13 |
| To meet the child(ren)'s daily basic needs including food and clothing | | | 12/18/13 |
| 1 . Ms. Howard/Mr. Reed will provide child(ren) with regular nutritious meals | Monitoring | Family Support Services 215-471-3251 | 12/18/13 |
| 2 . Ms. Howard/Mr. Reed will make sure children are clean and properly clothed | Monitoring | Family Support Services - 215-471-3251 | 12/18/13 |
| 3 . Ms. Howard/ Mr. Reed will insure that there is an adequate supply of food in the home at all times. | Monitoring Shopping assistance | Family Support Services - 215-471-3251 | 12/18/13 |
| To correct or stabilize physical health, vision, hearing or dental problems. | | | 12/18/13 |
| 1 . Mr. Reed and Ms. Howard will ensure Christian, Cambria, and Calvin | Medical Treatment. | Family Supportive Services - | 12/18/13 |

# FAMILY SERVICE PLAN OBJECTIVE

| CYD CASE NUMBER: 620543 | FAMILY SURNAME: REED |
| --- | --- |

**OBJECTIVE SECTION: PARENTS/LEGAL GUARDIANS/CHILDREN**

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
| --- | --- | --- | --- |
| receive appropriate medical evaluations aand treatment for genetic condition. | | 215-471-3251 St. Christopher's Hospital | |
| 2 . Parents will schedule and attend all appointments for children; they will comply with all recomended treatments. | Well Child visits genetic testing visits | Family Support Services - 215-471-3251 Covenant House St. Christopher's Hospital | 12/18/13 |
| To demonstrate a concerned, cooperative response to children and service provision. | | | 12/18/13 |
| 1 . Mr. Reed will make himself available to meet with IHPS provider (in the home) at least 2 times per month. | Parental responsibility Goal setting/completion | Cameron Reed - 215-254-8881 Family Support Services - 215-471-3251 | 12/18/13 |
| To locate and explore structured day programs for the children. | | | 12/18/13 |
| 1 . Ms. Howard/Mr. Reed will discuss and explore with IHPS programs to enroll the the children in to received behavioral/educational services. | Day Care referral/ Monitoring Day prorgam referral Educational Program | Family support Services - 215-471-3251 | 12/18/13 |
| To stabilize mental health problems | | | 12/18/13 |
| 1 . Ms. Howard will participate in mental health evaluation. | Psychiatric/psychological evaluation | Family Supportive Services - 215-471-3251 The WEDGE | 12/18/13 |
| 2 . Ms. Howard will comply with all treatment recommendations including | Individual Counseling and or Grp | Family Support Services - | 12/18/13 |

# FAMILY SERVICE PLAN OBJECTIVE

| CYD CASE NUMBER: 620543 | FAMILY SURNAME: REED |
|---|---|

## OBJECTIVE SECTION: PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| therapy and or medication as prescribed. | Therapy | 215-471-3251 The WEDGE | |
| To provide adequate and safe living conditions | | | 12/18/13 |
| 1. Ms. Howard/Mr. Reed will make sure that the following health or safety hazards at home are corrected: disposing of trash and picking up clothes from the floor | Monitoring Mentoring | Family Support Services - 215-471-3251 | 12/18/13 |
| To address deficits around mastery of age appropriate development tasks and skills. | | | 12/18/13 |
| 1. Parents will participate in evaluation and recommended treatment for Christian and Cambria. | Evaluation EI Services Speciality Service if needed | Family Supportive Services - 215-471-3251 Childlink - 215-790-2427 Elwyn Services | 12/18/13 |
| 2. Parents will insure Cameron, Christian and Cambria will participate in remedial or specialized services to overcome developmental delays | MDT Evaluation/Service provision Education Behavior modification | Family support services - 215-471-3251 Childlink - 215-790-2427 JB Kelly Elementary School and Bright beginnings | 12/18/13 |
| To learn and understand age appropriate behavior and expectations for child(ren) | | | 12/18/13 |
| 1. Ms. Howard will participate in parent education classes as scheduled | Family School Parenting | Family Support Services - | 12/18/13 |

# FAMILY SERVICE PLAN OBJECTIVE

| CYD CASE NUMBER: 620543 | FAMILY SURNAME: REED |
|---|---|

**OBJECTIVE SECTION: PARENTS/LEGAL GUARDIANS/CHILDREN**

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| to learn expected behavior for child(ren) | Edication Assertiveness Development Skills | 215-471-3251 Family School | |
| 2 . Ms. Howard and Mr. Reed will learn and practice appropriate (no0physical) discipline techniques to use with the children. | Family School Discipline techniques | Family Support Services - 215-471-3251 Family School | 12/18/13 |
| ************************************************************ | END OF PARENT'S OBJECTIVES | ********************************** | ******** |
| To acquire social skills and age appropriate relationships. | | | 12/18/13 |
| 1 . Cameron, Cambria, and Christian will participate in community based or sponsored peer groups, recreational, club or organizational activities. | Structured Recreational Activities | Family Supportive Services 215-471-3251 | 12/18/13 |
| To perform satisfactorily in school. | | | 12/18/13 |
| 1 . Cameron and Cambria will attend school on a daily basis and complete all school assignments. | Education | J.B Kelly Elementary School Bright Beginnings pre-School | 12/18/13 |
| ************************************************************ | END OF CHILD. OBJECTIVES | ********************************** | ******** |

FAMILY SURNAME: **REED**

CYD CASE NUMBER: **620543**

| | I. NAMES | II. RELATIONSHIP | III. TELEPHONE REGULAR | EMERGENCY | DATE AND METHOD CODE OF INVITATION TO PARTICIPATE | DATE AND METHOD CODE OF ACTUAL PARTICIPATION | V. PLAN & RIGHTS DISTR. DATE GIVEN / MAILED |
|---|---|---|---|---|---|---|---|
| a. | WINCHELLA HOWARD | MOTHER | 215 667-7727 | | 07/08/13 Mail | 09.10.13 B | |
| b. | CAMERON REED | FAT | 215 254-8881 | | 07/08/13 Mail | 09.10.13 F | |
| c. | Jule Belton | Provider 215·471·3251 | | | | 09.11.13 C | |
| d. | Shontaé CROSS | Pro. Case Aide 215·471·3251 | | | | 09.11.13 C | |
| e. | | | | | | | |
| f. | | | | | | | |
| g. | | | | | | | |
| h. | | | | | | | |
| i. | | | | | | | |

| GLADYS WATSON | DHS SOC. WORKER 215 683-5653 | 683-6100 | SIGNATURE | DATE: 09.10.13 |
| AMANDA AQUILLA | DHS SUPERVISOR 215 683-6677 | 683-6100 | SIGNATURE | DATE: 9/19/13 |

| SIGNATURES(Signature constitutes agreement) | DATE | SIGNATURES(Signature constitutes agreement) |
|---|---|---|
| a. Winchell Howard | 9-10-13 | |
| b. No Participation | | |
| c. Jule Belton Phone | 09.11.13 | |
| d. Shontaé CROSS Phone | 09.11.13 | |

I. Insert NAMES of parents, child(ren), their representatives, and service providers, and DHS Social Worker and Supervisor.
II. Describe RELATIONSHIP to family of each individual in I.
III. Insert Regular and Emergency Telephone numbers for PARENTS, CHILDREN in PLACEMENT. DHS Staff. Add other phone numbers

IV. Document the OPPORTUNITY provided and/or actual method of PARTICIPATION in development of Plan by inserting date and method used.
Codes are: (A) Physically Given; (B) Physically Present; (C) By Telephone; (D) By Letter or Written Communication; (E) Whereabouts unknown; (F) No Participation; (G) Other (Describe)
If none, write none. NOTE: If parent(s) whereabouts are unknown, list name in I. and write Whereabouts Unknown in IV. and

V. Document DISTRIBUTION OF COPIES of FSP, its PA s and Parents Rights to Appeal by inserting date in appropriate column.
NOTICE of PARENTS RIGHTS to APPEAL is on the reverse of this form.
Insert date forms are distributed to parents from parent names in I.

VI. SIGNATURES - Parent(s) or legal guardian and children age 14 and older must be given the OPPORTUNITY to SIGN the FSP & related forms.
Identify individual s signature by inserting line letter from I. in column to the left of Signature Line. Insert date form is signed.
Please remember SIGNATURE CONSTITUTES AGREEMENT WITH THE PLAN.

Period Covered:  11/04/13-12/18/13

# CHILD'S BEHAVIORAL HEALTH NEEDS

Treatment Services Plan

Address child's need for therapeutic services (e.g., counseling, wrap-around, partial day treatment, etc.)

| Objectives | | Target Dates For Progress | Person Responsible |
|---|---|---|---|
| BH1: | Case worker made an referral for client to be evaluated for behavioral health treatment. Referral was made on 12/2/13 PCV worker and foster parent will continue to monitor. | BH1:   12/18/13 | BH1:  PCV worker |
| BH2: | | | |
| BH3: | | BH2: | BH2: |
| BH4: | | BH3: | BH3: |
| | | BH4: | BH4: |

**Treatment Service Provider #1  (BH#1)**

Name:   PCV

Address: 6517 Chester Ave, Phila, PA, 19143

Phone:  ( 215 )  730    Ext.  2240

Specific Service:  Unknown at this time

Does the FFC provider pay this provider directly?  ☐ Y  ☒ N

Trtmt Plan Attached? ☐ Y ☒ N Date Requested:

**Treatment Service Provider #2  (BH#2)**

Name:

Address:

Phone:  (     )              Ext.

Specific Service:

Does the FFC provider pay this provider directly?  ☐ Y  ☐ N

Trtmt Plan Attached? ☐ Y ☐ N Date Requested:

**Treatment Service Provider #3  (BH#3)**

Name:

Address:

Phone:  (     )        Ext.

Specific Service:

Does the FFC provider pay this provider directly?  ☐ Y  ☐ N

Trtmt Plan Attached? ☐ Y ☐ N Date Requested:

**Treatment Service Provider #4  (BH#4)**

Name:

Address:

Phone:  (     )        Ext.

Specific Service:

Does the FFC provider pay this provider directly?  ☐ Y  ☐ N

Trtmt Plan Attached? ☐ Y ☐ N Date Requested:

**What are the Child's behaviors that require additional services?**

Cameron is struggling to deal with being placed into foster care and being away from his family. Cameron has been heard stating that his birth family is no longer his family since he was taken away from his parents. He seems very depressed and sadden by not being with his family. Cameron is also struggling in school. The school social worker has contacted case manger stating that Cameron tries to run out of the school at the end of the school day. Cameron gets upset and cries uncontrollably and hides under the table at school when he gets upset. Cameron has also stated to people at his school that he misses his mother and his family. Cameron school is concerned about his behaviors and would like to know if he can get TSS services.

**Safety Plan in Placement Setting**

Provide specific information concerning the planned respite provider (name and address) and respite plan as well as foster/kinship parent training needs.  Also consider any other supervisory issues that pertain to the child's particular setting or history of behaviors/needs (such as, dealing with runaways, sexual behavioral problems, firearms in the home, etc.).

| Objectives | | Target Dates for Progress | Person Responsible |
|---|---|---|---|
| SPF1 | Respite Provider:  If Ms. Walker is requesting respite for Cameron she will give PCV worker 21 days notice. Ms. Sowell will be the respite provider. | SPF1    12/18/13 | SPF1    Ms. Walker |
| SPF2 | PCV worker will conduct a home and fire assessment before child starts respite. | | |
| SPF3 | | SPF2    12/18/13 | SPF2    PCV worker |
| SPF4 | | SPF3 | SPF3 |
| | | SPF4 | SPF4 |

**Individual Service Plan/Quarterly Report Cover Sheet  (FFC)**

| Child's Name:  Calvin Reed | Permanency Goal:  Reunification | Period Covered:  12/18/2013-06/18/2014 |
|---|---|---|

| Date of ISP Meeting: 12/16/2013 | Initial ISP ☒ | ISP Review ☐ | Quarterly ☐ | Date of NEXT ISP: 06/18/2014 |
|---|---|---|---|---|

| Service Level:  PBC  Sex: M ☒  F ☐    Date of Birth: 07/16/07  Child's SSN:  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  Child Advocate:  Michelle Payne  Phone: ( 267 ) 765-6384  Ext.  CASW:  Leslie Archer  Phone: ( 267 ) 765-6901  Ext.  Address: 1441 Sansom St, Philadelphia, 19102 | Accept for Service Date:  06/18/2013  County: Philadelphia  County Case #:  620543  County Worker: Glady Watson  Phone: ( 215 ) 683-5653  Ext.  E-Mail:  gladys.watson@phila.org  County Supv: Amanda Aquilla  Phone: ( 215 ) 683-6677  Ext.  E-Mail:  amanda.y.aquilla@phila.gov | Placement Date: 11/04/2013  Agency: PCV  Agency Case #:  Agency Worker:  Candace Campbell  Phone: ( 215 ) 730-2275  Ext.  E-Mail: CandaceCampbell@pcv.org  Agency Supv: Julie Frankum  Phone: ( 215 ) 730-2274 Ext.  E-Mail: jfrankum@pcv.org |
|---|---|---|

### School/Daycare/Early Intervention Provider Information

| School:  Step by Step daycare Center | IEP ☐ | Grade: |
|---|---|---|
| Address:  211 Shadeland Ave | City: Landsdown | State: PA    Zip Code: 19050 |
| Contact Person/Position: | | Phone: ( 610 ) 623-8383 |

### Parent/Guardian Information Section: ST-15A

| Mother's Name:  Winchella Howard | Phone: ( 215 ) 518-4177 | (w) or Emerg. #: ( ) |
|---|---|---|
| Address:  5321 Wayne Ave. | City:  Philadelphia | State: Pa    Zip Code:  19144 |

| Father's Name: Cameron Reed | Phone: ( 215 ) 254-8822 | (w) or Emerg. #: ( ) |
|---|---|---|
| Address:  5321 Wayne Ave. | City:  Philadelphia | State: Pa    Zip Code:  19144 |
| *(Please check one)* ☐ Biological ☐ Legal ☐ Alleged ☐ Step | | |

| Other's (Custodian/Guardian) Name: | Phone: ( ) | (w) or Emerg. #: ( ) |
|---|---|---|
| | Relationship: | |
| Address: | City: | State:    Zip Code: |

Search for missing parents must be completed every six months.  Has search been completed?

Mother:  Yes ☐  No ☐  N/A ☒ | Father:  Yes ☐  No ☒  N/A ☐ | Other:  Yes ☐  No ☐  N/A ☐

If goal is reunification (or concurrent goal to place with alternate resource), with whom will child be reunited: *(name & relationship to child)*:

| Name(s):  Winchella Howard | Relationship:  Mother | |
|---|---|---|
| Address:  5321 Wayne Ave. | City:  Philadelphia    State:  Pa | Zip Code:  19144 |
| Phone: ( 215 ) 518-4177 | Anticipated Date: unknown at this time | |

### Placement Setting/Child Location

| Address: ▓▓▓▓▓▓ | City: ▓▓▓▓▓▓ | State: ▓▓▓ | Zip Code: ▓▓▓▓ |
|---|---|---|---|
| Child's Location:  ☒ Foster Home  ☐ Kinship  ☐ Group Home  ☐ Institution  ☐ RTF  ☐ SIL | | | |
| Caregiver¹ - Arcella Walker | Caregiver² - | Phone: ( ▓▓ ) ▓▓▓▓ | |

### Health Information

| HMO:  Health Partner | HMO ID#:  250362062 | State ID#: |
|---|---|---|

| PC Physician: Convenant House  Address: 251 E. Bringhurst Street | Phone: ( 215 ) 844-1020  City:  Philadelphia | Is this a new provider?  Y ☐  N ☒  State: Pa    Zip Code: 19144 |
|---|---|---|
| PC Dentist:  Address: N/A | Phone: ( )  City: | Is this a new provider?  Y ☐  N ☐  State:    Zip Code: |
| Psychiatrist:  NA  Address: | Phone: ( )  City: | Is this a new provider?  Y ☐  N ☐  State:    Zip Code: |
| Other Health Providers:  Name:  N/A  Address: | Phone: ( )  City: | Is this a new provider?  Y ☒  N ☐  Specialty:  State:    Zip Code: |

| Medical Diagnosis, Allergies & Special Medical Condition/Precautions:  N/A | Medications:  NA |
|---|---|
| | Special Health/dietary needs:NA |

Child's DSM Diagnosis: *(specify)* N/A

Last Revision Date: 10/31//04                                  Main Page – ISP/Quarterly

Case 2:20-cv-01102-ER Document 1 Filed 02/20/20 Page 334 of 404

| EDV6: | EDV6: | EDV6: |
|---|---|---|
| EDV7: | EDV7: | EDV7: |
| EDV8: | EDV8: | EDV8: |

| Additional Provider #1 (ED#1) | Additional Provider #2 (ED#2) |
|---|---|
| Name: | Name: |
| Address: | Address: |
| Phone: ( ) Ext. | Phone: ( ) Ext. |
| Specific Service: | Specific Service: |
| Plan Attached? Y ☐ N ☐ Date Requested: | Plan Attached? Y ☐ N ☐ Date Requested: |

## Independent Living Skills: SP-6 (Mandatory for youth 14 years or older)

| Has an Independent Living Skills Assessment been completed? | Y ☐ N ☐ | If youth is a male and 18 years of age, is youth registered with Selective Service? | Y ☐ N ☐ |
|---|---|---|---|
| Has an Independent Living Skills Assessment been updated? | Y ☐ N ☐ Date: | If youth is 17.5 or older: has a board extension been discussed? | Y ☐ N ☐ Date: |
| Is the most recent Independent Living Skills Inventory attached? | Y ☐ N ☐ | Has a referral been made to the Achieving Independence Center (AIC)? *(Youth aged 16 & over)* | Y ☐ N ☐ |

| Objectives | Target Dates For Progress | Person Responsible |
|---|---|---|
| LS1: | LS1: | LS1: |
| LS2: | LS2: | LS2: |
| LS3: | LS3: | LS3: |

## Medical/Dental Health: *(address EPSDT, Physical, Dental, Eye, Immunizations and new medical issues)*

| Objectives | | Target Dates For Progress | Person Responsible |
|---|---|---|---|
| PH1 | Physical examination within 60 days (CM-12A). Due by: 12/04/2013 | PH1: 06/18/14 | PH1: Ms. Walker |
| PH2 | Dental examination, if 3 or older (CM-13A). Due by: 12/04/2013 | PH2: 06/18/14 | PH2: Ms. Walker |
| PH3 | Maintain ongoing routine physical care (CM-12B). ☐ Birth to 6 months – every 6 weeks ☐ 7 months to 23 months – every 3 months ☒ Over 23 months - **Annual** | PH3: 06/18/14 | PH3: Ms. Walker |
| PH4 | Maintain ongoing routine dental care (CM-13B) ☐ (Pay close attention to child who is two years plus) ☒ 3 years and older – every 9 months (recommend every 6 months) | PH4: 06/18/14 | PH4: Ms. Walker |
| PH5 | Maintain ongoing routine eye care ☐ Under 5 years – N/A ☒ 5 years and older – once per year | PH5: 06/18/14 | PH5: Ms. Walker |
| PH6 | Confirm immunization and/or establish immunization schedule within **60 days** of placement (CM-14) | PH6: 06/18/14 | PH6: Ms. Walker |
| PH7 | ☐ Obtain/update health and medical information by next review. | PH7: 06/18/14 | PH7: Ms. Walker |
| PH8 | ☐ Ensure medical/health care for any specific condition, including medically necessary monitoring of medication | PH8: 06/18/14 | PH8: Ms. Walker |
| PH9 | **Foster parent will submit all medical/dental documentation to PCV Social worker in a timely manner.** | PH9: 06/18/14 | PH9: Ms. Walker |
| PH10 | **Foster parent wil submit all non-routine documentation to PCV Social worker in a timely manner.** | PH10: 06/18/14 | PH10: Ms. Walker |
| PH11 | | PH11: | PH11: |

Is this child placed in Medical Foster Care?　☐ Yes　☒ No

If "Yes", is Medical Treatment Plan attached to ISP?　☐ Yes　☒ No

Case 2:20-cv-01102-ER     Document 1     Filed 02/20/20     Page 335 of 404

Winchella Howard **(MOTHER)**
**FAMILY SECTION**

*Complete a Family Section goal page for each parent individually as well as any other alternative permanency resource identified in this plan. This page is designated for the "Mother" who is referenced on Page 1 and all information relating only to the "mother" should be provided in the 3 subsequent sections*

| Parent/Guardian Plan | |
|---|---|
| *Identify the strengths and needs for this person* | |
| Strengths: | Needs: *(relating to achieving Permanency Goal)* |
| Mother has shown that she has a great love for her son. She has attended visitation since Cameron has been placed in foster care. | Mother needs to obtain and maintain suitable housing<br><br>Mother needs to have MH evaluation<br><br>Mother needs to maintain supervised visitation at PCV.<br><br>Mother needs to have parenting capacity.<br><br>Mother needs to attend the ARC. |

**Parent/Guardian Services**
*Indicate specific plan to address barriers to achieving permanency and additional needs identified through your assessment*

| Objectives: *(be sure to address as needed: living conditions, financial conditions, supports, parenting {to include child-caregiver interactions & developmental stimulation}, caregiver interactions, parent service needs {for caregiver history section & caregiver personal characteristics}, and employment)* | Target Dates for Progress | Person Responsible |
|---|---|---|
| PGS1    Mother needs to obtain and maintain suitable housing | PGS1    06/18/14 | PGS1    Ms. Howard |
| PGS2    Mother needs to have MH evaluation | PGS2    06/18/14 | PGS2    Ms. Howard |
| PGS3    Mother needs to maintain supervised visitation at PCV. | PGS3    06/18/14 | PGS3    Ms. Howard |
| PGS4    Mother needs to have parenting capacity. | PGS4    06/18/14 | PGS4    Ms. Howard |
| PGS5    Mother needs to attend the ARC. | PGS5    06/18/14 | PGS5    Ms. Howard |
| PGS6 | PGS6 | PGS6 |
| PGS7 | PGS7 | PGS7 |

**Safety Plan**
*Address issues that affect child's safety if the child were discharged to the care of the mother:*

| Objectives | *(for the home where the child may be reunited/discharged)* | Target Dates for Progress | Person Responsible |
|---|---|---|---|
| SP/P1 | Placement provider will conduct home visit to the parent's or guardian's home to assess safety prior to unaccompanied initial home visit by child | SP/P1    06/18/14 | SP/P1    PCV worker |
| SP/P2 | Placement provider will conduct a home visit to any other visitation resource prior to an unaccompanied home visit by the child | SP/P2    06/18/14 | SP/P2    PCV worker |
| SP/P3 | | SP/P3 | SP/P3 |
| SP/P4 | | SP/P4 | SP/P4 |

Case 2:20-cv-01102-ER    Document 1    Filed 02/20/20    Page 336 of 404

___ **(OTHER)** (*Cust/Guard*)
**Relationship:**
**FAMILY SECTION**

| |
|---|
| Complete a Family Section goal page for <u>each</u> parent individually as well as any other alternative permanency resource identified in this plan. This page is designated for the "Other" person (Custodian/Guardian) who is referenced after the Father section on Page 1 and all information relating only to this "Other" person should be provided in the 3 subsequent sections |

## Parent/Guardian Plan
*Identify the strengths and needs for this person*

| Strengths: | Needs: *(relating to achieving Permanency Goal)* |
|---|---|
| | |

## Parent/Guardian Services
*Indicate specific plan to address barriers to achieving permanency and additional needs identified through your assessment.*

| Objectives: *(be sure to address as needed: living conditions, financial conditions, supports, parenting {to include child-caregiver interactions & developmental stimulation}, caregiver interactions, parent service needs {for caregiver history section & caregiver personal characteristics}, and employment)* | Target Dates for Progress | Person Responsible |
|---|---|---|
| PGS1 | PGS1 | PGS1 |
| PGS2 | PGS2 | PGS2 |
| PGS3 | PGS3 | PGS3 |
| PGS4 | PGS4 | PGS4 |
| PGS5 | PGS5 | PGS5 |
| PGS6 | PGS6 | PGS6 |
| PGS7 | PGS7 | PGS7 |

## Safety Plan
*Address issues that affect child's safety if the child were discharged to the care of the "Other" (Cust/Guard):*

| Objectives | *(for the home where the child may be reunited/discharged)* | Target Dates for Progress | Person Responsible |
|---|---|---|---|
| SP/P1 | Placement provider will conduct home visit to the parent's or guardian's home to assess safety prior to unaccompanied initial home visit by child | SP/P1 | SP/P1 |
| SP/P2 | Placement provider will conduct a home visit to any other visitation resource prior to an unaccompanied home visit by the child | SP/P2 | SP/P2 |
| SP/P3 | | SP/P3 | SP/P3 |
| SP/P4 | | SP/P4 | SP/P4 |

| Legal Family/Guardian Visits: CM-2B | |
|---|---|
| Are any visits supervised?  ☒ Yes  ☐ No | Who is responsible for supervising the visit? PCV worker |
| If visit is supervised, at whose instruction? | ☒ A written visitation plan has been given to the parent(s)/guardian(s) *(see attached)* Date: 11/11/13 Period Covered: 11/11/13- |
| County:  ☒ Yes  ☐ No <br> Court Order:  ☒ Yes  ☐ No | ☒ Provider will assist with transportation by: PCV will provide tokens to parents. |

If visit is NOT supervised by the agency worker, how will the visit be monitored/reviewed? NA

| Who will be visiting?  ☒ Mother *  ☒ Father *  ☐ Guardian *  ☒ Sibling(s) *  ☐ Other * | *SEE ATTACHED VISITATION PLAN* |

How will feedback on quality of interaction be provided to parent by staff/foster/kinship parent: *(please be specific)*  Feedback will be given to mother after the visit.

Other Visitation Restrictions Pertain to:  ☐ Mother  ☐ Father  ☐ Other: _____

Explain, in detail, any restrictions:  NA

| | | | |
|---|---|---|---|
| Have the restrictions been approved by the County Worker? | ☐ Yes | ☒ No | |
| Have the Visit Restrictions been Court Ordered? | ☐ Yes | ☒ No | |
| Has the Court Order been received stating these restrictions? | ☐ Yes | ☒ No | |

---

**Purpose of Visitation**
*Address specific plan/purpose for visits with each visiting resource (e.g., mother, father, guardian, siblings, other permanency resources) and the role of visitation in promoting permanency*

Visitation will provide parents and child a chance to develop and maintain a bond while Calvin is in Foster Care.

---

**Alternative Permanency Plan**
*Identify alternative plan options being developed*

| Objectives | Target Dates for Progress | Person Responsible |
|---|---|---|
| APP1  Concurrent placement goal has been identified: <br>  ☐ Yes  ☒ No <br> If "Yes", specify: | APP1  06/18/14 | APP1  PCV worker & DHS worker |
| APP2  Identify/locate missing parent or other relative | APP2 | APP2 |
| APP3 | APP3 | APP3 |

(Visits Page of ISP)

## ISP Signature Page

**Social Worker to review with parent(s) and child (*14 or older MUST be invited*) BEFORE signing:**

- I have been informed that my child and/or I may be accompanied at the planning meeting by a spokesperson of our choice.

- I understand that I am expected to work towards the goals of this plan and that consistent failure to do so may result in initiation of action, in accordance with the law, to terminate my parental rights.

- I understand that a copy of this plan will be forwarded to the County Children and Youth agency and will be subject to review in court.

- I understand that if I disagree with this plan, I may enclose a statement of my disagreement and I am not required to sign this ISP.

- My signature below indicates agreement with the contents of this ISP.

  Statement of disagreement is attached ☐ or N/A ☐

**This ISP Report contains Pages Numbered:** ⟶ **Page #'s:** <u>1-6,9-11</u>
*(e.g., #1, 2, 3, 4, 5, 8, 11, 12)*

| | |
|---|---|
| *Cameron Reed* 1-6-14 | |
| **Parent or Guardian**            **Date** | **Parent or Guardian**            **Date** |

| | |
|---|---|
| **Parent or Guardian**            **Date** | |

| | |
|---|---|
| **Child**            **Date** | **County Agency**            **Date** |

| | |
|---|---|
| *John Campbell* 12/18/13 | *signature* 1/7/14 |
| **Provider Agency Supervisor**            **Date** | **Provider Agency Representative.**            **Date** |
| *Representative* | *Supervisor* |

| | |
|---|---|
| **Foster/Kinship Caregiver**            **Date** | **Foster/Kinship Caregiver**            **Date** |

**Legal Representative**

| | |
|---|---|
| **Name/Representing Whom**            **Date** | **Name/Representing Whom**            **Date** |

**Collateral Agency Signatures:  (Optional)**

| | |
|---|---|
| **Date** | **Date** |



**FOSTER CARE·**

COVENANT HOUSE HEALTH SERVICES
251 E. Bringhurst St.
Philadelphia, PA 19144

PHYSICAL EXAMINATION FORM

TE OF EXAMINATION: _11-29-13_    REVIEW OF HEALTH SYSTEMS:    Normal ☐    Abnormal ☐    Other ☐

| CONSUMER INFORMATION | | | CAREGIVERS | | |
|---|---|---|---|---|---|
| ME: Calvin Leed | | | NAME: | | |
| #: | | | ADDRESS: | | |
| B: | Male ☒ | Female ☐ | PRIMARY PHONE: | | CELL NUMBER: |
| 26 | WT: 15, 9.0 | | | | |
| INSURANCE | | | SPECIALISTS | | N/A ☐ |
| CESS #: | | | MD: | DIV: | |
| #: | | | PHONE: | FAX: | |
| IER: | | | | | |
| | | | MD: | DIV: | |
| | | | PHONE: | FAX: | |

| MEDICAL EVALUATION | | | | |
|---|---|---|---|---|
| | | GROWTH / DEVELOPMENT | | |
| eral Appearance: | | Abdomen: | V14. | |
| d: | | Genitalia: | TOI | |
| Fundl: | QII | Extremities: | | |
| | | Hips: | NO | |
| e: | | Skin: | H4 stigmata (Cafe au lait) | |
| ynx: | | Rectum: | | |
| oid: | | Lymph Nodes: | | |
| is: | | Neurological Spine: | | |
| st & Brest: | | Tanner Score: | | |
| iovascular: | | Mental Status: · | | |
| ich / Language function: | | Sensory Development: | | |

| SPECIAL MEDICAL CONDITION | | | (If yes please indicate status of condition) | | |
|---|---|---|---|---|---|
| municable Disease: | Yes ☐ | No ☐ | Sickle Cell Anemia | Yes ☐ | No ☐ |
| rculosis | Yes ☐ | No ☐ | Venereal Disease | Yes ☐ | No ☐ |

| ALLERGIES | | | (Please provide the diagnosis / treatment / prognosis) | | |
|---|---|---|---|---|---|
| | Yes ☐ | No ☐ | Chemical/ Drug | Yes ☐ | No ☐ |
| onmental | Yes ☐ | No ☐ | Other | Yes ☐ | No ☐ |

| IMMUNIZATION HISTORY | | | VISION CARE | | |
|---|---|---|---|---|---|
| 6 mos ☐ | 12-18 mos ☐ | | Without Glasses | R___/___ | L___/___ |
| nos ☐ | 18-24 mos ☐ | | With Glasses | R___/___ | L___/___ |

| LABORATORY TEST RESULTS | | HEARING | | | | |
|---|---|---|---|---|---|---|
| ☐ | Results_____ | Right Ear | 500 ☐ | 1000 ☐ | 2000 ☐ | 4000 ☐ |

**Covenant House Health Services**
251 E Bringhurst St   Philadelphia, PA   19144-1719
(215) 844-1020  Fax: (215) 844-2702

*November 29, 2013*
Page 1

**Patient Information For :** Calvin Reed

## Immunization Record for: Calvin Reed

| Vaccine | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| HepB Hepatitis B | 10-17-13 | 11-29-13 | | | | |
| DTP Diphtheria, Tetanus, Pertussis | 07/20/2013 | 10/17/2013 | 11/29/2013 | | | |
| HIB Haemophilus influenzae Type b | 7-20-13 | 10-17-13 | 11-29-13 | | | XXXXXXXXXX |
| IPV Inactivated Poliovirus | 07/20/2013 | 10/17/2013 | 11/29/2013 | | | |
| MMR Measles, Mumps, Rubella | | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Varicella Varivax | | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Pneumococcal | 7-20-13 | 10-17-13 | 11-29-13 | | | |
| Hep A Hepatitis A | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Tetanus Booster Date of Last: | Flu Shot Date of Last: | Pneumovax Date of Last: | Meningococcal Vaccine Given: | | | |

### Other Vaccines

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| HPV | Vaccine/ Date of Last: | Vaccine/ Date of Last: | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Rotavirus | Vaccine/ Date of Last: 7-20-13 | Vaccine/ Date of Last: 10-17-13 | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Zostavax | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |

## Recommended Childhood and Adolescent Immunization Schedule
### United States · 2006

| Vaccine | Age | Birth | 1 mos | 2 mos | 4 mos | 6 mos | 12 mos | 15 mos | 18 mos | 24 mos | 4–6 yrs | 11–12 yrs | 13–14 yrs | 15 yrs | 16–18 yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hepatitis B₁ | | HepB | HepB | | HepB | | HepB | | | | HepB Series Catch-Up | | | | |

| A. ☐ | Results_____ | Left Ear | 500☐ · 1000☐ · 2000☐ 4000☐ |
|---|---|---|---|
| otropic treatment ☐ | Results_____ | | |

**PHYSICIAN'S INFORMATION**

| ysician's Name: | Physician's Address: COVENANT HOUSE HEALTH SERVICES 251 E. Bringhurst St. Philadelphia, PA 19144 | Physician's Phone Number: Fax 215·844·2702 215·844·1020 |
|---|---|---|

DITIONAL COMMENTS/ RECOMMENDATIONS/ FOLLOW UP APPOINTMENT:

G6PD + NFA

needs Hematolog & neurolog &
Opthamolog Follow-up

by certify, under the pains and penalties of perjury, that the information I have provided herein is true, accurate and complete.

cian's Name (Please Print)

Pennsylvania Board of Registration Number

ng Physician's Signature

Date

COVENANT HOUSE HEALTH SERVICES
E. Bringhurst St.
Philadelphia, PA 19144

COVENANT HOUSE HEALTH SERVICES
251 E. Bringhurst St.
Philadelphia, PA 19144
215·844·1020      2

Child's Name:    Calvin Reed

Period Covered:    **12/18/14-06/18/15**

EDV3:    CM will complete ASQ and make appropriate referrals if neccessary

| | |
|---|---|
| EDV3:    06/18/15 | EDV3:    Case Manage |
| EDV4: | EDV4: |
| EDV5: | EDV5: |
| EDV6: | EDV6: |
| EDV7: | EDV7: |
| EDV8: | EDV8: |

EDV4:

EDV5:

EDV6:

EDV7:

EDV8:

| Additional Provider #1  (ED#1) | Additional Provider #2  (ED#2) |
|---|---|
| Name:  Areesah Abdus-Shakur/ Service Coordinator | Name: |
| Address:  20 S. 69<sup>th</sup> St Philadelphia, Pa 19082 | Address: |
| Phone:  ( 610 )  713-2406              Ext. | Phone:   (      )                      Ext. |
| Specific Service:  speech therapy | Specific Service: |
| Plan Attached?  Y ☒  N ☐   Date Requested: | Plan Attached?  Y ☐   N ☐  Date Requested: |

### Independent Living Skills:  SP-6   (Mandatory for youth 14 years or older)

| | | | | | |
|---|---|---|---|---|---|
| Has an Independent Living Skills Assessment been completed? | Y ☐ | N ☒ | If youth is a male and 18 years of age, is youth registered with Selective Service? | Y ☐ | N ☐ |
| Has an Independent Living Skills Assessment been updated? | Y ☐ Date: | N ☐ | If youth is 17.5 or older:  has a board extension been discussed? | Y ☐ Date: | N ☐ |
| Is the most recent Independent Living Skills Inventory attached? | Y ☐ | N ☐ | Has a referral been made to the Achieving Independence Center (AIC)? *(Youth aged 16 & over)* | Y ☐ | N ☐ |

| Objectives | Target Dates For Progress | Person Responsible |
|---|---|---|
| LS1:    Calvin will brush his teeth daily. | LS1:    06/18/15 | LS1:    Child and Foster Parent |
| LS2:    Calvin will help to get dressed daily | LS2:    06/18/15 | LS2:    Child and Foster Parent |
| LS3: | LS3: | LS3: |

**Office of Child Development and Early Learning**



**pennsylvania**
OFFICE OF CHILD DEVELOPMENT
AND EARLY LEARNING

# Individualized Family Service Plan (IFSP)
# Individualized Education Program (IEP)

- The IFSP and IEP are plans that identify services and supports so that family members and early education programs are actively engaged in promoting the child's learning and development.

- The IFSP/IEP team determines the skills/abilities and appropriate supports and services either in the natural environment or the least restrictive environment to accomplish the established goals and outcomes.

- These decisions are not made by matching the child's areas of delay with a particular early intervention discipline. Rather, supports and strategies are individualized and build on the strengths and skills the child demonstrates in all areas of development.

- The IFSP and IEP are plans that consider: the strengths of the child; concerns of the parent/guardian; most recent evaluation results; academic, developmental and functional needs of the child; communication needs of the child; and will incorporate revisions to the plan to address lack of progress.

11/16/2015

Child's Name: CHRISTIEN HOWARD

Local Program: ELWYN INC

Date of Birth: 3/23/2011

Local ID#: 9056453

# I. Demographics and IFSP/IEP Team Membership

| Child Information | |
|---|---|
| Child's Name: CHRISTIEN HOWARD | Gender: Male |
| | Age: 4 Years, 7 Months |
| Date of Birth: 3/23/2011 | |
| EIX01 #: 3803106248 | |
| Referral Date: 1/30/2014 | |
| Referral Source: Parents/Family Members | |
| Child's Address: 2345 W HAROLD ST | |
| City/State/Zip: PHILADELPHIA, PA, 19132-3619 | |
| Phone #: (215) 910-9392 | |
| Primary Language: English | |
| School District of Residence: PHILADELPHIA CITY SD | |
| County of Residence: Philadelphia | |

11/16/2015

Child's Name: __CHRISTIEN  HOWARD__

Local Program: __ELWYN INC__

Date of Birth: __3/23/2011__

Local ID#: __9056453__

## IFSP/IEP Team Membership:

Members shall include: parent and others as requested by the parent (if feasible); the County Designee/Service Coordinator (infant/toddler) or Local Education Agency Representative (preschool) must be present for the meeting; a person directly involved with evaluation and assessment results who can interpret instructional implications; a person who will be providing services, as appropriate (infant/toddler); a regular education and a special education teacher (preschool).

| Role | Printed Name | Attendance Signature |
|---|---|---|
| Parent/Guardian | RONYA  WILSON | |
| Occupational Therapist | VANESSA  CORBIT | |
| Preschool EI Representative | ERIC  SCHAEFLEIN | |
| Regular Education Teacher | KATHERINE  FOX | |
| Special Education Teacher | KATHERINE  FOX | |
| Speech Therapist | MELISSA  SPADA | |
| | | |
| Treatment Care Case Worker | GENEA  DAVIS | |
| | | |

**The following individuals provided information to the IFSP/IEP team but did not attend or were excused from the meeting.**

| Role | Printed Name |
|---|---|
| | |

**Parent(s) received copy of Procedural Safeguards/Parental Rights Agreement:**   Yes  [X]   No  [ ]

Parent Signature: _____

11/16/2015

inquisitive but we continue to work on decreasing his impulsivity in his school environment.

Fine Motor Development (Nov. 2015):
Christien receives 45 minutes of individual occupational therapy each week, broken down into 30 minute and 15 minute sessions. Christien is working towards one fine motor goal that states: Christien will demonstrate improved participation in fine motor and visual motor skill activities by imitating the following: drawing horizontal and vertical strokes; stacking 8-10 blocks in 3/4 opportunities measured twice monthly for 3 consecutive months.

Christien has demonstrated improvements in all areas of this goal, but has not yet met the mastery criteria. Christien will imitate vertical and horizontal lines in 2/4 opportunities. For stacking blocks, Christien has demonstrated this skill in 1/4 opportunities. Christien can be self-directed at times, with motivation playing a key factor in his performance. Christien will demonstrate signs of frustration when stacking blocks if they prematurely fall over by crying out and arching his back. This limits the number of trials that can be incorporated into one session. Christien overall demonstrates consistent attention to a variety of seated fine motor activities. He has demonstrated independence with stringing beads, stacking Legos, and rice and bean play (pouring rice and beans from one cup to another after 1 demonstration).

Christien is also working towards a classroom participation goal that states: Christien will demonstrate improved classroom participation by remaining seated for rug/group activities for up to 5 minutes with use of sensory strategies (i.e. air disc, sensory breaks incorporated during school day as recommended by OT) provided no more than 3 prompts to redirect as measured twice monthly for 3 consecutive months.

Christien has met the mastery criteria for this goal. Christien is able to sit for group activities including circle, for 5 minute intervals when given shoulder rubs or a fidget to hold and no more than 3 prompts provided to redirect. Christien will at times, continue to demonstrate inconsistency with this skill. Christien benefits from movement breaks embedded into his routine, and sensory interventions such as shoulder/head rubs and a fidget to hold during seated group activities.

Picture for conmucation
moon sand/Ac moore
workon blc stacken
chew toy

| Child's Name: | CHRISTIEN HOWARD | Date of Birth: | 3/23/2011 |
| --- | --- | --- | --- |
| Local Program: | ELWYN INC | Local ID#: | 9056453 |

## Summary of the Child's Present Performance

Provide a summary from the Evaluation Report, if current, or update with current information. This summary describes the child's strengths (including strengths that exist in areas of concern) and the child's needs. Include developmental, academic achievement (preschool), and functional performance. Describe how the child's developmental delay or disability affects the child's involvement in everyday routines and appropriate activities. Describe instructional strategies that have been successful and how they can be incorporated into the child's educational program and curriculum that will support the child. Describe the child's favorite activities and materials, and factors that motivate the child to participate and learn.

Annual 11/16/15

Present levels
Cognitive: Christien attends the Approved Private School's Autistic Support Classroom at Easter Seals. Five days a week for 5.5 hours a day. Christien is an energetic boy who is very enthusiastic about his environment and enjoys exploring his classroom. Christien follows a daily schedule each day which is Arrival/Unpack, Hello circle, Snack, Movement, Independent Work, Instructional, Group, Playground, Lunch, Grooming, Playground, and Goodbye Circle.  He does well transitioning using his picture schedule and is beginning to follow classroom routines. He will match his picture to his schedule, will remove the next activity card and deposit it in the activity bin given verbal and physical redirection at this time.
He is transitioning from activity to activity much easier but does have some trouble leaving if it is highly preferred (snack, lunch).
Christien is participating in Circle time, showing more of an interest in the morning activities especially our hello song and the calendar. During the hello song Christien needs verbal prompts to follow simple directions ¿stand up¿, ¿say hi¿, ¿find picture¿, ¿put in school¿ and ¿sit down¿. Christien will match the day of the week, month, and count the number of days during Calendar given assistance.   He will stay seated for short periods of time but does require physical and verbal redirection when he begins falling out of his chair, climbing or spitting into his hands.
Table activities including art, fine motor, games, sensory, and teacher time, can be challenging for Christien because he has a strong preference in what he wants to do and does not always attend to the activity as a whole. He often requires verbal and physical redirection to complete the task. Christien enjoys participating in movement, art (dot markers and coloring), and sensory activities the most and remains with the activities given minimal prompting. During independent work Christien will do simple, mastered activities although he still needs assistance with the left to right work system to complete his work independently.  Christien works on pre-academic skills during instructional worktime, such as matching colors, letters, pictures and numbers.  He is beginning to show some emerging skills in this area as his ability to attend increases.

Goals: Currently Christien is working on the following goals: (averaged for September, October, November) During an adult directed activity, Christien will imitate 10 different actions (ready hands, clap hands, stand up, sit down, raise arms, stomp feet, wave hello, wave goodbye, cover ears with hands, touch head) 34.3%% across three cold probes, measured monthly for three consecutive months. We will be keeping this goal although changing the target behaviors. Second goal, throughout the school day when given a reinforcer, Christien will transition between two activities with no more than three additional prompts 64% of observations measured monthly over three consecutive months. We will be replacing this goal. Lastly, throughout his program day, Christien will use 10 toys/leisure activity materials as intended for 1 minute, 56% of opportunities measured monthly over three consecutive months. We will also be replacing this goal.
Christien is using pictures to communicate his wants and needs at this time. We use pictures throughout the day, (song choices, and color choices) and he also has a communication book he has in the bag attached to his chair. Christian will get his book out on his own (when given a verbal prompt) and knows that the pictures in the book will get him a preferred food item.  His ability to discriminate between the pictures is emerging and he is more consistent with using pictures to get his needs met. He does best when the pictures are offered to him on his snack tray and he has only 3 choices at a time.  We continue to work on this throughout each day.
Social/Emotional: Christien is generally a very happy and pleasant boy who enjoys his classroom environment. He does not always like to leave a preferred activity/event and will exhibit an intense outburst/tantrum (scream, cry, throw himself on the floor, hit himself, and kick) when he does not get his way. At the most, Christien¿s tantrums will last 5 minutes before he is redirected to the next task and can be moved on. Christien tends to play independently and shows very little interest in his peers at this time. He does take turns with a peer when prompted by an adult and will share some of the same toys. He does practice taking turns and sharing in a structured 1:1 situation with another child in the class. Christien has begun bringing things to his teachers or coming to get a teacher when he wants something (i.e. push on the swing, help with a toy). We are also working on pairing this with eye contact.   He enjoys playing with a variety of toys, puzzles, Mr Potato Head, and cause and effect toys. Loves sensory, moon sand, playdoh, corn and beans although he has to be watched closely due to impulse control with eating or throwing.  Christien enjoys snuggling, getting tickled, sitting with staff, and doing a variety of other activities with all of the adults in his classroom, as well as his therapists.

Self Help:  Christien¿s self- help skills are very good. He is toilet trained for BM/Urine and will run to the door in the classroom when he needs to go. He will pull his pants down and up and is working on washing his hands more independently. He does need some assistance with putting on and taking off his clothing but is cooperative. Christien eats with a spoon but can be messy and will sometimes grab food that might not be his. He throws his trash away when prompted. Christien is working on unpacking his bag in the morning (lunch in the bin, taking off and hanging up his coat, folder on the table) but needs assistance with this as it is a new expectation. He is not always safe as he moves quickly and is very inquisitive but we continue to work on decreasing his impulsivity in his school environment.

11/16/2015

| With parent consent, list assistance to the family in helping them access community, medical or other non-EI funded services. If the parent does not want to address this item, document in the child's record. |
| --- |
| |

# IV. Measurable Result/Outcome/Goal

Activity/behavior/skill in everyday life, identified by the family and the IFSP/IEP team, that they would like to see happen.  Includes information on the routine/activity of the family, community, or early childhood setting where the behavior/skills will be incorporated.  Should address the child's needs identified in the evaluation and the priorities of the family.  Be functional and measurable to provide a framework for ongoing progress monitoring.  Goal should be developed in accordance with the PA Early Learning Standards and enable the child to be involved in and make progress in the general curriculum.

| Outcome/Goal: 5 | Date outcome/goal developed: 4/3/2014 | Date outcome/goal completed: |
|---|---|---|
| **Outcome/Goal Statement:** | During pre-academic learning activities and play experiences, Christien will imitate actions following an adult model with facial expressions, functional use of toys/objects toys/objects, drawing strokes and/or block designs  at home or in the community. | |

**What is happening now?**     What is child's current level of performance related to this outcome/goal?

Christen demonstrated object permanence by watching an item as it fell and looking for an item after it was placed behind a screen. He demonstrated understanding of functional relationships and the use of everyday items by rolling a wheeled toy.  His foster mother reported that he will request and adult¿s help with winding a toy, if the toy is familiar to him. Christen appeared to be on a functional, concrete level of play as most of his actions were single actions such as pushing a car around. Christen did not demonstrate early imaginative play skills.  In the area of non-verbal cognitive development, Christen was able to complete visual-motor tasks such as placing a small object into a small container.  He was not able to manage three to four toys by setting one aside when given a new item.  He did not show an interest in scribbling after an adult model. Christen was not able to match objects to pictures nor did he spontaneously name objects.  Christen did not show an interest in looking at books.

| Child's Name: | CHRISTIEN  HOWARD | Date of Birth: | 3/23/2011 |
| Local Program: | ELWYN INC | Local ID#: | 9056453 |

## Progress Updates

| Outcome/Goal: 5 | Date outcome/goal developed: 4/3/2014 | Date outcome/goal completed: |
|---|---|---|

**Outcome/Goal Statement:** During pre-academic learning activities and play experiences, Christien will imitate actions following an adult model with facial expressions, functional use of toys/objects toys/objects, drawing strokes and/or block designs  at home or in the community.

**After reviewing the outcome/goal and progress monitoring data, we, the team, have decided:**

We still need to work toward this outcome/goal. Let's continue with what we have been doing.

Christien will use a marker on paper during a small group activity at his preschool. He does well during gross motor activiites, e.g. throwing bean bags, riding on a spinning toy, climbing stairs, and sliding. Christien's responses to adult directions or encouragement varies greatly upon his mood or interest. He can be smiling and somewhat engaged one moment, and then become upset and disrupt ongoing activities.
Christien's skills and needs are taken into consideration by staff working with him. He is able to maintain skills and is not in need of services over the breaks in the DCIU EI calendar.

Elaine Halberstadt, M.Ed., PDE certified special education teacher

**Date of Review:** 7/25/2014

We still need to work toward this outcome/goal. Let's continue with what we have been doing.

Christien continues to make marks on a paper (in his journal) when encouraged to do so. He appears to enjoy drawing on surfaces other than the paper (his hands and the table) and will become upset when redirected to use only the paper. Christien can take the cap off of a marker and make marks on a paper but is not yet imitating circular strokes or drawing recognizable shapes. He has learned how to spear food with his spork and is now learning to scoop with the side of his spork. He is not yet immitating the scooping action as directed.

Christien enjoys rolling a ball or water filled bottle to an adult. He will maintain a back and forth game for up to 10 turns before moving on to another activity. Recently, Christien learned to push his chair from one location to another. He requires 4-5 demonstrations before he can push on his own.

Christien is not yet demonstrating this skill independently.

Data collected before and after program breaks indicate that Christien is not showing regression after program breaks in EI services. He maintains his skill level therefore, he is not in need of services over breaks at this time.

Susan E. Beadle, M.Ed.
Special Education Itinerant Teacher
610-938-9000 x4046
484-461-4664

**Date of Review:** 10/31/2014

If the report is being taken during regular business hours and meets the criteria for an expedited response, it will be assigned to the appropriate unit for immediate response.
- CPS reports where the alleged victim child is 5 years old or under will automatically be assigned to the Intake case assigners, or MDT/Repeat Abuse unit if an active case, directly by the Hotline for an Immediate response.
- All GPS and General reports with concerns pertaining to a household where there is a child five or under, or concerns specific to a child five or under will be assigned to the Field Screening units for an expedited response including a field screening and safety assessment.  This includes both new reports, and reports on open or active cases.

If the report is being taken after regular business hours and meets the criteria for an expedited response:
- If the report is determined to require a Priority 1 response, the Afterhours Hotline will complete the expedited response.
- If the report is determined to require a Priority 2 or Priority 3 response and the next day is not a regular business day, the Afterhours Hotline will complete the expedited response.
- If the report is a GPS and does not otherwise require a Priority 1 response, and it is before 7:00 p.m., the Field Screening unit staff will complete the expedited response.
- If the report does not otherwise require a Priority 1 response, and it is after 7:00 p.m., the report will be immediately reviewed by the supervisor to determine whether it needs a response before the next morning shift.

Child Death Reports
For all Contact Events to CYD of a child's death, the Hotline social worker is required to create a report, obtain information in the six domains and as much additional information as possible to adequately determine and document whether the report should be accepted as an investigation/assessment, and if so, the type of investigation/assessment and response priority that is required.  The information obtained must include a FACTS clearance (as in all reports) and other information including the presence of other children in the home; the environment in which the deceased child was found; where siblings/other children are currently located, if known; any observed condition of adults and/or the reaction of parents/caregivers to the death; consistency of parent/caregiver's account of child's death.

o  If there is no suspicion that the death was a result of abuse or neglect, the report will not be accepted for investigation/assessment regardless of whether there are other children in the home.

o  If the child's death is suspected to be the result of abuse or neglect and -
  • There are other children in the home -- the report will be taken as a CPS or GPS report depending on the allegations, accepted for investigation/assessment and a Priority 1 (0 – 2 hrs.) response time will be assigned.
  • There are no other children in the home – the report will be taken as a CPS or GPS report depending on the allegations and accepted for investigation/assessment.
    o  If the report is taken as a CPS report, a Priority 3 (24 hrs.) response time will be assigned.

- A Contact Event will be taken as a "Report" if it meets one of the statutory and/or regulatory definitions.
  - If a Contact Event contains allegations which would meet the statutory definition of a CPS, but the alleged perpetrator does not meet the definition of a perpetrator, the Hotline social worker will collect all the information, discuss with his/her supervisor, and forward to the Philadelphia Police Department for criminal investigation.
    - Information that is forwarded will be handled according to the established procedure.
    - If there are any questions, the Hotline social worker and supervisor will consult with the Law Department.

All reports involving the following allegations or equivalent crimes under Federal Law or the law of another state are reported to the police.
- criminal homicide;
- aggravated assault;
- harassment;
- kidnapping;
- unlawful restraint;
- rape;
- statutory rape;
- involuntary deviate sexual intercourse;
- aggravated indecent assault;
- indecent assault;
- indecent exposure;
- concealing the death of a child born out of wedlock;
- dealing in infant children;
- prostitution and related offenses;
- obscene and other sexual materials and performances;
- corruption of minors;
- sexual abuse;
- sexual exploitation;
- serious **bodily** injury perpetrated by persons **whether or not** related to the victim;
- child abuse perpetrated by person who are not family members;
- serious **physical** injury involving extensive and severe bruising, burns, broken bones, lacerations, internal bleeding, shaken baby syndrome or choking, or an injury that significantly impairs a child's physical functioning, either temporarily or permanently.

If allegations are reportable to law enforcement authorities, the reporter is notified that his/her name must be revealed to those authorities and that he/she will be treated as a confidential informant by those law enforcement authorities.

All reports which are referred to law enforcement officials are copied to receiving administrators.


Safety Decision #2 (Danger Tab)

The Hotline social worker must evaluate the existence of a present danger threat which will guide the time frame for response.

Investigation – a Report submitted to a Hotline supervisor which meet the criteria for a CPS or GPS and appear to have a present danger or active safety threats.

Supplemental – new, related information on a pending report that has been accepted within the past 30 days.

Progress Note (formerly FYI) - any pertinent additional information received on an open or active case or an existing report.

All current policies not revised by this document continue to apply.

**Policy:**

**The FACTS2 system makes automatic assignments and notifications. It is the expectation that every staff member will be logged on to his/her computer, FACTS2 and Lotus Notes while at work. Notifications of assignment are made automatically to the social worker and supervisor, and are placed automatically into the social worker/supervisor "Work-on" lists. Every staff member is required to regularly check his/her work-on list for new assignments.**

The CYD Hotline will receive reports 24 hours per day, 7 days a week.[1] The Hotline and Screening will document every contact as a "Contact Event" in FACTS2, regardless of the reason for contact or the method of contact. The Hotline will use guided decision-making to collect and analyze significant information in order to determine what reports are accepted for investigation or assessment by CYD, how quickly face-to-face contact must be made, and who will complete the assessment.

In receiving Contact Events, in addition to identifying information, the Hotline social worker will collect information in the following areas:
- the extent of alleged maltreatment being reported
- the circumstances surrounding the alleged maltreatment
- the general functioning of all children and their functioning in response to the alleged maltreatment
- the general functioning of the parents/caregivers as adults
- the function of the parents/caregivers as parents/caregivers
- the discipline used by the parents/caregivers
- Additional information sources - **Hotline social workers will ask the reporter if there are other people who may have relevant information and how to contact those sources; the social worker will follow up and attempt to obtain the additional information.**

Supplementals and Progress Notes (FYI's) will be handled as follows:
- Information will be documented in the "Parties and Clearance" and "Narrative" sections of the Contact Event screen.
- When the case is cleared, if another report, investigation or active case which is clearly related to the case is identified, the Hotline social worker will save close

---

[1] *The Screening Unit is not available to take referrals 24/7. The afterhours Hotline will respond to referrals that would normally be taken by the Screening Unit if they come in after regular business hours, weekends and/or holidays.*

6. Choose a referral type; the FACTS2 system automatically chooses a response priority based on your responses to Safety Decisions 2 and 3.
7. Submit report.
8. Take whatever additional actions are required/requested/recommended by Hotline supervisor, such as making the initial visit if working after regular business hours

**Hotline Supervisor Responsibilities**

The supervisor will review all reports and e-mails from Hotline social workers immediately.
1. Determine whether sufficient information was collected to support all decisions
   a. If insufficient information was collected, advise social worker what additional information to obtain and how to obtain it.
   b. Document efforts to obtain additional information in the "Narrative" section.
2. Reports not accepted for investigation/assessment
   a. Determine whether report was appropriately rejected for investigation/assessment
      i. If a report was generated, document in FACTS that no investigation/assessment was needed, and, if appropriate, that a referral was made to Prevention Services.
   b. If report was inappropriately rejected for investigation/assessment
      i. Return report to social worker to complete revisions
3. Reports accepted for investigation/assessment
   a. Determine whether report was appropriately accepted for investigation/assessment
   b. If report was inappropriately accepted for investigation/assessment
      i. Return report to social worker to complete revisions
4. Review remaining safety decisions
   a. If supervisor does not agree with the results of the safety decisions, s/he should discuss the decisions with the social worker, if appropriate, direct social worker to revise the decisions.
5. **Safety Decision #5:** Determine whether case is going to Intake, MDT/Repeat Abuse unit, Expedited Response, Family Assessment-ARS or a Family Service Region

**Child Death** – When reviewing a report of child death, override and revise the Response Priority to be consistent with the guidelines in the Policy section of this guide.

Attachment: GPS Allegation definitions

Questions regarding this guide may be addressed to:

Patricia Ripoll, Policy and Planning Administrator        683-4112
Bari Rose-Epstein, Program Supervisor                     683-4116

8. If no, continue on to next category.
  c. Does the report meet the definition of a GPS report?
- Allegations of one of the conditions defined as GPS allegations (see attached definitions), to a degree of severity that has the potential to harm the child's health, development or functioning.
    9. If yes, is/are the victim child(ren) DHS-committed children in a placement setting?
    10. If yes,
      a. edit the header screen and under "Conflict of Interest" choose "Neglect – Purchased Service"
      b. Remove any allegations from the "Allegation" tab screen and document the allegations in the narrative.
    11. If no, check "yes" under GPS, and enter this information in FACTS.
    12. If not a GPS, continue on to next category
  d. Is the report one that is taken as a General Report
    i. Is this a report from a hospital or birth center of a substance-exposed newborn?
      1. If this is during regular business hours, choose CYD Inv/Assessment as referral type.
      2. After regular business hours and on weekends, Hotline staff will complete a FACTS clearance, and assign the report to the Field Screen staff, consistent with the expedited response for children 5 and under (if they are unavailable, Hotline staff will respond). Staff will verify the address where the infant will be living, assess the safety of the home and its residents, make face-to-face contact with the parents/caregivers and the newborn, complete the Newborn Screening Tool and a Safety Assessment, and complete a safety plan, if needed.
      3. As detailed in the CAPTA protocol, based on available information, and after having made face-to-face contact and assessed safety, the report may be forwarded to the CAPTA staff the next business day, or will be accepted for investigation/assessment and assigned to Intake, MDT/Repeat Abuse unit or active social worker the next business day.
        a. the response priority will be based on the safety and risk as assessed by the Hotline social worker and documented on the Safety Assessment and Newborn Screening tool.
    ii. If yes, FACTS2 defaults to General report if CPS and/or GPS is not chosen
  e. If the Contact Event is from the court, the type of report will be assigned based on the nature of the allegations, unless the court specifically orders otherwise.
  f. If the report is not being accepted for CYD investigation or assessment
    i. Is a referral needed or requested to assist this family in accessing services or resources to meet basic or other needs?
      a. Document in the "Narrative" section of FACTS2 how, when and to whom the referral will be made.
    ii. If the report is not accepted for investigation or assessment, choose the appropriate referral choice and forward to supervisor for approval and assignment.
      a. **NOTE: "Close – New CPS/GPS" is only to be used for CAPTA reports.**
  g. If the allegations constitute one of the allegations that must be reported to

        2.   If the Contact Event is made by someone other than law enforcement, request that the reporter inform the school administrator and law enforcement, take information in the six domains and complete the guided decision-making tool through Safety Decision #1.  When the call is completed, contact law enforcement to inform them of the allegations.  Inform the school administrator of the allegations.

  c.  Complete the necessary information on each tab of the "Report" screen.

      *i.*  ***NOTE: A report must contain a case father, even if the father's address and/or identity are currently unknown; and the father must be designated as a male.***

      *ii.*  Note: **On calls from ChildLine**

          *1.*  The person who reported abuse or neglect to ChildLine is the Reporter

          *2.*  The ChildLine staff member who is forwarding the report to the DHS Hotline is **always** the Source.

          *3.*  **Both Source and Reporter must be added as new parties and designated.**

             *a.*  On the contact event screens, the reporter and the source must be listed as "Other" and are visible on the party list.

             *b.*  On the report screens, the reporter and the source are not visible on the party list.

      *iii.*  Police notification, if appropriate, is indicated in the Allegation tab, on the window for documenting the ChildLine notification/number.

  d.  Obtain information guided by the six domains of inquiry and document the information in the "Narrative" section of the Report Screen.

          *1.*  What is the extent of the maltreatment being reported

          *2.*  What are the circumstances surrounding the maltreatment

          *3.*  All children – their general functioning, and their functioning in response to maltreatment

          *4.*  Caregivers(all) – general adult functioning

          *5.*  Parenting: caregivers(all) – functioning as caregivers

          *6.*  Parenting: Discipline - caregivers(all) – discipline information

  e.  *Additional sources of information –* **Hotline social workers will ask the reporter if there are other people who may have relevant information and how to contact those sources; the social worker will follow up and attempt to obtain the additional information prior to completing and submitting the report for approval and document the information in the "Narrative" section of the Report screen.**

  f.  The FACTS2 clearance should be completed at both the Contact Event stage and the Report stage.

**Safety Decisions**
Safety Decisions will be documented in FACTS2.

  1.  **Safety Decision #1:** Does the information collected justify accepting the report for investigation or assessment based on Pennsylvania law and regulation?

      a.  Does the report meet the definition of a CPS report? Check "yes" or "no".

          -  Any recent act or failure to act by a perpetrator which causes non-accidental serious physical injury to a child under 18 years of age

          -  An act or failure to act by a perpetrator which causes non-accidental serious mental injury to or sexual abuse or sexual exploitation of a child under 18 years of age(Sexual abuse and mental injury allegations are

After the prior four Safety Decisions are made, the report is forwarded to the Hotline supervisor for review.

Supervisor's responsibilities

The Hotline supervisor will be available for consultation by the social worker throughout the process of information-taking, analysis and decision-making.

The Hotline supervisor will review each decision made by the Hotline social worker. Review of a decision must occur at the end of the process, but may occur at any point in the process. When new information is received on an existing report or case, the Hotline supervisor must review the information, decide whether the report is a supplemental, FYI or new report, and direct the social worker to proceed accordingly. In reviewing the decisions made by the social worker, the supervisor will look for the quality and quantity of information obtained by the social worker and whether the decision made on each safety decision is consistent with and supported by the information obtained.

- Supervisory review and authorization of any decision to accept a report for investigation/assessment or not is required immediately.
- Supervisory authorization confirms that the supervisor supports the decision made and that the decision was made based on sufficient information collection; directs the Hotline social worker to take additional action; or changes the decision and forwards the report for the appropriate action.

After reviewing and authorizing the report, the supervisor will make Safety Decision #5.

Safety Decision #5

After review, if the report has been accepted for investigation or assessment, the Hotline supervisor will assign the report to Intake, the Expedited Response unit, Multidisciplinary Team/Repeat Abuse units, Family Assessment-ARS, CAPTA or the active Family Service Region supervisor for investigation or assessment.
  o New CPS reports, and GPS reports that do not meet the criteria below, will be assigned to Intake for investigation or assessment.
  o Reports on active cases will be assigned to either the MDT/Repeat Abuse units, if a CPS report, or the active Family Service Region social work supervisor, if a GPS or General report.
  o If a report of any type is on a family already active in Intake, the report will be assigned to the active Intake social work supervisor.
  o If there is a new GPS report for which there are no active safety threats and no special circumstances, the report will be assigned to the Family Assessment Units (ARS) for a family assessment.
  o If the report alleges a substance-exposed newborn and there are no safety threats, the report will be assigned to the CAPTA unit for further assessment, including completion of a safety assessment on all children/members of the household, and completion of the newborn screening risk assessment tool.

Reassignment
If a report/investigation/assessment is improperly assigned, the Director of the responsibility area should make the reassignment, if the case or investigation/assessment will remain within his/her responsibility area. If the case or

**Covenant House Health Services**
251 E Bringhurst St   Philadelphia, PA  19144-1719
(215) 844-1020  Fax: (215) 844-2702

*November 29, 2013*
Page 1

**Patient Information For :** Calvin Reed

### Immunization Record for: Calvin Reed

| Vaccine | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| HepB Hepatitis B | 10-17-13 | 11-29-13 | | | | |
| DTP Diphtheria, Tetanus, Pertussis | 07/20/2013 | 10/17/2013 | 11/29/2013 | | | |
| HIB Haemophilus influenzae Type b | 7-20-13 | 10-17-13 | 11-29-13 | | | XXXXXXXXXX |
| IPV Inactivated Poliovirus | 07/20/2013 | 10/17/2013 | 11/29/2013 | | | |
| MMR Measles, Mumps, Rubella | | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Varicella Varivax | | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Pneumococcal | 7-20-13 | 10-17-13 | 11-29-13 | | | |
| Hep A Hepatitis A | | | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Tetanus Booster Date of Last: | Flu Shot Date of Last: | Pneumovax Date of Last: | Meningococcal Vaccine Given: | | | |

| Other Vaccines | | | | | | |
|---|---|---|---|---|---|---|
| HPV | Vaccine/ Date of Last: | Vaccine/ Date of Last: | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Rotavirus | Vaccine/ Date of Last: 7-20-13 | Vaccine/ Date of Last: 10-17-13 | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |
| Zostavax | Vaccine/ Date of Last: | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX | XXXXXXXXXX |

### Recommended Childhood and Adolescent Immunization Schedule
#### United States · 2006

| Vaccine | Age | Birth | 1 mos | 2 mos | 4 mos | 6 mos | 12 mos | 15 mos | 18 mos | 24 mos | 4–6 yrs | 11–12 yrs | 13–14 yrs | 15 yrs | 16–18 yrs |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hepatitis B₁ | | HepB | HepB | | HepB | | HepB | | | | HepB Series Catch-Up | | | | |



**St. Christopher's**
**Pediatric Associates**

3601 A Street
Philadelphia, PA 19134-1095
Tel: 215-427-5000
www.stchristophershospital.com

### SCPA Oncology

---

PATIENT:                    CAMBRIA REED
DATE OF BIRTH:              01/14/2009
DATE:                       01/24/2014 10:44 AM

---

Visit type: New patient
Exam Type:
Referred by: Mark Kobb Md
Reason for referral: Consultation

### Chief Complaint and HPI

Complaint 1:  5 yo female to est care for routine eye exam. No issues with eyes, but PCP referred her to us for NF1. Awaiting MRI prior auth. Fhx on fatehr's side and a younger brother has it (pt now adopted). Mom notes that fails off to the right at times and right eye appears "lazy"

### History

Historian: Meghan Berkenstock

### Past Ocular History

Patient notes no ocular history at this visit.

### Allergies

No known allergies.
Reviewed, no changes.

### Past Systemic

Unobtainable

| Systemic Disease | Year Dx |
| --- | --- |
| ADD/ADHD | |

### Family History

Unobtainable;

| Yes / No | Disease Detail | Family Member | Comments |
| --- | --- | --- | --- |
| | Alive and well | 2 Maternal aunt | |
| | Alive and well | 2 Paternal aunt | |
| | Alive and well | 4 Paternal uncle | |

CAMBRIA REED, Born: {date of birth}      Page # 1

# PROPOSED TREATMENT PLAN

Feb 25, 2014

## ELITE DENTAL LLC - Park West

1575 N. 52nd Street, Suite 705
Philadelphia, PA  19131
(215)879-1777  (  )-

 risten Reed
31 DREXEL ROAD
ladelphia, PA  19131

25196

| Date Plan | Appt | Provider | Service | | Tth | Surf | Fee | Ins. | Pat. |
|---|---|---|---|---|---|---|---|---|---|
| 02/25/14 | | LKM | D0150 | COE/INITIAL EXAM | | | $20.00 | $20.00 | $0.00 |
| | | | Standard Fee: $120.00 | Adjust: $100.00 | | | | | |
| 02/25/14 | | LKM | D1120 | CHILD PROPHY | | | $30.00 | $30.00 | $0.00 |
| | | | Standard Fee: $75.60 | Adjust: $45.60 | | | | | |
| 02/25/14 | | LKM | D1208 | TOPICAL AP. OF FLUORIDE (E; | | | $18.00 | $18.00 | $0.00 |
| | | | Standard Fee: $50.40 | Adjust: $32.40 | | | | | |
| | | | | | | Subtotal: | $68.00 | $68.00 | $0.00 |

*: Insurance coverage is only an estimation. Guarantor is responsible for all treatment not insurance.

| | |
|---|---|
| Total Proposed: | $68.00 |
| Total Completed: | $0.00 |
| Total Accepted: | $0.00 |
| Proposed Insurance: | $68.00 |

AND AUTHORIZE THE DENTIST OR QUALIFIED ASSIGNEE TO PERFORM THE WORK DESCRIBED ABOVE.

itor's Signature _____   Date  2/25/14

# FAMILY SERVICE PLAN OBJECTIVE

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 361 of 404

| CASE NAME: | Reed | CASE NO. | 620543 |
|---|---|---|---|

**OBJECTIVE SECTION 1 of 2:  PARENTS/LEGAL GUARDIANS**

(Children's Objectives are found on Objective Section 2 of 2)

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|---|
| ALL | DHS WILL PROVIDE CASE MANAGEMENT SERVICES TO INCLUDE ONGOING PERIODIC ASSESSMENT OF SAFETY, RISK, AND NEEDS AND APPROPRIATENESS OF SERVICES, AND WILL MAKE CHANGES TO THE FAMILY SERVICE PLAN AS NECESSARY. | CASE MANAGEMENT | Department of Human Services Children and Youth Division 215-683-6100 | 12/18/2014 |
| | DHS/The Villiage( formerly PCV) will provide casemanagement services to include ongoing periodic assessment of | Casemanagement services | Department of Human Services 215-683-6652/The Villiage 215- 730- 2255 | 12/18/2014 |
| | safety, risk, needs and appropriateness of services and will make changes to the family service plan as necessary | | | |
| | DHS/Provider Agency to meet the childen's daily needs including food/clothing | Monitoring | The Villiage 215-730-2255 | 12/18/2014 |
| | To correct/or stabilize physical health, vision, hearing or dental problems | | | |
| | 1.The Villiage will ensure Christian, Cambria and Calvin receive appropriate medical evaluuations and treatment for gentic condition | Medical Treatment | The Villiage/St. Christopher AHospital | 12/18/2014 |
| | 2. Ms. Howard/Mr. Reed will attend all appointments for children; they will comply with all recommended treatments | Well Child visits Gentic Testing Visits | The Villiage 215-730-2240/St. Christopher Hosp | 12/18/2014 |
| | To demonstrate a concerned, cooperative response to children and service provision | | | 12/18/2014 |
| | 1. Mr. Reed/Ms. Howerd will make themselvges available to meet with foster | Parental responsaibility | Cameron Reed/Winchella Howard | 12/18/2014 |
| | are provider socila workers to discuss concerns, progress and any problems associated with the children | Goal setting/completion | 2150626-1424&267-636-3914 | 12/18/2014 |
| | 2. Mr. Reed/Ms. Howard will call agency at the assigned time to confirm attendance at the visits. | Parental Responsibility | Mr. Reed/Ms. Howard | 12/18/2014 |
| | To Stabilize Mental Health problems | | | |
| | 1. Ms. Howard will participate in court order MH evaluation; to sign releases of info | Psychiatric/psychological evaluations | BHS-1801 Vine Street Philadelphia, PA&NHS | 12/18/2014 |
| | 2. Ms.Howard will comply with all treatment recommendations including therapy and RX Mgmt asprescribed. | Individual Counseling/or Grp Therapy | BHS-1801 Vine Street | 12/18/2014 |
| | To provide adequate and safe living conditions | To sign release/DHS/Provider | DHS/The Villa 215-683-6652 | 12/18/2014 |
| | 1.Ms. Howard/Mr. Reed will make sure that the following health, or safety hazards at the residence are corrected: exposed wiring, securely covered heating system/flusha toilet.  All utilities must remain operable at all times. | Parental Responsibility | Mr. Reed/Ms. Howard | 12/18/2014 |
| | | Parental Responsibilities | Mr. Reed and Ms. Howard | 12/18/2014 |
| | To address deficits re:  mastery of age appropriae developmental taks/skills | Evaluation EL Services | The Villiage 215-730-2240 | 12/18/2014 |

FAMILY SERVICE PLAN (85-457) (Page 4) Rev. 1-28-13

## FSP OBJECTIVES FOR PARENTS

1. To understand how and why child(ren) were injured.

2. To learn and use non-violent, non-physical discipline methods.

3. To provide the child(ren) with adequate supervision at all times.

4. To meet the child(ren)'s daily basic needs including food and clothing.

5. To learn and understand age appropriate behavior and expectations for child(ren).

6. To provide adequate and safe living conditions.

7. To protect the child from any further abuse.

8. Other _____

## FSP OBJECTIVES FOR PARENTS AND/OR CHILDREN

9. To achieve and maintain recovery from drug and/or alcohol problems.

10. To stabilize mental health problems.

11. To correct or stabilize physical health, vision, hearing or dental problems.

12. To understand sexual victimization and to resolve issues that occurred due to the abuse.

13. To eliminate family violence.

14. To understand and engage in responsible sexual behavior.

15. To improve the relationship between parent(s) and child(ren).

16. To address deficits around mastery of age appropriate developmental tasks and skills.

## FSP OBJECTIVES PARENTS AND CHILD(REN) OVER 16 YRS.

17. To obtain and complete job training and or seek and maintain employment.

18. Other _____

## FSP OBJECTIVES FOR CHILD(REN)

19. To perform satisfactorily in school.

20. To acquire social skills and age appropriate relationships.

21. Other _____

FAMILY SERVICE PLAN (85-457) (Page 5) Rev. 1-28-13

# FAMILY SERVICE PLAN OBJECTIVES

| CASE NAME: | | CASE NO.: |
|---|---|---|

**OBJECTIVE SECTION 2 of 2: CHILDREN**

(Parent/Legal Guardian Objectives are found on Objective Section 1 of 2)

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Provider Name & Telephone No. | Completion Date |
|---|---|---|---|---|
| | (Christian will be evaluated to determine his educational learning wstyle/needs | Education, Speech therapy, O.T&specialized se. | Elwynn Sers.-Dr. Huffman 215-472-5437 | 12/18/2014 |
| | Cameron will receive specialized services in Fall 2014 | &Special instructions Specialized Services | 2-5437/St.Christ.Hosp for Genet. Dr. Huffmane | 12/18/2014 |
| | | Child Links Services Assessment | Elwynn Services | 12/18/2014 |
| | Calvin will to be evaluated | To be evaluated at DuPont Hosptial 7/23/14 | Dr.Huff. 215-472-5437 DuPont Hosp. for Genetic | 12/18/2014 |
| | Cambria to receive specialized services,. | To be evaluated for specialized services | PCP@Covenant Hse/Dr.Mark Cobb | 12/18/2014 |
| | The children will acquire social skills and age appropriae relationships | Play groups, camp, sport and recreational acti | Recreational Activities. | 12/18/2014 |
| | Cameron will attend school as scheduled and complete all school acssignments | Education | Highland Park ElementarySchool | 12/18/2014 |
| | Cambria toattend Kindergarden in FALL 2014 As per court order, DHS to obtain child's birth certificate | Kindergrden Fall 2014 Birth Certificate | TBD BC, 8/1/2014 | 12/18/2014 |
| | | Medical Treatment | | 12/18/2014 |
| | Cameron receives medical care | Medical treatment | Dr. Huffman 53rd and Cedar Ave Phila., PA 215-472-5437 | 12/18/2014 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FAMILY SERVICE PLAN (85-457) (Page 8) Rev. 1-28-13

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 363 of 404

## FSP OBJECTIVES FOR PARENTS

1. To understand how and why child(ren) were injured.

2. To learn and use non-violent, non-physical discipline methods.

3. To provide the child(ren) with adequate supervision at all times.

4. To meet the child(ren)'s daily basic needs including food and clothing.

5. To learn and understand age appropriate behavior and expectations for child(ren).

6. To provide adequate and safe living conditions.

7. To protect the child from any further abuse.

8. Other _____

## FSP OBJECTIVES FOR PARENTS AND/OR CHILDREN

9. To achieve and maintain recovery from drug and/or alcohol problems.

10. To stabilize mental health problems.

11. To correct or stabilize physical health, vision, hearing or dental problems.

12. To understand sexual victimization and to resolve issues that occurred due to the abuse.

13. To eliminate family violence.

14. To understand and engage in responsible sexual behavior.

15. To improve the relationship between parent(s) and child(ren).

16. To address deficits around mastery of age appropriate developmental tasks and skills.

## FSP OBJECTIVES PARENTS AND CHILD(REN) OVER 16 YRS.

17. To obtain and complete job training and or seek and maintain employment.

18. Other

## FSP OBJECTIVES FOR CHILD(REN)

19. To perform satisfactorily in school.

20. To acquire social skills and age appropriate relationships.

21. Other _____

FAMILY SERVICE PLAN (85-457) (Page 3) Rev. 1-28-13

# FAMILY SERVICE PLAN OBJECTIVES

| CASE NAME: | CASE NO.: | DATE OF REVIEW: 7/29/2014 |
|---|---|---|

For review of Children's Objectives only, Identify if Services were provided, Actions Occurred, and Objectives Achieved.

| Objective | Actions to Achieve Objectives (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occurred | Objective Achieved |
|---|---|---|---|---|---|
| | (Christian will be evaluated to determine his educational learning wstyle/needs | Education, Speech therapy, O.T&specialized se. | YES | YES | NO |
| | Cameron will receive specialized services in Fall 2014 | &Special instructions Specialized Services | YES | YES | NO |
| | | Child Links Services Assessment | YES | YES | NO |
| | Calvin will to be evaluated | To be evaluated at DuPont Hosptial 7/23/14 | YES | YES | NO |
| | Cambria to receive specialized services,. | To be evaluated for specialized services | YES | YES | YES |
| | The children will acquire social skills and age appropriae relationships | Play groups, camp, sport and recreational acti | YES | YES | NO |
| | Cameron will attend school as scheduled and complete all school acssignments | Education | YES | YES | NO |
| | Cambria toattend Kindergarden in FALL 2014 As per court order, DHS to obtain child's birth certificate | Kindergrden Fall 2014 Birth Certificate | YES | NO | NO |
| | | Medical Treatment | YES | YES | NO |
| | Cameron receives medical care | Medical treatment | YES | YES | NO |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 365 of 404

Commonwealth of Pennsylvania

In the Interest Of:

Cameron Reed, A Minor
Date of Birth: 07/16/2007

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:      CP-51-DP-0001977-2012
FID:            51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,   and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/19/14.

## ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

## FINDINGS/ORDERS

THE COURT FURTHER ORDERS:   Motion for reconsideration granted. Remain as committed. Child is authorized to travel with foster parent to South Carolina from 8/16/14 through 8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation.  DHS to re-refer father to ARC. Mother is referred to BHS for consultation/evaluation. Mother is sign releases of information.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14. The court denies request for foster parent being appointed as educational surrogate. Any future delays, Child

CP-51-DP-0001977-2012

In The Interest Of: Cameron Reed, A Minor

Advocate may petition the court to appoint an educational surrogate. Child has a current IEP.

## NEXT SCHEDULED COURT DATE(S)

Next Scheduled Court Date: - Permanency Review Hearing - 09/02/2014 - 10:30AM - 1801 Vine Street - Courtroom G - Tereshko, Allan L.

## SERVICE

Copies ToACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor .

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT

_____
Judge Walter Olszewski

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 368 of 404

# CHILD PERMANENCY PLAN REVIEW

**JUVENILE NUMBER:**

**CHILD'S NAME:** CAMERON REED

**CASE NUMBER/SUFFIX:** 6 20543

| DATE OF REVIEW NC 7/29/14 NC 06/03/2014 NC | RESULTS: | ☒ REVISIONS NEEDED TO FSP/CPP | SIGNATURE OF SOCIAL WORKER | *[signature]* |
| | | ☐ SERVICES NO LONGER NEEDED | SIGNATURE OF SUPERVISOR | *[signature]* |

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | SERVICES PROVIDED | ACTIONS OCCURRED | OBJECTIVES ACHIEVED |
|---|---|---|---|---|---|
| | Please see Objectives _____ in the Family Service Plan. | | | | |
| **PROVIDER'S OBJECTIVE/ACTIONS** | | | | | |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Provider Monitoring | YES | YES | NO |
| 22 | Provider will take measures to assure Child Safety | Supervision Monitoring | YES | YES | NO |
| 22 | Provider will schedule & ensure monthly sibling visits | Sibling Visits | YES | NO | NO |
| **PARENT'S LEGAL GUARDIAN'S OBJECTIVES/ACTIONS** | | | | | |
| 23 | Parents will maintain all contact & visits c̄ child | Visitation | YES | YES | NO |
| 24 | Parents will have Parenting Capacity EVALUATIONS. | Evaluation | YES | NO | NO |
| 24 | Parents will attend ARC as Scheduled | ARC | YES | YES | NO |
| 24 | Ms. Howard will participate in MH Therapy | Therapy/Counseling | YES | YES | NO |
| **CHILD'S OBJECTIVES/ACTIONS** | | | | | |
| 25 | Cameron will attend school daily and complete all assignments. | Education | YES | YES | NO |
| 25 | Cameron will receive tutoring as needed/recommended. | Education | YES | YES | NO |
| | | | | | |
| | | | | | |
| | | | | | |

Child Permanency Plan – Rev. 4-12-11

Page 8

# CHILD PERMANENCY PLAN REVIEW (Continued)

Review Questions

1. Recommendation for this hearing and next six months:  This child should be:

☒ Returned to parent, guardian, custodian

☐ Continued in foster care for a specified period

☐ Placed for adoption

☐ Placed with permanent legal custodian

☐ Placed with a fit and willing relative

☐ Placed in another planned permanent living arrangement

2. Determine the continuing necessity for and appropriateness of the placement

Placement remains necessary. The placement setting is appropriate at this time. All basic needs are being met.

3. Determine extent of compliance with the service plan

Ms. Howard has been significantly compliant with the objectives and goals of the FSP. She has completed a number of the required wkshops at ARC. She visits with the children consistently. Ms. Howard has participated in the Parenting Capacity evaluation and remains cooperative with DHS and provider agency.

Mr. Reed has been minimually compliant. He has completed the Focus on Fathers grp at ARC. He refuses to attend/participate in other required wkshops. Mr. Reed has yet to complete the Parenting Capacity Evaluation which was ordered over 4 months ago. He visits with the children consistently.

4. Determine extent of progress made toward alleviating circumstances that necessitated the original placement

Progres is difficult to determine as DHS has no doctmentation of the Parents parenting capacity. Ms. Howard; however, has been very coopertative and consitently completed assigned tasks. Visits are still supervised at the agency. Assessments will be made on-going.

| The goal of | REUNIFICATION | will be achieved by | 12/19/2014 |
| --- | --- | --- | --- |
| | | | Date |

| Based on the results recorded on the Permanency / Dispositional Review Order attached, are revisions to the Child Permanency Plan required? | ☒ YES | ☐ NO |
| --- | --- | --- |

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| ☐ INITIAL   ☒ REVISION | CHILDREN AND YOUTH DIVISION |

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | B. BIRTHDATE |
|---|---|
| Cameron Reed | 7/16/2007 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-A | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| | A. AGENCY | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | The Villiage | Arcella Walker |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 7005 Hazel Avenue; Upper Darby,PA |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to):*

☒ ALLEGED ABUSE OR NEGLECT                     ☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED     ☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE     ☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER     ☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR     ☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect.  Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home.  Ms. Howard often appeardd diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER _____ |
| ☐ OTHER _____ | HOMEMAKER | ☐ | ☐ | |
| | OTHER _____ | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION   / /          ☐ VISITATION PLAN   / /

☐ SERVICE   / /               ☐ GOAL   / /

☐ OTHER REASON *(Specify: Include date)*

## 6. PLACEMENT GOAL *(Check Only One)*

**LEAVE DHS CUSTODY**

☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN
☐ ADOPTION
☐ PLACE WITH PERMANENT LEGAL CUSTODIAN

**DHS RETAINS CUSTODY**

☐ PLACEMENT WITH A FIT AND WILLING RELATIVE
☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT  683-0949 OR 683-6100 (V, TTY)

## 7. PLACEMENT SELECTION

### A. IDENTIFY THE TYPE OF PLACEMENT *(Check One)*

☒ FOSTER / KINSHIP          ☐ GROUP HOME          ☐ INSTITUTION          ☐ INDEPENDENT LIVING

☐ OTHER *(SPECIFY)*

---

B. ANTICIPATED LENGTH OF PLACEMENT  ___6 months___  MONTHS (NOTE: NOT AUTOMATICALLY 6 MONTHS)

C. PLEASE DESCRIBE BELOW IN C-1 HOW THIS PLACEMENT AND PHYSICAL DISTANCE OF THE PLACEMENT FROM THE CHILD'S OWN HOME IS:
* THE LEAST RESTRICTIVE, MOST FAMILY-LIKE SETTING FOR THE CHILD
* IS CONSISTENT WITH THE CHILD'S INTEREST AND SPECIAL NEEDS
* IS APPROPRIATE FOR THE CHILD'S EDUCATIONAL STABILITY AND GENERAL PERFORMANCE
* ASSURES PROPER CARE OF THE CHILD
* PROTECTS AND TENDS TO THE CHILD'S PHYSICAL AND MENTAL WELFARE
* ASSURES FAMILY REUNIFICATION, AND/OR
* CONTRIBUTES TO GOAL ACHIEVEMENT.

C-1
Cameron is in the least restrictive environment and home like setting. The Walker home is licensed by DPW and supervised by PCV. The foster parent is able to meet Cameron's need at this time.

---

## 8. DISTANCE FROM PARENTS HOME AND VISITATION PLAN

A. DISTANCE BETWEEN PARENT(S) HOME AND VISITING SITE: APPROXIMATELY   **8**   ☐ MILES OR   ☐ MINUTES FROM PARENTS' HOME BY:

☒ PUBLIC TRANSPORTATION          ☐ PRIVATE TRANSPORTATION          ☐ OTHER  _____

| B-1   PARENTAL VISITATION PLAN: *(Check One)* | B-2   VISITATION PLAN FOR CHILD AND SIBLINGS WHO ARE IN PLACEMENT |
|---|---|
| ☐ NOT REQUIRED, GOAL IS ADOPTION. | ☒ OPPORTUNITY FOR SIBLING VISITS WITH SIBLINGS IN PLACEMENT IS AVAILABLE AT LEAST MONTHLY FACE TO FACE |
| ☐ PARENT FREELY REFUSED VISITATION IN WRITING.  ATTACH DOCUMENT TO THIS FORM. | DESCRIPTION OF PLAN: (Include location, frequency and transportation plan) Provider workers will schedule sibling visits at least monthly. Provider wkrs will trainsport Children as necessary to ensure ongoing contact with one another. |
| ☐ OPPORTUNITY FOR PARENTAL VISITS IS LIMITED OR PROHIBITED BY COURT ORDER. *(VERIFICATION MUST BE IN RECORD)* | |

DOCUMENT NUMBER: _____          DATE ISSUED:

JUDGE'S NAME: _____

☒ OPPORTUNITY FOR PARENTAL VISITS IS AVAILABLE AT LEAST ONCE EVERY TWO WEEKS

DESCRIPTION OF PLAN FOR VISITATION BETWEEN CHILD AND PARENTS *(SPECIFY ALL OF THE FOLLOWING IN SPACE BELOW)*:

1. PARTICIPANTS:   REQUIRED: CHILD AND PARENTS, CHILD AND SIBLINGS WHO ARE IN PLACEMENT.

2. LOCATION:   PLACE MUST BE CONVENIENT TO ALL PARTIES AND PERMIT NATURAL INTERACTION.

3. FREQUENCY:   TIME MUST BE CONVENIENT TO ALL PARTIES.  INCLUDE PLAN FOR VISITING ON SPECIAL OCCASIONS, E.G. BIRTHDAY, HOLIDAYS, VACATIONS.  INCLUDE SCHEDULE FOR REGULAR TELEPHONE CALLS.

VISITATION PLAN FOR CHILD AND PARENTS (include transportation arrangements):
Parents confirm visit with agency. Visits are supervised at the agency at the agency on a weekly basiss.

---

Child Permanency Plan -- Rev. 4-12-11                                        Page 2

| CHILD PERMANENCY PLAN *(Continued)* | CHILD'S NAME : *CAMERON REED* | DHS #: *620543 - A* |
|---|---|---|

| PROVIDER SOCIAL WORKER | DHS SOCIAL WORKER |
|---|---|
| Candace Campbell | |

☐ INITIAL PLACEMENT   ☐ CHANGE IN PLACEMENT   ☒ UPDATE   DATE 6/3/2014

**\* \* HEALTH INFORMATION \* \***

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| Clinic | | | |
| Physician | *Huffman DeVaughn Pamela* | *5249 Cedar Ave, suite C* | *215 472 5437* |
| Dentist | | *Phila., PA 19143* | |
| Psych | | | |
| Other | | | |
| Other | | | |
| Other | | | |

**MEDICAL HEALTH PROBLEM** *(Diagnosis must be provided by practitioner)*
NOne at present

**MEDICATIONS:**   None at Present

**\*\*RECORD OF IMMUNIZATIONS\*\***

| IMMUNIZATIONS | DATES OF IMMUNIZATION/BOOSTER | | | | COMMENTS |
|---|---|---|---|---|---|
| DPT *DTap, DPT, Td* | *9.20.07; 12.06.07; 10.20.08; 10.27.09; 2.15.12* | | | | |
| OPV *Polio* | *9.20.07; 12.06.07; 10.30.08; 2.15.12* | | | | |
| MMR *Hep b* | *9.20.07, 12.06.07; 10.30.08* | | | | |
| MEASLES *MMR* | *10.30.08; 02.15.12* | | | | |
| TETANUS *Varicella* | *10.30.08; 2.15.12* | | | | |
| FLU (HIB) | | | | | |
| OTHER (Specify) | | | | | |
| OTHER (Specify) | | | | | |

**\*\*EDUCATIONAL INFORMATION\*\***

☐ Child under 5 (not school age)   ☒ School age child   Grade 1   ☐ Child not enrolled   Reason for no enrollment _____

INITIAL PLACEMENT ONLY:   Name: John B. Kelly   Address: *5116 Pulaski Ave*
Name and address of child' school prior   *Phila., PA. 19144*
to placement

Name of school after placement(if child transferred schools):   Highland Park Elementary

Describe efforts to keep child in school of origin and reason for transferring child to another school (where applicable):   Although maintaining the neighborhood school was important, it was not feasible given that Cameron's foster placement is in Upper Darby, PA.

List schools that child has attended since enrolling in school: John B. Kelly and Highland Park Elementary Schools.

Distance between placement site and school where child will be enrolled after placement (original school or new school if child will be transferred):    half mile

Describe transportation arrangements (if applicable): Foster parent drops Cameron off or he walks with older children.

Placement location is:    ☒ Best suited to child's needs    ☐ Only resource available

School performance:    ☐ At Grade level (C or higher average)    ☐ Above grade level (A average)    ☒ Below grade level (D or F average)

Attendance: (current number of unexcused absences):  0

Discipline: (current number of disciplinary incidents, such as suspensions or other):  0

SPECIAL EDUCATION:    ☐ YES    ☒ NO
Cameron is; however, on the list/schedule to be tested.

If child has changed or will change schools:    Date IEP was requested from school:    Copy of IEP attached:  ☐

Name and contact information of surrogate parent (if applicable):  Arcella Walker - 7005 Hazel Ave; Upper Darby, PA

**ADDITIONAL HEALTH AND EDUCATIONAL INFORMATION MAY BE FOUND IN THE CHILD'S SECTION OF THE CASE RECORD**

Child Permanency Plan – Rev. 4-12-11

| CHILD PERMANENCY PLAN   (continued) | | CASE NAME REED | DHS # 620543 |
|---|---|---|---|
| **PROVIDER SOCIAL WORKER** <br> Candace Campbell | | **DHS SOCIAL WORKER** | |

## **PREPARATION FOR INDEPENDENCE**

☐ Youth will be referred to Adolescent Initiative Program     ☐ YES    ___/___/___     ☒ NO     Much too young

                                                     (Date)                                              (Reason)

☐ Youth was referred     ___/___/___    to Adolescent Initiative Program and is awaiting decision as to acceptance.

☐ Youth was accepted by the Adolescent Initiative Program beginning: ___/___/___

☐ Youth was rejected by the Adolescent Initiative Program: ___/___/___

☐ Youth completed the Adolescent Initiative Program: ___/___/___

☐ Youth will receive the following services from the indicated providers.

| SERVICE(S) | PROVIDER(S) | SERVICE IS INAPPROPRIATE BECAUSE: |
|---|---|---|
| ☐ Housing (e.g. leases, maintenance, ,tenant rights | | |
| ☐ Employment (e.g., counseling, referral, placement | | |
| ☐ Vocational Training | | |
| ☐ Education (e.g., counseling, referral, financial aid applications) | | |
| ☐ Life Skills (e.g., budgeting, communication, food preparation) | | |
| ☐ Other | | |

Child Permanency Plan – Rev. 4-12-11

JUVENILE NUMBER:

CHILD'S NAME:

*CAMERON REED*

CASE NUMBER/SUFFIX:

*620543 -A*

Case 2:20-cv-01102-ER  Document 1  Filed 02/20/20  Page 375 of 404

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | PROVIDER NAME & PHONE NO. | COMPLETION DATE |
|---|---|---|---|---|
|  | Please see Objectives _____ in the Family Service Plan. |  |  |  |
| **PROVIDER'S OBJECTIVE/ACTIONS** |  |  |  |  |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Supervision/Monitoring and provision of services. | PCV - 215-730-2267 | 12/18/2014 |
| 22 | Provider will schedule and ensure sibling visits occur on an at least monthly basis. | SIBLING VISITS - PROVIDER TO TRANSPORT AS NECESSARY | PCV - 215-730-2240 | 12/18/2014 |
| 22 | Provider will ensure all measures are taken to address and assure child safety. | Supervision/Monitoring | PCV - 215-730-2267 | 12/18/2014 |
| **PARENT'S LEGAL GUARDIAN'S OBJECTIVES/ACTIONS** |  |  |  |  |
| 23 | Parents will maintain all contact and visits with child | Visitation | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Mr. Reed will comply with all court ordered evaluations, urine submission, and MH/DA assessments. | Evaluations; MH/DA assessments | PCV - 215-730-2267/DHS -215-683-6100 | 12/18/2014 |
| 24 | Ms Howard will continue to actively participate in therapy/counseling as recommended | Therapy/counseling Monitoring | PCV - 215-730-2267/DHS -215-683-6100 | 12/18/2014 |
| 24 | Parents will participate in and sign all necessary consents for Cameron to receive appropriate services i.e. education/medical. | Parental cooperation/explanation of needed services. Provider monitoring. | PCV - 215-730-2267 | 12/18/2014 |
| **CHILD'S OBJECTIVES/ACTIONS** |  |  |  |  |
| 25 | Cameron will attend school on a daily basis and complete all assignments | Education Monitoring | Highland Park Elementary School1 | 12/18/2014 |
| 34 | Cameron will participate in remedial/educational testing to achieve personsl academic best. | Educational testing Tutoring as recmmended/necessary | Highland Park Elementary School1 | 12/18/2014 |
| 33 | Cameron will develop age appropriate social skills. | Recreation, sports, suppor grp; or therapy | PCV - 215-730-2267 | 12/18/2014 |
|  |  |  |  |  |
|  |  |  |  |  |

# CHILD PERMANENCY PLAN OBJECTIVES

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 376 of 404

CPP OBJECTIVE FOR PROVIDER

22    To provide child with a safe environment that will promote healthy growth and development.

## CPP OBJECTIVES FOR PARENT AND CHILD

23    To maintain relationship between parent(s) and child through participation in placement activities and through regular visitation.

24    Other _____

## CPP OBJECTIVES FOR CHILD

25    To perform satisfactorily in school.

26    To resolve personal problems/issues and improve adjustment.

27    To understand responsible sexual behavior.

28    To provide youth with the opportunity to obtain skills for independent living.

29    To achieve a permanent home for the child through finalized adoption.

30    To receive regular or rehabilitative health care services.

31    To receive needed mental health treatment.

32    To avoid-inpatient or institutional care through provision of medially oriented personal care services.

33    To acquire social skills and age appropriate relationships.

34    To address deficits around mastery of age appropriate developmental tasks and skills.

35    Other _____

Commonwealth of Pennsylvania

In the Interest Of:

Cambria Reed, A Minor
Date of Birth: 01/14/2009

IN THE FAMILY COURT OF PHILADELPHIA COUNTY,
PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-DP-0001978-2012
FID:          51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/16/14.

## ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in treatment  Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

## FINDINGS/ORDERS

THE COURT FURTHER ORDERS:   Motion for reconsideration granted. Remain as committed.  Child is authorized to  travel with foster parent to South Carolina from 8/16/14 through  8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation.  DHS to re-refer father to ARC.  Mother is  referred to BHS for consultation/evaluation. Mother is sign releases of information. DHS to obtain child's birth certificate.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14. The court denies request for foster parent being appointed as educational surrogate. Any future delays, Child

CPCMS 3801                                       1                            Printed: 06/20/2014  1:17:58PM

CP-51-DP-0001978-2012

In The Interest Of:  Cambria Reed, A Minor

Advocate may petition the court to appoint an educational surrogate. Child receives sepcial instruction through Elwyn.

NEXT SCHEDULED COURT DATE(S)

Next Scheduled Court Date: - Permanency Review Hearing - 09/02/2014 - 10:30AM - 1801 Vine Street - Courtroom G - Tereshko, Allan L.

SERVICE

Copies ToACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor .

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT:

_____
Judge Walter Olszewski

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 379 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED | | DATE OF REVIEW: | 06/03/14 |
|---|---|---|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| To provide child with a safe environment that will promote healthy growth and development. | | Yes | Yes | Yes |
| 1. Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Foster care | No | Yes | |
| 2. Provider will schedule and transport (Cambria and all siblings) as needed/required for bi-monthly sibling visitation and continuation of sibling bonding. | Sibling visitation | Yes | No | |
| ****************************************************************** | END OF PROVIDER'S OBJECTIVES | ************************************** | | |
| To correct or stabilize physical health, vision, hearing or dental problems. | | Yes | Yes | No |
| 1. Cambria will receive appropriate medical evaluation to address general well-being and genetic condition. | Medical Treatment. | Yes | Yes | |
| 2. Mr. Reed/Ms. Howard, and Cambria will comply with all recomended treatments. | Medical Treatment. | Yes | Yes | |

85-457 (2) (REV. 07/04)                                                                                          PAGE   1

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 380 of 404

| CYD CASE NUMBER: 620543 B | FAMILY SURNAME: REED | | | DATE OF REVIEW: 06/03/14 |

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| 3. Ms. Howard/Mr. Reed will sign authorization form will allow CYD to | Medical Treatment. | Yes | Yes | |
| obtain medical records and reports. | | | | |
| To provide adequate and safe living conditions | | Yes | Yes | No |
| 1. Ms. Howard and/or Mr. Reed will occupy appropriate/stable housing | Housing Service | Yes | No | |
| for family with suitable space, heat, and all other operable | | | | |
| utilities | | | | |
| To maintain relationship between parent(s) and child through | | Yes | Yes | No |
| participation in placement activities and through regular visitation. | | | | |
| 1. Mr. Reed/Ms. Howard will keep all visits and maintain regular | Visitation | Yes | No | |
| contact with child. | | | | |
| 2. Mr. Reed/Ms. Howard will meet regularly with agency social worker | Foster Care , Purchase | Yes | No | |
| and follow through with ISP. | Placement | | | |
| To participate in any and all evaluations as ordered by the court. | | Yes | No | No |
| 1. Ms. Howard and Mr. Reed will participate in a parenting capacity to | Parenting Capacity | Yes | No | |
| determine parental capability. | Evaluation | | | |
| 2. Ms. Howard will participate in an CEU evaluation and assessment for | Evaluation | Yes | Yes | |

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 381 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED | DATE OF REVIEW: | 06/03/14 /29/14 NC |
|---|---|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| Dual Diagnosis. | | | | |
| To stabilize mental health problems | | Yes | Yes | No |
| 1 . Winchella Howard/Cameron Reed will participate in mental health evaluation. | Psychiatric/psychological evaluation | Yes | Yes | |
| 2 . Winchella Howard/Mr. Reed will comply with all treatment recommendations including therapy and or medication as prescribed. | Psychiatric/psychological evaluation | Yes | No | |
| 3 . Ms. Howard and Mr. Reedwill sign authorization for to allow CYD to obtain copies of evaluations and progress reports. | Psychiatric/psychological evaluation, Psychiatric or other recommended therapy including medication. | Yes | Yes | |
| ************************************************************************ | END OF PARENTS OBJECTIVES | ********************************** ***** | ***** | ***** |
| To address deficits around mastery of age appropriate development tasks and skills. | | Yes | Yes | No |
| 1 . Ms. Howard/Mr. Reed will participate in evaluation and recommended | Education or Therapeutic | Yes | No | |

# PERMANENCY PLAN OBJECTIVES

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| To acquire social skills and age appropriate relationships. | | | 12/18/14 |
| 1 . Cambria will participate in community based or sponsored peer groups, recreational, club or organizational activities. | Support , Recreation, Play Grp. | PCV - 215-730-2240 | 12/18/14 |
| ********************************************************************* | END OF CHILD. OBJECTIVES | *********************************** ******** | |

85-457 (2) (REV. 07/04)

# PERMANENCY PLAN REVIEW

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 383 of 404

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED | DATE OF REVIEW: | 7/29/14 ~~06/03/14~~ NC |
|---|---|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| treatment for child. | Services | | | |
| 2 . Cambria will participate in remedial or specialized services to overcome developmental delays | Education or Therapeutic Services | Yes | Yes | |
| To acquire social skills and age appropriate relationships. | | Yes | Yes | No |
| 1 . Cambria will participate in community based or sponsored peer groups, recreational, club or organizational activities. | Support , Recreation, Play Grp. | Yes | No | |
| | | | | |
| ********************************************************************** | END OF CHILD. OBJECTIVES | ********************************** | ***** | ***** |

85-457 (2) (REV. 07/04)

PAGE    4

REVIEW QUESTIONS

1. RECOMMENDATIONS FOR THIS HEARING AND NEXT SIX MONTH: THIS CHILD SHOULD BE:

| | |
|---|---|
| **X** | RETURNED TO PARENTS, GUARDIAN, CUSTODIAN |
| | CONTINUED IN FOSTER CARE FOR A SPECIFIED PERIOD |
| | PLACED FOR ADOPTION |
| | PLACE WITH PERMANENT LEGAL CUSTODIAN |
| | PLACED IN ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT |
| | PLACED WITH A FIT AND WILLING RELATIVE |

2. DETERMINE THE CONTINUING NECESSITY FOR APPROPRIATENESS OF PLACEMENT

Cambria s placement remains necessary. Parents still need to address a number of things; Placement is

appropriate and the least restrictive environment.

3. DETERMINE EXTENT OF COMPLIANCE WITH THE SERVICE PLAN

Needs are being met. Cambria continues to need follow up with genetic condition. Educational

abilities/deficiets need to be continually addressed/followed up upon.

4. DETERMINE EXTENT OF PROGRESS MADE TOWARD ALLEVIATING CIRCUMSTANCES THAT NECESSITATED THE ORIGINAL PLACEMENT

Parents are consistent with visitation. Parents need to actively participate in all medical visits to remain

educated and abreast of medical needs, tests, procedures, tx, etc.

| THE GOAL OF | Reunification | | WILL BE ACHIEVED BY | 18.December14 |
|---|---|---|---|---|

| BASED ON THE RESULTS RECORDED ON THE DISPOSITIONAL/PERMANENCY REVIEW ORDER ATTACHED, ARE REVISIONS TO THE CHILD PERMANENCY PLAN REQUIRED? | **X** YES | NO |
|---|---|---|

85-457 (REV. 07/04)

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 384 of 404

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| | CHILDREN AND YOUTH DIVISION |

☐ INITIAL   ☒ REVISION

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | B. BIRTHDATE |
|---|---|
| Cambria Reed | 1/14/2009 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-B | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| A. AGENCY | | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | ☐ FORMTEXT The Villiage | Ronya Wilson |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 2345 W. Harold Street Phila., PA 19132 |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to):*

☒ ALLEGED ABUSE OR NEGLECT        ☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED        ☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE        ☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER        ☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR        ☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect. Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home. Ms. Howard often appearded diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER _____ |
| ☐ OTHER _____ | HOMEMAKER | ☐ | ☐ | |
| | OTHER _____ | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION   / /        ☐ VISITATION PLAN   / /

☐ SERVICE   / /        ☐ GOAL   / /

☐ OTHER REASON *(Specify: Include date)*

## 6. PLACEMENT GOAL *(Check Only One)*

**LEAVE DHS CUSTODY**

☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN
☐ ADOPTION
☐ PLACE WITH PERMANENT LEGAL CUSTODIAN

**DHS RETAINS CUSTODY**

☐ PLACEMENT WITH A FIT AND WILLING RELATIVE
☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT 683-0949 OR 683-6100 (V, TTY)

**7. PLACEMENT SELECTION**

**620543 ( B )**

A. IDENTIFY THE TYPE OF PLACEMENT (Check One)

[X] FOSTER / KINSHIP HOME          [ ] GROUP HOME          [ ] INSTITUTION          [ ] IND. LIVING

[ ] OTHER (SPECIFY) _____

B. ANTICIPATED LENGTH OF PLACEMENT          **6**          MONTHS (NOTE: NOT AUTOMATICALLY 6 MONTH)

C. DESCRIBE HOW THIS PLACEMENT AND PHYSICAL DISTANCE OF PLACEMENT FROM THE CHILD'S OWN HOME IS THE LEAST RESTRICTIVE, MOST FAMILY-LIKE SETTING FOR THE CHILD, CONSISTENT WITH CHILD'S BEST INTEREST AND SPECIAL NEEDS; ASSURES PROPER CARE OF CHILD; SERVES THE INTEREST OF THE CHILD; PROTECTS AND TENDS TO THE CHILD'S PHYSICAL AND MENTAL WELFARE; WILL ASSURE FAMILY REUNIFICATION; AND/OR CONTRIBUTE TO GOAL ACHIEVEMENT.

Cambria is in a TX FH supervised by PCV and licensed by DPW. SHe is in the least restrictive and home like

setting. The home is appropriate and meets her basic needs.

**8. DISTANCE FROM PARENTS HOME AND VISITATION PLAN**

A. DISTANCE BETWEEN PARENT(S) HOME VISITING SITE: APPROXIMATELY          **10**          [X] MILES OR          [ ] MINUTES FROM PARENTS HOME BY:

[X] PUBLIC TRANSPORTATION          [ ] PRIVATE TRANSPORTATION          [ ] OTHER _____

B. VISITATION PLAN: (Check One)

[ ] NOT REQUIRED, GOAL IS ADOPTION OR INDEPENDENT LIVING

[ ] PARENT FREELY REFUSED VISITATION IN WRITING  (ATTACH DOCUMENT TO THIS FORM)

[ ] OPPORTUNITY FOR PARENTAL VISITS IS LIMITED OR PROHIBITED BY COURT ORDER  (VERIFICATION MUST BE IN RECORD)

DOCUMENT _____          DATE _____          JUDGE'S NAME _____

[X] OPPORTUNITIES FOR VISITS AVAILABLE AT LEAST ONCE EVERY TWO WEEKS

DESCRIPTION OF PLAN FOR VISITATION BETWEEN CHILD AND PARENTS (SPECIFY ALL OF THE FOLLOWING IN THE SPACE BELLOW):

1. PARTICIPANTS:    REQUIRE CHILD, PARENTS AND SIBLINGS

2. LOCATION:    PLACE MUST BE CONVENIENT TO ALL PARTIES AND PERMIT NATURAL INTERACTION

3. FROQUENCY:    TIME MUST BE CONVENIENT TO ALL PARTIES (INCLUDE PLAN FOR VISITING ON SPECIAL OCCASIONS, E.G. BIRTHDAY)

4. VISITATION PLAN  (INCLUDE TRANSPORTATION ARRANGEMENT)

A visitation schedule will be compiled and sent to the parents. Visits will be scheduled bi-monthly and

supervised at the agency.

85-467 REV. (07/04)

| CHILD'S PERMANENCY PLAN (CONTINUED) | CHILD'S NAME **CAMBRIA REED** | DHS # **620543 ( B )** |
|---|---|---|

| PROVIDER SOCIAL WORKER (Cami Turner) *Aanaya Lewis* | DHS SOCIAL WORKER **NAOMI CARROLL** |
|---|---|

| **X** INITIAL PLACEMENT | CHANGE IN PLACEMENT | | UPDATE | DATE **11/04/13** |
|---|---|---|---|---|

### *** HEALTH INFORMATION ***

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| | Dr. mark Kobb | Covenant House 251 E. Bringhurst Street 19144 | 215.844.102● |

MEDICAL HEALTH PROBLEM (Diagnosis must be provided by practioner)

MEDICATONS: No ne At Present

### *** RECORD OF IMMUNIZATIONS ***

| IMMUNIZATIONS | DATES OF IMMUNIZATION / BOOSTER | COMMENTS |
|---|---|---|
| DTAP Hib-IPV DTAP Polio-IPV PCV-13 | 03.31.2009, 5.12.09; 7.14.09 09.03.2010 DTaP(aF)-3.06.12; DT(pd); 5.03.13 05.0313 – PCV-7; 3.31.09; 5.12.09; 7.14.09 09.03.2010 | |

### *** EDUCATIONAL INFORMATION ***

| **X** CHILD NOT SCHOOL AGE | **X** CHILD NOT ENROLLED |
|---|---|

| INITIAL PLACEMENT ONLY; Name and addres of child's school at time of placement | |
|---|---|

| DISTANCE BETWEEN PLACEMENT SITE AND SCHOOL AT TIME OF PLACEMENT: | mi **6** |
|---|---|

| PLACEMENT LOCATION IS: | **X** BEST SUITED TO CHILD'S | ONLY RESOURCE AVAILABLE |
|---|---|---|

| NAME AND ADDRESS OF CHILD'S CURRENT SCHOOL | |
|---|---|

| SCHOOL GRADE LEVEL **O** | PERFORMANCE | AT GRADE LEVEL | ABOVE GRADE LEVEL | BELOW GRADE LEVEL |
|---|---|---|---|---|

SPECIAL PROGRAM: *N. A*

85-467 REV. ( 07/04)    ADDITIONAL HEALTH AND EDUCATIONAL INFORMATION MAY BE FOUND IN THE CHILD'S SECTION OF THE CASE RECORD

# PERMANENCY PLAN OBJECTIVES

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| To provide child with a safe environment that will promote healthy growth and development. | | | 12/18/14 NC |
| 1. Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Foster care | PCV – 215-730-2240 | 12/18/14 NC |
| 2. Provider will schedule and transport (Cambria and all siblings) as needed/required for bi-monthly sibling visitation and continuation of sibling bonding. | Sibling visitation | PCV – 215-730-2240 | 12/18/14 N |
| ************************************************************************ | END OF PROVIDER'S OBJECTIVES | ******************************** ******** | |
| To correct or stabilize physical health, vision, hearing or dental problems. | | | 12/18/14 NC |
| 1. Cambria will receive appropriate medical evaluation to address general well-being and genetic condition. | Well child visits Genetic Condition. | Mark E. Cobb – 215-844-1020 St. Chris | 12/18/14 NC |
| 2. Parents and/or caregiver will comply with all recomended treatmentsfor Cambria. | Medical Treatment. | Covenant House- 215-844-1020 | 12/18/14 NC |
| 3. Ms. Howard or Mr. Reed will sign authorization form will allow CYD to obtain medical records and reports. | Medical Treatment. | Covenant House/St. Chris | 12/18/14 NC |

# PERMANENCY PLAN OBJECTIVES

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| To provide adequate and safe living conditions | | | 12/08/14 JC / 12/18/14 |
| 1. Ms. Howard and/or Mr. Reed will occupy appropriate/stable housing for family with suitable space, heat, and all other operable utilities | Housing Service | Mr.Reed and/or Ms. Howard | 12/18/14 JC |
| To maintain relationship between parent(s) and child through participation in placement activities and through regular visitation. | | | 12/18/14 JC |
| 1. Mr. Reed/Ms. Howard will keep all visits and maintain regular contact with child. | Visitation | PCV - 215-730-2240 | 12/18/14 JC |
| 2. Mr. Reed/Ms. Howard will meet regularly with agency social worker and follow through with ISP. | Foster Care , Purchase Placement | PCV - 215-730-2014 | 12/18/14 JC |
| To participate in any and all evaluations as ordered by the court. | | | 12/18/14 JC |
| 1. Ms. Howard and Mr. Reed will participate and complete court ordered Parenting Capacity Evaluation. | Parenting Capacity Evaluation | ATA | 12/18/14 JC |
| 2. Ms. Howard will participate in court ordered CEU evaluation. | Evaluation | CEU - -1801 Vine St. | 12/18/14 JC |
| 3. Mr. Reed will participate in the Court ordered CEU evaluation and follow all recommendations. | Evaluation | CEU - 1801 Vine St. | 12/18/14 JC |
| 4. Mr. Reed will submit urine sample upon request as per the Court Order. | Urine submission | 1801 Vine St. | 12/18/14 JC |

85-457 (2) (REV. 07/04)

# PERMANENCY PLAN OBJECTIVES

| CYD CASE NUMBER: | 620543 B | FAMILY SURNAME: | REED |
|---|---|---|---|

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Provider Name and Telephone No. | Completion Date |
|---|---|---|---|
| **To stabilize mental health problems** | | | 02/18/14 SC 12/19/14 |
| 1. Winchella Howard will participate in mental health evaluation. Cameron Reed will participate in mental health evaluation. | Psychiatric/psychological evaluation | BHS ARC - 267-514-3500 | 12/18/14 NC |
| 2. Winchella Howard/Mr. Reed will comply with all treatment recommendations including therapy and or medication as prescribed. | Psychiatric/psychological evaluation | BHS ARC - 267-514-3500 | 12/18/14 NC |
| 3. Ms. Howard and Mr. Reed will sign authorization for to allow CYD to obtain copies of evaluations and progress reports. | Psychiatric/psychological evaluation, Psychiatric or other recommended therapy including medication. | BHS ARC - 267-514-3500 | 12/18/14 NC |
| **************************************************************** | **END OF PARENTS OBJECTIVES** | *************************************** ******** | |
| **To address deficits around mastery of age appropriate development tasks and skills.** | | | 12/18/14 NC |
| 1. Ms. Howard/Mr. Reed will participate in evaluation and recommended treatment for child. | Education or Therapeutic Services | Elwyn Services - 215-222-8054 | 12/18/14 NC |
| 2. Cambria will participate in remedial or specialized services to overcome developmental delays | Education or Therapeutic Services | Elwyn Services - 215-222-8054 | 12/18/14 NC |

85-457 (2) (REV. 07/04)

# CHILD PERMANENCY PLAN OBJECTIVES

| | |
|---|---|
| | **CPP OBJECTIVE FOR PROVIDER** |
| 22 | To provide child with a safe environment that will promote healthy growth and development. |

**CPP OBJECTIVES FOR PARENT AND CHILD**

| | |
|---|---|
| 23 | To maintain relationship between parent(s) and child through participation in placement activities and through regular visitation. |
| 24 | Other _____ |

**CPP OBJECTIVES FOR CHILD**

| | |
|---|---|
| 25 | To perform satisfactorily in school. |
| 26 | To resolve personal problems/issues and improve adjustment. |
| 27 | To understand responsible sexual behavior. |
| 28 | To provide youth with the opportunity to obtain skills for independent living. |
| 29 | To achieve a permanent home for the child through finalized adoption. |
| 30 | To receive regular or rehabilitative health care services. |
| 31 | To receive needed mental health treatment. |
| 32 | To avoid-inpatient or institutional care through provision of medially oriented personal care services. |
| 33 | To acquire social skills and age appropriate relationships. |
| 34 | To address deficits around mastery of age appropriate developmental tasks and skills. |
| 35 | Other _____ |

Child Permanency Plan – Rev. 4-12-11 (85-467)

Commonwealth of Pennsylvania

In the Interest Of:

Christian Reed, A Minor
Date of Birth: 03/23/2011

IN THE FAMILY COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA

JUVENILE DIVISION

DOCKET NO:    CP-51-DP-0001979-2012
FID:    51-FN-002936-2012

# PERMANENCY REVIEW ORDER

## PERSONS APPEARING AT HEARING

The following persons appeared at this hearing:ACS Goren, DHS Rep.  S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,  and DHS Supervisor . {SR}

AND NOW, this 20th day of June, 2014, the court finds:

## CONTINUING PLACEMENT - Necessity and Appropriateness

The placement of the child continues to be necessary and appropriate.

## PERMANENCY PLAN - Compliance

MOTHER - There has been full compliance with permanency plan.

FATHER - There has been minimal compliance with permanency plan.

## PERMANENCY PLAN - Reasonable efforts to finalize

Reasonable efforts have been made by the Philadelphia Department of Human Services ('Agency') to finalize this child's permanency plan.

## CURRENT PERMANENT PLACEMENT GOAL - Appropriateness and Feasibility

The current placement goal for the child is return to parent or guardian.

## PERMANENCY PLAN/PLACEMENT GOAL

The permanency plan developed for this child, dated 6/03/14, is appropriate and feasible.

## CURRENT PLACEMENT - Child's Safety

The child is safe in the current placement setting. Safety as of 6/12/14.

## ORDER OF COURT - On the basis of the following determinations, it is hereby ordered that:

Legal Custody of the Child shall remain with the Philadelphia Department of Human Services.

Placement of the Child shall remain in Foster Care though The Village.  The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

## FINDINGS/ORDERS

THE COURT FURTHER ORDERS:  Motion for reconsideration granted. Remain as committed. Child is authorized to  travel with foster parent to South Carolina from 8/16/14 through  8/23/14. All specific information regarding the vacation /trip is to provided to counsel (dates of the trip, place they will be staying). Father is re-referred to CEU for an assessment and forthwith drug screen. Father is to complete second portion of parenting capacity evaluation. DHS to re-refer father to ARC. Mother is referred to BHS for consultation/evaluation. Mother is sign releases of information.

THE COURT FURTHER FINDS: Part 2 of father's parenting capacity evalaution is scheduled for 7/15/14. Child receives speech, ; occupational and special instruction through Elywn.

CP-51-DP-0001979-2012

In The Interest Of: Christian Reed, A Minor

NEXT SCHEDULED COURT DATE(S)

Next Scheduled Court Date: - Permanency Review Hearing - 09/02/2014 - 10:30AM - 1801 Vine Street - Courtroom G - Tereshko, Allan L.

SERVICE

Copies ToACS Goren, DHS Rep.   S. Banks, Child Advocate DACAU Payne, Atty.f/mother CLS Janoski, Atty.f/father Harry Levin, Cameron Reed, Mother Winchella Howard, The Village, TFC Sw, The Village Sw, Family School Sw,   and DHS Supervisor .

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT

_____
Judge Walter Olszewski

# PERMANENCY PLAN REVIEW

| CYD CASE NUMBER: 620543 C | FAMILY SURNAME: REED | DATE OF REVIEW: 07·29·14 06/03/44 C |
|---|---|---|

| OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN | | | | |
|---|---|---|---|---|
| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
| To provide child with a safe environment that will promote healthy growth and development. | | Yes | Yes | No |
| 1 . Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Foster care | Yes | Yes | |
| 2 . Provider will insure the agreed upon objectives are meet and work to insure child safety. | Provider oversight | Yes | Yes | |
| To insure frequent and ongoing contact between siblings. | | Yes | Yes | No |
| 1 . Provider will insure that Christian has visits with his siblings on a bi-weekly basis. | Sibling visitation | Yes | No | |
| 2 . Provider will schedule and transport child and siblings as needed to insure sibling visits occur. | Sibling visits | Yes | No | |
| ************************************************************** | END OF PROVIDER'S OBJECTIVES | ************************************ | | |
| To meet the child(ren)'s daily basic needs including food and clothing | | Yes | Yes | No |
| 1 . Ms. Howard/Mr. Reed will provide child(ren) with regular nutritious | Homemaker Service or | Yes | No | |

# PERMANENCY PLAN REVIEW

| CYD CASE NUMBER: 620543 C | FAMILY SURNAME: REED | DATE OF REVIEW: 07.29.14 06/03/14 |

## OBJECTIVES/ACTIONS: PROVIDER'S/PARENTS/LEGAL GUARDIANS/CHILDREN

| Objectives and Actions to Achieve Results (specify by whom and how often) | Services to be Provided | Services Provided | Actions Occured | Achieved |
|---|---|---|---|---|
| meals | Education | | | |
| 2 . Ms. Howard will make sure children are clean and properly clothed | Homemaker Service or | Yes | No | |
| | Education , Monitoring | | | |
| To maintain relationship between parent(s) and child through | | Yes | Yes | No |
| participation in placement activities and through regular visitation. | | | | |
| 1 . Ms. Howard/Mr. Reed will keep all visits and maintain regular | Foster Care , Visitation | Yes | Yes | |
| contact with child. | | | | |
| 2 . Ms. Howard/Mr. Reed will meet regularly with agency social worker | Purchase Placement | Yes | No | |
| and follow through with ISP. | | | | |
| ********************************************************* | END OF PARENTS OBJECTIVES | ********************************** | ***** | ***** |
| ********************************************************* | NO CHILDREN OBJECTIVES | ********************************** | ***** | ***** |

85-457 (2) (REV. 07/04)

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 396 of 404

## CHILD PERMANENCY PLAN REVIEW (Continued)

**Review Questions**

1. Recommendation for this hearing and next six months:  This child should be:

   ☒ Returned to parent, guardian, custodian

   ☐ Continued in foster care for a specified period

   ☐ Placed for adoption

   ☐ Placed with permanent legal custodian

   ☐ Placed with a fit and willing relative

   ☐ Placed in another planned permanent living arrangement

2. Determine the continuing necessity for and appropriateness of the placement

Placement remains necessary. The placement setting is appropriate at this time. All basic needs are being met.

3. Determine extent of compliance with the service plan

Ms. Howard has been significantly compliant with the objectives and goals of the FSP. She has completed a  number of the required wkshops at ARC. She visits with the children consistently. Ms. Howard has participated in the Parenting Capacity evaluation and remains cooperative with DHS and provider agency.

Mr. Reed has been minimually compliant. He has completed the Focus on Fathers grp at ARC. He refuses to attend/participate in other required wkshops. Mr. Reed has yet to complete the Parenting Capacity Evaluation which was ordered over 4 months ago. He visits with the children consistently. *Christian is Receiving EI service As Needed. Medical Visits/Follow-up For NeuroFibromatosis is being Addressed. Genetic condition Needs ongoing Follow-up. Parents Need to Attend/participate in medical visits.*

4. Determine extent of progress made toward alleviating circumstances that necessitated the original placement

Progres is difficult to determine as DHS has no doctmentation of the Parents parenting capacity. Ms. Howard; however, has been very coopertative and consitently completed assigned tasks. Visits are still supervised at the agency. Assessments will be made on-going.

| The goal of | REUNIFICATION | will be achieved by | 12/19/2014 |
| --- | --- | --- | --- |
| | | | Date |

Based on the results recorded on the Permanency / Dispositional Review Order attached, are revisions to the Child Permanency Plan required?   ☒ YES   ☐ NO

Child Permanency Plan – Rev. 4-12-11

| CHILD'S PERMANENCY PLAN | PHILADELPHIA DEPARTMENT OF HUMAN SERVICES |
|---|---|
| | CHILDREN AND YOUTH DIVISION |

☐ INITIAL   ☒ REVISION

## 1. IDENTIFYING INFORMATION

| A. CHILD'S NAME | B. BIRTHDATE |
|---|---|
| Christian Howard | 3/23/2011 |

| C. CYD CASE NUMBER AND SUFFIX | D. JUVENILE NUMBER | E. PLACEMENT DATE |
|---|---|---|
| 620543-C | | 11/4/2013 |

| F. DATE INITIAL CPP COMPLETED | G. DATE OF THIS REVISION (Answer #5. Do not re-do #3 & #4) | H. DATE NEXT REVIEW DUE |
|---|---|---|
| 12/4/2013 | 7/29/2014 | 12/18/2014 |

## 2. CHILD'S LOCATION

| | A. AGENCY | B. FOSTER PARENT (If Applicable) |
|---|---|---|
| NAME | The Villiage | Arcella Walker |
| ADDRESS & ZIP CODE | 452 S. Roberts Rd., Rosemont, PA | 7005 Hazel Avenue; Upper Darby,PA |
| TELEPHONE | 215-730-2240 | |

## 3. CIRCUMSTANCES NECESSITATING INITIAL PLACEMENT (CHECK ALL THAT APPLY). DO NOT RE-DO FOR REVISION

A. GENERAL INFORMATION *(Child dependent or delinquent due to)*:

☒ ALLEGED ABUSE OR NEGLECT        ☐ CHILD AT RISK OF ABUSE OR NEGLECT

☐ PARENT(S) ARE DEAD, MISSING OR IMPRISONED        ☐ PARENT(S) VOLUNTARILY SURRENDERED CHILD FOR ADOPTION/ CARE

☐ PARENT(S) CARETAKER(S) UNABLE TO MAINTAIN CHILD AT HOME DUE TO EMERGENCY SITUATION AND NO OTHER FAMILY ARE AVAILABLE        ☒ PARENT(S) CARETAKER(S) INCAPACITATED BY PHYSICAL OR MENTAL ILLNESS AND/OR INJURY

☐ CHILD'S BEHAVIOR PRESENTS A SERIOUS DANGER TO SELF OR OTHER        ☐ CHILD CHARGED WITH CRIMINAL ACT

☐ CHILD IS AN UNACCOMPANIED REFUGEE MINOR        ☐ CHILD'S BEHAVIOR PRESENTS SEVERE MANAGEMENT PROBLEM

☐ OTHER (DESCRIBE) NOTE: "COURT ORDERED WITH EXPLANATION OF CIRCUMSTANCES IS NOT ACCEPTABLE

B. SPECIFIC INFORMATION:
Family Case opend due to medical neglect. Housing stability was an issue-along with Ms. Howard's questionable ability tomange the children and maintain the home. Ms. Howard often appeared diwsorganized, overwhelmed and exhibited some cognitive deficits.

## 4. REASONABLE EFFORTS TO PREVENT PLACEMENT (DO NOT RE-DO FOR A REVISION)

| A. EFFORTS BY FAMILY | B. EFFORTS BY CYD | OFFERED | PROVIDED | C. REASONS PRECLUDING PREVENTION EFFORTS |
|---|---|---|---|---|
| ☒ MENTAL HEALTH | IHPS | ☐ | ☒ | ☐ PLACEMENT IS COURT ORDERED |
| ☐ COUNSELING | FSS | ☐ | ☐ | ☐ NO RELATIVES ABLE/WILLING ASSURE CARE |
| ☐ INTERVENTION OF RELATIVE/FRIENDS | COUNSELING | ☒ | ☐ | ☒ AT RISK AT HOME |
| ☐ FAMILY PLANNING | DAY TREATMENT | ☐ | ☐ | ☐ OTHER |
| ☐ OTHER | HOMEMAKER | ☐ | ☐ | |
| | OTHER | | | |

D. OUTCOME OF FAMILY AND CYD EFFORTS

## 5. CIRCUMSTANCES NECESSITATING A REVISION

☒ CPP REVIEW REQUIRED REVISION

☐ OTHER REASON *(Specify: Include date)*

CHANGE IN: *(Give Date)*

☐ PLACEMENT LOCATION   / /        ☐ VISITATION PLAN   / /

☐ SERVICE   / /        ☐ GOAL   / /

## 6. PLACEMENT GOAL *(Check Only One)*

**LEAVE DHS CUSTODY**

☒ RETURN TO PARENT, GUARDIAN, CUSTODIAN
☐ ADOPTION
☐ PLACE WITH PERMANENT LEGAL CUSTODIAN

**DHS RETAINS CUSTODY**

☐ PLACEMENT WITH A FIT AND WILLING RELATIVE
☐ ANOTHER PLANNED PERMANENT LIVING ARRANGEMENT

IF YOU HAVE A DISABILITY AND REQUIRE AN ACCOMMODATION IN ORDER TO COMPLETE THIS FORM AND/OR TO PARTICIPATE IN A PROGRAM OR SERVICE, CONTACT THE ADA COORDINATOR AT 683-0949 OR 683-6100 (V, TTY)

## 7. PLACEMENT SELECTION

A. IDENTIFY THE TYPE OF PLACEMENT *(Check One)*

☒ FOSTER / KINSHIP   ☐ GROUP HOME   ☐ INSTITUTION   ☐ INDEPENDENT LIVING

☐ OTHER *(SPECIFY)*

B. ANTICIPATED LENGTH OF PLACEMENT   6 months   MONTHS (NOTE: NOT AUTOMATICALLY 6 MONTHS)

C. PLEASE DESCRIBE BELOW IN C-1 HOW THIS PLACEMENT AND PHYSICAL DISTANCE OF THE PLACEMENT FROM THE CHILD'S OWN HOME IS:
* THE LEAST RESTRICTIVE, MOST FAMILY-LIKE SETTING FOR THE CHILD
* IS CONSISTENT WITH THE CHILD'S INTEREST AND SPECIAL NEEDS
* IS APPROPRIATE FOR THE CHILD'S EDUCATIONAL STABILITY AND GENERAL PERFORMANCE
* ASSURES PROPER CARE OF THE CHILD
* PROTECTS AND TENDS TO THE CHILD'S PHYSICAL AND MENTAL WELFARE
* ASSURES FAMILY REUNIFICATION, AND/OR
* CONTRIBUTES TO GOAL ACHIEVEMENT.

C-1
Christien is in the least restrictive environment and home like setting. The Walker home is licensed by DPW and supervised by PCV. The foster parent is able to meet Christien's need at this time.

## 8. DISTANCE FROM PARENTS HOME AND VISITATION PLAN

A. DISTANCE BETWEEN PARENT(S) HOME AND VISITING SITE: APPROXIMATELY   8   ☐ MILES OR   ☐ MINUTES FROM PARENTS' HOME BY:

☒ PUBLIC TRANSPORTATION   ☐ PRIVATE TRANSPORTATION   ☐ OTHER ____

B-1   PARENTAL VISITATION PLAN: *(Check One)*

☐ NOT REQUIRED, GOAL IS ADOPTION.

☐ PARENT FREELY REFUSED VISITATION IN WRITING. ATTACH DOCUMENT TO THIS FORM.

☐ OPPORTUNITY FOR PARENTAL VISITS IS LIMITED OR PROHIBITED BY COURT ORDER. *(VERIFICATION MUST BE IN RECORD)*

DOCUMENT NUMBER: ____   DATE ISSUED: ____

JUDGE'S NAME: ____

☒ OPPORTUNITY FOR PARENTAL VISITS IS AVAILABLE AT LEAST ONCE EVERY TWO WEEKS

DESCRIPTION OF PLAN FOR VISITATION BETWEEN CHILD AND PARENTS *(SPECIFY ALL OF THE FOLLOWING IN SPACE BELOW)*:
1. PARTICIPANTS:   REQUIRED: CHILD AND PARENTS, CHILD AND SIBLINGS WHO ARE IN PLACEMENT.
2. LOCATION:   PLACE MUST BE CONVENIENT TO ALL PARTIES AND PERMIT NATURAL INTERACTION.
3. FREQUENCY:   TIME MUST BE CONVENIENT TO ALL PARTIES. INCLUDE PLAN FOR VISITING ON SPECIAL OCCASIONS, E.G. BIRTHDAY, HOLIDAYS, VACATIONS. INCLUDE SCHEDULE FOR REGULAR TELEPHONE CALLS.

VISITATION PLAN FOR CHILD AND PARENTS (include transportation arrangements):
Parents confirm visit with agency. Visits are supervised at the agency at the agency on a weekly basiss.

B-2   VISITATION PLAN FOR CHILD AND SIBLINGS WHO ARE IN PLACEMENT

☒ OPPORTUNITY FOR SIBLING VISITS WITH SIBLINGS IN PLACEMENT IS AVAILABLE AT LEAST MONTHLY FACE TO FACE

DESCRIPTION OF PLAN: (Include location, frequency and transportation plan)
Provider workers will schedule sibling visits at least monthly. Provider wkrs will trainsport Children as necessary to ensure ongoing contact with one another.

Child Permanency Plan – Rev. 4-12-11   Page 2

| CHILD PERMANENCY PLAN*(Continued)* | CHILD'S NAME: Christien Howard | | DHS #: 620543 - C |
|---|---|---|---|
| PROVIDER SOCIAL WORKER Genea Davis | DHS SOCIAL WORKER | | |
| ☐ INITIAL PLACEMENT    ☐ CHANGE IN PLACEMENT | ☒ UPDATE | DATE 06·03·2014 | |

### * * HEALTH INFORMATION * *

| SOURCE | NAME | ADDRESS | TELEPHONE |
|---|---|---|---|
| Clinic | | | |
| Physician | Drs Huffman Devaughn Pamela | 5249 Cedar Ave, suite c PhyLA, PA 19143 | 215 472-5437 |
| Dentist | | | |
| Psych | | | |
| Other | | | |
| Other | | | |
| Other | | | |

**MEDICAL HEALTH PROBLEM** *(Diagnosis must be provided by practitioner)*
Neurofibromatosis

**MEDICATIONS:** None at present

### **RECORD OF IMMUNIZATIONS**

| IMMUNIZATIONS | DATES OF IMMUNIZATION/BOOSTER | | COMMENTS |
|---|---|---|---|
| DPT | DTap-HepB-IPV 06·07·11; 8·22·11; 08·03·2012 | | |
| OPV | DTap-UF   03·28·13   DT, ped - 06·28·13 | | |
| MMR | DTap- HepB-IPV   06·07·2011; 08·22·11; 08·03·12 | | |
| MEASLES | HIB (PRP-T)   06·07·11; 08·22·11, 08·03·12; 06·28·13 | | |
| TETANUS | Pcv 13   06·07·11; 08·22·11; 08·03; 06·28·13 | | |
| FLU (HIB) | Rotavirus (Rota teq) 06·07·2011; 08·22·11 | | |
| OTHER (Specify) | | | |
| OTHER (Specify) | | | |

### **EDUCATIONAL INFORMATION**

☒ Child under 5 (not school age)    ☐ School age child    Grade _____    ☐ Child not enrolled   Reason for no enrollment _____

| INITIAL PLACEMENT ONLY: Name and address of child' school prior to placement | Name: | Address: |
|---|---|---|

Name of school after placement (if child transferred schools):   Undetermined at this time.

Describe efforts to keep child in school of origin and reason for transferring child to another school (where applicable):   Christien is now participating in a SEEDS to SEEDS Program due to his special needs.

| | |
|---|---|
| List schools that child has attended since enrolling in school:  SEED to SEED via Elwyn. | |

Distance between placement site and school where child will be enrolled after placement (original school or new school if child will be transferred):    UNK

Describe transportation arrangements (if applicable):  UNK at present; Chrietien is currently bused.

| Placement location is: | ☐ Best suited to child's needs | ☒ Only resource available | |
|---|---|---|---|

| School performance: | ☐ At Grade level (C or higher average) | ☐ Above grade level  (A average) | ☒ Below grade level (D or F average) |
|---|---|---|---|

Attendance: (current number of unexcused absences):  NONE

Discipline: (current number of disciplinary incidents, such as suspensions or other):  NONE

| SPECIAL EDUCATION: ELWYN - Seed to Seed Program | ☒ YES | ☐NO | |
|---|---|---|---|

| If child has changed or will change schools: | Date IEP  was requested from school: | Copy of IEP attached:   ☒ |
|---|---|---|

Name and contact information of surrogate parent (if applicable):   Arcella Walker - 67005 Hazel Ave.

**ADDITIONAL HEALTH AND EDUCATIONAL INFORMATION MAY BE FOUND IN THE CHILD'S SECTION OF THE CASE RECORD**

| CHILD PERMANENCY PLAN (continued) | CASE NAME<br>Christian Howard | DHS #<br>620543 - C |
|---|---|---|
| PROVIDER SOCIAL WORKER<br>Genea Davis | DHS SOCIAL WORKER | |

## **PREPARATION FOR INDEPENDENCE**

☐ Youth will be referred to Adolescent Initiative Program ☐ YES _____/_____/_____  ☒ NO  Much too young

(Date) (Reason)

☐ Youth was referred _____/_____/_____ to Adolescent Initiative Program and is awaiting decision as to acceptance.

☐ Youth was accepted by the Adolescent Initiative Program beginning: _____/_____/_____

☐ Youth was rejected by the Adolescent Initiative Program: _____/_____/_____

☐ Youth completed the Adolescent Initiative Program: _____/_____/_____

☐ Youth will receive the following services from the indicated providers.

| SERVICE(S) | PROVIDER(S) | SERVICE IS INAPPROPRIATE BECAUSE: |
|---|---|---|
| ☐ Housing (e.g. leases, maintenance, ,tenant rights | | |
| ☐ Employment (e.g., counseling, referral, placement | | |
| ☐ Vocational Training | | |
| ☐ Education (e.g., counseling, referral, financial aid applications) | | |
| ☐ Life Skills (e.g., budgeting, communication, food preparation) | | |
| ☐ Other | | |

Child Permanency Plan – Rev. 4-12-11

| | |
|---|---|
| JUVENILE NUMBER: | |
| CHILD'S NAME:<br>Christien Howard | CASE NUMBER/SUFFIX:<br>620543 - C |

| OBJECTIVE | ACTIONS TO ACHIEVE OBJECTIVES (Specify by whom and how often) | SERVICES TO BE PROVIDED | PROVIDER NAME & PHONE NO. | COMPLETION DATE |
|---|---|---|---|---|
| | Please see Objectives _____ in the Family Service Plan. | | | |
| **PROVIDER'S OBJECTIVE/ACTIONS** | | | | |
| 22 | Provider will meet with child as planned, provide supervision of placement, consult with child's care provider and family. | Supervision/monitoring - provision of services. | PCV - 215-730-2267 | 12/18/2014 |
| 22 | Provider will schedule and ensure sibling visitation occurs on at least a monthly basis. | SIBLING VISITS - TRANSPORT AS NECESSARY. | PCV - 215- 730-2240 | 12/18/2014 |
| 22 | Provider will ensure all measures are taken to address/assure child safety. | Supervision/Monitoring. | PCV - 215-730-2267 | 12/18/2014 |
| **PARENT'S LEGAL GUARDIAN'S OBJECTIVES/ACTIONS** | | | | |
| 24 | Ms. Howard will continue participation in Family School until completion. | Appropriate Parenting Skills - Education/Modeling. | Family School | 12/18/2014 |
| 23 | Ms. Howard/ Mr. Reed will maintain all contact and visits with children. | Visitation | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Ms. Howard will continue to actively participate in therapy/counseling as needed/necessary. | MH counseling/therapy | PCV - 215-730-2267 | 12/18/2014 |
| 24 | Mr. Reed/Ms. Howard will comply with all evaluations, CEU assessments, and urine submission as court ordered. | Evaluations/MH and D/A assessments | PCV - 215-730-2267 | 12/18/2014 |
| **CHILD'S OBJECTIVES/ACTIONS** | | | | |
| 25 | Christien will attend school program as scheduled | EDUCATION | Delaware County IU 25 | 12/18/2014 |
| 34 | Christien will receive all necessary educational E.I. Services | OT, Special Instruction, and Speech Therapy | Elwyn E.I. | 12/18/2014 |
| 30 | Christien will receive all necssary follow up and testing for neurofibromatosis. | Medical Follow tests - Well Child Visits | St. Christopher's Hospital | 12/18/2014 |
| | | | | |
| | | | | |

Case 2:20-cv-01102-ER   Document 1   Filed 02/20/20   Page 402 of 404

CPP OBJECTIVE FOR PROVIDER

22    To provide child with a safe environment that will promote healthy growth and development.

CPP OBJECTIVES FOR PARENT AND CHILD

23    To maintain relationship between parent(s) and child through participation in placement activities and through regular visitation.

24    Other _____

CPP OBJECTIVES FOR CHILD

25    To perform satisfactorily in school.

26    To resolve personal problems/issues and improve adjustment.

27    To understand responsible sexual behavior.

28    To provide youth with the opportunity to obtain skills for independent living.

29    To achieve a permanent home for the child through finalized adoption.

30    To receive regular or rehabilitative health care services.

31    To receive needed mental health treatment.

32    To avoid-inpatient or institutional care through provision of medially oriented personal care services.

33    To acquire social skills and age appropriate relationships.

34    To address deficits around mastery of age appropriate developmental tasks and skills.

35    Other _____

## FSP OBJECTIVES FOR PARENTS

1. To understand how and why child(ren) were injured.

2. To learn and use non-violent, non-physical discipline methods.

3. To provide the child(ren) with adequate supervision at all times.

4. To meet the child(ren)'s daily basic needs including food and clothing.

5. To learn and understand age appropriate behavior and expectations for child(ren).

6. To provide adequate and safe living conditions.

7. To protect the child from any further abuse.

8. Other _____

## FSP OBJECTIVES FOR PARENTS AND/OR CHILDREN

9. To achieve and maintain recovery from drug and/or alcohol problems.

10. To stabilize mental health problems.

11. To correct or stabilize physical health, vision, hearing or dental problems.

12. To understand sexual victimization and to resolve issues that occurred due to the abuse.

13. To eliminate family violence.

14. To understand and engage in responsible sexual behavior.

15. To improve the relationship between parent(s) and child(ren).

16. To address deficits around mastery of age appropriate developmental tasks and skills.

## FSP OBJECTIVES PARENTS AND CHILD(REN) OVER 16 YRS.

17. To obtain and complete job training and or seek and maintain employment.

18. Other _____

## FSP OBJECTIVES FOR CHILD(REN)

19. To perform satisfactorily in school.

20. To acquire social skills and age appropriate relationships.

21. Other _____