IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMERON REED, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 20-CV-1102 |
| | : | |
| JONATHAN HOUTON, *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

ROBRENO, J.                                                                    AUGUST 5,  2020

This matter comes before the Court by way of a Complaint (ECF No. 1), brought by

Plaintiff Cameron Reed, proceeding *pro se*.  Also before the Court is Reed's Motion for Leave to

Proceed *In Forma Pauperis* (ECF No. 2) and several Exhibits Reed filed with the Court (ECF

Nos. 4, 5).  Because it appears that Reed is unable to afford to pay the filing fee, the Court will

grant him leave to proceed *in forma pauperis*.  For the following reasons, the Complaint will be

dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I.        FACTUAL ALLEGATIONS[1]

Reed has named the following Defendants:  (1) Jonathan Houlon,[2] Chief Deputy City

Solicitor with the City of Philadelphia Law Department; (2) Imani Oliver, a Court Representative

---

[1]  The facts set forth in this Memorandum are taken from Reed's Complaint and all the
documents and exhibits attached thereto.

[2]  Defendant Houlon was misidentified in the Complaint as "Houton."  The exhibits attached to
the Complaint make clear that the proper spelling of his name is Houlon.  (ECF No. 1 at 112.)
The Clerk of Court will be directed to correct the spelling of this Defendant's last name on the
docket.

for DHS;[3] (3) Michael Pratt, a "DHS lawyer" and guardian *ad litem* for Reed's minor daughter; and (4) Channel Jones, a DHS social worker. (ECF No. 1 at 2-4, 10.) Although the Complaint repeatedly refers to RICO violations and other crimes such as "kidnapping for profit" and wire fraud, it appears the Complaint is, at its core, a civil rights complaint attempting to raise claims pursuant to 42 U.S.C. § 1983 based on Defendants' involvement in state-court proceedings that resulted in the removal of Reed's minor daughter from his custody.

The minor daughter was born prematurely on August 31, 2017 at 30 weeks gestation to Winchella Howard, her mother, and Reed, her father. (ECF No. 1 at 43-44.) At the time of her birth, the family was already known to DHS "due to the failure of the child['s] parents, . . . Howard and . . . Reed, to provide their [older] children with adequate food and safe, appropriate housing as well as . . . Reed's substance abuse and . . . Howard's mental health problems." (*Id.* at 43.) DHS became involved with the family again on approximately September 15, 2017 after receiving a General Protective Services report regarding the birth of their minor daughter on August 31, 2017. (*Id.* at 44.) On October 10, 2017, the minor child was ready for discharge from Albert Einstein Medical Center, where she had been hospitalized since birth and was being treated for a kidney disorder. (*Id.* at 44-45.) At that time, DHS obtained an Order of Protective Custody and placed the minor child in a foster home. (*Id.* at 45.) Subsequently, the minor child was adjudicated dependent and committed to the care and custody of DHS on January 23, 2018. (*Id.*) From January of 2018 through August of 2018, DHS continued its efforts to provide services to the family, but it was ultimately determined that it was in the best interests of their minor daughter to terminate Howard's and Reed's parental rights and allow the child, who had

---

[3] Reed's use of "DHS" in the Complaint refers to the Philadelphia Department of Human Services. The Court adopts the reference.

been in foster care continuously since October 2017, to be adopted by her caregivers.  (*Id.* at 46-48.)

Based on the circumstances above regarding the removal of his minor daughter from his care and custody, Reed now brings this action alleging that his "child was remove[d] from Ein[s]tein medical hospital by D.H.S. of Philadelphia" on October 10, 2017.  (*Id.* at 4.)  Reed contends that this removal constitutes "kidnapping for profit and wire fraud" and was "a direct violation of the RICO Act."  (*Id.*; *see also id.* at 11.)  He also asserts that Defendant Houlon "typed up a petition" against Reed and that Houlon "violated due process of law" with respect to Reed's rights under the Fourteenth Amendment.  (*Id.* at 4, 10.)  Reed specifically asserts that Houlon filed "a false abuse neglect [sic]" report against Reed and the child's mother.  (*Id.* at 16.)  Reed similarly alleges that Defendant Jones, a DHS social worker, "typed up a forgery [sic] Court Order that remove[d] [his] child[.]"  (*Id.* at 4.)  Reed claims that the removal of his minor daughter from Einstein Medical Center's neonatal care, based on the allegedly forged court order prepared by Jones, was "a direct violation of the Patient Bill of Right[s]."  (*Id.* at 4, 10.)  With respect to Defendant Pratt, Reed similarly alleges that on December 6, 2018, Pratt "typed up a forgery [sic] court petitions [sic] . . . against [Reed's] family."  (*Id.* at 56.)  Reed further claims that Pratt "committed perjury against" him and his family "under constitutional law[,]" and committed "wire fraud [by] illegally copying birth certificates in Philadelphia."  (*Id.*)

More broadly, Reed also seems to allege that Defendants are "part of an ongoing cr[i]mi[n]al organization" that should be subject to criminal penalties.  (*Id.* at 5.)  Reed claims that this "criminal organization had [his] children" in "DHS custody for four years[,]" and he seeks $100,000 in damages based on Defendants "keeping the children falsely imprisoned in state custody[.]"  (*Id.* at 5.)  He further asks the Court to hold DHS "accountable for their

actions" that caused him to "suffer for eight years of [his] life with [sic] out" seeing his children. (*Id.*)  He seeks damages related to being "traumatized and mentally distressed, . . . [losing] work wages for 38 days and . . . [for] pain [and] suffering." (*Id.*)

## II.   STANDARD OF REVIEW

The Court will grant Reed leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous, fails to state a claim, or seeks monetary relief from an immune defendant.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.*  Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013).  As Reed is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

The Court understands Reed's Complaint to assert claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, Reed's claims appear to be related to state-court dependency proceedings initiated by DHS, which resulted in the removal of his minor daughter from his care beginning in October of 2017.  The Complaint in this case contains only conclusory allegations purporting to show that the Defendants' actions were those of "corrupt organizations," whose members engaged in "kidnapping for profit and wire fraud" and violated the "RICO Act" by removing his minor daughter from his care.  While it seems that all of Reed's claims arise from the state court dependency proceedings that resulted in the removal, Reed does not provide additional facts in support of his allegations of corruption, kidnapping, wire fraud, or RICO violations.[4]  Rather, he merely attaches approximately 400 pages of exhibits to the Complaint, in addition to another 101 pages of exhibits filed subsequently.[5]   (*See* ECF Nos. 4, 5.)

With respect to Reed's § 1983 claims, it appears that any claims are either barred by the statute of limitations or by principles of immunity.  Reed specifically alleges that his "child was

---

[4]  To the extent Reed seeks to invoke federal criminal statutes as the basis for his claims, those claims fail. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]").  Reed has also failed to plead a plausible basis here for a civil claim under the Racketeer Influenced and Corrupt Organizations Act as he alleges only personal injuries resulting from the removal of his minor daughter. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (personal injuries do not qualify as RICO injuries to "business or property"); *see also Clark v. Clark*, 668 F. App'x 11, 12-13 (3d Cir. 2016) (agreeing with the district court's determination that plaintiffs failed to present plausible RICO claims where the claims were not based on sufficient facts to make entitlement to recovery plausible).

[5]  The exhibits attached to the Complaint and those submitted subsequently reflect that DHS previously removed four (4) children from the care and custody of Howard and Reed sometime around 2012.  Although the present action relates primarily to the more recent removal of their minor daughter in 2017, a substantial portion of Reed's exhibits pertain solely to the four eldest children and are not relevant here.

remove[d] from Ein[s]tein medical hospital by D.H.S. of Philadelphia" on October 10, 2017.

(ECF No. 1 at 4.)  The Court understands this allegation to challenge the Order of Protective

Custody that DHS obtained on that date, which permitted the removal of Reed's minor daughter

from Einstein Medical Center and her placement in a foster home.  (*Id.* at 45.)  The additional

allegations in the Complaint stem from that initial removal and the actions of DHS personnel in

the course of the dependency proceedings that ultimately lead to the termination of Reed's

parental rights and the adoption of the child.  Accordingly, Reed's claims are based on the

initiation of the dependency proceedings in 2017.

Pennsylvania's two-year statute of limitations applies to § 1983 actions brought in

Pennsylvania.  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  The

limitations period begins to run from the time "the plaintiff knew or should have known of the

injury upon which [her] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d

582, 599 (3d Cir. 1998).  Because the Complaint and the exhibits make clear that Reed knew, on

or about October 17, 2017, that his minor daughter was initially removed from his care on

October 10, 2017 and placed into foster care at that time, his claims related to the removal of the

child must have been raised by October 17, 2019.  (*See* ECF No. 1 at 107-114, October 17, 2017

Dependency Petition and Affidavit of Service); *see Bennett v. Susquehanna Cty. Children &*

*Youth Servs.*, 592 F. App'x 81, 83 (3d Cir. 2014) ("Bennett's cause of action for all claims

accrued at the time of the alleged unlawful seizure and withholding of her two minor children on

November 18, 2009") (footnote omitted).  Here, because Reed did not file his Complaint until

February 20, 2020, and as the Complaint does not reflect a basis for tolling, his claims based on

the dependency proceedings initiated in 2017 are time-barred.

Moreover, even if Reed's claims were not barred by the statute of limitations, each of the Defendants he names in this action are entitled to absolute immunity from any claims for damages under § 1983.  Reed's allegations concern Defendants' actions in filing and preparing petitions, abuse and neglect reports, and orders related to the state court dependency proceedings. The Complaint makes clear that Reed only seeks damages from the Defendants specifically for their role in preparing materials for, or presenting matters to, the state court in the course of the dependency proceedings, and for initiating and prosecuting the dependency proceedings on behalf of the Commonwealth.  However, Defendants are entitled to absolute immunity from damages for such claims.  *See B.S. v. Somerset Cty.*, 704 F.3d 250, 262-65 (3d Cir. 2013) (recognizing that "in *Ernst v. Child & Youth Services of Chester County*, . . . we joined several of our sister circuits in deeming 'child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state ... absolute[ly] immun[e] from suit for all of their actions in preparing for and prosecuting such dependency proceedings." (citing *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 488-89 (3d Cir. 1997))).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Reed leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Complaint is dismissed due to "legal defect[s] in the pleading, [defects] that could not be overcome by amendment," and an amendment would therefore be futile.  *United States v. Union Corp.*, 194 F.R.D. 223, 238 (E.D. Pa. 2000).  Because any attempt at amendment would be futile, the dismissal will be with prejudice and no leave to amend will be granted.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

An appropriate Order follows.

**BY THE COURT:**


 */s/ Eduardo C. Robreno*
**EDUARDO C. ROBRENO, J.**
